D. Andrew Gaona (028414)
Austin C. Yost (034602)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5486
agaona@cblawyers.com
ayost@cblawyers.com

Lalitha D. Madduri*
Christopher D. Dodge*
Tyler L. Bishop*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
T: (202) 968-4330
lmadduri@elias.law
cdodge@elias.law
tbishop@elias.law
rodonnell@elias.law

*Attorneys for Proposed Intervenor-Defendants
Voto Latino and One Arizona*

*Pro Hac Vice Application Forthcoming

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Strong Communities Foundation of Arizona Incorporated, and Yvonne Cahill,<br><br>                    Plaintiffs,<br><br>     v.<br><br>Stephen Richer, in his official capacity as Maricopa County Recorder, and Maricopa County,<br><br>                    Defendants. | No. 24-CV-02030-SMB<br><br>**VOTO LATINO AND ONE ARIZONA'S MOTION TO INTERVENE AS DEFENDANTS**<br><br>**Oral Argument Requested** |

# INTRODUCTION

Plaintiffs' lawsuit seeks to compel sweeping and haphazard investigations into lawful Maricopa County voters, threatening a systematic purge of the voter rolls just weeks before voting in the 2024 general election begins. Plaintiffs demand this radical relief based on little more than their own preferences about how Maricopa County performs its voter registration duties. Plaintiffs ask the Court to order Maricopa County Recorder Richer to submit inquiries to the U.S. Department of Homeland Security's Immigration and Naturalization Service ("INS") about the citizenship status of *every* Federal-Only voter in Maricopa County—*i.e.*, every voter who has not produced documentary proof of citizenship ("DPOC") when registering to vote[1]—and to submit weekly lists of those voters to the Attorney General for investigation, all with the goal of systematically removing voters from the county's voter rolls before the impending election. *See* Compl. ¶¶ 8–9, 21. Such relief, aside from being inconsistent with state and federal law, would be disastrous, creating a severe risk of disenfranchising lawful voters through a hasty purge of the voter rolls.

Proposed Intervenors Voto Latino and One Arizona seek to intervene as defendants to protect the fundamental voting rights of their members and constituents in Maricopa County, as well as their organizational interests, which would be impaired if Plaintiffs succeed in compelling citizenship investigations and purges of all Federal-Only voters in Maricopa County. Both organizations work to empower and enfranchise historically underrepresented communities, including Arizona's Latino voters. Collectively, Proposed Intervenors have registered nearly three quarters of a million voters in Arizona over the last decade, including Federal-Only voters, most of whom live and vote in Maricopa County. Proposed Intervenors' members and constituents are among those most likely to lack access to DPOC and thus to register as Federal-Only voters—the target of Plaintiffs' desired purges. If Plaintiffs succeed, Proposed Intervenors would be forced to divert scarce

---

[1] Since the Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1 (2013), Arizona has bifurcated its voter registration system into "Federal-Only" voters, who do not provide DPOC when registering and may not vote in state and local elections, and "Full-Ballot" voters, who do provide DPOC and are eligible to vote in all of the state's elections. *See infra* Background § I.

resources in the middle of an election season to combat the reality that their members and constituents may be improperly investigated, purged, and barred from voting.

Proposed Intervenors and their members have initiated successful litigation to challenge burdensome registration laws and practices that risk disenfranchising Federal-Only voters, including provisions of the same laws Plaintiffs seek to enforce here. *See Mi Familia Vota v. Fontes*, No. CV-22-00509, 2024 WL 862406, at *31 (D. Ariz. Feb. 29, 2024) (holding that certain citizenship verification and list maintenance procedures under A.R.S. §§ 16-121.01(A), 16-121.01(C), 16-121.01(E), 16-127(A), 16-165(A)(10), and 16-165(I) were preempted by Civil Rights Act and/or NVRA); *Ariz. All. for Retired Ams. v. Hobbs*, 630 F. Supp. 3d 1180, 1192–94 (D. Ariz. 2022) (granting preliminary injunction enjoining provisions of A.R.S. §§ 16-165(A)(10) and 16-165(B) that authorized county recorders to cancel registrations without notice or authorization from the voter in violation of the NVRA). Plaintiffs' requested relief seeks to undermine Proposed Intervenors' prior success in defending the rights of Federal-Only voters in those related lawsuits.[2]

The existing government defendants do not adequately represent Proposed Intervenors' interests here. They represent the interests of the government—and the conflicting obligations that come with responding to constituents with different views on how the relevant laws should be enforced—while Proposed Intervenors seek to prevent investigation and removal of their members and constituents from the rolls. And whereas Proposed Intervenors have a strong interest in preserving successful rulings obtained as plaintiffs in prior litigation, the Recorder was a named *defendant* in those prior cases. Even assuming that Recorder Richer—who recently lost his primary—might have similar interests to Proposed Intervenors in this suit, there is no guarantee that his successor will.

Finally, Proposed Intervenors' motion is undoubtedly timely. Because Proposed Intervenors satisfy each requirement for intervention as a matter of right under Federal Rule

---

[2] Defendants' Notice of Removal requests that this case be related to *Mi Familia Vota*, No. 2:22-cv-00509 (D. Ariz 2024). *See* ECF No. 1 at 1, 5. Given the overlap between the issues in Plaintiffs' Complaint and that case—including but not limited to a direct conflict between the relief requested here and the injunction issued there, *see infra* Argument § I.B— Proposed Intervenors support this request.

1  of Civil Procedure 24(a), the motion to intervene should be granted. Alternatively, the
2  motion should be granted on a permissive basis under Rule 24(b).

3        Proposed Intervenors conferred with counsel for the existing parties on this Motion.
4  Defendants do not object to this Motion, and Plaintiffs do not consent to this Motion.

## BACKGROUND

**I.  Maricopa County's Voter Registration and List Maintenance Obligations**

      Arizona has enacted procedures to verify whether people who seek to register to vote are qualified, and to remove individuals who are no longer qualified to vote. *See* A.R.S. §§ 16-121.01 (registration requirements), 16-165 (procedures for initiating removal procedures for categories of potentially ineligible individuals), 16-166 (procedures for verifying the residence and citizenship of registrants); *State of Ariz. 2023 Elections Procedure Manual* 36–48, Ariz. Sec'y of State (Dec. 30, 2023) ("EPM").[3] The Secretary of State and county recorders each play significant roles in the state's list-maintenance. *See* EPM at 36–48.

      As relevant here, Arizona law requires individuals registering to vote provide "satisfactory evidence of citizenship," also known as DPOC. A.R.S. § 16-166(F). In 2013, however, the U.S. Supreme Court held that the NVRA preempted Arizona's DPOC requirement as applied to persons registering to vote with a federally provided voter registration form ("Federal Form"), which does *not* require DPOC—requiring county recorders to register Federal Form applicants who do not supply DPOC as Federal-Only voters. *See ITCA*, 570 U.S. 1. Following *ITCA*, Arizona counties continued to reject *state* forms that were not accompanied by DPOC.

      In 2018, to resolve litigation, the Secretary entered into a consent decree requiring that for *every* applicant—regardless of the kind of form they use—election officials must review the state's motor vehicle division ("MVD") database to determine if the state already has proof of their citizenship, and register them as a "full" voter if so or as a "Federal-Only" voter if not. *Mi Familia Vota*, 2024 WL 862406, at *2 (summarizing this background). As it stands, "elections officials must accept the registration applications of otherwise

---

[3] The EPM is available at: azsos.gov/elections/about-elections/elections-procedures/epm.

- 3 -

1  qualifying applicants who do not provide DPOC for at least federal elections." *Mi Familia*
2  *Vota v. Fontes*, No. 24-3188, 2024 WL 3618336, at *4 (9th Cir. Aug. 1, 2024).

3  **II.    Plaintiffs' Lawsuit**

4        Plaintiffs allege that Arizona law requires Recorder Richer to submit inquiries about
5  the citizenship status of *every* Federal-Only voter in the County to INS, and that the
6  Recorder is currently in violation of that ongoing duty.

7        In support, in Counts I and II, Plaintiffs point to A.R.S. § 16-121.01(D), which states
8  that: "[w]ithin ten days after receiving a [federal] application . . . that is not accompanied
9  by [DPOC], the county recorder . . . shall use all available resources to verify the citizenship
10 status of the applicant and at a minimum shall compare the information available on the
11 application" with four specified state and federal databases, as well as any "other state, city,
12 town, county or federal database and any other database relating to voter registration to
13 which the county recorder . . . has access." Plaintiffs claim that federal statutes requiring
14 INS to "respond to an inquiry by a Federal, State, or local government agency, seeking to
15 verify or ascertain the citizenship or immigration status of any individual within the
16 jurisdiction of the agency for any purpose authorized by law, by providing the requested
17 verification or status information," 8 U.S.C. § 1373; *see also id.* § 1644, amount to an
18 "available resource[] to verify the citizenship status of [an] applicant" that the Recorder
19 must use to verify citizenship, as well as a "federal database" to which the Recorder "has
20 access." Compl. ¶¶ 95–107 (quoting A.R.S. § 16-121.01(D)). Plaintiffs thus insist the
21 Recorder must immediately submit these requests for every Federal-Only voter. *Id.* at 17.

22       In Count III, Plaintiffs point to A.R.S. § 16-165(K), which provides that: "[t]o the
23 extent practicable, the county recorder shall review relevant city, town, county, state and
24 federal databases to which the county recorder has access to confirm information obtained
25 that requires cancellation of registrations pursuant to this section." Even though this
26 provision expressly applies only when information has been provided to the county that
27 would *itself* be sufficient to require cancellation, *id.*, Plaintiffs assert that the mere failure
28 to provide DPOC by a Federal-Only voter when registering in and of itself constitutes

"information obtained that requires cancellation of registrations," triggering the obligation for the Recorder to "review relevant city, town, county, state and federal databases to which the county recorder has access." Compl. ¶¶ 108–17; A.R.S. § 16-165(K).[4] Plaintiffs again claim this includes a "1373/1644 Request" requiring the Recorder to send these requests to INS for every Federal-Only voter on this ground as well. Compl. at 18.

The Complaint separately alleges in Count IV that the Recorder has violated A.R.S. § 16-143(A) by failing to "make available to the Attorney General a list of all Maricopa County Federal-Only Voters" and "the voter registration applications of all such individuals." *Id*. at 18; *id.* ¶¶ 118–21.

In sum, Plaintiffs request that the Court order the Recorder to submit "1373/1644 Requests" to INS for "every Maricopa County Federal-Only Voter who has registered since A.R.S. § 16-121.01(D) became effective," and to provide a list of all Maricopa County Federal-Only voters and their registration applications to the Attorney General on a weekly basis. Compl. at 17–18. Even though non-citizen registration and voting is exceedingly rare in Arizona, Plaintiffs—without any support—believe that these checks should result in the removal of countless allegedly ineligible voters, and that these investigations and "list maintenance" must take place before the upcoming elections. *Id.* ¶¶ 8–9.

Plaintiffs' lawsuit is unfortunately part of a broader effort to use the judiciary to remake Arizona's election procedures—no fewer than ten lawsuits have been filed in Arizona state and federal courts challenging state and local election procedures, with at least eight filed this year alone. Many were brought by these same Plaintiffs or their attorneys.[5]

---

[4] The Legislature's use of the term "to the extent practicable" also creates a fundamentally "discretionary" function, as that language necessarily requires the official to "balance competing concerns." *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 208 P.3d 676, 686 (Ariz. 2009) (en banc).

[5] These lawsuits include *American Encore v. Fontes*, No. 2:24-CV-01673-MTL (D. Ariz.) (challenging EPM guidance seeking to prevent voter intimidation and provision making clear that election returns must be canvassed by statutory deadline; motion to dismiss pending); *Ariz. Free Enter. Club v. Fontes*, No. CV2024-002760 (Maricopa Cnty. Super. Ct.) (challenging voter intimidation guidance and other EPM provisions; temporary injunction granted on portion of voter intimidation guidance, which has been appealed, while most claims dismissed); *Ariz. Free Enter. Club v. Fontes*, No. S1300CV202300202

### III. Proposed Intervenor-Defendants

Voto Latino is a nonprofit, nonpartisan 501(c)(4) corporation dedicated to growing political engagement in historically underrepresented communities, specifically young and Latinx voters. *See* **Ex. B**, Decl. of Ameer Patel ("Patel Decl.") ¶ 3. It is the largest Latinx advocacy organization in the nation. *Id.* Since 2012, Voto Latino has registered over 60,000 voters in Arizona. Voto Latino spends resources to educate, mobilize, and turn out voters in Arizona, including through voter-education and -mobilization initiatives, such as voter-registration drives, email and social-media campaigns, digital ads communicating directly with Latinx voters, and mail and text banking to encourage voters to register and vote, remind them to update their voter registrations, and inform them about available means of voting. *Id.* ¶¶ 3–5. Through these initiatives, Voto Latino employees and volunteers encourage Arizonans—particularly Voto Latino's core constituency, young and Latinx voters—to register, stay registered, and vote. *Id.* Voto Latino's top priority is ensuring that its constituency can vote free from unnecessary barriers. *Id.* ¶ 6.

One Arizona is a nonprofit, nonpartisan 501(c)(3) corporation with a mission of building a culture of civic engagement and democratic participation among historically underrepresented communities in Arizona. *See* **Ex. C**, Decl. of Natali Fierros Bock ("Bock Decl.") ¶¶ 2, 4. One Arizona was formed in 2010 as a response to growing disenfranchisement of voters and the attack on Arizona's Latinx community resulting from S.B. 1070, which enacted "a variety of immigration-related state offenses and defin[ed] the immigration-enforcement authority of Arizona's state and local law enforcement officers."

---

(Yavapai Cnty. Super. Ct.) (challenge to EPM's signature matching procedures; summary judgment granted to defendants, which plaintiffs appealed); *Ariz. Free Enter. Club v. Fontes*, No. S1300CV202300872 (Yavapai Cnty. Super. Ct.) (challenge to EPM provision authorizing use of drop boxes; motions to dismiss granted); *Gould v. Mayes*, No. CV2024-000815 (Maricopa Cnty. Super. Ct.) (challenge by Mohave County Supervisor against Attorney General seeking to conduct full hand count of ballots; motion to dismiss pending); *Petersen v. Fontes*, No. CV2024-001942 (Maricopa Cnty. Super. Ct.) (challenge to various EPM provisions by legislators; judgment pending); *RNC v. Fontes*, CV2024-050553 (Maricopa Cnty. Super. Ct.) (challenge to EPM and several individual provisions; motion to dismiss granted, which plaintiffs appealed); *Strong Cmtys. Found. v. Yavapai Cnty.*, No. S1300CV202400175 (Yavapai Cnty. Super. Ct.) (challenge to 12 election administration practices; litigation ongoing); and *Mussi v. Fontes*, No. 24-CV-01310-PHX-DWL (D. Ariz.) (seeking to compel voter roll purges under the NVRA; motion to dismiss pending).

1  *United States v. Arizona*, 641 F.3d 339, 344 (9th Cir. 2011) (enjoining provisions of S.B. 1070), *aff'd in part, rev'd in part*, 567 U.S. 387 (2012); Bock Decl. ¶ 3. Since then, One Arizona has grown to include 29 member groups that represent diverse communities throughout the state, including in Maricopa County. Bock Decl. ¶ 4. Through its member organizations, One Arizona represents thousands of members and constituents. *See id.*

One Arizona provides training and other resources to its member groups, who work collaboratively to advance One Arizona's mission of ensuring that all Arizonans can participate in the state's elections. *Id.* ¶ 5. One Arizona also provides direct grants to its member groups who implement its mission-critical programs, including voter registration and grassroots get-out-the-vote programs, youth advocacy programs, and immigration support services. *Id.* In the last six years, One Arizona's members have registered more than 600,000 voters—including 185,000 during 2020 alone. *Id.* One Arizona invests substantial resources coordinating field work aimed at engaging directly with potential voters, as well as voter education and outreach—especially through social media and other digital programs geared toward young voters and underrepresented groups. *Id.* ¶ 6.

Proposed Intervenors have repeatedly brought litigation to protect the ability of their members and constituents—including many Federal-Only voters—to register and vote, as well as by intervening as defendants to defend against challenges to election procedures.[6] Proposed Intervenors seek to participate in this case to protect their significant interests in favorable rulings from related, still-pending federal litigation—rulings this suit seeks to undermine. Patel Decl. ¶¶ 6–11; Bock Decl. ¶¶ 7–13. They also seek to protect the voting rights of their members and constituents as well as their own organizational resources. Patel Decl. ¶¶ 12–16; Bock Decl. ¶¶ 7–13.

---

[6] *Mi Familia Vota*, 2024 WL 862406; *see also, e.g.*, Minute Order, *RNC v. Fontes*, CV2024-050553 (Maricopa Cnty. Super. Ct. May 10, 2024) (noting Voto Latino's intervention and granting motion to dismiss); Order, *Ariz. Free Enter. Club v. Fontes*, No. S1300CV202300872 (Yavapai Cnty. Super. Ct. April 25, 2024) (noting Voto Latino's intervention and granting motion for summary judgment); Order, *Ariz. Free Enter. Club v. Fontes*, No. S1300CV202300202 (Yavapai Cnty. Super. Ct. April 25, 2024) (same); Minute Order, *Strong Cmtys. Found. v. Yavapai County*, No. CV2024-002441 (Yavapai Cnty. Super. Ct. April 3, 2024) (granting the Voto Latino's motion to intervene as defendant).

**LEGAL STANDARD**

The standard for intervention is "broadly construed" because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261, 265 (D. Ariz. 2020) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)).

To determine whether an applicant has a right to intervene under Federal Rule of Civil Procedure 24(a)(2), courts apply a "four-part test":

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

Rule 24(b) permits the Court to allow anyone to intervene "where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Arizonans for Fair Elections*, 335 F.R.D. at 268 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002)).[7] Proposed Intervenors satisfy both standards.

**ARGUMENT**

**I.   Proposed Intervenors are entitled to intervene as a matter of right.**

The Court should grant Proposed Intervenors' motion to intervene as of right under Rule 24(a)(2) because they have timely sought leave to participate, the disposition of this case could impair their ability to protect significant interests—preserving prior litigation

---

[7] Rule 24(c) requires a motion to intervene to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Proposed Intervenors therefore attach a proposed Answer to this motion. **Ex. A**. Proposed Intervenors, however, believe the Complaint should be dismissed under Rule 12(b) and intend to move for dismissal under that Rule. Should they be granted intervention, Proposed Intervenors request that the Court allow them to file that motion before their Answer.

victories from collateral attack, protecting members' and constituents' right to vote, and preserving critical resources—and no existing party adequately represents their interests.

### A. The motion to intervene is timely and does not prejudice the parties.

Proposed Intervenors' motion is indisputably timely. Plaintiffs filed suit on August 5, and this motion follows just over a week later—before any responsive pleadings have been filed, and just days after Defendants removed the case. Allowing intervention would not require altering any existing deadlines, and Proposed Intervenors agree to abide by any future deadlines set by the Court—so there is "no possible prejudice" to any party if they are allowed to intervene. *Arizonans for Fair Elections*, 335 F.R.D. at 265–66.

### B. The disposition of this case will impair Proposed Intervenors' ability to protect their interests.

Proposed Intervenors have significant protectable interests that stand to be impaired by Plaintiffs' suit, satisfying the intertwined second and third elements of Rule 24(a).

"[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Lockyer*, 450 F.3d at 441). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th 1993)). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (cleaned up). As such, applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(a)(2)). Once an applicant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *Lockyer*, 450 F.3d at 442.

Proposed Intervenors each have at least three significant, protectable interests that this action threatens to impair.

*First*, the disposition of this case risks undermining Proposed Intervenors' significant interests in favorable rulings they obtained in related federal litigation—including court orders that preserve the ability of all Arizonans to register as Federal-Only voters without DPOC. As noted, in 2022, Voto Latino and a coalition of One Arizona member groups challenged the validity of several new statutory provisions, which required "heightened proof of citizenship and residency from Arizona applicants and registrants and mandate[d] certain consequences if a registrant does not provide such proof." *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1077, 1083 (D. Ariz. 2023). The *Mi Familia Vota* court enjoined several challenged provisions, including in relevant part: (1) a provision restricting registration for presidential elections and voting by mail to voters who provided DPOC, A.R.S. §§ 16-121.01(E), 16-127(A); (2) a provision mandating rejection of any state registration form without DPOC, *id.* § 16-121.01(C); and (3) a provision requiring that individuals registering with the state form provide DPOC to register for federal elections, *id.* § 16-121.01(A). *See Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 2244338, at *1–3 (D. Ariz. May 2, 2024) (entering permanent injunction). The rulings in *Mi Familia Vota*, among other things, recognize that Federal-Only voters must be permitted to vote in presidential elections and to cast ballots by mail, and that state-form applicants without DPOC must be registered as Federal-Only voters. *See id.*[8]

Plaintiffs' action here seeks to undercut that relief by compelling error-prone investigations and purges of this same group of voters—even though they have done everything that is required by law to register and vote in Arizona's federal elections—based on unspecified requests for citizenship information from INS, with no guarantees of reliability, under procedures that may themselves violate federal law. *See* Compl. ¶¶ 95–

---

[8] Voto Latino also introduced expert testimony, which the district court credited as reliable, establishing that non-citizen voting is exceedingly rare in Arizona. *Mi Familia Vota*, 2024 WL 862406, at *16 (concluding that "non-citizens voting in Arizona is quite rare, and non-citizen voter fraud in Arizona is rarer still"). The premise of Plaintiffs' claims in this case is that non-citizen voting presents a serious issue in Arizona.

117. In particular, Plaintiffs' claims rely in part on the assertion that a voter's "failure to provide DPOC" *itself* amounts to "information . . . that requires cancellation," A.R.S. § 16-165(K)—the exact *opposite* of what *Mi Familia Vota*, applying *ITCA*, held. *Mi Familia Vota*, 2024 WL 862406, at *40–41. Only if the county obtains *other* information that "confirms the voter's non-citizenship" may the recorder even conduct further citizenship review under that provision. *Id.* at *41. Proposed Intervenors seek to intervene to ensure that the resolution of this case does not undermine the relief they secured in prior litigation that protects these voters from unlawful scrutiny. Patel Decl. ¶¶ 6–9; Bock Decl. ¶ 4.

*Second*, Proposed Intervenors have an interest in ensuring that their members and constituents are not purged from the rolls, as well as in preventing the threat of criminal investigations that may chill participation by voters who are targeted by Plaintiffs' efforts. Numerous courts have agreed that similar threats to similar interests were sufficient to meet Rule 24's standard. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *1–2 (N.D. Ill. July 18, 2024); *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016).[9] As in *Bellitto*, for example, Proposed Intervenors should be permitted to intervene because "the interests of its members would be threatened by [any] court-ordered 'voter list maintenance' sought by Plaintiffs," a "potential harm" that is "particularly great in light of the upcoming . . . General Election." 2016 WL 5118568, at *2; *see also* Patel Decl. ¶¶ 8–13; Bock Decl. ¶¶ 9–12.

Courts have consistently held that an organization's interest in protecting its constituents' and/or members' voting rights satisfies even the "more stringent" requirement of Article III, which "compels the conclusion that they have an adequate interest" for purposes of Rule 24. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see also March for Our Lives Idaho v. McGrane*, No. 1:23-CV-00107, 2023 WL 6623631, at *7 (D. Idaho Oct. 11, 2023) (holding organization had standing to challenge amendments to voter ID

---

[9] *See also Pub. Interest L. Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800, 802 (E.D. Mich. 2020) (granting organization permissive intervention in NVRA list maintenance case); Order, *Daunt v. Benson*, 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 (same); Order, *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 (granting voters permissive intervention).

laws to protect constituents' voting rights); *Mi Familia Vota*, 2024 WL 862406, at *29–32 (finding One Arizona member group Promise Arizona had associational standing to protect members' voting rights). Here, Proposed Intervenors' interests are particularly significant because they represent constituencies who face an acute risk from systematic court-ordered investigations and voter roll purges based on a purported lack of citizenship documentation. Patel Decl. ¶ 10; Bock Decl. ¶ 11; *see Mi Familia Vota*, 2024 WL 862406, at *31 (recognizing this point). Many of Proposed Intervenors' members and constituents are naturalized citizens or come from Native American tribes and are thus more likely to face difficulty producing DPOC. Patel Decl. ¶ 10; Bock Decl. ¶ 9–10. Many others live on and around college campuses and change addresses frequently due to their age and financial circumstances; they thus may have trouble locating and providing DPOC when they register to vote. Patel Decl. ¶ 10; Bock Decl. ¶¶ 9–10. Language barriers, which disproportionately affect Proposed Intervenors' voters, also substantially increase the likelihood that they will face difficulty in proving their citizenship when they register to vote. Patel Decl. ¶ 10. Proposed Intervenors thus have protectible interests in ensuring that their voters are not unlawfully investigated and removed from Maricopa County's voter rolls.

*Third*, the disposition of this case threatens Proposed Intervenors' interests in preserving their mission-critical organizational resources at the height of election season. Specifically, if Plaintiffs' requested relief is granted, Voto Latino would be forced to divert resources away from volunteer phone banking and other outreach aimed at increasing political participation among its core constituency toward identifying and educating Federal-Only constituents about the impending investigations and purges, and how to ensure voters remain registered. Patel Decl. ¶¶ 14–15. Similarly, One Arizona would be forced to redirect resources away from their investments in programs like providing grants to members to conduct voter registration drives and coordinating digital communications programs, toward educating voters about the impending investigation and purges and ensuring that their member organizations are prepared to counteract such relief. Bock Decl. ¶ 13. Additionally, there is a serious risk that Proposed Intervenors' members and

1  constituents will be chilled by investigations into their citizenship status from exercising
2  their fundamental right to vote. Patel Decl. ¶¶ 10–13; Bock Decl. ¶ 12. Accordingly,
3  Proposed Intervenors would have to further expend resources to ensure that they can reach
4  and register as many voters as they otherwise would be able to and provide assistance to
5  voters in responding to removal notices and inquiries, diverting time and resources away
6  from their other priorities. Patel Decl. ¶¶ 14–15; Bock Decl. ¶ 13.

7  Proposed Intervenors' interests in protecting their organizational missions and
8  resources would also suffice to meet even Article III's more demanding standard for
9  standing. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) ("[A]n
10 organization has direct standing to sue where it establishes that the defendant's behavior
11 has frustrated its mission and caused it to divert resources in response to that frustration of
12 purpose."); *Mi Familia Vota*, 2024 WL 862406, at *29–31 (holding that One Arizona
13 member groups Mi Familia Vota, Promise Arizona, Poder Latinx, in addition to Voto Latino
14 had standing to challenge provisions of H.B. 2243 and H.B. 2492 because the laws
15 frustrated their missions, causing "diversion of resources to counteract [the laws'] effects");
16 *Ariz. All. for Retired Americans*, 630 F. Supp. 3d at 1194 n.7 (Voto Latino had standing to
17 challenge S.B. 1260 on similar grounds). The threatened impairment of this interest alone
18 supplies a more than sufficient basis to grant intervention. *See Yniguez*, 939 F.2d at 735.

19 **C.  Proposed Intervenors' interests are not adequately represented.**

20 Proposed Intervenors will not be assured adequate representation in this matter if
21 they are denied intervention. "[T]he burden of making this showing is minimal" and is
22 "satisfied if the applicant shows that representation of its interests *may* be inadequate."
23 *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal.
24 2022) (emphasis added) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th
25 Cir. 1983)); *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing
26 *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Accordingly,
27 courts are "liberal in finding" this requirement to be met because "there is good reason in
28 most cases to suppose that the applicant is the best judge of the representation of the

applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1909 (3d ed. 2024). In the Ninth Circuit, in evaluating adequacy of representation, courts examine three factors: (1) "whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments," (2) whether the present party is capable and willing to make such arguments," and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up). Under this rubric, neither Plaintiffs nor Defendants adequately represent Proposed Intervenors' interests.

Of course, Proposed Intervenors' interests cannot be represented by Plaintiffs, as Proposed Intervenors strongly oppose the investigations, purges, and other relief Plaintiffs seek. And while Defendants—Recorder Richer and Maricopa County—are on the side of the lawsuit that Proposed Intervenors seek to join, they do not adequately represent Proposed Intervenors' specific interests. The Supreme Court recently cautioned that courts should not conduct this inquiry at too "high [a] level of abstraction," and reaffirmed that, even where the parties interests "seem[] closely aligned," the burden to demonstrate inadequate representation remain "minimal" unless those interests are "identical." *Berger*, 597 U.S. at 196. In other words, even if Defendants oppose the relief Plaintiffs seek, it does not follow that they will adequately represent Proposed Intervenors' interests. *Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))).[10]

---

[10] Accordingly, courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"); *accord Berger*, 597 U.S. at 196 (emphasizing that *Trbovich* refused to presume the Secretary of Labor was adequate representative of a union member's interest even where both sought "relief against the union" because "the Secretary also had to bear in mind broader public-policy implications").

1    Here, given the differing "nature" of their "interests," it is far from clear that the
2 existing defendants "will undoubtedly make all of a proposed intervenor's arguments." *Id.*
3 at 898. The divergence of interests between government officials and private parties is
4 particularly sharp in actions like this one seeking to identify and remove voters from the
5 rolls. *See, e.g.*, *Winfrey*, 463 F. Supp. 3d at 799–800; *Jud. Watch, Inc.*, 2024 WL 3454706,
6 at *4–5. Government defendants have competing obligations "to protect the integrity of the
7 electoral process and to ensure that accurate and current voter registration rolls are
8 maintained," while groups like Proposed Intervenors have a more limited focus on
9 protecting their own interests and those of their voters. *Winfrey*, 463 F. Supp. 3d at 800
10 (citing *Bellitto*, 935 F.3d at 1198). That is the case here: While Proposed Intervenors oppose
11 laws that permit investigations of Federal-Only voters and purging of the voter rolls, the
12 Recorder has an *obligation* to enforce them. As another federal court recently explained,
13 the government party's "execution of its duties may be in tension with Proposed
14 Intervenors' interests" because "the [government] might deem the potential for costly
15 litigation in this case a suboptimal use of its resources and might therefore enter into a more
16 generous settlement agreement with Plaintiffs that might run contrary to [the] Proposed
17 Intervenors' interests." *Jud. Watch, Inc.*, 2024 WL 3454706, at *4.

18    It is also unlikely that Defendants will be "willing" to make all of the arguments that
19 Proposed Intervenors would make. *Citizens for Balanced Use*, 647 F.3d at 898. Voto Latino
20 and One Arizona have unique interests "in preserving *their* resources and protecting the
21 voting rights of *their* members," while the government "has no obligation to protect these
22 specific resources or voting interests." *Jud. Watch, Inc.*, 2024 WL 3454706, at *4.
23 Proposed Intervenors are thus willing to make arguments necessary to limit any kind of
24 further scrutiny on Federal Only voters, while Defendants will be cabined by their statutory
25 obligations to carry out citizenship review and other list-maintenance protocols. Indeed,
26 Proposed Intervenors have brought suit *against* the Recorder and other officials challenging
27 some of the same and related provisions of Arizona law at issue here. *See Mi Familia Vota*,
28 2024 WL 862406, at *1; *see also Ariz. All. for Retired Americans*, 630 F. Supp. 3d at 1185.

1    For largely the same reasons, Defendants will likewise not add the same unique perspectives that Proposed Intervenors can bring to the issues presented. *Id.*[11] In particular, Proposed Intervenors will provide unique insight on how this case overlaps with their related pending litigation, including the *Mi Familia Vota* litigation repeatedly referenced in Plaintiffs' complaint. *See supra* Argument § I-B. And as the only parties *solely* focused on representing the interests of voters who stand to be investigated and purged from the rolls, Proposed Intervenors are uniquely positioned to provide arguments that are relevant to the disposition of Plaintiffs' claims, including about the potential injuries to voters and voter-advocacy groups that could follow from the relief that Plaintiffs seek. *See Winfrey*, 463 F. Supp. 3d at 802. The factors for determining whether existing parties adequately represent a proposed intervenor thus each favor granting intervention here.

**II.     Proposed Intervenors should alternatively be granted permissive intervention.**

In the alternative, the Court should grant Proposed Intervenors permissive intervention because they have "'defense[s] that share[] with the main action a common question of law or fact'" and their intervention will not "'unduly delay or prejudice the adjudication of the original parties' rights.'" *Ariz. Democratic Party v. Hobbs*, No. CV-20-01143, 2020 WL 6559160, at *1 (D. Ariz. June 26, 2020) (quoting Fed. R. Civ. P. 24(b)). The motion is timely and risks no prejudice to the existing parties for the reasons already explained. *Supra* Argument § I.A. And Proposed Intervenors' defenses depend on resolution of many of the same questions of fact and law—including the proper

---

[11] Even assuming *arguendo* that Defendants' interests in this litigation currently align with Proposed Intervenors' interests, there is no guarantee that would remain true through the litigation. Recorder Richer lost his primary bid to a candidate who shares views similar to Plaintiffs. *Compare Arizona Legislators Demand County Recorders Enforce Voter Registration Requirements*, Ariz. Daily Indep. (July 25, 2024), https://arizonadailyindependent.com/2024/07/25/arizona-legislators-demand-county-recorders-enforce-voter-registration-requirements/ (noting that Richer's replacement on the ballot sent a letter to recorders demanding citizenship investigations, including through the same federal laws urged in this suit, 8 U.S.C. §§ 1373, 1644), *with* Compl. at 18 (Prayer for Relief). This further confirms that Proposed Intervenors' interests "may" be inadequately represented. *Cf. Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 824 (9th Cir. 2001) (explaining "it is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy").

interpretation of Arizona's election laws that form the bases of Plaintiffs' claims, and whether Plaintiffs' interpretation would conflict with federal law.

In deciding whether to exercise discretion to permit intervention under Rule 24(b), courts may also consider "several relevant factors . . . including the nature and extent of the intervenors' interest, the legal position they seek to advance, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Ariz. All. for Retired Ams.*, 2022 WL 4448320, at *2 (citation omitted). Such considerations, as explained fully above, militate in favor of granting permissive intervention here.

As described, Proposed Intervenors have distinct interests in preserving the relief obtained in *Mi Familia Vota* that protects Federal-Only voters. They further have significant and parochial interests in preventing unlawful investigations and purges of their members and constituents and ensuring they are not disenfranchised or unlawfully chilled from voting, as well as protecting their mission-critical, election-year resources that would be diverted if Plaintiffs' requested relief is granted. *Supra* Argument § I-C. For these same reasons, as detailed, Proposed Intervenors will aid the Court in developing a full record of the relevant considerations—including the impact of this litigation on voters and avoidance of issuing relief that might conflict with the relief that has been ordered in related litigation. *See id.* Defendants do not adequately represent these interests because they are obligated under state law to perform list maintenance that risks wrongful removal of Proposed Intervenors' members and constituents. *See id.*

In short, because Rule 24 is liberally construed to ensure that all interested parties have the opportunity to protect their rights and interests, if the Court is inclined not to grant intervention as a matter of right, it should grant permissive intervention.

### **CONCLUSION**

Proposed Intervenors respectfully request that the Court grant their motion to intervene.

RESPECTFULLY SUBMITTED this 16th day of August, 2024.

**COPPERSMITH BROCKELMAN PLC**

By: */s/ D. Andrew Gaona*
    D. Andrew Gaona
    Austin C. Yost

**ELIAS LAW GROUP, LLP**

    Lalitha D. Madduri*
    Christopher D. Dodge*
    Tyler L. Bishop*
    Renata M. O'Donnell*

*Attorneys for Proposed Intervenor-Defendants Voto Latino and One Arizona*

**Pro Hac Vice Application Forthcoming*