# EXHIBIT C

D. Andrew Gaona (028414)
Austin C. Yost (034602)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5486
agaona@cblawyers.com
ayost@cblawyers.com

Lalitha D. Madduri*
Christopher D. Dodge*
Tyler L. Bishop*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
T: (202) 968-4330
lmadduri@elias.law
cdodge@elias.law
tbishop@elias.law
rodonnell@elias.law

*Attorneys for Proposed Intervenor-Defendants
One Arizona and Voto Latino*

*Pro Hac Vice Application Forthcoming

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| Strong Communities Foundation of Arizona Incorporated, and Yvonne Cahill,<br><br>Plaintiffs,<br><br>v.<br><br>Stephen Richer, in his official capacity as Maricopa County Recorder, and Maricopa County,<br><br>Defendants. | No. 24-CV-02030-SMB<br><br>**DECLARATION OF NATALÍ FIERROS BOCK IN SUPPORT OF VOTO LATINO'S AND ONE ARIZONA'S MOTION TO INTERVENE AS DEFENDANTS**<br><br>**Oral Argument Requested** |

I, Natalí Fierros Bock, hereby declare and state the following:

1. I am over 18 years of age and competent to testify, and the following facts are based on my personal knowledge.

2. I am the Executive Director of One Arizona, a nonpartisan, nonprofit corporation organized under section 501(c)(3) of the Internal Revenue Code. I have been in this position since May 2024, and I oversee all of the organization's operations and programs. Prior to becoming Executive Director, I served as the Executive Director of Rural Arizona Engagement ("RAZE"), one of One Arizona's member organizations. As the head of a member organization, I was part of One Arizona's "table," which brings together each of One Arizona's member organizations to allow members to collaborate. I also served as the Secretary for the Executive Committee of One Arizona beginning in 2022. In my role as Secretary, I was responsible for maintaining notes from Board meetings and other important information for the organization, and I was also a voting member of the Executive Committee. Through these positions, I am personally knowledgeable about One Arizona's work throughout the state, including its voter registration, voter protection, get-of-the-vote, and other election related activities, as well as its resource allocation decisions.

3. One Arizona initially formed in 2010 as a direct response to growing disenfranchisement of Latino voters in the state and in the wake of SB 1070—also known as the "Show Me Your Papers Law." The law introduced a variety of immigration-related state offenses and enhanced the immigration-related enforcement authority of Arizona's state and local law enforcement officers, which disproportionately impacted people of color in Arizona, particularly Latino people. Recognizing the chilling effect that SB 1070 and increased animus against Latino people was having on the exercise of basic civil rights, four immigration advocacy groups banded together in 2010 with a goal of registering 12,000 voters and, shortly after, One Arizona was born.

4. Since then, One Arizona has expanded into a nonpartisan, nonprofit advocacy group made up of 29 organizations who together focus on building a culture of civic engagement and democratic participation, especially among voters in historically

1  underrepresented communities, including Latino voters, other communities of color, and young people. One Arizona is the umbrella organization for these 29 groups, who are the members of One Arizona and who represent a diverse coalition of multicultural groups that are focused on advancing a variety of fundamental civil rights in Arizona.[1] To become a member of One Arizona an organization must, among other things, apply to One Arizona and explain why the group aligns with One Arizona's values. The table members representing the existing member organizations then hold a vote on whether to add the new member organization. The table members representing the member organizations also vote on the leadership of One Arizona.

5. The centerpiece of One Arizona's mission today is its commitment to increasing civic engagement and democratic participation. As a result, One Arizona heavily invests in voter registration efforts, get-out the-vote projects, voter protection programs, and election-related efforts. In particular, One Arizona provides training, written materials, and other resources to its member groups, who work collaboratively to advance One Arizona's mission of ensuring that all Arizonans are able to participate in the state's elections. One Arizona also provides direct grants to its member groups so that those groups can implement One Arizona's programs, including its voter registration and grassroots get-out-the-vote programs, youth-advocacy programs, and immigration support services. In the last six years alone, One Arizona's members have registered more than 600,000 voters in the state—including 185,000 during 2020 alone.

---

[1] Those 29 organizations are: All Voting Is Local; Arizona Advocacy Network; Arizona Center for Empowerment; Arizona Coalition for Change; Arizona Democracy Resource Center; Arizona Dream Act Coalition; Arizona Students' Association; Asian Pacific Community in Action; Black Phoenix Organizing Collective; CAIR Arizona; CASE; CHiSPA Arizona; Corazon AZ; Fuerte; Instituto; Inter Tribal Council of Arizona, Inc.; Mi Familia Vota; Mountain Park Health Center; New American Leaders; OCA Greater Phoenix; Phoenix Indian Center; Planned Parenthood Arizona; Poder in Action; Poder Latinx; Progress Arizona Institute; Promise Arizona; Protecting Arizona's Family; Puente Movement; and Rural Arizona Engagement. Of these 29 organizations, Mi Familia Vota, Promise Arizona, Arizona Democracy Resource Center, Inter Tribal Council of Arizona, Arizona Coalition for Change, Poder Latinx, and Arizona Asian American Native Hawaiian and Pacific Islander For Equity Coalition were litigants in *Mi Familia Vota v. Fontes*.

6. One Arizona also invests substantial resources to directly coordinate field work aimed at engaging with potential voters, as well as voter education and community outreach—especially through social media campaigns and other digital programs geared toward young voters and underrepresented groups in Arizona. One Arizona also employs its resources in a similar manner to combat anti-immigrant animus and to stand up for communities impacted by that animus. Consistent with these objectives, during this critical election year, One Arizona is in the midst of coordinating statewide voter registration and get-out-the-vote activities, election protection work, and democracy defense efforts across the state. To date, we have hired 15 paid employees to help us carry out these mission-critical programs.

7. This lawsuit severely threatens One Arizona's members, mission, and all of the work described above. Plaintiffs seek to force investigations into the citizenship of tens of thousands of Arizonans in Maricopa County who are registered as Federal-Only voters, even though those voters have attested on pain of perjury that they are citizens. Plaintiffs also want to immediately purge anyone who officials believe is not a citizen from the voter rolls.

8. The kind of investigations that Plaintiffs seek are likely to misidentify noncitizens and risk improperly removing the members and constituents of One Arizona's member organizations from the rolls, subjecting those Arizonans to improper criminal investigations. In addition, the looming threat of increased scrutiny on voters who register to vote without presenting DPOC by state and federal authorities is likely to chill our members' planned activities around voter registration and may lead some individuals to decide not to engage in such activities at all, rather than risk the potential consequences.

9. Latino citizens and naturalized citizens are more likely than others to lack ready access to DPOC or to completely lack DPOC. These groups are more likely to have been born outside of the United States and face questioning about their citizenship. Our member organizations also serve members and constituents in tribes throughout the state, who face similar barriers in accessing and providing DPOC and affirmatively proving their

citizenship. Language barriers disproportionately affect all of these communities, increasing the likelihood that their members will face difficulty in successfully proving their citizenship when they register to vote or responding to citizenship inquiries. Young citizens are also more likely to lack access to DPOC due to transience, including temporary address changes for school or short-term work.

10. Obtaining DPOC can take months and costs upwards of hundreds of dollars. Many Latino citizens, Native American citizens, naturalized citizens, and other historically marginalized groups in Arizona live in low-income households and work multiple jobs. As a result, the time and money required to obtain DPOC can be burdensome or not feasible at all.

11. As a result of these and other circumstances, the members and constituents of One Arizona's member organizations are highly likely to be implicated by the relief that Plaintiffs' request. Plaintiffs' requested relief threatens to disenfranchise these individuals by removing them from the voter rolls. And, of course, if voters are wrongly removed from the rolls, they may not realize until it is too late and find themselves completely disenfranchised, posing a direct threat to One Arizona's members' fundamental rights and the organization's mission by diminishing its organizing power and ability to grow political engagement among young people and people of color across Arizona.

12. Moreover, the relief that Plaintiffs seek would effectively subject all voters who lack DPOC to an intimidating investigation. Such relief is likely to chill political participation of our members due to the fear of possible citizenship and criminal investigations.

13. Given that One Arizona's top priority is to create a healthy ecosystem of civic engagement and democratic participation, Plaintiffs' requested relief will force One Arizona to expend significant resources and staff time to educate constituents about the risks associated with the new citizenship investigations of Federal-Only-voters and the associated risk of wrongful purging. Further, to combat the effects of such relief, One Arizona would expend staff time and financial resources developing coordinated

1  communications campaigns to educate voters about how to check whether they have been
2  removed from the rolls and reregistering. One Arizona would further provide financial
3  support to its member organizations that provide direct support to voters who seek
4  assistance after becoming subject to investigations and/or purges. Because One Arizona has
5  limited resources, funding for this kind of programming would necessarily be diverted away
6  from One Arizona's investments in its other critical programming described above,
7  including the voter registration and get-out-the-vote efforts that we are already
8  implementing this year. Diverting these resources would be detrimental to our work and our
9  mission, particularly given that we are just a few months away from the 2024 general
10 election.

11   14.   For all these reasons, Plaintiffs' requested relief would harm One Arizona
12 directly as well as the communities of people of color and young people that we serve in
13 Arizona. If our members' constituents are purged from the rolls, disenfranchised, or chilled
14 from political participation, we cannot achieve our mission to improve the lives of
15 Arizonans by building a culture of civic participation across the state.

16   I declare under penalty of perjury that the foregoing is true and correct.
17   EXECUTED this 16th day of August, 2024.

By: *Natalí Fierros Bock*
Natalí Fierros Bock
Executive Director
One Arizona