| AMERICA FIRST LEGAL FOUNDATION | JENNIFER WRIGHT ESQ., PLC |
|---|---|
| James K. Rogers (No. 027287)<br>   *Senior Counsel*<br>611 Pennsylvania Ave., SE #231<br>Washington, D.C. 20003<br>Phone: (202) 964-3721<br>James.Rogers@aflegal.org | Jennifer J. Wright (No. 027145)<br>4350 E. Indian School Rd<br>Suite #21-105<br>Phoenix, Arizona 85018<br>jen@jenwesq.com |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STRONG COMMUNITIES FOUNDATION OF ARIZONA INCORPORATED, and YVONNE CAHILL;<br><br>        Plaintiffs,<br>  v.<br><br>STEPHEN RICHER, in his official capacity as Maricopa County Recorder; MARICOPA COUNTY;<br><br>Defendants. | No. CV-24-02030-PHX-SMB<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE OF VOTO LATINO AND ONE ARIZONA** |

# Table of Contents

INTRODUCTION. ........................................................................................................................... 1

ARGUMENT. .................................................................................................................................. 3

I.    The Proposed Intervenors Do Not Qualify to Intervene as of Right. ................................. 3

  A.  The Proposed Intervenors Lack a Protectable Interest. ..................................................... 3

  B.  The Defendants Adequately Represent the Proposed Intervenors' Interests................. 5

II.    The Court Should Deny Permissive Intervention. .............................................................. 8

III.    The Proposed Intervenors Could Participate as *Amicus Curiae*. ......................................... 9

CONCLUSION............................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ................................................................. 5, 7

*Arizona Democratic Party v. Hobbs*, 2020 WL 6559160 (D. Ariz. 2020) ...................................... 10

*Brown v. Felsen*, 442 U.S. 127 (1979) ............................................................................................. 9

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ....................................................................... 8

*Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069 (8th Cir. 2023) ................................................. 6

*Gonzalez v. Arizona*, 485 F.3d 1041 (9th Cir. 2007) ...................................................................... 6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ............................................................................................................................................... 5

*Ligas ex rel. Foster v. Maram*, 478 F.3d 771 (7th Cir. 2007) ......................................................... 6

*Mi Familia Vota v. Fontes*, 2024 WL 862406 (D. Ariz. Feb. 29, 2024) ................................. 4, 5, 9

*Mi Familia Vota v. Hobbs*, 2021 WL 5217875 (D. Ariz. Oct. 14, 2021) ...................................... 10

*Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz.) ................................................ 8, 10

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ............................................... 7

*One Wisconsin Inst., Inc.*, 310 F.R.D. 399 ...................................................................................... 6

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) ........................................... 3

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ............................................................................ 7

*United States v. City of Los Angeles, Cal.*, 288 F.3d 391 (9th Cir. 2002) ....................................... 8

**STATE CONSTITUTIONAL PROVISIONS**

Arizona Article VII § 2 ...................................................................................................................... 2

**FEDERAL STATUTES**

8 U.S.C. § 1101 .................................................................................................................................. 1

8 U.S.C. § 1373 .................................................................................................................................. 2

8 U.S.C. § 1644 .................................................................................................................................. 2

18 U.S.C. § 1015 ................................................................................................................................ 2

**STATE STATUTES**

A.R.S. 16-101 .................................................................................................................................... 2

A.R.S. 16-121.01 ........................................................................................................................... 2, 4

A.R.S. 16-143 .................................................................................................................................... 2

A.R.S. 16-165 .............................................................................................................................1, 2, 4

A.R.S. 16-166 .................................................................................................................................... 2

**FEDERAL RULES**

Federal Rules of Civil Procedure Rule 24 ................................................................................1, 3, 8

**INTRODUCTION**

In their Motion to Intervene (ECF No. 5 ("Mot.")), Voto Latino and One Arizona (collectively, the "Proposed Intervenors") have failed to satisfy their burden of showing they are entitled to intervene as of right or permissively. They cannot pinpoint any possible interest in this litigation that is not speculative and contingent.

A party seeking to intervene under Rule 24 must satisfy a four-part test to intervene as of right. The Proposed Intervenors fail three of the four parts. Their request for permissive intervention fares no better.

Notably, although Proposed Intervenors expressed concerns that the looming changing of the guard in the Maricopa County Recorder's Office could result in a policy shift, Plaintiffs named both the Maricopa County Recorder Stephen Richer ("Recorder") and Maricopa County ("Maricopa") as defendants in this matter. Therefore, when Recorder Richer relinquishes his position, having been defeated by his primary opponent, Maricopa may continue to vigorously defend itself in this action, irrespective of the policy preferences of Recorder Richer's successor. In fact, Maricopa has shown no proclivity for softening its position in election-related cases over the past four years and is not likely to do so come January. Furthermore, to the extent that Proposed Intervenors suggest they have a protectable interest to "prevent investigation and removal of their members and constituents from the rolls" – no such interest exists. Mot. at 2. If the Plaintiffs succeed and Maricopa submits its list of Federal-Only voters to the U.S. Department of Homeland Security (DHS), then only those confirmed as foreign citizens[1] would be and could be removed from the voter registration records.[2] Plainly,

---

[1] In this Response, the term "foreign citizen" means "any person not a citizen or national of the United States," which is the defined meaning for the term "alien" in federal law. 8 U.S.C. § 1101(a)(3).

[2] *See, e.g.*, A.R.S. § 16-165(A)(10) (cancellation occurs only when the recorder "confirms that the person registered is not a United States citizen" and then requires the recorder to "send the person notice… that the person's registration will be canceled… unless the person provides satisfactory evidence of citizenship").

the Proposed Intervenors' members and constituents do not have a protectable interest in violating state and federal law, which expressly require all voters to be United States citizens.[3] And there are no "fundamental voting rights" in this country for foreign citizens. Mot. at 2. Nor do Proposed Intervenors' members and constituents have a protectable interest in preventing government agencies from making noninvasive inquiries to other government agencies about a registrant's citizenship status. Indeed, the two federal statutes at issue in this case expressly preempt all other federal, State, and local laws that might otherwise prohibit such requests. *See* 8 U.S.C. § 1373(b) (establishing the right of state and local officials to submit requests to DHS about the immigration status of individuals "[n]otwithstanding any other provision of Federal, State, or local law..."); 8 U.S.C. § 1644 (same). Further, if their members and constituents would prefer not to have their citizenship status investigated, they need only submit to Maricopa one of the many documents, including an Arizona driver's license, birth certificate, or tribal identification number, that confirms they are United States citizens. *See* A.R.S. § 16-166(F).

Although the Proposed Intervenors spill much ink mischaracterizing this lawsuit as an attempt to create unnecessary barriers to vote, this lawsuit demands only two things of the Defendants – that they (1) submit their ever-growing list of Federal-Only Voters to DHS to verify citizenship status, as required under A.R.S. § 16-121.01(D) and (2) submit to the Attorney General the list of Maricopa County Federal-Only Voters as required under A.R.S. § 16-143(A). Only *if* DHS confirms that a Federal-Only Voter is a foreign citizen would cancelation be triggered under A.R.S. § 16-165(A)(10), which, notwithstanding such a finding, nonetheless allows the Federal-Only Voter to submit proof of citizenship to retain the right to vote. The Plaintiffs are not trying to "use the judiciary to remake Arizona's election procedures," as alleged by the Proposed Intervenors, but to compel the Defendants to do their statutory duty to ensure that foreign citizens are not voting in federal elections. Mot. at 5.

---

[3] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine).

The Proposed Intervenors have failed to show that intervention is warranted, and their motion should be denied. However, all is not lost for the Proposed Intervenors. As this case proceeds, the Plaintiffs would not oppose reasonable requests from the Proposed Intervenors to file relevant amicus briefs, which, in this context, would be the appropriate way for them to add their views to this case.

**ARGUMENT**

**I.     The Proposed Intervenors Do Not Qualify to Intervene as of Right.**

A party may intervene as of right if (1) "[o]n timely motion" it (2) "claims an interest relating to the property or transaction that is the subject of the action," (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) "existing parties [do not] adequately represent that interest." Fed. R. Civ. P. 24(a). The Proposed Intervenors fail all but the timeliness requirement. They lack any legally protected interest. And what they incorrectly claim to be "interests" could never be impaired by the outcome of these proceedings. Further, the apparent "interests" they posit are, even if viable, adequately represented by the Defendants.

"Failure to satisfy any one of [the Rule 24(a)] requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

The Proposed Intervenors have failed to satisfy their burden of proving their entitlement to intervene, and their Motion should, therefore, be denied.

**A. The Proposed Intervenors Lack a Protectable Interest.**

The Proposed Intervenors struggle to articulate any cognizable "interest" in these proceedings, let alone a *significant* protectable interest.

First, the Proposed Intervenors posit that the disposition of this case could undermine their ongoing litigation that has successfully temporarily and permanently enjoined *other* provisions of Arizona law related to documentary proof of citizenship (DPOC). Mot. at 10. However, none of the cases cited by Proposed Intervenors have successfully enjoined any of the statutory provisions subject to this litigation. Further, just as the Proposed Intervenors

3

had the right to seek enjoinment of provisions of Arizona law they believed violated federal and constitutional provisions, Plaintiffs have the right to seek to compel Maricopa to perform its statutory duty. Pointedly, the Proposed Intervenors' *unsuccessful* attempt to enjoin A.R.S. §§ 16-121.01(C) and -143 does not create a significant protectable interest to relitigate their case here.

Second, to manufacture an interest, the Proposed Intervenors drastically mischaracterize the Plaintiffs' requested relief by equating it with systematic voter roll purges. Mot. at 11. Thus, the Proposed Intervenors cite entirely inapposite statutes and cases that refer to automated state procedures for purging voters *en masse*. However, the Plaintiffs are not seeking any kind of automated purge of voter registrations. Mot. at 11. Rather, the Plaintiffs seek to compel Maricopa to submit its list of Federal-Only Voters (a targeted list of voters who have failed to provide DPOC) to DHS to compare registration records with citizenship records. If DHS finds that a registration record matches the record of a known foreign citizen, that information will be sent back to Maricopa for individualized assessment before the voter is notified and given thirty-five days to provide DPOC before the voter's registration would be canceled. A.R.S. §16-165(A)(10).

In fact, *Mi Familia Vota v. Fontes* specifically *affirmed* Arizona election officials' right "to consult information available to Arizona" and "cancel a registration only if the county recorder 'confirms' from that information that the voter is not a citizen." --- F.Supp.3d ----, 2024 WL 862406, at *40 (D. Ariz. Feb. 29, 2024).

The Proposed Intervenors further assert that simply providing a list of Federal-Only Voters to the Arizona Attorney General subjects their members to "threat[s] of criminal investigations[.]" Mot. at 11. However, it should be noted that the *Mi Familia Vota* court also articulated that "ongoing database checks, investigations by the Attorney General, and potential rejection or cancellation of a voter's registration are not burdens, but merely the consequences of not providing DPOC." 2024 WL 862406 at 48. Critically, only if the Attorney General finds that a registered individual is "found to not be [a] United States citizen[]," 

4

A.R.S. 16-143(D), would the individual be subject to prosecution. Assuming their members will be subject to prosecution or even be fearful of prosecution is either highly speculative or suggests that Proposed Intervenors have reason to believe that an investigation would reveal unlawful behavior of its members and constituents. Either way, there is no protectable interest in preventing the prosecution of individuals who are breaking state and federal law.

Third, the Proposed Intervenors assert that if Maricopa were forced to do its statutory duty, they would have to "educat[e] voters about impending investigations and purges" based on the apparent presumption that DHS will identify a significant number of their members as foreign citizens, and as such, a significant number of their members will receive a letter from Maricopa providing them an opportunity to provide DPOC, before having their registration canceled. Setting aside the fact that foreign citizens do not have a "fundamental right to vote" in state and federal elections (Mot. at 13), the Proposed Intervenors already sought to enjoin these provisions and failed. *Mi Familia Vota*, 2024 WL 862406 at *50. Trying to intervene here is merely a transparent attempt to relitigate their already failed arguments. Furthermore, an organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (citation omitted).

**B. The Defendants Adequately Represent the Proposed Intervenors' Interests.**

Even if the Proposed Intervenors had some sort of cognizable interest in this litigation, the Defendants adequately represent it. The three factors relevant to adequate representation are: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

The Proposed Intervenors fail all three parts of the test. They have not identified *any* specific argument they will make that the Defendants will not make. Although they allege the Defendants *may* be unwilling to make arguments against enforcement of the laws – the 35-page answer (twenty pages longer than Proposed Intervenors' Proposed Answer) suggests otherwise. Nor have they identified any necessary elements that they would add that the Defendants would neglect. Again, the Defendants' fulsome Answer seemingly leaves no defense unasserted. Furthermore, on the substance, the Proposed Intervenors' Proposed Answer is in almost total agreement with the Defendants', denying and admitting the same allegations in near lockstep.

Additionally, "[w]here the government is acting on behalf of a constituency it represents, as it is here, ... court[s] assume[] that the government will adequately represent that constituency." *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) (cleaned up); *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023) (same). And where the proposed intervenor has failed to show how its interests in the litigation are different from the public at large, "the proposed intervenor can rebut" the presumption of the government's adequacy of representation "only with a strong showing of inadequacy, such as by demonstrating that the governmental entity has committed misfeasance or nonfeasance in protecting the public." *Entergy Arkansas, LLC*, 76 F.4th at 1071 (cleaned up). The Proposed Intervenors have failed to rebut this strong presumption.

The Proposed Intervenors "have failed to demonstrate that the existing parties will not adequately represent their interests ... The proposed intervenors do not suggest that the [government's] representation is negligent or undertaken in bad faith. Nor is their objective in this case any different from that of the [government]." *One Wisconsin Inst., Inc.*, 310 F.R.D. at 399; *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007) ("The intervenors have made no effort to show gross negligence or bad faith on the part of the state defendants, and have therefore not overcome the presumption that the defendants, as governmental bodies charged

with protecting the interests of the proposed intervenors, will provide adequate representation.").

Also of importance is how the proposed intervenor's "interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086. Moreover, when "an applicant for intervention and an existing party have the same *ultimate objective*, a presumption of adequacy of representation arises" that can only be rebutted if the applicant makes "a compelling showing" of inadequacy of representation. *Id.* (emphasis added). *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (same).

Critically, the Proposed Intervenors' primary thrust for arguing that the Defendants will not adequately represent their interests is that they do not believe the Defendants will relitigate their failed arguments from *Mi Familia Vota* that serve "to limit any kind of further scrutiny on Federal Only voters[.]" Mot. at 15. The Proposed Intervenors clearly state that they want to use these proceedings to prevent Defendants from performing "their statutory obligations to carry out citizenship review and other list-maintenance protocols." *Id.* The Proposed Intervenors also puzzlingly suggest that the Defendants will "not add the same unique perspectives" because Proposed Intervenors have "unique insight on how this case overlaps with… *Mi Familia Vota* litigation repeatedly referenced in Plaintiffs' complaint", apparently forgetting that the Defendants are a party to those proceedings as well. Mot. at 16.

The Defendants and their attorneys are well-versed in the governing law, the *Mi Familia Vota* litigation, and citizenship verification procedures, and they are quite adept at formulating a defense (as evidenced by their Answer). *See Prete v. Bradbury*, 438 F.3d 949, 958-59 (9th Cir. 2006) (rejecting argument that proposed intervenor's purported "expertise" and "experience" with ballot measures warranted intervention in challenge to statutory procedures for processing petitions, observing that the defendant Secretary of State "is undoubtedly familiar with the initiative process and the requisite signature-gathering; indeed, defendant is the government party responsible for counting the signatures."). While it is conceivable that the Proposed Intervenors may quibble with some minor facets of the Defendants' approach, "mere[]

differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 402–03 (9th Cir. 2002).

For this reason, Voto Latino itself has insisted in other election-related proceedings that third parties cannot intervene as of right, absent a tangible and substantial showing of a disagreement between the proposed intervenor and the named governmental defendants. *See, e.g.*, Pls.' Opp. to Mot. to Intervene at 11 (May 26, 2022), Doc. 46, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz.) (motion by Voto Latino and co-plaintiff criticizing what they characterized as an "attempt to rebut the presumption [of adequacy] by . . . rattling off one-size-fits-all generalizations that are not specific to the issues at hand and fall far short of the 'very compelling showing' standard").

What's good for the goose is good for the gander. Just as the Proposed Intervenors have themselves argued in other cases, in the absence of any actual divergence in objectives between a proposed intervenor and the Defendants—which Proposed Intervenors have failed to articulate—the Defendants remain adequate representatives of the Proposed Intervenors' ostensible interests.

## II.    The Court Should Deny Permissive Intervention.

This Court has broad discretion to deny permissive intervention that may "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). To be granted permissive intervention, Proposed Intervenors must prove "that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). However, this Court has broad discretion to deny permissive intervention that may "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the Proposed Intervenors have made clear their intent to relitigate their claims from *Mi Familia Vota*, hoping for a different result. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless

8

of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Critically, the Proposed Intervenors and the Defendants were both parties to *Mi Familia Vota*, where the Proposed Intervenors sought to enjoin the Defendants from performing the very statutory duties that the Plaintiffs seek to compel the Defendants to perform. The legal doctrine of res judicata not only encourages reliance on judicial decisions already rendered, but also "frees the courts to resolve other disputes." *Id.*

There can be no clearer reason to deny permissive intervention than to prevent the Proposed Intervenors from using these proceedings to relitigate their failed arguments. As noted in *Mi Familia Vota*, "[w]hile Plaintiffs may disagree with the efficacy of [the Voting Laws' Citizenship Verification Procedures, Attorney General Referral Provision, and List Maintenance Procedures], 'the propriety of doing so is perfectly clear': it helps ensure that any non-citizens that register to vote, intentionally or mistakenly, do not make it onto or remain on the voter rolls." 2024 WL 862406 at *51 (citation omitted).

It is undeniable that allowing Proposed Intervenors to relitigate their attempt to enjoin Arizona's duly enacted laws to verify citizenship will unduly delay these proceedings and prejudice the adjudication of the Plaintiffs' claims. The Defendants have already mounted a formidable defense, and there is no need to further elongate and delay these proceedings by allowing the Proposed Intervenor to reassert previously rejected arguments. One can't blame Proposed Intervenors for wanting a second bite at the apple, but this Court should reject the attempt.

**III.    The Proposed Intervenors Could Participate as *Amicus Curiae*.**

The purported contributions the Proposed Intervenors promise to make to this case—"arguments necessary to limit any kind of further scrutiny to Federal Only voters" (Mot. at 15) and "unique insight on how this case overlaps with their pending litigation" (Mot. at 16) and "potential injuries to voters and voter-advocacy groups" (*Id.*)—could more easily be made through appropriate amicus briefs. The Plaintiffs would not oppose reasonable requests from the Proposed Intervenors to file relevant amicus briefs. The Court should, therefore, deny the

9

Motion to Intervene and, when a scheduling order is issued in this case, should allow for the Proposed Intervenors to file amicus briefs (with strict page limits) at relevant milestones in the case, such as in connection with motions to dismiss or dispositive motions.

Alternatively, if this Court is inclined to grant the Proposed Intervenors' Motion, it should do so with strict limits that prohibit redundant or duplicative submissions, to avoid prejudice to the Plaintiffs and also to streamline this case. Voto Latino itself recently urged an Arizona federal court to "impose strict limits" on proposed intervenors "to prevent unnecessary delay, duplication, and prejudice to existing parties and to judicial economy." Pls.' Opp. to Mot.to Intervene at 13 n.4 (May 26, 2022), Doc. 46, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz.).[4] The District of Arizona has wisely heeded such requests, constraining intervenors in election-related disputes to coordinate with the government parties, join the governmental parties' briefing whenever feasible, and "to move for leave to file separate briefing" if a named party would not or could not advance a particular argument or defense. *See Mi Familia Vota v. Hobbs*, No. 2:21-cv-01423-DWL, 2021 WL 5217875, at *2 (D. Ariz. Oct. 14, 2021) (citing *Arizona Democratic Party v. Hobbs*, 2020 WL 6559160, at *1 (D. Ariz. 2020)).

If this Court is inclined to grant intervention, then similar safeguards would be sensible and appropriate here. As a comparison between the Defendants' Answer and the Proposed

---

[4] The following is the entirety of Voto Latino's request to the court in that case:

> If the Court is inclined to grant intervention, Plaintiffs respectfully request that, at a minimum, it impose strict limits to prevent unnecessary delay, duplication, and prejudice to existing parties and to judicial economy. For example—similar to the approach Judge Rayes took in *Arizona Democratic Party*, Plaintiffs respectfully request that the Court designate existing Plaintiffs and Defendants as 'the representatives responsible for coordinating' the legal strategy and scheduling in the matter and order that (1) Movants' 'cannot file a response without leave of Court;' (2) 'any proposed response must not repeat any argument already raised,' and (3) 'any motion seeking leave to file a response will need to explain how the briefing submitted by [existing parties] does not adequately address the issue or issues affecting Movants.' *Ariz. Democratic Party*, 2020 WL 6559160, at *1. Plaintiffs note that Movants 'commit to complying with all deadlines that govern the parties, working to prevent duplicative briefing, and coordinating with the parties on discovery,' Mot. at 14, and ask that if Movants are admitted as parties, they be strictly held to that commitment.

Pls.' Opp. to Mot.to Intervene at 13 n.4 (May 26, 2022), Doc. 46, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz.).

10

Intervenors' Proposed Answer already shows, there certainly will be substantial overlap, if not full congruity, between the positions of the Defendants and those of the Proposed Intervenors. If the Court is inclined to expand the proceedings, it should preclude the Proposed Intervenors from burdening both the Court and the Plaintiffs with duplicative papers or other submissions.

The Court, therefore, should impose limits to minimize the unnecessary and duplicative filings, such as requiring the Defendants and Proposed Intervenors to file joint briefs at each major phase of the case, including a single joint motion to dismiss, a single dispositive motion, and combined trial briefs.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion and instead allow the Proposed Intervenors to file *amicus* briefs at appropriate times in the case. If this Court concludes that intervention is appropriate, the Court should strictly limit that intervention to minimize prejudice and delay.

RESPECTFULLY SUBMITTED this 30th of August, 2024.

**America First Legal Foundation**

By: ___/s/ *James Rogers*___
    James K. Rogers (No. 027287)
      *Senior Counsel*
    America First Legal Foundation
    611 Pennsylvania Ave., SE #231
    Washington, D.C. 20003
    Phone: (202) 964-3721
    James.Rogers@aflegal.org

Jennifer J. Wright (027145)
Jennifer Wright Esq., PLC
4350 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing, with courtesy copies emailed as follows:

Honorable Susan Brnovich
District Court Judge
Brnovich_chambers@azd.uscourts.gov

Joseph La Rue
Thomas Liddy
Jack O'Connor III
Rosa Aguilar
MARICOPA COUNTY ATTORNEY'S OFFICE
laruej@mcao.maricopa.gov
liddyt@mcao.maricopa.gov
oconnorj@mcao.maricopa.gov
aguilarr@mcao.maricopa.gov
*Attorneys for the Defendants*

D. Andrew Gaona
Austin C. Yost
COPPERSMITH BROCKELMAN PLC
Lalitha D. Madduri
Christopher D. Dodge
Tyler L. Bishop
Renata O'Donnell
ELIAS LAW GROUP LLP
agaona@cblawyers.com
ayost@cblawyers.com
lmadduri@elias.law
cdodge@elias.law
tbishop@elias.law
rodonnell@elias.law
*Attorneys for the Proposed Intervenors*

                                                            /s/ *James K. Rogers*
                                                          *Attorney for the Plaintiffs*