**AMERICA FIRST LEGAL FOUNDATION**

James K. Rogers (No. 027287)
   *Senior Counsel*
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

**JENNIFER WRIGHT ESQ., PLC**

Jennifer J. Wright (No. 027145)
4350 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STRONG COMMUNITIES FOUNDA-TION OF ARIZONA INCORPORATED, and YVONNE CAHILL; | No. CV-24-02030-PHX-SMB |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |

STEPHEN RICHER, in his official capacity as Maricopa County Recorder; MARICOPA COUNTY; LARRY NOBLE, in his official capacity as Apache County Recorder; APACHE COUNTY; DAVID W. STEVENS, in his official capacity as Cochise County Recorder; COCHISE COUNTY; PATTY HANSEN, in her official capacity as Coconino County Recorder; COCONINO COUNTY; SADIE JO BINGHAM, in her official capacity as Gila County Recorder; GILA COUNTY; POLLY MERRIMAN, in her official capacity as Graham County Recorder; GRAHAM COUNTY; SHARIE MILHEIRO, in her official capacity as Greenlee County Recorder; GREENLEE COUNTY; RICHARD GARCIA, in his official capacity as La Paz County Recorder; LA PAZ COUNTY; LYDIA DURST, in her official capacity as Mohave County Recorder; MOHAVE COUNTY; MICHAEL SAMPLE, in his official capacity as Navajo County Recorder; NAVAJO COUNTY;

GABRIELLA CÁZARES-KELLY, in her official capacity as Pima County Recorder; PIMA COUNTY; DANA LEWIS, in her official capacity as Pinal County Recorder; PINAL COUNTY; ANITA MORENO, in her official capacity as Santa Cruz County Recorder; SANTA CRUZ COUNTY; MICHELLE BURCHILL, in her official capacity as Yavapai County Recorder; YAVAPAI COUNTY; RICHARD COLWELL, in his official capacity as Yuma County Recorder; and YUMA COUNTY;

Defendants.

The Plaintiffs hereby allege and state as follows:

**INTRODUCTION**

1.      It is against State and federal law for foreign citizens[1] to register to vote.[2]

2.      Sixty percent of Arizonans "are concerned that cheating will affect the outcome of the 2024 election."[3]

3.      A July 2024 survey of likely voters in Arizona and five other states found that "a little more than one percent (1%) of Likely Voters say they're not U.S. citizens."[4]

4.      Many recent electoral races in Arizona have been decided by margins of less than one percent.

5.      In 2022, the Legislature adopted stricter voter list maintenance requirements for County Recorders.[5]

6.      The Legislature adopted these requirements to ensure that County Recorders remove foreign citizens from voter lists and to allay Arizonans' reasonable concerns about foreign citizen voting.

7.      Federal law also requires State and local election officials, including County Recorders, to perform voter list maintenance to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[6]

---

[1] In this Complaint, the term "foreign citizen" means "any person not a citizen or national of the United States," which is the defined meaning for the term "alien" in federal law. 8 U.S.C.A. § 1101(a)(3).

[2] *See, e.g.,* Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine).

[3] *Arizona: Trump 47%, Biden 40%*, RASMUSSEN REPORTS, (June 14, 2024), https://perma.cc/Y68S-Q7XS.

[4] *62% Concerned About Election Cheating*, RASMUSSEN REPORTS, (Jul. 24, 2024), https://perma.cc/2H7T-XN8K.

[5] *See, e.g.,* 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); 16 A.R.S. §§ 121.01, 143, and 165.

[6] 52 U.S.C. § 21083(a)(2)(B)(ii); *see also* 52 U.S.C. § 21083(a)(2)(A) and (a)(4)(A).

8.     Puzzlingly, the Defendants have ignored these requirements. They have failed to take the actions required by law to ensure that foreign citizens are removed from their voter rolls.

9.     These failures cause voters to lose confidence in the integrity of our election system.

10.    For example, a recent national survey of likely voters found that 52% believe that election officials are either doing nothing to prevent foreign citizens from voting or are not doing enough.[7] Only 26% believed that election officials have effective plans to deal with foreign citizen voting.[8]

11.    Another recent survey found "that 55% of Likely U.S. Voters believe it is likely that non-citizens are illegally registered to vote in the state where they live, including 32% who say it's Very Likely. Thirty-seven percent (37%) don't think it's likely there are non-citizens registered to vote in their state, including 14% who consider it Not At All Likely."[9]

12.    This lawsuit seeks to restore public trust in our State's electoral system by holding the Defendants accountable for their failures and to ensure that the list maintenance required by the law—and common sense—is performed.

## PARTIES

13.    Plaintiff Strong Communities Foundation of Arizona Incorporated ("EZAZ.org") is a nonprofit organization in Arizona.

14.    EZAZ.org is an Arizona-focused grassroots organization headquartered in Maricopa County. Its mission is to make civic participation easy and accessible for all Americans. It trains Arizonans about becoming more civically involved and offers

---

[7] *Election Integrity: Are States Doing Enough?*, RASMUSSEN REPORTS, (Aug. 28, 2024), https://perma.cc/EXE5-W7UL.

[8] *Id.*

[9] *Most Suspect Non-Citizens Are Illegally Registered to Vote*, RASMUSSEN REPORTS, (Aug 12, 2024), https://perma.cc/F9NK-DSRF.

community neighborhood events to engage neighbors who want to stay informed but are generally not civically engaged.

15.     An essential part of the mission of EZAZ.org to increase civic engagement is ensuring that Arizona's elections are free, fair, and lawfully administered, which includes proper voter list maintenance.

16.     Together with its associated 501(c)4 organization, EZAZ.org has 59,000 subscribers to its mailing list. It has received donations from 4,305 people and conducts 90 or more public events per year. It conducts significant voter outreach and education, across the State of Arizona. It reached over 150,000 voters in 2022. So far in 2024, it has made nearly one million voter contacts. Its donors, subscribers, and followers view it as the public voice for their concerns.

17.     EZAZ.org's members include Arizona citizens and voters registered across the State of Arizona who are affected by the Defendants' unlawful failure to comply with required voter list maintenance practices.

18.     As such, EZAZ.org is a party that is beneficially interested in the proper conduct of elections, including voter list maintenance, in the Defendant counties.

19.     Plaintiff Yvonne Cahill is a resident of Maricopa County, where she is registered to vote. Cahill regularly votes in Arizona's primary and general elections. She plans to vote in Arizona's upcoming federal and state elections. She is a naturalized citizen of the United States.

20.     As a result, Cahill has a clear interest in supporting the enforcement of Arizona's election laws, including list maintenance requirements.

***The Maricopa County Defendants***

21.     Defendant Stephen Richer is the Maricopa County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. He is sued in his official capacity. The County Recorder is one of the principal elections officers of Maricopa County and is responsible for overseeing and directing numerous components of election administration

4

within the county, including verifying the citizenship of registered voters and other voter list maintenance.[10]

22.     Defendant Maricopa County is a political subdivision of the State of Arizona. Recorder Richer is an officer of the county. A.R.S. § 11-401(A)(2). Maricopa County has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Apache County Defendants***

23.     Defendant Larry Noble is the Apache County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. He is sued in his official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[11]

24.     Defendant Apache County is a county in the State of Arizona. Recorder Noble is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Cochise County Defendants***

25.     Defendant David W. Stevens is the Cochise County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. He is sued in his official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[12]

---

[10] *See, e.g.,* A.R.S. §§ 16-121.01, -143, -165, and -166.

[11] *Id.*

[12] *Id.*

5

26.      Defendant Cochise County is a county in the State of Arizona. Recorder Stevens is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Coconino County Defendants***

27.      Defendant Patty Hansen is the Coconino County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[13]

28.      Defendant Coconino County is a county in the State of Arizona. Recorder Hansen is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Gila County Defendants***

29.      Defendant Sadie Jo Bingham is the Gila County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[14]

30.      Defendant Gila County is a county in the State of Arizona. Recorder Bingham is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under

---

[13] *Id*.

[14] *Id*.

6

state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

### *The Graham County Defendants*

31.     Defendant Polly Merriman is the Graham County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[15]

32.     Defendant Graham County is a county in the State of Arizona. Recorder Merriman is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

### *The Greenlee County Defendants*

33.     Defendant Sharie Milheiro is the Greenlee County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[16]

34.     Defendant Greenlee County is a county in the State of Arizona. Recorder Milheiro is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

---

[15] *Id*.

[16] *Id*.

1

***The La Paz County Defendants***

2

      35.    Defendant Richard Garcia is the La Paz County Recorder, a constitutionally

3

created public office. Ariz. Const. art. XII, § 3. He is sued in his official capacity. The

4

County Recorder is one of the principal elections officers of the county and is responsible

5

for overseeing and directing numerous components of election administration within the

6

county, including verifying the citizenship of registered voters and other voter list mainte-

7

nance.[17]

8

      36.    Defendant La Paz County is a county in the State of Arizona. Recorder Gar-

9

cia is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under

10

state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa*

11

*Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

12

***The Mohave County Defendants***

13

      37.    Defendant Lydia Durst is the Mohave County Recorder, a constitutionally

14

created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The

15

County Recorder is one of the principal elections officers of the county and is responsible

16

for overseeing and directing numerous components of election administration within the

17

county, including verifying the citizenship of registered voters and other voter list mainte-

18

nance.[18]

19

      38.    Defendant Mohave County is a county in the State of Arizona. Recorder

20

Durst is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under

21

state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa*

22

*Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

23

***The Navajo County Defendants***

24

      39.    Defendant Michael Sample is the Navajo County Recorder, a constitutionally

25

created public office. Ariz. Const. art. XII, § 3. He is sued in his official capacity. The

26

---

[17] *Id.*

[18] *Id.*

County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[19]

40.     Defendant Navajo County is a county in the State of Arizona. Recorder Sample is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Pima County Defendants***

41.     Defendant Gabriella Cázares-Kelly is the Pima County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[20]

42.     Defendant Pima County is a county in the State of Arizona. Recorder Cázares-Kelly is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Pinal County Defendants***

43.     Defendant Dana Lewis is the Pinal County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county,

---

[19] *Id*.

[20] *Id*.

including verifying the citizenship of registered voters and other voter list maintenance.[21]

44.    Defendant Pinal County is a county in the State of Arizona. Recorder Lewis is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Santa Cruz County Defendants***

45.    Defendant Anita Moreno is the Santa Cruz County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[22]

46.    Defendant Santa Cruz County is a county in the State of Arizona. Recorder Moreno is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

***The Yavapai County Defendants***

47.    Defendant Michelle Burchill is the Yavapai County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. She is sued in her official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list maintenance.[23]

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

48.     Defendant Yavapai County is a county in the State of Arizona. Recorder Burchill is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

**The Yuma County Defendants**

49.     Defendant Richard Colwell is the Yuma County Recorder, a constitutionally created public office. Ariz. Const. art. XII, § 3. He is sued in his official capacity. The County Recorder is one of the principal elections officers of the county and is responsible for overseeing and directing numerous components of election administration within the county, including verifying the citizenship of registered voters and other voter list mainte-nance.[24]

50.     Defendant Yuma County is a county in the State of Arizona. Recorder Col-well is an officer of the county. A.R.S. § 11-401(A)(2). The county has the power under state law to "[s]ue and be sued." A.R.S. § 11-201(A)(1); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 ¶ 12 (App. 2010).

## JURISDICTION AND VENUE

51.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case alleges violations of the National Voter Registration Act (NVRA).

52.     The Plaintiffs' claims under the NVRA are proper because the Plaintiffs "provide[d] written notice of the violation to the chief election official[s]" who are Defend-ants and "the violation occurred within 120 days before the date of an election for Federal office." 52 U.S.C. § 20510(b).

53.     This Court has jurisdiction to grant declaratory, injunctive, and/or mandamus relief pursuant to 28 U.S.C. §§ 1651, 2201, and 2202 and 52 U.S.C. § 20510(b)(2).

54.     This Court has supplemental jurisdiction over the Plaintiffs' State law claims under 28 U.S.C. § 1367.

---

[24] *See, e.g.,* A.R.S. §§ 16-121.01, -143, -165, and -166.

55.     For the Plaintiffs' State law claims, based on this Court's exercise of supple-mental jurisdiction, this Court has the authority to grant relief under A.R.S. §§ 12-122, -123(B), -1801, -1831, -1832, -2021, Ariz. R. Civ. P. 65, and Ariz. R. Special Actions ("RPSA") Rules 3 and 4.

56.     Venue is appropriate in the District of Arizona and this Court has personal jurisdiction over the Defendants because a substantial part of the events giving rise to these claims occurred and continues to occur in this district and because the Defendants reside in Arizona. 28 U.S.C. § 1391.

**GENERAL ALLEGATIONS**

57.     Because it is illegal for any foreign national to register to vote, or to vote, there is no reason for a foreign national to be on voter rolls in this State.

*I. Arizona's Federal-Only Voters*

58.     Arizona law requires that persons registering to vote provide documentary proof of citizenship (DPOC).[25] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for registrants who use the federal voter registration form.[26]

59.     Because the National Voter Registration Act (NVRA) requires States to "ac-cept and use"[27] the federal form issued by the Election Assistance Commission (EAC),[28] and because that form does not require DPOC, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*Inter Tribal Council*") that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[29]

---

[25] A.R.S. § 16-166(F).

[26] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

[27] 52 U.S.C. § 20505(a)(1).

[28] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). The Help America Vote Act transferred this authority to the EAC.

[29] *Intertribal Council*, 570 U.S. at 15.

60.     However, because Arizona may establish its own requirements for state and local elections, and because State law requires DPOC, registering to vote in state and local elections still requires that the registrant provide DPOC.

61.     Therefore, Arizona has a unique bifurcated system of voter registration whereby voters who have registered without providing DPOC (Federal-Only Voters) are only allowed to vote in primary and general elections for candidates running in federal races.

62.     According to the Arizona Secretary of State's Office (AZSOS), as of April 1, 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[30]

63.     According to the AZSOS, As of July 1, 2024, the number of Federal-Only Voters was 42,301.[31]

64.     This means that the number of Federal-Only Voters increased by 7,028—an increase of nearly 20% in just three months.

65.     The number of Federal-Only Voters in each Defendant County increases each month.

66.     For example, on July 1, 2024, when Maricopa County disclosed its A.R.S. § 16-161(B) report, there were 26,108[32] Federal-Only Voters, an increase of 4,503 from the 21,595 Federal-Only Voters reported by Maricopa on April 1, 2024.[33]

67.     This means that in just three months, the number of Federal-Only Voters in Maricopa County increased by an astounding 21%.

---

[30] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://perma.cc/N5HW-MAL3.

[31] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of July 1st, 2024*, (Apr. 1, 2024), https://perma.cc/L2CD-RWPB.

[32] MARICOPA COUNTY ELECTIONS, *Historical Voter Registration Totals, July 1, 2024* (2024), https://perma.cc/4VLT-M5JF.

[33] MARICOPA COUNTY ELECTIONS, *Historical Voter Registration Totals, April 1, 2024* (2024), https://perma.cc/KY7Q-3BNM.

*II. Voter List Maintenance Requirements*

68.     The U.S. Supreme Court also held in *Inter Tribal Council* that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[34] Further, the Court noted that the NVRA only requires states to register eligible persons.[35] Nor does the Court's decision in *Inter Tribal Council* prohibit States from engaging in the voter list maintenance procedures required by the Help America Vote Act (HAVA),[36] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

69.     Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of the EAC's federal voter registration form, the U.S. Supreme Court acknowledged that States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.

70.     In 2022, the Legislature enacted, and Governor Ducey signed, H.B. 2492 and H.B. 2243,[37] which, among other things, amended Arizona's election statutes to impose stricter voter list maintenance requirements for Federal-Only Voters.

71.     Those requirements mandate that County Recorders perform monthly list maintenance to confirm the citizenship of all Federal-Only Voters.[38]

72.     The Defendants have failed to perform this required list maintenance.

73.     Those requirements also require County Recorders to perform list maintenance within ten days for all newly registered Federal-Only Voters to verify citizenship.[39]

74.     The Defendants have failed to perform this required list maintenance.

---

[34] *Intertribal Council*, 570 U.S. at 15.  (cleaned up) (emphasis added).

[35] *Id.*

[36] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[37] 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492).

[38] A.R.S. § 16-165.

[39] A.R.S. § 16-143(D).

75.     One obstacle to performing such list maintenance is that Secretary of State Adrian Fontes has neglected to obtain access for list maintenance to the three databases that the statutes specifically require be consulted to verify citizenship: the U.S. Department of Homeland Security's (DHS) Systematic Alien Verification for Entitlements (SAVE)[40], the Social Security Administration (SSA) database[41], and the National Association for Public Health Statistics and Information Systems (NAPHSIS) electronic verification of vital events system (EVVE).[42]

76.     However, State and federal law impose additional list maintenance obligations beyond just consulting these three databases.

77.     State law also requires that "[w]ithin ten days after receiving an application for registration on a form produced by the United States election assistance commission that is not accompanied by satisfactory evidence of citizenship, the county recorder or other officer in charge of elections *shall use all available resources* to verify the citizenship status of the applicant...."[43]

78.     State law also requires that County Recorders "at a minimum shall compare the information available on the application for registration with the following, provided the county has access.... Any other ... federal database ... to which the county recorder or officer in charge of elections has access...."[44]

79.     Additionally, for all registrants, State law requires that "[t]o the extent practicable, the county recorder shall review relevant ... federal databases to which the county recorder has access to confirm information obtained that requires cancellation of

---

[40] A.R.S. §§ 16-121.01(D)(3) and -165(I).

[41] A.R.S. §§ 16-121.01(D)(2) and -165(H).

[42] A.R.S. §§ 16-121.01(D)(4) and -165(J).

[43] A.R.S. § 16-121.01(D) (emphasis added).

[44] A.R.S. § 16-121.01(D) and (D)(5) (emphasis added).

registrations pursuant to this section."[45]

80.     Additionally, federal law requires "local election official[s]" to "perform list maintenance" of their voter rolls and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[46] It also requires that election officials "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[47]

81.     Because it is illegal for foreign citizens to register to vote in federal elections, any foreign citizen who is registered to vote is ineligible. Therefore, federal law requires County Recorders to "perform list maintenance" and to engage in "reasonable efforts" to ensure that foreign citizens are not registered to vote.

***III. Foreign citizens do register to vote.***

82.     The possibility of foreign citizens registering to vote is not just hypothetical.

83.     States and local election officials who proactively search for foreign citizens who are registered to vote find them.

84.     For example, since 2021, the State of Texas has removed over 6,500 potential foreign citizens from its voter rolls.[48]

85.     Of those 6,500 foreign citizens, 1,930 actually voted.[49]

86.     Between January 16, 2024 and August 13, 2024, the office of Alabama Secretary of State Wes Allen has identified and purged from voter rolls 3,251 foreign citizens

---

[45] A.R.S. § 16-165(K).

[46] 52 U.S.C. § 21083(a)(2)(A) and (a)(2)(B)(ii).

[47] 52 U.S.C. § 21083(a)(4)(A).

[48] *Governor Abbott Announces Over 1 Million Ineligible Voters Removed From Voter Rolls*, OFFICE OF THE TEXAS GOVERNOR, (Aug. 26, 2024), https://perma.cc/SPG8-GWPB.

[49] *Id.*

who were registered to vote in the State.[50]

87.     On August 21, 2024, Ohio Secretary of State Frank LaRose announced that his office had identified 597 foreign citizens who were registered to vote in Ohio and that 138 of them had actually voted.[51]

88.     On August 7, 2024, Virginia Governor Glenn Youngkin issued an executive order requiring more thorough list maintenance procedures because "between January 2022 and July 2024, records indicate we removed 6,303 non-citizens from the voter rolls."[52]

**IV. SAVE, SSA, and EVVE are Insufficient to Definitively Verify Citizenship**

89.     Even if the Defendants had access to SAVE, SSA, and EVVE for list maintenance, these three databases would be insufficient to definitively verify the citizenship of all Federal-Only Voters.

90.     Only consulting SAVE, SSA, and EVVE to verify citizenship, without more, is insufficient to fulfill a County Recorder's list maintenance duties under State and federal law.

**SAVE**

91.     SAVE was created by the Immigration Reform and Control Act of 1986 (IRCA).[53]

92.     The heading for the IRCA section that created SAVE explains its purpose: "VERIFICATION OF IMMIGRATION STATUS OF ALIENS APPLYING FOR BENEFITS UNDER CERTAIN PROGRAMS."[54]

---

[50] *Secretary of State Wes Allen Implements Process to Remove Noncitizens Registered to Vote in Alabama*, ALABAMA SECRETARY OF STATE'S OFFICE, (Aug. 13, 2024), https://perma.cc/SD8M-GNVR.

[51] Secretary LaRose Refers Evidence of Non-Citizen Voter Registrations to Ohio Attorney General for Potential Prosecution, Ohio Secretary of State's Office, (Aug. 21, 2024), https://perma.cc/H3TZ-YMVS.

[52] Va. Exec. Order No. 35 at 2 (2024), *available at* https://perma.cc/JU3V-J5UE..

[53] Pub. L. No. 99–603, § 121, 100 Stat 3359 (1986); *see also Peters v. United States*, 853 F.2d 692, 700 n. 9 (9th Cir. 1988).

[54] IRCA § 121; *Ram v. INS*, 243 F.3d 510, 514 n.3 (9th Cir. 2001) ("a statute's title and a section's heading may be used to interpret its meaning" (citing *Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998)).

93.     As the Ninth Circuit explained, Congress created SAVE to "set forth specific procedures to verify alien eligibility for public benefits."[55]

94.     The Central District of California also explained that SAVE "is an existing federal eligibility system used to verify status for various federal-state cooperative programs such as the Aid to Families with Dependent Children ("AFDC"), Food Stamps, Medicaid and Unemployment Compensation programs under which eligibility is dependent on lawful immigration status."[56]

95.     SAVE was never intended to be a general-purpose citizenship verification tool.

96.     SAVE is hobbled by a critical design flaw: The system requires at least one of the following specific "numeric identifier[s]": "Alien/ USCIS Number (A-Number)," "Form 1-94, Arrival/Departure Record Number," "Student and Exchange Visitor Information System (SEVIS) ID number," "Naturalization / Citizenship Certificate Number," "Card / 1-797 Receipt Number," "Visa Number," or "Foreign Passport Number (if entered along with a U.S. immigration enumerator)."[57]

97.     This is no surprise, as providing a numeric identifier for SAVE is a statutory requirement. IRCA requires that aliens applying for government benefits must present their "alien registration documentation or other proof of immigration registration from the Immigration and Naturalization Service that *contains the individual's alien admission number or alien file number (or numbers if the individual has more than one number)*."[58]

98.     Once an alien applying for benefits has provided immigration documents containing numeric identifiers, IRCA requires that "the State shall utilize the individual's alien file or alien admission number to verify with the Immigration and Naturalization

---

[55] *Peters*, 853 F.2d at 700 n.3.

[56] *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755, 770 (C.D. Cal. 1995).

[57] *Tutorial: Introduction to SAVE and the Verification Process for SAVE Users*, DEP'T OF HOMELAND SEC., (Mar. 2024), https://perma.cc/MS43-GBWM.

[58] IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(2)(A) (emphasis added).

Service the individual's immigration status through an automated or other system (designated by the Service for use with States)."[59]

99.    SAVE is the "automated or other system" required by IRCA that is "designated ... for use with States."[60]

100.    IRCA specifically requires that SAVE "utilize[] the individual's name, *file number, admission number*, or other means permitting efficient verification."[61]

101.    SAVE was designed to be used in a context where an alien's DHS-specific numeric identifier is provided as part of the application process.

102.    SAVE was never designed to be used in the voting context, where such numeric identifiers are not required.

103.    As a federal judge recently observed, "the [EAC's] Federal Form does not include a space for registrants to provide this information" about "immigration numbers."[62]

104.    Furthermore, SAVE does not process social security or driver's license numbers, which are the ID numbers that registrants are most likely to provide on their voter registration forms.[63]

105.    Thus, in practice, SAVE is practically useless for verifying the citizenship of voter registrants because it can only provide citizenship information if a registrant has provided the specific numeric identifiers that are the searchable variables in SAVE, and none of these identifiers are required under the current version of the EAC federal voter registration form, nor are they required on Arizona's state voter registration form.

---

[59] IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(3).

[60] *Id.*

[61] IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(3)(A) (emphasis added).

[62] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ----, 2024 WL 862406, at *6 (D. Ariz. 2024).

[63] *See, e.g.*, *Register to Vote in your State by Using this Postcard Form and Guide* at 3-4, U.S. ELECTION ASSISTANCE COMMISSION, https://perma.cc/7L5H-RCFR (Arizona-specific instructions from the EAC for filling out the federal voter registration form requiring registrants to provide, if available, a driver license number or the last four digits of their social security number).

*V. SSA and EVVE*

106.   A federal judge recently found that "county recorders currently do not have access to NAPHSIS [EVVE] or the SSA database."[64]

107.   Even if County Recorders had access to SSA, they would be insufficient to verify citizenship.

108.   As one federal judge recently noted: "[Arizona] [c]ounty recorders ... lack direct access to SSA records.... Approximately one quarter of SSA records lack citizenship information," and "the federal government does not allow access to this [citizenship] information."[65]

109.   Furthermore, even if County Recorders had access to EVVE, it would be insufficient to verify citizenship.

110.   NAPHSIS is a nonprofit organization that represents state and local vital records, health statistics and information system agencies.

111.   NAPHSIS's EVVE database contains information on most births in the United States.

112.   However, EVVE does not have information about births in Texas.[66]

113.   EVVE, therefore, is insufficient for verifying citizenship because it cannot verify the birth of anyone born in Texas.

114.   EVVE is also insufficient for verifying citizenship because it cannot verify the citizenship of U.S. citizens who were not born in the United States.

115.   EVVE thus does not contain information about the births of persons born overseas who acquire citizenship at birth because one or more of their parents are U.S. citizens.[67]

---

[64] *Mi Familia Vota*, 2024 WL 862406, at *5.

[65] *Mi Familia Vota*, 2024 WL 862406, at *7 (cleaned up).

[66] *Participating Jurisdictions*, NAPHSIS, (accessed on Jul. 29, 2024), https://perma.cc/LQQ2-FXAP.

[67] *See* 8 U.S.C. §§ 1401-1409; *Sessions v. Morales-Santana*, 582 U.S. 47 (2017).

116.    NAPHSIS also cannot be used to verify the citizenship of naturalized citizens.

### VI. Federal Law Entitles County Recorders to Submit Citizenship Inquiries to DHS

117.    Fortunately, there is an easy method for County Recorders to confirm the citizenship of Federal-Only Voters, and this method does not require the use of SAVE, SSA, or EVVE.

118.    The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any individual* within the jurisdiction of the agency for *any purpose authorized by law*, by providing the requested verification or status information."[68]

119.    Verification of a voter registrant's citizenship is a purpose authorized by law.[69]

120.    Section 1373 specifically preempts the requirements of "any other provision of Federal, State, or local law."[70]

121.    Section 1373 was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[71]

122.    The House Judiciary Committee explained that, with Section 1373:

[t]he Committee intends to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, and activities of illegal aliens. *This section is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.*[72]

---

[68] 8 U.S.C. § 1373(c) (emphasis added).

[69] *See supra* ¶¶ 1, 25-46.

[70] 8 U.S.C. § 1373(a).

[71] Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104–208, § 642, 110 Stat 3009 (1996).

[72] H.R. REP. 104-469, at 277 (1996) (emphasis added).

123.    The INA also states, in 8 U.S.C. § 1644, that "*[n]otwithstanding any other provision of Federal, State, or local law*, no State or local government entity may be prohibited, *or in any way restricted*, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[73]

124.    Section 1644 was enacted as part of the Personal Responsibility and Work Opportunity Act of 1996 (PRWORA).[74]

125.    The House Conference Report for PRWORA explained Congress's intent in enacting Section 1644:

> The conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. *This provision is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.*[75]

126.    Because Sections 1373 and 1644 both expressly preempt any other federal or State law provisions, no other federal or State law could prevent a County Recorder from submitting citizenship confirmation requests to DHS.[76]

127.    DHS has the capability to verify an individual's citizenship status without using any of the specific numeric identifiers that SAVE requires.

128.    For example, DHS maintains the Person Centric Query System (PCQS) database that allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[77]

---

[73] 8 U.S.C. § 1644 (emphasis added).

[74] Pub. L. 104–193, § 434, 110 Stat 2105 (1996).

[75] H.R. Conf. Rep. 104-725, at 383, 1996 U.S.C.C.A.N. 2649, 2771 (1996) (emphasis added).

[76] *See* U.S. Const. art. VI, cl. 2.

[77] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service*

129.    This means that, *right now*, DHS can answer all of the inquiries from a County Recorder about the citizenship status of registered voters and all persons attempting to register to vote.

130.    The citizenship information to which County Recorders are lawfully entitled under 8 U.S.C. §§ 1373 and 1644 qualifies as an "available resource[]" under A.R.S. § 16-121.01(D).

131.    Therefore, County Recorders have a mandatory obligation under A.R.S. § 16-121.01(D) to submit citizenship confirmation requests for registrants who failed to provide DPOC to DHS under 8 U.S.C. §§ 1373 and 1644 ("1373/1644 Requests").

132.    The citizenship information to which County Recorders are lawfully entitled under 8 U.S.C. §§ 1373 and 1644 qualifies as a "relevant ... federal database[] to which the county recorder has access" under A.R.S. §§ 16-121.01(D) and -165(K).

133.    Therefore, County Recorders have a mandatory obligation under A.R.S. § 16-121.01 and -165(K) to submit 1373/1644 Requests to DHS.

134.    County Recorder submissions of 1373/1644 Requests about Federal-Only Voters are also consistent with, and required by, County Recorders' obligations under federal law to conduct "list maintenance" and make "reasonable effort[s]" to remove potentially ineligible voters.[78]

***VII. County Recorder Obligations to Provide to the Attorney General a List of Federal-Only Voters***

135.    Additionally, H.B. 2492 required that County Recorders "shall make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship" and also that they "shall provide ... the

---

*Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://perma.cc/32CZ-467V. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c), (Aug. 2, 2024), https://perma.cc/C8QM-H5Z4 (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

[78]  52 U.S.C. § 21083(a)(2)(A), (a)(4)(A), and (a)(2)(B)(ii).

23

applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship."[79]

136.   The Legislature imposed this requirement on County Recorders so that the Attorney General could fulfill her obligation that she "shall use all available resources to verify the citizenship status of the applicant[s]."[80]

137.   This statutory provision requiring Recorders to transmit the information and registration applications about Federal-Only Voters to the Attorney General is currently in force and not enjoined by any court.

138.   Yet, surprisingly, the Defendants have failed to comply.

139.   Specifically, upon information and belief, the Defendants have failed to send to the Attorney General a list of all Federal-Only Voters  registered in each of their respective counties.

140.   The Defendants have also failed, upon information and belief, to provide to the Attorney General the applications of all Federal-Only Voters registered in each of their respective counties.

**VIII. Pre-Litigation Efforts to Request Compliance as to Maricopa County**

141.   On July 16, 2024, Plaintiff EZAZ.org sent to Recorder Richer a letter reminding him of his obligations to perform list maintenance and explaining how 1373/1644 Requests would allow him to fulfill those obligations.

142.   The letter pointed out that Arizona law requires that he "shall review relevant ... federal databases to which the county recorder has access"[81] and that he is, therefore, obligated to submit 1373/1644 Requests to DHS for all Maricopa County Federal-Only Voters.

---

[79] 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); A.R.S. § 16-143(A).

[80] A.R.S. § 16-143(B).

[81] A.R.S. § 16-165(K).

143.    Through communications with Recorder Richer's counsel on July 23 and 24, Recorder Richer claimed that he already complies with all applicable State and federal laws related to voter registration.

144.    This claim is false.

145.    Recorder Richer also claimed he has no legal authority to submit 1373/1644 Requests to DHS about Maricopa County Federal-Only Voters.

146.    This claim is false.

147.    Recorder Richer also claimed that the Federal District of Arizona had ruled that using 1373/1644 Requests and SAVE for list maintenance violates the Voting Rights Act.

148.    That claim is false.

149.    Rather, the Federal District of Arizona ruled precisely the opposite, explicitly holding that "Arizona is entitled to investigate the citizenship status of registered voters to ensure that only qualified individuals are registered to vote.... For example, County recorders must check SAVE and/or NAPHSIS for all voters without DPOC, i.e., Federal-Only Voters."[82]

150.    That court also specifically ordered that "Arizona may conduct SAVE checks on registered voters who have not provided DPOC."[83]

151.    Recorder Richer also claimed that he has fully complied with the requirements of A.R.S. § 16-143, but failed to describe any steps he has taken to actually comply.

152.    However, upon information and belief, Recorder Richer has failed to transmit a list of Maricopa County Federal-Only Voters to the Attorney General, as required by A.R.S. § 16-143.

153.    Additionally, upon information and belief, Recorder Richer has failed to transmit the voter applications of Maricopa County Federal-Only Voters to the Attorney

---

[82] *Mi Familia Vota*, 2024 WL 862406 at *38.

[83] *Id.* at *57.

General, as required by A.R.S. § 16-143.

154.   Upon information and belief, Recorder Richer is not complying with his on-going obligation under A.R.S. § 16-143 to transmit to the Attorney General updated lists and applications of Federal-Only Voters as new voters register.

155.   Accordingly, his claim to be in compliance with A.R.S. § 16-143 is also false.

***IX. Pre-Litigation Efforts to Request Compliance as to the Other Counties***

156.   On July 16, 2024, Plaintiff EZAZ.org sent to the non-Maricopa County Recorder Defendants letters reminding them of their obligations to perform list maintenance and explaining how 1373/1644 Requests would allow them to fulfill those obligations.

157.   On July 26, 2024, Pima County Recorder Gabriella Cázares-Kelly responded by letter, refusing to submit 1373/1644 requests to DHS, claiming that "we believe our current list maintenance procedures are thorough and address many of the concerns you expressed."

158.   Cázares-Kelly also claimed, incorrectly, that "[t]he Person Centric Query System (PCQS) does not use any new data not already available to SAVE."

159.   This was incorrect because SAVE requires a DHS-specific numeric identifier, such as an alien number, whereas PCQS only requires a name and date of birth.

160.   Cázares-Kelly also implicitly admitted that she had not submitted a list of Federal-Only Voters to the Arizona Attorney General, claiming that "the 15 recorders in the state of Arizona agreed in 2022 that the report would come from the Secretary of State."

161.   However, A.R.S. § 16-143(A), imposes independent obligations on the Secretary of State and each County Recorder to each separately transmit their lists of Federal-Only Voters.

162.   Yavapai County Recorder Michelle Burchill and Cochise County Recorder David Stevens responded favorably to the letter. However, upon information and belief, they have not yet submitted 1373/1644 Requests.

163.   The remaining County Recorders have not yet responded to the letter.

**COUNT I**
**Failure to Use "All Available Resources" for**
**Voter List Maintenance of Federal-Only Voters**
**(Special Action, Declaratory, and Injunctive Relief)**
**A.R.S. §§ 16-121.01(D), 12-1801, 12-1831, 12-1832,**
**12-2021, Ariz. R. Civ. P. 65, RPSA 3, and 28 U.S.C. § 1651**

164.   The Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

165.   Arizona law requires that "[w]ithin ten days after receiving an application for registration ... that is not accompanied by satisfactory evidence of citizenship, the county recorder ... shall use *all available resources* to verify the citizenship status of the applicant."[84]

166.   A 1373/1644 Request is an "available resource[] to verify ... citizenship status."[85]

167.   The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters.

168.   The Defendants have, therefore, failed to comply with their mandatory duty under A.R.S. § 121.01(D) to "use all available" resources to verify the citizenship status of Federal-Only Voters.

169.   Absent judicial intervention, the Defendants will continue to unlawfully fail to use "all available resources."

**COUNT II**
**Failure to Consult Accessible Databases for**
**Voter List Maintenance of Federal-Only Voters**
**(Special Action, Declaratory, and Injunctive Relief)**
**A.R.S. §§ 16-121.01(D)(5), 12-1801, 12-1831, 12-1832,**
**12-2021, Ariz. R. Civ. P. 65, RPSA 3, and 28 U.S.C. § 1651**

170.   The Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

---

[84] A.R.S. § 16-121.01(D) (emphasis added).

[85] A.R.S. § 16-121.01(D).

171.    Arizona law requires that, "at a minimum," County Recorders' list mainte-
nance efforts for recently registered Federal-Only Voters must include a comparison of
"the information available on the application for registration with" "[a]ny other ... federal
database ... to which the county recorder or officer in charge of elections has access."[86]

172.    The information available through a 1373/1644 Request to DHS constitutes
a "federal database" to which the Defendants have access.

173.    The Defendants refuse to submit 1373/1644 Requests to DHS to verify the
citizenship status of Federal-Only Voters.

174.    The Defendants have, therefore, failed to consult a "federal database" "to
which" they "ha[ve] access."

175.    Accordingly, the Defendants are violating their mandatory duties under
A.R.S. § 16-121.01(D)(5).

176.    Absent judicial intervention, the Defendants will continue to unlawfully fail
to consult federal databases "to which" they "ha[ve] access."

**COUNT III**
**Failure to Conduct Regular Voter List Maintenance**
**of Federal-Only Voters Using Accessible Databases**
**(Special Action, Declaratory, and Injunctive Relief)**
**A.R.S. §§ 16-165(K), 12-1801, 12-1831, 12-1832,**
**12-2021, Ariz. R. Civ. P. 65, RPSA 3, and 28 U.S.C. § 1651)**

177.    The Plaintiffs incorporate by reference the preceding allegations as if fully
set forth herein.

178.    Arizona law requires that, as to all voter registrants, "[t]o the extent practi-
cable, the county recorder shall review relevant ... federal databases to which the county
recorder has access to confirm information obtained that requires cancellation of registra-
tions pursuant to this section."[87]

179.    A registrant's lack of U.S. citizenship "requires cancellation of registration[]."

---

[86] A.R.S. § 16-121.01(D)(5).

[87] A.R.S. § 16-165(K).

180. Failure to provide DPOC is information about lack of citizenship.[88]

181. Information suggesting a potential lack of citizenship requires confirmation using "relevant ... federal databases" to which the Defendants have access.

182. The information available under a 1373/1644 Request to DHS constitutes a "federal database" to which the Defendants have access.

183. The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters.

184. The Defendants have, therefore, failed to consult a "federal database" "to which" they "ha[ve] access."

185. Accordingly, the Defendants are violating their mandatory duties under A.R.S. § 16-165(K).

186. The Defendants will continue to unlawfully neglect to consult federal databases "to which" they "ha[ve] access" absent judicial intervention.

**COUNT IV**
**Failure to Send Information About**
**Federal-Only Voters to the Attorney General**
**(Special Action, Declaratory, and Injunctive Relief)**
**A.R.S. §§ 16-143, 12-1801, 12-1831, 12-1832,**
**12-2021, Ariz. R. Civ. P. 65, RPSA 3, and 28 U.S.C. § 1651)**

187. The Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

188. Arizona law requires that "*each* county recorder shall make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship pursuant to § 16-166 and shall provide, on or before October 31, 2022, the applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship pursuant to § 16-166."[89]

---

[88] *See, e.g.*, §§ 16-121.01(C)-(F), -165(A)(10), and -166(F).

[89] A.R.S. § 16-143(A) (emphasis added).

189.    Upon information and belief, the Defendants have not made available or provided to the Attorney General the required information about Federal-Only Voters.

190.    The Defendants will continue to unlawfully neglect to provide the required information to the Attorney General absent judicial intervention.

**COUNT V**
**Voter List Maintenance Procedures**
**that Are Discriminatory or Not Uniform**
**(52 U.S.C. §§ 20507(b)(1) and 20510(b), and 28 U.S.C. § 1651)**

191.    The Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

192.    The NVRA requires that voter list maintenance "shall be uniform [and] non-discriminatory." 52 U.S.C. § 20507(b)(1)

193.    The Defendants currently submit citizenship checks to DHS only for Federal-Only Voters who have provided an alien number or other DHS numeric identifier but not for other Federal-Only Voters.

194.    However, DHS has the ability to look up citizenship information for any individual using only that person's name and date of birth through DHS's PCQS database.

195.    The voter registration forms used by the Defendants require submission of a name and a date of birth.

196.    The Defendants, therefore, have the authority under federal law and the ability to submit citizenship confirmation requests for *all* Federal-Only Voters. *See* 8 U.S.C. §§ 1373 and 1644.

197.    Therefore, the Defendants' voter list maintenance practices are discriminatory and non-uniform because the Defendants have the legal authority and the capacity to submit citizenship verification requests to DHS for *all* Federal-Only Voters.

198.    The Defendants are violating the NVRA's uniformity requirement by subjecting only a small subset of Federal-Only Voters to citizenship checks.

199.    The Defendants are violating the NVRA's nondiscrimination requirement by subjecting to DHS verification of citizenship only Federal-Only Voters who have an alien

number, but not any other voters. This subjects naturalized citizens who are Federal-Only Voters to a greater degree of scrutiny than other Federal-Only Voters (who would be natural-born citizens or foreign citizens).

## PRAYER FOR RELIEF

Based on the preceding, the Plaintiffs respectfully request relief in the following forms:

A. A declaration under A.R.S. §§ 12-1831, -1832 and 28 U.S.C. §§ 2201-2202 and special action, mandamus, and injunctive relief under Arizona Rule of Special Action Procedure 3, A.R.S. §§ 12-1801, -2021, Ariz. R. Civ. P. 65, 28 U.S.C. §§ 1651, 28 U.S.C. §§ 2202, 52 U.S.C. § 20510(b)(2), or other applicable law that:

    1. A 1373/1644 Request is an "available resource[] to verify ... citizenship status" under A.R.S. § 16-121.01(D); that the Defendants have had a mandatory and ongoing obligation to conduct such checks for every Federal-Only Voter registered in the Defendants' respective Counties who has registered since A.R.S. § 16-121.01(D) became effective; and that the Defendants shall submit 1373/1644 Requests to DHS for all such Federal-Only Voters;

    2. A 1373/1644 Request to DHS constitutes a "federal database" to which the Defendants have access under A.R.S. § 16-121.01(D)(5); that the Defendants have had a mandatory and ongoing obligation to submit 1373/1644 Requests for every Federal-Only Voter registered in the Defendants' respective Counties who has registered since A.R.S. § 16-121.01(D)(5) became effective; and that the Defendants shall submit 1373/1644 Requests to DHS for all such Federal-Only Voters;

    3. A registrant's failure to provide DPOC constitutes information about lack of citizenship that, if true, would require cancellation of registration and which the Defendants have an ongoing mandatory duty to confirm under A.R.S. § 16-165(K); that the information available under a 1373/1644 Request to DHS constitutes a "federal database" to which the Defendants have access under A.R.S.

31

§ 16-165(K); that the Defendants have a mandatory and ongoing obligation under A.R.S. § 16-165(K) to submit 1373/1644 Requests for every Federal-Only Voter registered in the Defendants' respective Counties; and that the Defendants shall submit 1373/1644 Requests to DHS for all such Federal-Only Voters; and

4. The Defendants have a mandatory and ongoing obligation to make available to the Attorney General a list of all Federal-Only Voters registered in the Defendants' respective Counties and must provide to the Attorney General the voter registration applications of all such individuals; that the Defendants shall send to the Attorney General a list of all Federal-Only Voters registered in the Defendants' respective Counties as well as their voter registration applications; and that Defendants shall weekly transmit to the Attorney General a list of all new Federal-Only Voter registrants and their applications.

5. The Defendants' practice of performing SAVE checks for Federal-Only Voters who provided an alien number or other similar numeric identifier, but not for other Federal-Only Voters, violates the NVRA, and the Defendants must therefore submit 1373/1644 Requests to DHS for all Federal-Only Voters.

B. An award of reasonable attorneys' fees and costs under A.R.S. §§ 12-341, -348, -2030, the private attorney general doctrine, Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920, and other applicable law.

C. For such other relief as the Court deems just and proper

RESPECTFULLY SUBMITTED this 4th of September, 2024.

**America First Legal Foundation**

By: /s/*James Rogers*
    James K. Rogers (No. 027287)
      *Senior Counsel*
    America First Legal Foundation
    611 Pennsylvania Ave., SE #231
    Washington, D.C. 20003
    Phone: (202) 964-3721
    James.Rogers@aflegal.org

    Jennifer J. Wright (027145)
    Jennifer Wright Esq., Plc
    4350 E. Indian School Rd
    Suite #21-105
    Phoenix, Arizona 85018
    jen@jenwesq.com

    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. New Defendants will be served in due course. Counsel for all prior Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing, with courtesy copies emailed as follows:

Honorable Susan Brnovich
District Court Judge
Brnovich_chambers@azd.uscourts.gov

Joseph La Rue
Thomas Liddy
Jack O'Connor III
Rosa Aguilar
MARICOPA COUNTY ATTORNEY'S OFFICE
laruej@mcao.maricopa.gov
liddyt@mcao.maricopa.gov
oconnorj@mcao.maricopa.gov
aguilarr@mcao.maricopa.gov
*Attorneys for the Defendants*

D. Andrew Gaona
Austin C. Yost
COPPERSMITH BROCKELMAN PLC
Lalitha D. Madduri
Christopher D. Dodge
Tyler L. Bishop
Renata O'Donnell
ELIAS LAW GROUP LLP
agaona@cblawyers.com
ayost@cblawyers.com
lmadduri@elias.law
cdodge@elias.law
tbishop@elias.law
rodonnell@elias.law
*Attorneys for the Proposed Intervenors*

 /s/ *James K. Rogers*
*Attorney for the Plaintiffs*