D. Andrew Gaona (028414)
Austin C. Yost (034602)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5486
agaona@cblawyers.com
ayost@cblawyers.com

Lalitha D. Madduri*
Christopher D. Dodge*
Tyler L. Bishop*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
T: (202) 968-4330
lmadduri@elias.law
cdodge@elias.law
tbishop@elias.law
rodonnell@elias.law

*Attorneys for Proposed Intervenor-Defendants Voto Latino and One Arizona*

*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Strong Communities Foundation of Arizona Incorporated, and Yvonne Cahill,<br><br>Plaintiffs,<br><br>v.<br><br>Stephen Richer, in his official capacity as Maricopa County Recorder, and Maricopa County, et al.,<br><br>Defendants. | No. 24-CV-02030-SMB<br><br>**VOTO LATINO AND ONE ARIZONA'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>**Oral Argument Requested** |

**INTRODUCTION**

Plaintiffs seek to subject every Federal-only voter in Arizona to citizenship investigations that threaten their wrongful removal from the voting rolls just weeks before voting begins in the 2024 general election. Their contention that Proposed Intervenors and the Federal-only voters they represent will not be impacted if these additional barriers to vote are imposed on *all* of those voters is not credible.

To make this argument, Plaintiffs' Opposition ("Opp."), ECF No. 11, glosses over the clear practical reality of the threats that their lawsuit and the relief they seek pose to Proposed Intervenors' members and constituents, mischaracterizes Proposed Intervenors' arguments, ignores relevant case law, and attempts to improperly heighten Proposed Intervenors' burden. Plaintiffs also mischaracterize the relationship between *Mi Familia Vota* and this case, suggesting that Proposed Intervenors seek to "relitigate" that case. To the contrary, Proposed Intervenors seek to preserve and protect the relief they obtained in *Mi Familia Vota*—the right of Arizonans to register as Federal-only voters without providing DPOC—in the face of Plaintiffs' efforts to evade that decision and force Arizona election officials to further scrutinize these voters' registrations and even remove them from the rolls. As even the governmental entities that administer them admit, the systems that Plaintiffs seek to compel Arizona counties to use for this purpose contain inaccurate and erroneous information that—if used for this purpose—will result in misidentifications of lawful voters. Once wrongly identified, Plaintiffs admit that those Federal-only voters could avoid disenfranchisement only by "provid[ing] DPOC," Opp. at 4, 5, which lawful voters Proposed Intervenors represent lack, Patel Decl. ¶ 10; Bock Decl. ¶¶ 9, 10. Plaintiffs' contention that the impact on Proposed Intervenors' interests is speculative is thus wrong. Proposed Intervenors have more than satisfied the requirement that they show that this action may harm their interests.

As for the question of adequacy of representation, Plaintiffs do not dispute that the existing Defendants have conflicting obligations due to their responsibilities as government actors tasked with maintaining voter rolls, while groups like Proposed Intervenors have a

1  parochial focus on protecting their own resources and preventing actions that threaten the
2  voting rights of their members and constituents. Nor do Plaintiffs dispute that for precisely
3  these reasons, courts routinely grant intervention to private plaintiffs seeking to intervene
4  alongside defendants in actions seeking to remove voters from the rolls. And even under
5  the inapplicable, heightened standards Plaintiffs claim govern, Proposed Intervenors have
6  demonstrated that absent intervention, their interests will be inadequately represented.

7  On permissive intervention, Plaintiffs' arguments are even more threadbare, failing
8  to even suggest that Plaintiffs have not met the threshold factors for granting permissive
9  intervention. And as Proposed Intervenors do not intend to relitigate any aspect of *Mi*
10  *Familia Vota*, their intervention poses no possible prejudice to Plaintiffs.

11  Because Proposed Intervenors satisfy each requirement for both intervention as a
12  matter of right under Federal Rule of Civil Procedure 24(a) and permissive intervention
13  under Rule 24(b), their motion to intervene should be granted.[1]

14  ## ARGUMENT

15  **I.     Proposed Intervenors are entitled to intervene as a matter of right.**

16  **A.     Proposed Intervenors have multiple significantly protectable interests that may be impaired absent their intervention.[2]**
17

18  Proposed Intervenors have multiple, significant protectable interests at stake here,
19  including preserving prior rulings protecting the rights of Federal-only voters, protecting
20  against the erroneous removal of their members and constituents from voting rolls, and
21  preventing the diversion of limited resources from other organizational priorities. The
22  disposition of this case "may as a practical matter impair or impede" each of these
23  significant interests, Fed. R. Civ. P. 24(a); Mot. to Intervene ("MTI") at 8–13, any one of
24  which is alone sufficient to meet the first two prongs of the inquiry under Rule 24(a)(2), *see*

---

25  [1] On September 4, 2024, Plaintiffs filed an Amended Complaint ("Am. Compl."), *see* ECF
26  No. 12, adding all counties in Arizona and their recorders as new defendants. The amendment does not change Voto Latino and One Arizona's arguments in support of
27  intervention. If anything, Plaintiffs' dramatic expansion of their requested relief heightens Proposed Intervenors' interests in the litigation. Nor do additional defendants change the calculus on adequacy of representation because all of the additional defendants possess the
28  same divergent interests and legal obligations the Maricopa defendants do.
[2] Plaintiffs concede that Proposed Intervenors' MTI is timely. *See* Opp. at 3.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) ("The operative inquiry should be whether the interest is protectable under some law and whether there is a relationship between the legally protected interest and the claims at issue.") (cleaned up). Each of Plaintiffs' attempts to undermine Proposed Intervenors' interests fail.

Plaintiffs first mischaracterize Proposed Intervenors' protectible interests stemming from Proposed Intervenors' success in the ongoing *Mi Familia Vota* litigation, noting that the litigation did not enjoin any of the specific statutes Plaintiffs seek to enforce here. Opp. at 3–4. But Plaintiffs refute a straw man argument. Proposed Intervenors obtained relief in *Mi Familia Vota* that preserves the ability of all Arizonans to register as Federal-only voters without DPOC. MTI at 10. While none of the specific statutes challenged here were enjoined in that case, the relief Plaintiffs seek would undermine the relief obtained there by compelling defendants to conduct systematic removal programs that are certain to lead to the misidentification of eligible voters as ineligible, who Plaintiffs admit would then be removed from the rolls unless they "provide DPOC." Opp. at 4. This action thus seeks to reimpose unlawful and burdensome requirements, which *Mi Familia Vota* held were not required, on lawful Federal-only voters. *Mi Familia Vota v. Fontes*, No. CV-22-00509-SRB, 2024 WL 862406, at *40–41 (D. Ariz. Feb. 29, 2024). Plaintiffs entirely fail to grapple with that interest, Opp. at 3–4—preserving court orders Proposed Intervenors obtained in *Mi Familia Vota* that ensure the right to register as a Federal-only voter without providing DPOC—which plainly has "a relationship" to this case, *Wilderness Soc.*, 630 F.3d at 1180.[3]

---

[3] In their MTI, Proposed Intervenors noted that the *Mi Familia Vota* court enjoined several provisions of Arizona law. MTI at 10 (citing *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 2244338, at *1–3 (D. Ariz. May 2, 2024) (entering permanent injunction)). Intervenor-defendants in that case appealed and sought an emergency stay of the injunction from the U.S. Supreme Court pending appeal. *See RNC v. Mi Familia Vota*, No. 24A164, 2024 WL 3893996 (U.S. Aug. 22, 2024). The Supreme Court denied the stay application, except as to a single provision that requires county recorders to reject state form applicants who do not provide DPOC, rather than registering such applicants as Federal-only voters. *Id.* at *1 (citing A.R.S. § 16-121.01(C)); *see also* MTI at 3–4. The Supreme Court's narrow stay has no bearing on the issues in this case, nor does it affect Proposed Intervenors' interests in protecting the relief they obtained in *Mi Familia Vota* and the enfranchisement of Federal-only voters in Arizona.

1    For largely the same reasons, Plaintiffs' next argument—that Proposed Intervenors' intervention is an effort to "relitigate" claims from *Mi Familia Vota*—lacks merit. Opp. at 5. Proposed Intervenors' interest here is in preventing the novel (and unlawful) demand that defendants submit *every* Federal-only voter to DHS investigation solely because of their status as Federal-only voters. This issue was not litigated in *Mi Familia Vota*, as discussed, but that sweeping and unlawful demand is directly at odds with rulings in *Mi Familia Vota* as to Federal-only voters. *See also* MTI at 10–11. Plaintiffs again fail to contest the actual interests Proposed Intervenors assert here. And they offer no response to Proposed Intervenors' argument that Plaintiffs' theory, which requires assuming that "failure to provide DPOC" itself amounts to "information . . . that requires cancellation," again conflicts with *Mi Familia Vota*. *Id.* at 11. Indeed, Plaintiffs' Amended Complaint itself appears to acknowledge that Federal-only voters who have not provided DPOC necessarily include "natural-born citizens." Am. Compl. ¶ 199.[4]

Nor do Plaintiffs meaningfully contest that Proposed Intervenors have a protectible interest in the fundamental voting rights of their members and constituents. *See* Opp. at 5–6. Instead, they argue that interest is too "speculative" because Plaintiffs proclaim that only noncitizens will be removed should their lawsuit succeed. *Id.* at 1, 5. But the federal sources Plaintiffs seek to compel use of are widely known—including as acknowledged by the federal agencies that administer them—to result in the misidentification of noncitizens.

---

[4] Plaintiffs also claim that they do not seek "systematic voter roll purges" on the basis that they do not seek "automated" purges. Opp. at 4. However, the question of whether a program constitutes a "systematic" voter purge does not turn on whether the program is "automated," but instead on whether the program has the purpose of removing ineligible voters from a list based on "set procedures." *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1077, 1092 & n.8 (D. Ariz. 2023) (explaining that Congress's use of the term "any program" in the NVRA indicates the provision is intended to have "expansive meaning"); *compare Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014) (holding that program to remove purported noncitizens in which "computerized data-matching" processes were used to compare lists of voters to "state and federal databases, followed by the mailing of notices," qualified as systematic removal program), *with* Opp. at 4 (explaining that Plaintiffs "seek to compel Maricopa to submit its list of Federal-Only Voters . . . to DHS to compare registration records with citizenship records," followed by the mailing of notices). Plaintiffs also appear to suggest that the relief they seek is not "systematic" because counties could perform further "individualized" assessments before initiating removals, but the same was also true in *Arcia*. 772 F.3d at 1344 (explaining that the challenged programs at issue there involved further investigation of the individuals identified as potential noncitizens).

In particular, Plaintiffs seek to force county recorders to make requests to DHS to subject Federal-only voters to the "the Person Centric Query System (PCQS)," claiming this will "quickly and easily verify their citizenship status using only a name and date of birth." Am. Compl. ¶ 128; *see also id.* ¶¶ 159, 194. Yet Plaintiffs neglect to mention that DHS itself has repeatedly warned that "[t]here is a risk that PCQS may temporarily display inaccurate data due to inaccuracies in underlying source IT systems." DHS, *Privacy Impact Assessment for the Person Centric Query Service* 7 (March 8, 2016), https://www.dhs.gov/sites/default/files/2022-04/privacy-pia-uscis010-pcqsappendixa-april2022.pdf. This is in part because "PCQS is not the original point of collection for the information" and "depend[s] on the accuracy of the connected IT system information." *Id.*[5] Indeed, a DHS assessment cited by Plaintiffs explains that PCQS produces "erroneous" data, which can be corrected only by other entities. Am. Compl. ¶ 128 n.78 (citing DHS, *Privacy Impact Assessment Update for USCIS PCQS Supporting Immigration Status Verifiers* (June 8, 2011) ("PCQS distributes erroneous data, it is the responsibility of the connected system owner to have the data corrected in accordance with the standard operating procedures of the particular system."), https://perma.cc/32CZ-467V).[6] Such inaccuracies make it all but certain that qualified voters will be misidentified and subject to investigation and registration cancellations if Plaintiffs succeed in their effort to compel use of these systems for all Federal-only voters. *See* MTI at 10. And Proposed Intervenors' uncontested declarations show that their members and constituents are among those most likely to be caught up in Plaintiffs' requested investigations, misidentified as noncitizens, and lack access to DPOC. *Id.* at 10, 12.[7]

---

[5] *See also Onafeko v. DHS*, No. 19-CV-0007 (CRC), 2020 WL 2770016, at *1 (D.D.C. May 28, 2020) (citing these documents for information regarding DHS's description of PCQS).
[6] The NVRA itself also recognizes that "eligible voters" are "incorrectly removed," risking disenfranchisement, as a result of systematic removal programs. *Arcia*, 772 F.3d at 1346 ("Eligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote. This is why the 90 Day Provision strikes a careful balance: It permits systematic removal programs at any time *except* for the 90 days before an election because that is when the risk of disfranchising eligible voters is the greatest.").
[7] Allegations in Proposed Intervenors' declarations must be accepted as true for purposes of a motion to intervene. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (collecting cases).

1      Plaintiffs next take out of context statements from *Mi Familia Vota*, asserting that Proposed Intervenors cannot have an interest in preventing unnecessary "investigations by the Attorney General, and potential rejection or cancellation of a voter's registration" because those issues "are not burdens, but merely the consequences of not providing DPOC." Opp. at 4 (quoting *Mi Familia Vota*, 2024 WL 862406, at *48). That statement was made in the context of determining whether particular election practices imposed an unconstitutional burden on the right to vote in violation of the Fourteenth Amendment. *Mi Familia Vota*, 2024 WL 862406 at *48. The *Mi Familia Vota* court was plainly not holding, or even suggesting, that there is no protectible interest in preventing wrongful court-ordered investigations and removals of lawful voters that carry a risk of erroneous disenfranchisement. *See id.* To the contrary, even under Article III's "more stringent" standard than the test for impairment of interests under Rule 24(a), *Yniguez v. State of Ariz.*, 939 F.2d 727, 735 (9th Cir. 1991), the *Mi Familia Vota* court found that plaintiffs had standing to sue because the challenged laws threatened to injure plaintiffs' members voting rights. 2024 WL 862406, at *31. That finding "compels the conclusion that [Proposed Intervenors] have an adequate interest" for purposes of Rule 24 here. *Yniguez*, 939 F.2d at 735. Plaintiffs also ignore the many authorities, including those cited by Proposed Intervenors, confirming that such interests amount to protectible interests for purposes of intervention. MTI at 11 (collecting cases).

Finally, Plaintiffs wrongly claim that Proposed Intervenors seek to "manufacture [an] injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." Opp. at 5 (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). But Plaintiffs ignore the uncontested evidence Proposed Intervenors submitted demonstrating the detrimental effect of Plaintiffs' requested relief on their missions and the actions they will be forced to undertake to prevent those harms. *See* Patel Decl. ¶¶ 8–10 (explaining that this lawsuit "severely threatens Voto Latino's constituents, mission, and [its] mission-critical work" to organize and register Latinx voters in Arizona, given that

"haphazard investigations into voter qualifications are likely to lead to misidentification of purportedly unqualified voters" and disproportionately affect Voto Latino's constituents); Bock Decl. ¶¶ 5, 7–12 (explaining how Plaintiffs' requested relief would undermine One Arizona's mission-critical investments "in voter registration efforts, get-out the-vote projects, voter protection programs, and [other] election-related efforts" targeted at marginalized voters throughout Arizona). The record decidedly shows that Proposed Intervenors would have to divert resources precisely because of the threats this lawsuit poses to their organizational missions. *See also* Patel Decl. ¶¶ 14–15, Bock Decl. ¶¶ 13–14. Plaintiffs' Amended Complaint, which now seeks relief against *all* counties, only heightens these interests because both Voto Latino and One Arizona serve members and constituents throughout Arizona. Patel Decl. ¶¶ 3–4, Bock Decl. ¶ 4.

**B. The existing parties do not adequately represent Proposed Intervenors' interests.**

Proposed Intervenors also satisfy the "minimal" burden to demonstrate that the Secretary may not adequately represent Proposed Intervenors' interests. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). Plaintiffs offer *no* response to Proposed Intervenors' argument—or any of the numerous cases that have determined—that the divergence of interests between government officials and private parties is clear in actions like this, where plaintiffs seek to remove voters from the rolls, given that government defendants have competing obligations "to protect the integrity of the electoral process and to ensure that accurate and current voter registration rolls are maintained," while groups like Proposed Intervenors have parochial interests in protecting their own resources and preventing removal of their members and constituents. *See* MTI at 13–15 (quoting *Pub. Interest L. Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020), and citing *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024), among other cases); *see* Opp. at 5–8. Because Plaintiffs

entirely ignore the divergent interests between Proposed Intervenors and existing Defendants, there is no question that the final prong of Rule 24(a)'s standard is met here.[8]

With nothing to say about the clear divergence of interests between Proposed Intervenors and the existing parties, Plaintiffs instead attempt to raise Proposed Intervenors' burden, insisting that the Court should apply one or more presumptions of adequacy of representation, and require Proposed Intervenors to make a "compelling showing" of inadequate representation simply because the existing Defendants are government parties who also oppose Plaintiffs lawsuit. Opp at 6–7. But, as the case law makes clear, these presumptions are only properly applied when the proposed intervenors and existing parties share interests that are in fact actually "*identical*." *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The Supreme Court's decision in *Berger* reaffirmed the principle that where a proposed intervenor's "'interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196–97 (2022) (quoting Wright, Miller & Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022)); MTI at 13–14. And as the Ninth Circuit in *Citizens for Balanced Use v. Montana Wilderness Association* explained, "the government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation." 647 F.3d 893, 899 (9th Cir. 2011) (citing *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).[9] Plaintiffs do not address either of these cases, but as they make clear, the mere fact that Defendants include government entities that oppose the relief Plaintiffs seek is insufficient

---

[8] For this reason, Plaintiffs' argument that "Maricopa may continue to vigorously defend itself in this action, irrespective of the policy preferences of Recorder Richer's successor" is irrelevant. Opp. at 1. The parochial interests of Proposed Intervenors are distinct from those of Maricopa County, Recorder Richer, and the other new government defendants. *See* MTI at 13–16. Notably, moreover, Plaintiffs do not dispute that Recorder Richer's replacement on the ballot "shares views similar to Plaintiffs." *Id.* at 16 n.11.

[9] As the Ninth Circuit has noted, *Berger* "call[ed] into question" whether the application of a presumption of adequate representation can ever be appropriate absent "identical interests in [the] action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022). The Court in *Callahan* did not expressly rule on the issue because the proposed intervenor conceded that the interests at issue were identical. *Id.*

- 8 -

1   to create a presumption of adequate representation because Proposed Intervenors' interests
2   in this case are far from "identical" to those of Defendants. *Supra* § I-B; MTI at 14–16.

3         Even if the Court were to apply a presumption of adequate representation, Proposed
4   Intervenors have made a "compelling showing" of inadequate representation under the three
5   factors that courts in this Circuit consider, including (1) "whether the interest of a present
6   party is such that it will undoubtedly make all of a proposed intervenor's arguments," (2)
7   "whether the present party is capable and willing to make such arguments," and (3)
8   "whether a proposed intervenor would offer any necessary elements to the proceeding that
9   other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up); *see*
10  MTI at 14–16. Plaintiffs' arguments to the contrary distort both the law and the facts.

11        Plaintiffs first argue that Proposed Intervenors have not identified "any specific
12  argument they will make that the Defendants will not make." Opp. at 6. But the Ninth
13  Circuit has explained that "it is not [an aspiring intervenors'] burden . . . to anticipate
14  specific differences in trial strategy . . . [or] arguments," *Berg*, 268 F.3d at 824; rather, the
15  relevant inquiry is whether interests are so similar between existing parties and aspiring
16  intervenors, that the former would "undoubtedly make all of" the latter's "arguments."
17  *Citizens for Balanced Use*, 647 F.3d at 901. Because existing county defendants have
18  competing obligations that diverge from Proposed Intervenors' parochial interests, *supra*
19  § I-B, there is no guarantee county defendants will make the same arguments Proposed
20  Intervenors will, MTI at 15. Even assuming *arguendo* that it is Proposed Intervenors'
21  burden to identify specific unique arguments they will make (it is not), they have done so.
22  For instance, in their Proposed Answer, Proposed Intervenors raise the affirmative defense
23  that Plaintiffs' claims are equitably barred and violate state law, MTI Ex. A at 14, neither
24  of which existing Defendants assert. *See also* MTI at 16 (arguing that Proposed Intervenors
25  are uniquely situated to "provide arguments . . . including about the potential injuries to
26  voters and voter advocacy groups that could follow from the relief that Plaintiffs seek").[10]

27
28  [10] Plaintiffs take a filing made by Voto Latino in different litigation out of context to claim

- 9 -

Plaintiffs next suggest that the only possible divergence between Defendants and Proposed Intervenors is the former's unwillingness "to relitigate" "failed arguments from *Mi Familia Vota*." Opp. at 7. As explained, Proposed Intervenors do not seek to relitigate their victory in *Mi Familia Vota*; they seek to prevent Plaintiffs from undermining the relief they obtained in that case. *Supra* § I-A. Plaintiffs' focus on the *Mi Familia Vota* litigation to claim adequate representation only underscores that Proposed Intervenors should not be forced to rely solely on the county defendants—whom they sued to protect their rights in *Mi Familia Vota*—to represent their interests here. And because Proposed Intervenors and county defendants were on opposite sides in *Mi Familia Vota*, Plaintiffs are wrong to assume that each will necessarily bring the same perspective on that case. *See* Opp. at 7.

Moreover, Plaintiffs ignore that Proposed Intervenors are the only parties solely focused on representing the interests of voters who stand to be investigated and purged from the rolls and are thus uniquely positioned to provide critical arguments about the impact on voters and registration conducted by voter advocacy groups—something the court must consider in deciding whether to grant injunctive relief. *See* MTI at 16. As a result of all of these differences, Proposed Intervenors "are willing to make arguments necessary to limit any kind of further scrutiny on Federal Only voters, while Defendants will be cabined by their statutory obligations." *Id.* at 15. Plaintiffs offer no response to these arguments. *See* Opp. at 7.

In sum, Proposed Intervenors have demonstrated that existing parties do not adequately represent their interests under both the applicable minimal burden to do so, and the inapplicable heightened standards Plaintiffs demand.

---

that "Voto Latino itself has insisted in other election-related proceedings that third parties cannot intervene as of right, absent a tangible and substantial showing of a disagreement." Opp. at 8 (citing Pls.' Opp. to Mot. to Intervene at 11, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz. May 26, 2022), Doc. 46). That is not what Voto Latino argued in that case. Rather, Voto Latino argued that proposed intervenors' arguments as to inadequacy of representation were far too "generalized," and contrary to Plaintiffs' claim, nowhere did Voto Latino state that the party must make a "tangible and substantial showing of a disagreement." *Id.* Moreover, unlike in that case, the divergence of interests between Proposed Intervenors and county defendants is clear and consistently recognized as such by courts across the country.

**II. Proposed Intervenors should alternatively be granted permissive intervention under Rule 24(b).**

Plaintiffs do not dispute that Proposed Intervenors satisfy each of the threshold permissive intervention factors. *Compare* MTI at 16–17, *with* Opp. at 8–9. Instead, Plaintiffs' only argument in opposition to permissive intervention rests on the absurd premise that Plaintiffs seek to "prejudice the adjudication of the Plaintiffs' claims" by "relitigat[ing] claims from *Mi Familia Vota*." *See* Opp. at 8–9. Plaintiffs go on to argue that Intervenors are estopped from attempting to litigate "grounds for, or defenses to, recovery that were previously available to the parties." *Id.* (citation omitted). But Proposed Intervenors, as aspiring *defendants*, do not intend to (nor could they) argue this Court should "enjoin the Defendants" from enforcing statutes Plaintiffs invoke. *Id.* at 9. Rather, as explained, Proposed Intervenors seek to intervene to protect their specific interests threatened by the particular, novel relief sought in this case, which seeks to undermine the related relief Proposed Intervenors obtained in *Mi Familia Vota*. *Supra* § I-A.

As Proposed Intervenors have already explained—and as Plaintiffs have failed to rebut, *see* Opp. at 8–9—Proposed Intervenors easily satisfy the requirements for permissive intervention under Rule 24(b), and all other "relevant factors" weigh heavily in favor of granting permissive intervention. Mot. at 17 (quoting *Ariz. All. for Retired Ams. v. Hobbs*, No. 22-cv-01374-PHX-GMS, 2022 WL 4448320, at *2 (D. Ariz. Sept. 23, 2022)).[11]

**CONCLUSION**

Proposed Intervenors request that the Court grant their motion to intervene.

---

[11] Because Proposed Intervenors have satisfied the requirements to intervene as a matter of right, they should be afforded full participation in the litigation. The Court should reject Plaintiffs' requests to limit their participation, particularly because Plaintiffs have failed to articulate any possible prejudice or delay because of intervention. *See generally* Opp. at 8–11. In support of their argument that participation should be limited, Plaintiffs point to Voto Latino's citation to *Arizona Democratic Party*, 2020 WL 6559160, at *1, in a brief filed in a different matter. Opp. at 10 n.4 (citing *Ariz. Democratic Party*, 2020 WL 6559160, at *1). *Arizona Democratic Party* suggests at most that limitation of a permissive intervenor's participation may be appropriate under Rule 24(b) when the parties' interests are closely aligned. *Id.* at *2. No such limitations should be placed here because Proposed Intervenors and county defendants' interests are not aligned. *Supra* § I-B; MTI at 13–14; *accord Jud. Watch, Inc.*, 2024 WL 3454706, at *4–5; *Winfrey*, 463 F. Supp. 3d at 799–800.

RESPECTFULLY SUBMITTED this 6th day of September, 2024.

**COPPERSMITH BROCKELMAN PLC**

By: */s/ D. Andrew Gaona*
    D. Andrew Gaona
    Austin C. Yost

**ELIAS LAW GROUP, LLP**

    Lalitha D. Madduri*
    Christopher D. Dodge*
    Tyler L. Bishop*
    Renata M. O'Donnell*

*Attorneys for Proposed Intervenor-Defendants Voto Latino and One Arizona*

**Admitted Pro Hac Vice*