**AMERICA FIRST LEGAL FOUNDATION**

James K. Rogers (No. 027287)
   *Senior Counsel*
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

*Attorneys for Plaintiffs*

**JENNIFER WRIGHT ESQ., PLC**

Jennifer J. Wright (No. 027145)
4350 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

STRONG COMMUNITIES FOUNDA-
TION OF ARIZONA INCORPORATED,
and YVONNE CAHILL;

       Plaintiffs,

   v.

STEPHEN RICHER, in his official capac-
ity as Maricopa County Recorder; et al.

Defendants.

No. CV-24-02030-PHX-SMB

**THE PLAINTIFFS' MOTION FOR
A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY IN-
JUNCTION**

# Table of Contents

**Introduction** ........................................................................................................... 1

**Factual and Legal Background** ............................................................................. 2

I.   Arizona's Federal-Only Voters ........................................................................ 3

II.  Voter List Maintenance Requirements ............................................................ 4

III. Foreign citizens *do* register to vote. ............................................................. 6

IV.  SAVE, SSA, and EVVE are insufficient to verify citizenship definitively. .... 7

   A.  SAVE .......................................................................................................... 7

   B.  SSA and EVVE ......................................................................................... 9

V.   Federal Law Entitles County Recorders to Submit Citizenship Inquiries to DHS.......... 10

VI.  Multiple States have already submitted 1373/1644 Requests to DHS............. 12

VII. County Recorders are obligated to provide to the Arizona Attorney General a list of Federal-Only Voters ......................................................................................... 13

VIII. Pre-Litigation Efforts to Request Compliance as to Maricopa County ......... 14

IX.  Pre-Litigation Efforts to Request Compliance as to the Other Counties ....... 15

**Legal Standard** ....................................................................................................... **15**

**Argument** ................................................................................................................. **16**

I.   The Plaintiffs have standing............................................................................ 16

II.  The Plaintiffs are likely to succeed on the merits. ........................................ 19

   A.  The Defendants' current practices violate the NVRA's uniformity and nondiscrimination requirements........................................................................... 19

   B.  The Defendants are violating Arizona's list maintenance requirements........ 21

III. The remaining requirements for injunctive relief are satisfied ...................... 22

   A.  The Plaintiffs are likely to suffer irreparable harm absent an injunction...... 22

   B.  The balance of harms and public interest support injunctive relief .............. 24

IV.  The Plaintiffs request a Temporary Restraining Order................................... 25

i

1

2

## TABLE OF AUTHORITIES

3

4

Page(s)

5

**US SUPREME COURT CASES**

6

*Almendarez–Torres v. United States*, 523 U.S. 224 (1998) ............................................ 7

7

*Arizona v. Inter Tribal Council of Arizona, Inc. ("Inter Tribal Council")*, 570 U.S. 1 (2013) ......... 3, 4

8

9

*Arizona v. United States*, 567 U.S. 387 (2012) ................................................... 11

10

*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582 (2011) ...................................... 11

11

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423 (1974) ............................................................. 25

12

13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .......................................18, 19

14

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ............................. 17

15

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .................................................. 16, 17, 25

16

17

*Reynolds v. Sims*, 377 U.S. 533 (1964) .......................................................... 16

18

*Rumsfeld v. FAIR*, 547 U.S. 47 (2006) .......................................................... 16

19

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017)............................................... 10

20

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ..... 17

21

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................... 15

22

**FEDERAL CASES**

23

24

*Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015).................................................. 6

25

*Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. 2017)................................ 24

26

*Arizona Recovery House Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990 (D. Ariz. 2020).................................................................................23, 24

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023)............................................ 15, 16, 23

*BST Holdings, LLC. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ........................................ 25

*California v. Azar, 911 F.3d 558, 581 (9th Cir. 2018)* ................................................ 24

*City & County of San Francisco v. United States Citizenship & Immigration Services*, 981 F.3d 742
    (9th Cir. 2020) ................................................................................ 24

*DNC v. Reagan*, 329 F. Supp. 3d 824 (D. Ariz. 2018) .............................................. 16

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) ............................. 24

*Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ................................... 16

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ................................................... 25

*Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012) .................................. 17

*League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995) ....................... 8

*League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014) .................. 23, 24

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ...................... 25

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ........................................... 6

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) .............................................. 23, 24

*Mi Familia Vota v. Fontes* ("*Mi Familia*"), --- F.Supp.3d ----, 2024 WL 862406 (D. Ariz. Feb.
    29, 2024) ............................................................................. 9, 14, 16, 17, 20

*N. Carolina State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, 2018 WL
    3748172, at *11 (M.D.N.C. Aug. 7, 2018) ............................................... 23

*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ............................... 25

*Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508 (9th Cir. 1994) ..................... 23

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ............................................ 22

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) ................................................. 7

*Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006) ................................. 20

*Ram v. INS*, 243 F.3d 510 (9th Cir. 2001) ............................................................ 7

*Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893 (D. Ariz. 2019) ........................................ 25

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) ................................................................. 25

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012) .................................... 6

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ........................................ 18

*Williams v. Salerno*, 792 F.2d 323 (2d Cir. 1986) .......................................................... 22

**US CONSTITUTIONAL PROVISIONS**

Article VI  .................................................................................................................... 11

**STATE CONSTITUTIONAL PROVISIONS**

Arizona Article VII § 2 ...................................................................................................... 1

**FEDERAL STATUTES**

8 U.S.C. § 1101 ................................................................................................................ 1

8 U.S.C. § 1373 ...................................................................................................... 10, 11, 12, 20

8 U.S.C. § 1401 .............................................................................................................. 10

8 U.S.C. § 1644 .................................................................................................... 11, 12, 20

18 U.S.C. § 1015 ............................................................................................................... 1

42 U.S.C. § 1320b-7 ......................................................................................................... 8

52 U.S.C. § 20505 ............................................................................................................ 3

52 U.S.C. § 20507 ................................................................................................... 6, 12, 20

52 U.S.C. § 21083 ................................................................................................ 1, 4, 5, 12

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Omnibus
    Consolidated Appropriations Act,  1997, Pub.  L. 104–208, 110 Stat 3009 (1996) ........ 10

Immigration Reform and Control Act of 1986 (IRCA), Pub. L.  No. 99–603, 100 Stat
    3359 (1986) ................................................................................................................ 7

National Voter Registration Act of 1993, PL 103–31, May 20, 1993, 107 Stat 77 ................... 3

Personal Responsibility and Work Opportunity Act of 1996 (PRWORA). Pub. L. 104–
    193, 110 Stat 2105  (1996) ................................................................................................ 11

**STATE STATUTES**

A.R.S. 16-101 ............................................................................................................................ 1

A.R.S. 16-121.01 ....................................................................................................... 4, 5, 12, 21

A.R.S. 16-143 ............................................................................................. 4, 13, 14, 15, 22, 26

A.R.S. 16-161 ............................................................................................................................ 3

A.R.S. 16-165 ........................................................................................................ 4, 5, 14, 21, 22

A.R.S. 16-166 ............................................................................................................................ 3

A.R.S. 121-01 ..................................................................................................................... 1, 21

**FEDERAL RULES**

Federal Rules of Civil Procedure Rule 65 ................................................................................. 1

Federal Rules of Evidence Rule 201 ........................................................................................ 6

**OTHER AUTHORITIES**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 2948.1 (2d ed. 1995) ..................................................................................... 23

Arizona Secretary of State's Office, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1,
    2024), https://perma.cc/N5HW-MAL3 ............................................................................. 3

Arizona Secretary of State's Office, *Federal Only Registrants as of July 1st, 2024*, (Apr. 1,
    2024), https://perma.cc/L2CD-RWPB ............................................................................... 3

*Arizona Voter Registration Instructions and Form* at 3, Arizona Secretary of State's Office,
    https://perma.cc/B8J4-XE89 ............................................................................................. 20

*Arizona: Trump 47%, Biden 40%,* Rasmussen Reports, (June 14, 2024),
    https://perma.cc/Y68S-Q7XS ............................................................................................. 1

Deirdre Bardolf, *Oregon reveals hundreds of non-citizens were mistakenly registered to vote since 2021*, New York Post, (Sep. 14, 2024), https://perma.cc/Q7V6-ZQMG ................................. 7

Dep't of State, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c), (Aug. 2, 2024), https://perma.cc/C8QM-H5Z4 .................................................................................... 12

*Election Integrity: Are States Doing Enough?*, Rasmussen Reports, (Aug. 28, 2024), https://perma.cc/EXE5-W7UL ...................................................................................... 2

Eric Daugherty. *DeSantis demands info on non-citizens registered to vote from federal government*, Florida News, (Sep. 10. 2024), https://perma.cc/KXC9-FP37, also available at https://tinyurl.com/27rzej62. ............................................................................... 13

*Fair and Secure Elections*, Office of Congressman Ralph Norman, (Aug. 8, 2024), https://perma.cc/YM2R-NAYL ................................................................................... 13

*Governor Abbott Announces Over 1 Million Ineligible Voters Removed From Voter Rolls* ("Texas Press Release"), Office of the Texas Governor, (Aug. 26, 2024), https://perma.cc/SPG8-GWPB.................................................................................... 6

Maricopa County Elections, *Historical Voter Registration Totals, April 1, 2024* (2024), https://perma.cc/KY7Q-3BNM .................................................................................... 4

Maricopa County Elections, *Historical Voter Registration Totals, July 1, 2024* (2024), https://perma.cc/4VLT-M5JF ...................................................................................... 3

*Most Suspect Non-Citizens Are Illegally Registered to Vote*, Rasmussen Reports, (Aug 12, 2024), https://perma.cc/F9NK-DSRF .................................................................... 2

*NumberUSA August 2024 Arizona*, Rasmussen Reports, (Aug 2024), https://perma.cc/U74W-YCR9........................................................................................ 1

*Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, Dep't of Homeland Sec. (June 8, 2011), https://perma.cc/32CZ-467V. ...................... 12

*Register to Vote in your State by Using this Postcard Form and Guide* at 3-4, U.S. Election Assistance Commission, https://perma.cc/7L5H-RCFR .............................................9, 20

*Secretary LaRose Refers Evidence of Non-Citizen Voter Registrations to Ohio Attorney General for Potential Prosecution*, Ohio Secretary of State's Office, (Aug. 21, 2024), https://perma.cc/H3TZ-YMVS.................................................................................... 7

*Secretary of State Wes Allen Implements Process to Remove Noncitizens Registered to Vote in Alabama*, Alabama Secretary of State's Office, (Aug. 13, 2024), https://perma.cc/SD8M-GNVR ........................................................................... 7

*Tutorial: Introduction to SAVE and the Verification Process for SAVE Users*, Dep't of Homeland Sec., (Mar. 2024), https://perma.cc/MS43-GBWM ........................................ 8

Va. Exec. Order No. 35 at 2 (2024), *available at* https://perma.cc/JU3V-J5UE ...................... 7

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Strong Communities Foundation of Arizona, Inc. (EZAZ.org) and Yvonne Cahill (collectively, the "Plaintiffs") respectfully move for a preliminary injunction and temporary restraining order requiring the Defendants to comply with their duties to conduct proper voter list maintenance.

## Introduction

It is against State and federal law for foreign citizens[1] to register to vote.[2] Sixty percent of Arizonans "are concerned that cheating will affect the outcome of the 2024 election."[3] ECF No. 12 "FAC" ¶ 2. In a statistically valid and representative survey from August 2024 of likely voters in Arizona, 1.9 percent of likely voters said they are not U.S. citizens.[4] An additional 1.18 percent responded "Not Sure" to the question about citizenship.[5] Therefore, collectively, just over three percent of likely Arizona voters in the survey disclaimed citizenship. Many recent electoral races in Arizona have been decided by less than one percent. FAC ¶4.

In 2022, the Arizona Legislature adopted stricter voter list maintenance requirements for County Recorders. *See, e.g.*, 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); 16 A.R.S. §§ 121.01, 143, and 165. The Legislature adopted these requirements to ensure that County Recorders remove foreign citizens from voter lists and to allay Arizonans' reasonable concerns about foreign citizen voting. Federal law also requires State and local election officials, including County Recorders, to perform voter list maintenance to ensure that "voters ... who are not eligible to vote [in federal elections] are removed." 52 U.S.C. § 21083(a)(2)(B)(ii); *see also* 52 U.S.C. § 21083(a)(2)(A) and (a)(4)(A). EZAZ.org has expended considerable time and resources educating voters and legislators about these requirements. Exhibit A, Declaration of Merissa Hamilton ("Hamilton Decl.") ¶ 8, 12, 17-18.

---

[1] In this Motion, the term "foreign citizen" means "any person not a citizen or national of the United States," which is the defined meaning for the term "alien" in federal law. 8 U.S.C. § 1101(a)(3).

[2] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine).

[3] *Arizona: Trump 47%, Biden 40%*, RASMUSSEN REPORTS, (June 14, 2024), https://perma.cc/Y68S-Q7XS.

[4] *NumberUSA August 2024 Arizona*, RASMUSSEN REPORTS, (Aug 2024), https://perma.cc/U74W-YCR9.

[5] *Id.*

Puzzlingly, the Defendants have ignored these requirements. They have failed to take the actions required by law to ensure that foreign citizens are removed from voter rolls. These failures cause voters to lose confidence in the integrity of our election system. For example, a recent national survey of likely voters found that 52% believe election officials are either doing nothing to prevent foreign citizens from voting or are not doing enough.[6] FAC ¶ 10. Only 26% believed election officials have effective plans to deal with foreign citizen voting. *Id.* Another recent survey found "that 55% of Likely U.S. Voters believe it is likely that non-citizens are illegally registered to vote in the state where they live, including 32% who say it's Very Likely. Thirty-seven percent (37%) don't think it's likely there are non-citizens registered to vote in their state, including 14% who consider it Not At All Likely."[7] FAC ¶ 11.

This lawsuit seeks to restore public trust in our State's electoral system by holding the Defendants accountable for their failures and to ensure that the list maintenance required by the law—and common sense—is performed.

The Plaintiffs seek a temporary restraining order (TRO) and a preliminary injunction (PI) requiring the Defendants to conduct uniform and nondiscriminatory voter list maintenance by submitting a list of their Federal-Only Voters to the U.S. Department of Homeland Security to verify the citizenship and immigration status of these registrants.

A TRO is appropriate to prevent irreversible harm while the Plaintiffs' request for a preliminary injunction is decided. Such a preliminary injunction is also warranted here since the Defendants' unlawful list maintenance practices violate statutory provisions and the constitutional rights of the Plaintiffs, will cause irreparable harm, and the balance of harms and public interest favor enjoining these illegal practices.

### Factual and Legal Background

Because it is illegal for any foreign national to register to vote, or to vote, there is no reason for a foreign national to be on voter rolls in this State.

---

[6] *Election Integrity: Are States Doing Enough?*, RASMUSSEN REPORTS, (Aug. 28, 2024), https://perma.cc/EXE5-W7UL.
[7] *Most Suspect Non-Citizens Are Illegally Registered to Vote*, RASMUSSEN REPORTS, (Aug 12, 2024), https://perma.cc/F9NK-DSRF.

## I.     Arizona's Federal-Only Voters

Arizona law requires that persons registering to vote provide documentary proof of citizenship (DPOC). A.R.S. § 16-166(F). However, the U.S. Supreme Court has held the State may not impose these voter registration requirements on registrants who use the federal voter registration form. *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*Inter Tribal Council*"), 570 U.S. 1 (2013). Because the National Voter Registration Act (NVRA) requires States to "accept and use," 52 U.S.C. § 20505(a)(1), the federal form issued by the Election Assistance Commission (EAC),[8] and because that form does not require DPOC, the Supreme Court held in *Inter Tribal Council* that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form." *Inter Tribal Council*, 570 U.S. at 15. However, because Arizona may establish its own requirements for state and local elections, and because State law requires DPOC, registering to vote in state and local elections still requires registrants to provide DPOC. Therefore, Arizona has a unique bifurcated system of voter registration whereby voters who have registered without providing DPOC (Federal-Only Voters) may only vote in federal races.

According to the Arizona Secretary of State's Office (AZSOS), as of April 1, 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[9] As of July 1, 2024, the number of Federal-Only Voters was 42,301.[10] This means that the number of Federal-Only Voters increased by 7,028—an increase of nearly 20% in just three months.

The number of Federal-Only Voters in each Defendant County increases each month. For example, on July 1, 2024, when Maricopa County disclosed its A.R.S. § 16-161(B) report, there were 26,108[11] Federal-Only Voters. This is an increase of 4,503 from the 21,595

---

[8] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). The Help America Vote Act transferred this authority to the EAC.

[9] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://perma.cc/N5HW-MAL3.

[10] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of July 1st, 2024*, (Apr. 1, 2024), https://perma.cc/L2CD-RWPB.

[11] MARICOPA COUNTY ELECTIONS, *Historical Voter Registration Totals, July 1, 2024* (2024), https://perma.cc/4VLT-M5JF.

3

Federal-Only Voters reported on April 1, 2024.[12] This means that in just three months, the number of Federal-Only Voters in Maricopa County increased by an astounding 21%.

## II.   Voter List Maintenance Requirements

The U.S. Supreme Court also held in *Inter Tribal Council* that the NVRA "does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility." . *Inter Tribal Council*, 570 U.S. at 15(cleaned up). Further, the Court noted that the NVRA only requires states to register eligible persons. *Id.* Nor does the Court's decision in *Inter Tribal Council* prohibit States from engaging in the voter list maintenance procedures required by the Help America Vote Act (HAVA), 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A), such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of the EAC's federal voter registration form, the U.S. Supreme Court acknowledged that States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status. In 2022, the Arizona Legislature enacted, and Governor Ducey signed, H.B. 2492 and H.B. 2243,[13] which, among other things, amended Arizona's election statutes to impose stricter voter list maintenance requirements for Federal-Only Voters. Those requirements mandate that County Recorders perform monthly list maintenance to confirm the citizenship of all Federal-Only Voters. A.R.S. § 16-165. Those requirements also require County Recorders to perform list maintenance within ten days for all newly registered Federal-Only Voters to verify citizenship. A.R.S. § 16-143(D). The Defendants have failed to perform this required list maintenance.

One obstacle to performing such list maintenance is that Arizona Secretary of State Adrian Fontes has neglected to obtain access for list maintenance to the three databases that the statutes specifically require be consulted to verify citizenship: the U.S. Department of Homeland Security's (DHS) Systematic Alien Verification for Entitlements (SAVE), A.R.S.

---

[12] MARICOPA COUNTY ELECTIONS, *Historical Voter Registration Totals, April 1, 2024* (2024), https://perma.cc/KY7Q-3BNM.
[13] 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492).

§§ 16-121.01(D)(3) and -165(I); the Social Security Administration (SSA) database, A.R.S. §§ 16-121.01(D)(2) and -165(H); and the National Association for Public Health Statistics and Information Systems (NAPHSIS) electronic verification of vital events system (EVVE). A.R.S. §§ 16-121.01(D)(4) and -165(J).

However, State and federal law impose additional list maintenance obligations beyond just consulting these three databases. State law also requires that "[w]ithin ten days after receiving an application for registration on a form produced by the United States election assistance commission that is not accompanied by satisfactory evidence of citizenship, the county recorder or other officer in charge of elections *shall use all available resources* to verify the citizenship status of the applicant...." A.R.S. § 16-121.01(D) (emphasis added). State law also requires that County Recorders "at a minimum shall compare the information available on the application for registration with the following, provided the county has access.... Any other ... federal database ... to which the county recorder or officer in charge of elections has access...." A.R.S. § 16-121.01(D) and (D)(5) (emphasis added). Additionally, for all registrants, State law requires that "[t]o the extent practicable, the county recorder shall review relevant ... federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations pursuant to this section." A.R.S. § 16-165(K).

Furthermore, federal law requires "local election official[s]" to "perform list maintenance" of their voter rolls and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed." 52 U.S.C. § 21083(a)(2)(A) and (a)(2)(B)(ii). It also requires that election officials "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A). Because it is illegal for foreign citizens to register to vote in federal elections, any foreign citizen who is registered to vote is ineligible. Therefore, federal law requires County Recorders to "perform list maintenance" and to engage in "reasonable efforts" to ensure that foreign citizens are not registered to vote.

The NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" must be "uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1). Election officials violate these requirements when their voter-roll maintenance singles out one group of voters for different treatment. *See, e.g., Mi Familia Vota v. Fontes* ("*Mi Familia*"), --- F.Supp.3d ----, 2024 WL 862406, at *41 (D. Ariz. Feb. 29, 2024) (provision of H.B. 2243 under which "[o]nly naturalized citizens would be subject to scrutiny" violated NVRA's uniformity and nondiscrimination requirements); *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (voter list maintenance targeted at removing foreign citizens "probably ran afoul" of the NVRA's uniform and nondiscriminatory provision because it was "likely that the properly registered citizens who would be required to respond and provide documentation would be primarily newly naturalized citizens").

The Defendants currently submit citizenship checks to DHS only for Federal-Only Voters who have provided an alien number or other DHS numeric identifier but not for other Federal-Only Voters. FAC ¶¶ 91-105, 192-199. However, DHS has the ability to look up citizenship information for *any* individual using only that person's name and date of birth through DHS's PCQS database. *Infra* at 11-12 and note 26; FAC ¶¶ 127-29, 192-99.

### III.    Foreign citizens *do* register to vote.

The possibility of foreign citizens registering to vote is not just hypothetical. States and local election officials who proactively search for foreign citizens who are registered to vote find them. For example, since 2021, the State of Texas has removed over 6,500 potential foreign citizens from its voter rolls.[14] Of those 6,500 foreign citizens, 1,930 actually voted.[15] Between January 16, 2024 and August 13, 2024, the office of Alabama Secretary of State Wes Allen has identified and purged from voter rolls 3,251 foreign citizens who were registered

---

[14] FAC ¶¶ 84-85; *Governor Abbott Announces Over 1 Million Ineligible Voters Removed From Voter Rolls* ("Texas Press Release"), OFFICE OF THE TEXAS GOVERNOR, (Aug. 26, 2024), https://perma.cc/SPG8-GWPB. Courts "take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201), including "press release[s]." *Arce v. Douglas*, 793 F.3d 968, 975 n.3 (9th Cir. 2015).
[15] FAC ¶¶ 84-85; Texas Press Release.

to vote in the State.[16] On August 21, 2024, Ohio Secretary of State Frank LaRose announced that his office had identified 597 foreign citizens registered to vote in Ohio and that 138 had actually voted.[17] On August 7, 2024, Virginia Governor Glenn Youngkin issued an executive order requiring more thorough list maintenance procedures because "between January 2022 and July 2024, records indicate we removed 6,303 non-citizens from the voter rolls."[18] Recently, "the Oregon Department of Transportation found that 306 non-citizens statewide were registered to vote and two have cast ballots in elections since 2021."[19]

Arizona is not immune to this same problem. As explained above on page 1, a recent survey showed that over three percent of likely voters in Arizona appear to be foreign citizens.

**IV.    SAVE, SSA, and EVVE are insufficient to verify citizenship definitively.**

Even if the Defendants had access to SAVE, SSA, and EVVE for list maintenance, these three databases would be insufficient to verify the citizenship of all Federal-Only Voters definitively. Only consulting SAVE, SSA, and EVVE to verify citizenship, without more, is insufficient to fulfill a County Recorder's list maintenance duties under State and federal law.

**A.    SAVE**

SAVE was created by the Immigration Reform and Control Act of 1986 (IRCA).[20] The heading for the section that created SAVE explains its purpose: "VERIFICATION OF IMMIGRATION STATUS OF ALIENS APPLYING FOR BENEFITS UNDER CERTAIN PROGRAMS."[21] As the Ninth Circuit explained, Congress created SAVE to "set forth specific procedures to verify alien eligibility for public benefits." *Peters*, 853 F.2d at 700 n.3.

---

[16] FAC ¶ 86; *Secretary of State Wes Allen Implements Process to Remove Noncitizens Registered to Vote in Alabama*, ALABAMA SECRETARY OF STATE'S OFFICE, (Aug. 13, 2024), https://perma.cc/SD8M-GNVR.
[17] FAC ¶ 87; *Secretary LaRose Refers Evidence of Non-Citizen Voter Registrations to Ohio Attorney General for Potential Prosecution*, OHIO SECRETARY OF STATE'S OFFICE, (Aug. 21, 2024), https://perma.cc/H3TZ-YMVS.
[18] FAC ¶ 88; Va. Exec. Order No. 35 at 2 (2024), *available at* https://perma.cc/JU3V-J5UE.
[19] Deirdre Bardolf, *Oregon reveals hundreds of non-citizens were mistakenly registered to vote since 2021*, NEW YORK POST, (Sep. 14, 2024), https://perma.cc/Q7V6-ZQMG.
[20] Pub. L. No. 99–603, § 121, 100 Stat 3359 (1986); *see also Peters v. United States*, 853 F.2d 692, 700 n. 9 (9th Cir. 1988).
[21] IRCA § 121; *Ram v. INS*, 243 F.3d 510, 514 n.3 (9th Cir. 2001) ("a statute's title and a section's heading may be used to interpret its meaning" (citing *Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998)).

The Central District of California also explained that SAVE "is an existing federal eligibility system used to verify status for various federal-state cooperative programs such as the Aid to Families with Dependent Children ("AFDC"), Food Stamps, Medicaid and Unemployment Compensation programs under which eligibility is dependent on lawful immigration status." *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755, 770 (C.D. Cal. 1995).

A critical design flaw hobbles SAVE: The system requires at least one of the following DHS-specific "numeric identifier[s]": "Alien / USCIS Number (A-Number)," "Form 1-94, Arrival/Departure Record Number," "Student and Exchange Visitor Information System (SEVIS) ID number," "Naturalization / Citizenship Certificate Number," "Card / 1-797 Receipt Number," "Visa Number," or "Foreign Passport Number (if entered along with a U.S. immigration enumerator)."[22] This is no surprise, as providing a DHS-specific numeric identifier (hereinafter referred to as an "alien number") for SAVE is a statutory requirement. IRCA requires that foreign citizens applying for government benefits present their "alien registration documentation or other proof of immigration registration from the Immigration and Naturalization Service that *contains the individual's alien admission number or alien file number (or numbers if the individual has more than one number)*." IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(2)(A) (emphasis added). Once a foreign citizen applying for benefits has provided immigration documents containing an alien number, IRCA requires that "the State shall utilize the individual's *alien file or alien admission number* to verify with the Immigration and Naturalization Service the individual's immigration status through an automated or other system (designated by the Service for use with States)." IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(3) (emphasis added). SAVE is the "automated or other system" required by IRCA that is "designated ... for use with States." *Id.* IRCA specifically requires that SAVE "utilize[] the individual's name, *file number, admission number*, or other means permitting efficient verification." IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(3)(A) (emphasis added).

---

[22] *Tutorial: Introduction to SAVE and the Verification Process for SAVE Users*, DEP'T OF HOMELAND SEC., (Mar. 2024), https://perma.cc/MS43-GBWM.

Put simply, SAVE doesn't work without submitting an alien number for the person being looked up. SAVE was designed to be used in a context where a foreign citizen's alien number is provided as part of the process of applying for benefits. SAVE was never intended to be a general-purpose citizenship verification tool, and it was never designed to be used in the voting context, where such alien numbers are not required.

As Judge Bolton recently observed, "the [EAC's] Federal Form does not include a space for registrants to provide this information" about "immigration numbers." *Mi Familia*, 2024 WL 862406, at *6. Furthermore, SAVE does not process social security or driver's license numbers, which are the ID numbers that registrants are most likely to provide on their voter registration forms.[23] Thus, in practice, SAVE is practically useless for verifying the citizenship of voter registrants because it can only provide citizenship information if a registrant has provided an alien number, which is the searchable variable required for SAVE. However, alien numbers are not required under the current version of the EAC federal voter registration form, nor are they required on Arizona's state voter registration form.

**B.      SSA and EVVE**

Judge Bolton recently found that "county recorders currently do not have access to NAPHSIS [EVVE] or the SSA database." *Mi Familia*, 2024 WL 862406, at *5.

Even if County Recorders had access to SSA, it would be insufficient to verify citizenship. As Judge Bolton noted: "[Arizona] [c]ounty recorders ... lack direct access to SSA records.... Approximately one quarter of SSA records lack citizenship information," and "the federal government does not allow access to this [citizenship] information." *Mi Familia*, 2024 WL 862406, at *7 (cleaned up).

Similarly, even if County Recorders had access to EVVE, it would also be insufficient to verify citizenship. NAPHSIS is a nonprofit organization that represents state and local vital records, health statistics, and information system agencies. NAPHSIS's EVVE database

---

[23] *See, e.g.*, *Register to Vote in your State by Using this Postcard Form and Guide* at 3-4, U.S. ELECTION ASSISTANCE COMMISSION, https://perma.cc/7L5H-RCFR (Arizona-specific instructions from the EAC for filling out the federal voter registration form requiring registrants to provide, if available, a driver license number or the last four digits of their social security number).

9

contains information on most births in the United States. FAC ¶¶ 110-112. However, EVVE does not have information about births in Texas. FAC ¶ 112. EVVE, therefore, is insufficient for verifying citizenship because it cannot verify the birth of anyone born in Texas. EVVE is also inadequate for verifying citizenship because it cannot verify the citizenship of U.S. citizens who were not born in the United States. EVVE thus does not contain information about the births of persons born overseas who acquire citizenship at birth because one or more of their parents are U.S. citizens.[24] NAPHSIS also cannot be used to verify the citizenship of naturalized citizens.

## V. Federal Law Entitles County Recorders to Submit Citizenship Inquiries to DHS

Fortunately, there is an easy method for County Recorders to confirm the citizenship of Federal-Only Voters, and this method does not require using SAVE, SSA, or EVVE. The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any individual* within the jurisdiction of the agency for *any purpose authorized by law*, by providing the requested verification or status information." 8 U.S.C. § 1373(c) (emphasis added). Verification of a voter registrant's citizenship is a purpose authorized by law. FAC ¶¶ 1, 58-81, 192-99.

Section 1373 specifically preempts the requirements of "any other provision of Federal, State, or local law." 8 U.S.C. § 1373(a). Section 1373 was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[25] The House Judiciary Committee explained that, with Section 1373:

> [t]he Committee intends to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, and activities of illegal aliens. *This section is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.*

H.R. REP. 104-469, at 277 (1996) (emphasis added).

---

[24] *See* 8 U.S.C. §§ 1401-1409; *Sessions v. Morales-Santana*, 582 U.S. 47 (2017).
[25] Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104–208, § 642, 110 Stat 3009 (1996).

The INA also states, in 8 U.S.C. § 1644, that "*[n]otwithstanding any other provision of Federal, State, or local law*, no State or local government entity may be prohibited, *or in any way restricted*, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644 (emphasis added). Section 1644 was enacted as part of the Personal Responsibility and Work Opportunity Act of 1996 (PRWORA). Pub. L. 104–193, § 434, 110 Stat 2105 (1996). The House Conference Report for PRWORA explained Congress's intent in enacting Section 1644:

> The conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. *This provision is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.*

H.R. Conf. Rep. 104-725, at 383, 1996 U.S.C.C.A.N. 2649, 2771 (1996) (emphasis added).

Because Sections 1373 and 1644 both expressly preempt any other federal or State law provisions, no other federal or State law could prevent a County Recorder from submitting citizenship confirmation requests to DHS. *See* U.S. Const. art. VI, cl. 2.

Section 1373 "*requires* the Federal Government to 'verify or ascertain' an individual's 'citizenship or immigration status' in response to a state request." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 602 (2011) (quoting 8 U.S.C. § 1373(c)) (emphasis added). As the Supreme Court has explained, "Congress has *obligated* ICE to respond to *any* request made by state officials for verification of a person's citizenship or immigration status." *Arizona v. United States*, 567 U.S. 387, 412 (2012) (citing 8 U.S.C. § 1373(c)) (emphasis added). Thus. DHS's "ICE's Law Enforcement Support Center operates 24 hours a day, seven days a week, 365 days a year and provides, among other things, immigration status, identity information and real-time assistance to local, state and federal law enforcement agencies." *Id.* (cleaned up).

DHS has the capability to verify an individual's citizenship status without using the alien number that SAVE requires. For example, DHS maintains the Person Centric Query System (PCQS) database, which allows agency employees to look up individuals and quickly

and easily verify their citizenship and immigration status using only a name and date of birth.[26] This means that, *right now*, DHS can answer all inquiries from a County Recorder about the citizenship status of registered voters and all persons attempting to register to vote.

The citizenship information to which County Recorders are lawfully entitled under 8 U.S.C. §§ 1373 and 1644 qualifies as an "available resource[]" under A.R.S. § 16-121.01(D). Therefore, County Recorders have a mandatory obligation under A.R.S. § 16-121.01(D) to submit citizenship and immigration status requests about Federal-Only Voters to DHS under 8 U.S.C. §§ 1373 and 1644 ("1373/1644 Requests"). The citizenship information to which County Recorders are lawfully entitled under 8 U.S.C. §§ 1373 and 1644 qualifies as a "relevant ... federal database[] to which the county recorder has access" under A.R.S. §§ 16-121.01(D) and -165(K). Therefore, County Recorders have a mandatory obligation under A.R.S. § 16-121.01 and -165(K) to submit 1373/1644 Requests to DHS.

County Recorder submissions of 1373/1644 Requests about Federal-Only Voters are also consistent with, and required by, County Recorders' obligations under federal law to conduct "list maintenance" and make "reasonable effort[s]" to remove potentially ineligible voters. 52 U.S.C. § 21083(a)(2)(A), (a)(4)(A), and (a)(2)(B)(ii). Furthermore, the County Recorders' sole use of SAVE to verify citizenship violates the NVRA's requirement that voter list maintenance be uniform and non-discriminatory. 52 U.S.C. § 20507(b)(1). This is because SAVE can only be used to verify the citizenship of Federal-Only Voters who provide an alien number. County Recorders do not perform a citizenship check of Federal-Only Voters who fail to provide an alien number, which means they are not verifying with DHS the citizenship of natural-born citizens and of unlawfully present aliens.

## VI.     Multiple States have already submitted 1373/1644 Requests to DHS.

The relief that the Plaintiffs seek here is straightforward and unremarkable. It does not

---

[26] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://perma.cc/32CZ-467V. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c), (Aug. 2, 2024), https://perma.cc/C8QM-H5Z4 (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

break any new ground. For example, two States have recently submitted 1373/1644 Requests to DHS for the purpose of voter list maintenance.

On September 9, 2024, the Chief Legal Counsel of the Florida Department of State, sent a letter to U.S. Citizenship and Immigration Services (USCIS), an agency of DHS, requesting confirmation of the citizenship of seven individuals whose citizenship could not be checked using SAVE.[27] Attached as Exhibit B is a copy of that letter.

On August 1, 2024, the Executive Director of the South Carolina State Election Commission (SCSEC) sent a letter to USCIS outlining DHS's obligations to respond to 1373/1644 Requests, stating that SCSEC would like to submit 1373/1644 requests, and asking for guidance from USCIS on how to submit requests.[28] Attached as Exhibit C is a copy of that letter.

## VII.   County Recorders are obligated to provide to the Arizona Attorney General a list of Federal-Only Voters

Additionally, H.B. 2492 required that County Recorders "shall make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship" and also that they "shall provide, on or before October 31, 2022, the applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship."[29] The Legislature imposed this requirement on County Recorders so that the Attorney General could fulfill her obligation that she "shall use all available resources to verify the citizenship status of the applicant[s]." A.R.S. § 16-143(B).

This statutory provision requiring Recorders to transmit the information and registration applications about Federal-Only Voters to the Attorney General is currently in force and not enjoined by any court. Yet, surprisingly, the Defendants have failed to comply by sending to the Attorney General a list of all Federal-Only Voters registered in each of their respective counties. The Defendants have also failed to provide to the Attorney General the applications of all Federal-Only Voters registered in each of their respective counties.

---

[27] Eric Daugherty. *DeSantis demands info on non-citizens registered to vote from federal government*, FLORIDA NEWS, (Sep. 10. 2024), https://perma.cc/KXC9-FP37, also available at https://tinyurl.com/27rzej62.
[28] *Fair and Secure Elections*, OFFICE OF CONGRESSMAN RALPH NORMAN, (Aug. 8, 2024), https://perma.cc/YM2R-NAYL.
[29] 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); A.R.S. § 16-143(A).

13

**VIII.  Pre-Litigation Efforts to Request Compliance as to Maricopa County**

On July 16, 2024, Plaintiff EZAZ.org sent to Recorder Richer a letter reminding him of his obligations to perform list maintenance and explaining how 1373/1644 Requests would allow him to fulfill those obligations. The letter pointed out that Arizona law requires that he "shall review relevant ... federal databases to which the county recorder has access," A.R.S. § 16-165(K), and that he is, therefore, obligated to submit 1373/1644 Requests to DHS for all Maricopa County Federal-Only Voters. Attached as Exhibit D is a copy of that letter.

Recorder Richer's counsel responded through a letter sent on July 23. Attached as Exhibit E is a copy of the letter. In the letter, Recorder Richer claimed that he already complies with all applicable State and federal laws related to voter registration. He also claimed to have no legal authority to submit 1373/1644 Requests to DHS about Maricopa County Federal-Only Voters. Recorder Richer also claimed that the Federal District of Arizona had ruled that using 1373/1644 Requests and SAVE for list maintenance violates the Voting Rights Act. These claims are false.

Rather, the Federal District of Arizona ruled precisely the opposite, explicitly holding that "Arizona is entitled to investigate the citizenship status of registered voters to ensure that only qualified individuals are registered to vote.... For example, County recorders must check SAVE and/or NAPHSIS for all voters without DPOC, i.e., Federal-Only Voters." *Mi Familia*, 2024 WL 862406 at *38. That court also specifically ordered that "Arizona may conduct SAVE checks on registered voters who have not provided DPOC." *Id.* at *57.

Recorder Richer also claimed that he has fully complied with the requirements of A.R.S. § 16-143 but failed to describe any steps he has taken to actually comply. However, Recorder Richer has failed to transmit to the Attorney General a list of Maricopa County Federal-Only Voters or their voter applications, as required by A.R.S. § 16-143. Recorder Richer is also not complying with his ongoing obligation under A.R.S. § 16-143 to transmit to the Attorney General updated lists and applications of Federal-Only Voters as new voters register. Accordingly, his claim to be in compliance with A.R.S. § 16-143 is also false.

**IX.     Pre-Litigation Efforts to Request Compliance as to the Other Counties**

On July 16, 2024, Plaintiff EZAZ.org also sent letters to the non-Maricopa County Recorder Defendants reminding them of their obligations to perform list maintenance and explaining how 1373/1644 Requests would allow them to fulfill those obligations. Attached as Exhibit F are copies of those letters. On July 26, 2024, Pima County Recorder Gabriella Cázares-Kelly responded by letter. Attached as Exhibit G is a copy of the letter. In her letter, Cázares-Kelly refused to submit 1373/1644 requests to DHS, claiming that "we believe our current list maintenance procedures are thorough and address many of the concerns you expressed." Cázares-Kelly also claimed, incorrectly, that "[t]he Person Centric Query System (PCQS) does not use any new data not already available to SAVE." This was incorrect because, as explained above at pages 7-9, 11-12, and note 26, SAVE requires an alien number, whereas PCQS only requires a name and date of birth. Cázares-Kelly also implicitly admitted that she had not submitted a list of Federal-Only Voters to the Arizona Attorney General, claiming that "the 15 recorders in the state of Arizona agreed in 2022 that the report would come from the Secretary of State." However, A.R.S. § 16-143(A) imposes independent obligations on the Secretary of State and each County Recorder to each separately transmit their lists of Federal-Only Voters.

Yavapai County Recorder Michelle Burchill and Cochise County Recorder David Stevens responded favorably to the letter. However, the Plaintiffs are not aware that either has yet submitted any 1373/1644 Requests.

The remaining County Recorders did not respond to the letter.

<b>Legal Standard</b>

In general, a party seeking a preliminary injunction must demonstrate that "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When, as here, "the nonmovant is

15

the government, the last two *Winter* factors "'merge.'" *Id.* (citation omitted). "The first factor 'is a threshold inquiry and is the most important factor.'" *Id.* (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

Argument

## I.   The Plaintiffs have standing.

The Plaintiffs have Article III standing for four reasons:

*First*, the Maricopa Defendants' list maintenance practices inflict current and ongoing injury on Ms. Cahill because, as a naturalized citizen with an alien number, she is subject to citizenship verifications through SAVE. In contrast, registered voters who are natural-born citizens or who are unlawfully present foreign citizens lacking an alien number are not. In *Mi Familia*, the court held that a provision from H.B. 2243 (which is not at issue here) violated the NVRA's uniformity and non-discrimination requirement because, under that provision, "[o]nly naturalized citizens would be subject to scrutiny under the ... [p]rovision, who if 'confirmed' as non-citizens, would be required to provide DPOC." 2024 WL 862406, at *41.

Similarly, the Defendants' practice of using SAVE to verify citizenship, combined with their practice of *not* using 1373/1644 Requests, subjects naturalized citizens, including Ms. Cahill, to greater scrutiny than natural-born citizens and unlawfully present foreigners who lack an alien number. This alone is enough to establish standing. *See Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Mi Familia*, 2024 WL 862406, at *29 ("Only one plaintiff needs to have standing when only injunctive relief is sought." (quoting *DNC v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018)).

*Second*, every vote cast by a foreign citizen dilutes the votes of eligible voters. The Defendants' failure to verify the citizenship of Federal-Only Voters and to remove foreign citizens from the voter rolls thus dilutes the vote of Ms. Cahill. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). "Confidence in the integrity of our electoral

processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id.* Registered voters "are injured by [election officials'] failure to comply with the NVRA list maintenance requirements because that failure undermines their confidence in the legitimacy of ... elections ... and thereby burden[s] their right to vote." *Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (cleaned up). Thus, "[t]here can be no question that a plaintiff who alleges that his right to vote has been burdened by state action has standing to bring suit to redress that injury." *Id.*

*Third*, EZAZ.org has representational standing on behalf of its members on the same essential grounds as Ms. Cahill. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977) ("[T]his Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."); *Mi Familia*, 2024 WL 862406, at *29-*30 ("An organization can have ... representational standing by asserting 'standing solely as the representative of its members.'" (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)).

EZAZ.org is a membership organization. One of its slogans is "We make civic action as easy as pie." Hamilton Decl. ¶ 9. As part of that theme, EZAZ.org maintains a "Monthly Pie Club" through which donors become members of the organization. Members are issued a membership card and receive a number of benefits, including 1) exclusive access to the "Pie Report," which provides political insider intelligence; 2) text message action alerts; 3) reserved seating at EZAZ.org events; 4) discounts to events; 5) special member-only events; and 6) exclusive information about bills at the Arizona legislature. *Id.* ¶ 10.

EZAZ.org has 573 active members of its Pie Club. *Id.* ¶ 10. It also has 59,000 subscribers to its mailing list. Its members—the majority of whom are registered voters—are widely distributed throughout the State and reside in all 15 of Arizona's counties. *Id.* ¶¶ 8, 11. Its members are affected by the Defendants' unlawful failure to comply with required voter list maintenance practices. *Id.* It, therefore, has representational standing based on injury to its affected members. Given EZAZ.org's vast number of members across the State—the risk

that one or more of them will be subject to enforcement by Defendants is clear. *Id.* ¶¶ 8-11.

*Fourth*, EZAZ.org has organizational standing because it faces concrete harm from the Defendants' wrongful conduct. An organizational plaintiff "has direct standing to sue when it shows a drain on its resources from both a diversion of its resources and frustration of its mission." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (cleaned up); *see also*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-9 (1982) ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources [establishes organizational standing].")

Here, there are six ways that EZAZ.org suffers a drain on its resources and frustration of its mission because of the Defendants' unlawful list maintenance practices. *First*, EZAZ.org conducts door-knocking campaigns to educate voters, and during the resulting conversations, registered voters sometimes voluntarily disclose that they are not eligible to vote and that their registration is in error. Whenever EZAZ.org volunteers discover such information, EZAZ.org reports this information to the relevant County Recorder's office. When there are more ineligible persons who are incorrectly registered to vote, EZAZ.org volunteers will encounter them more often, and the burden and financial expense of reporting such information also increases for EZAZ.org. *Id.* ¶¶12-13. *Second*, EZAZ.org's volunteers have been encountering an increasing number of voters (of all political persuasions) who state that they do not believe that their votes matter because they believe that their votes will be canceled out by illegal votes because County Recorders are not doing enough to remove ineligible voters—including foreign citizens—from voter rolls. This is a reasonable concern, given the unprecedented crisis at the border in which more than 10 million foreign citizens have entered the United States since January 21, 2021. Such voters are concerned that, with such an unprecedented surge in illegal immigrants entering the country, and with County Recorders not conducting proper voter list maintenance, it is inevitable that ineligible foreign citizens illegals have been registering to vote, and will vote, in the upcoming 2024 general election. EZAZ.org has to expend significant amounts of time and money responding to such voter concerns and on conducting voter education about this issue. *Id.* ¶¶ 14-15. *Third*, the Defendants' voter list maintenance failures are also extremely discouraging to potential EZAZ.org volunteers. Because of this, EZAZ.org is

encountering ever-greater difficulty in recruiting volunteers. Fewer people want to get involved in civic engagement since they perceive that their efforts have no effect and because elected officials do not take their concerns seriously. *Id.* ¶ 16. *Fourth*, since the organization's start, EZAZ.org has been deeply involved in activism on the issue of Federal-Only Voters. EZAZ.org has worked with State Legislators to educate them about the issue of Federal-Only Voters and suggest ways that Arizona can more securely protect and enhance the integrity of voter rolls and ensure increased transparency. The County Recorders' failure to conduct sufficient list maintenance of Federal-Only Voters requires EZAZ.org to expend more resources on educating State Legislators. *Id.* ¶¶ 17-19. *Fifth*, County Recorders' recent failures to do proper list maintenance of Federal-Only Voters have been particularly egregious, with the number of Federal-Only Voters increasing in recent months by unprecedented amounts. These failures have caused EZAZ.org to expend significant resources and money to monitor data about the registration of Federal-Only Voters. The unprecedented rapid increase in Federal-Only Voters strongly suggests that County Recorders are failing to do proper list maintenance. If they were, they would be either confirming citizenship (and thus moving them to full-ballot voter status) or confirming them as foreign citizens (and removing them from voter rolls). If the registration rates of Federal-Only Voters had not started increasing this year at such unprecedented rates, then there would be less cause for concern and EZAZ.org would not have been forced to expend as much time and money on monitoring the situation. *Id.* ¶¶ 20-21. *Sixth*, the failure of Arizona County Recorders to use all available resources to verify the citizenship of Federal-Only Voters significantly contributes to the problem of increasing numbers of Federal-Only Voters. It causes EZAZ.org to expend more resources addressing the issue and encouraging legal voters to still cast a ballot despite their concerns on whether their vote will matter. *Id.* ¶ 22.

## II.     The Plaintiffs are likely to succeed on the merits.

### A.     The Defendants' current practices violate the NVRA's uniformity and nondiscrimination requirements.

The NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration

roll for elections for Federal office" must be "uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1). Election officials violate these requirements when their voter-roll maintenance singles out one group of voters for different treatment. *See Mi Familia*, 2024 WL 862406, at *41 (voter list maintenance provisions of H.B. 2243 that subject naturalized citizens to greater scrutiny than others violates the NVRA because "[t]his would have a non-uniform and discriminatory impact on naturalized citizens").

The Defendants currently submit citizenship checks to DHS only for Federal-Only Voters who have provided an alien number, but not for other Federal-Only Voters. (FAC ¶¶ 91-105, 192-199.) However, DHS has the ability to look up citizenship and immigration status information for any individual using only that person's name and date of birth through DHS's PCQS database. (FAC ¶¶ 127-29, 192-99.) The voter registration forms used by the Defendants require submission of a name and a date of birth.[30]

Thus, the Defendants have the authority and the ability under federal law to submit citizenship confirmation requests for *all* Federal-Only Voters. *See* 8 U.S.C. §§ 1373 and 1644. The Defendants' voter list maintenance practices are, therefore, discriminatory and non-uniform because the Defendants have the legal authority and the capacity to submit citizenship verification requests to DHS for *all* Federal-Only Voters, yet they are not doing so. The Defendants are violating the NVRA's uniformity requirement by subjecting only a small subset of Federal-Only Voters to citizenship checks. The Defendants are violating the NVRA's non-discrimination requirement by subjecting to DHS verification of citizenship only Federal-Only Voters with an alien number, but not any other voters. This subjects naturalized citizens who are Federal-Only Voters to greater scrutiny than other Federal-Only Voters (who would be natural-born citizens or foreign citizens). *See Mi Familia*, 2024 WL 862406, at *41 (when "[o]nly naturalized citizens would be subject to scrutiny," it violates NVRA's uniformity and nondiscrimination requirements); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006) (greater requirements for "voter registration workers who are compensated" violated NVRA's

---

[30] *See, e.g., Register to Vote in your State by Using this Postcard Form and Guide* at 2, U.S. ELECTION ASSISTANCE COMMISSION, https://perma.cc/7L5H-RCFR (federal voter registration form requiring name and date of birth); *Arizona Voter Registration Instructions and Form* at 3, ARIZONA SECRETARY OF STATE'S OFFICE, https://perma.cc/B8J4-XE89 (Arizona State voter registration form requiring submission of first and last name and date of birth).

uniformity and non-discrimination requirements).

**B.    The Defendants are violating Arizona's list maintenance requirements.**

The Defendants' refusal to submit 1373/1644 Requests to DHS violates Arizona law in three ways:

*First*, Arizona law requires that "[w]ithin ten days after receiving an application for registration ... that is not accompanied by satisfactory evidence of citizenship, the county recorder ... shall use *all available resources* to verify the citizenship status of the applicant." A.R.S. § 16-121.01(D) (emphasis added). A 1373/1644 Request is an "available resource[] to verify ... citizenship status." A.R.S. § 16-121.01(D). The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters. The Defendants have, therefore, failed to comply with their mandatory duty under A.R.S. § 121.01(D) to "use all available" resources to verify the citizenship status of Federal-Only Voters.

*Second*, Arizona law requires that, "at a minimum," County Recorders' list maintenance efforts for recently registered Federal-Only Voters must include a comparison of "the information available on the application for registration with" "[a]ny other ... federal database ... to which the county recorder or officer in charge of elections has access." A.R.S. § 16-121.01(D)(5). The information available through a 1373/1644 Request constitutes a "federal database" to which the Defendants have access. The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters. The Defendants have, therefore, failed to consult a "federal database" "to which" they "ha[ve] access." Accordingly, the Defendants are violating their mandatory duties under A.R.S. § 16-121.01(D)(5).

*Third*, Arizona law requires that, as to all voter registrants, "[t]o the extent practicable, the county recorder shall review relevant ... federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations pursuant to this section." A.R.S. § 16-165(K). A registrant's lack of U.S. citizenship "requires cancellation of registration[]." Failure to provide DPOC is information about lack of citizenship. *See, e.g.*, §§ 16-121.01(C)-(F), -165(A)(10), and -166(F). Information suggesting a lack of citizenship requires confirmation using "relevant ... federal databases" to which the Defendants have access. The information available under a 1373/1644 Request to DHS constitutes a "federal

database" to which the Defendants have access. The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters. The Defendants have, therefore, failed to consult a "federal database" "to which" they "ha[ve] access." Accordingly, the Defendants are violating their mandatory duties under A.R.S. § 16-165(K).

Additionally, the Defendants are violating Arizona's requirements for providing lists of Federal-Only voters to the Arizona Attorney General. Arizona law requires that "*each* county recorder shall make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship pursuant to § 16-166 and *shall provide*, on or before October 31, 2022, the applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship pursuant to § 16-166." A.R.S. § 16-143(A) (emphasis added).

Section 16-143 thus imposes two obligations on the Defendants: first, they must "make available" a list of Federal-Only Voters, and second, they must "provide" the applications of all these individuals. *Id.* The obligation to "provide" is clearly mandatory, and the "make available" requirement must be in conjunction with it because these two provisions appear in the same sentence. And when they are read together, the obligation to "make available" means that the Arizona Legislature intended this also to be an affirmative obligation. The obligation to "provide" voter applications is more specific and time-intensive. Why would the Arizona Legislature have intended to make the less onerous requirement discretionary and the other mandatory? The only reasonable interpretation is that *both* are mandatory.

The Defendants' continued failure to "make available" and "provide" to the Attorney General the required information about Federal-Only Voters violates Section 16-143.

## III.   The remaining requirements for injunctive relief are satisfied

### A.   The Plaintiffs are likely to suffer irreparable harm absent an injunction

As set forth above, the Defendants' list maintenance practices are inflicting current and ongoing injury by unconstitutionally diluting the votes of Ms. Cahill and the members of EZAZ.org. *Supra* at 16-17. That alone establishes irreparable harm. *See, e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986)

(parties would "suffer irreparable harm if their right to vote were impinged upon"). More generally, it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Indeed, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). An injunction here would thus prevent irreparable harm to Plaintiffs' constitutional rights.

A party need only show a "threat of future harm." *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1512 & n.8 (9th Cir. 1994). Thus, it is not necessary that "future harm be shown with certainty before an injunction may issue." *Id.* Irreparable harm exists where there is no adequate legal remedy to cure the harm. *See Arizona Recovery House Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990, 997 (D. Ariz. 2020).

Here, the Plaintiffs have plausibly demonstrated the likelihood that their constitutional rights will be violated because of disenfranchisement through vote dilution. As the Ninth Circuit has repeatedly recognized, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Baird*, 81 F.4th at 1042 (collecting cases) (cleaned up). Thus, once Plaintiffs establish a likely violation of their constitutional rights, such a "showing will almost always demonstrate [they are] suffering irreparable harm as well." *Id.*; *accord* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved,... most courts hold that no further showing of irreparable injury is necessary.").

Additionally, "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 247 (4th Cir. 2014). The harm caused by the Defendants' list maintenance practices will, therefore, be irreparable.

Furthermore, EZAZ.org will suffer irreparable harm to its mission of civic engagement. *See, e.g., N.C. State Conf. of NAACP*, 2018 WL 3748172, at *11 (irreparable injury caused by practices that "would necessarily cause [organizational Plaintiffs] ... to divert more of their resources to, once again, challenging this unlawful conduct"). Hamilton Decl. at ¶¶12-22.

Additionally, the Defendants' unlawful list maintenance practices will cause EZAZ.org financial harm because it will be forced to expend its limited resources doing the Defendants' job for them—monitoring the increase in Federal-Only Voters, reporting ineligible voters to County Recorders, and educating frustrated voters. *See supra* at 17-19; *see also* Hamilton Dec. ¶¶ 12-22. Additionally, EZAZ.org will waste resources on voter outreach and education to ineligible voters. These harms are also irreparable. "[W]here parties cannot typically recover monetary damages flowing from their injury … economic harm can be considered irreparable" and "[i]ntangible injuries may also qualify as irreparable harm, because such injuries generally lack an adequate legal remedy." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (cleaned up). "The mere fact that the damages are susceptible to quantification, however, does not necessarily mean that a preliminary injunction will not lie." *Arizona Recovery Hous. Ass'n*, 462 F. Supp. 3d at 997; *City & County of San Francisco v. United States Citizenship & Immigration Services*, 981 F.3d 742, 762 (9th Cir. 2020) ("There is no dispute that such economic harm is sufficient to constitute irreparable harm because of the unavailability of monetary damages.") (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)).

Here, of course, EZAZ.org will not be able to recoup from the Defendants its expenses in seeking to educate and mobilize its constituents and in independently analyzing the Defendants' voter lists. Thus, the Plaintiffs' financial injury is also irreparable.

**B.    The balance of harms and public interest support injunctive relief**

When the party against whom "injunctive relief" is sought "is a government entity," then "the third and fourth factors [the balance of the equities and public interest] merge." *X Corp. v. Bonta*, --- F.4th ----, 2024 WL 4033063, at *4 (9th Cir. 2024) (cleaned up).

As a general matter, "[t]he public interest and the balance of the equities favor prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (quoting *Melendres*, 695 F.3d at 1002). This is particularly so where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" *League of Women Voters of N.C.*, 769 F.3d at 248 (quoting

24

*Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). The disenfranchisement, discrimination, and lack of uniformity that the Defendants' list maintenance practices effectuate is thus not in the public interest, but an injunction against that outcome is.

Furthermore, the Defendants have no legitimate interest in implementing an unlawful policy. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (government officials "do[] not have an interest in the enforcement of an unconstitutional law"). Indeed, the "public interest [is served] in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021); *accord League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Indeed, enforcing an unconstitutional law is "always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). And an injunction "will do [Defendants] no harm whatsoever. Any interest [they] may claim in enforcing an unlawful (and likely unconstitutional) [practice] is illegitimate." *BST Holdings, LLC. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), aff'd 142 S.Ct. 661 (2022).

## IV. The Plaintiffs request a Temporary Restraining Order.

The Plaintiffs request that this Court immediately issue a TRO while this Motion for Preliminary Injunction is pending for the purpose of "preventing [the] irreparable harm" that is occurring and will continue to occur if the Defendants' unlawful list maintenance practices are allowed to remain in effect. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

"The standard for issuing a TRO is the same as that for issuing a preliminary injunction." *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 926 (D. Ariz. 2019). As demonstrated above, the Plaintiffs are likely to succeed on the merits, are likely to suffer irreparable harm in the absence of a TRO, and the balance of equities and public interest favor a TRO.

What makes a TRO especially necessary here is the proximity of the general election in November. As a consequence of this timeline, the Plaintiffs are suffering irreparable harm in the absence of a TRO as they attempt to counteract the effects of the Defendants' unlawful

practices. The Plaintiffs will suffer even greater harm if the Defendants have not submitted 1373/1644 Requests to DHS and thus performed the necessary list maintenance before the election because of the disenfranchisement and vote dilution that will occur. These factors emphasize that the public interest favors a TRO because it will ensure that proper list maintenance procedures will be followed until this Court can fully adjudicate the Plaintiffs' Motion for Preliminary Injunction.

## Conclusion

Therefore, for the preceding reasons, the Plaintiffs respectfully request that the Court issue a temporary restraining order and preliminary injunction requiring the Defendants to submit 1373/1644 Requests to DHS and to "make available" and "provide" to the Arizona Attorney General the information about Federal-Only Voters required by A.R.S. § 16-143. RESPECTFULLY SUBMITTED this 15th of September, 2024.

**America First Legal Foundation**

By: _/s/ James Rogers_____
    James K. Rogers (No. 027287)
      *Senior Counsel*
    America First Legal Foundation
    611 Pennsylvania Ave., SE #231
    Washington, D.C. 20003
    Phone: (202) 964-3721
    James.Rogers@aflegal.org

    Jennifer J. Wright (027145)
    Jennifer Wright Esq., Plc
    4350 E. Indian School Rd
    Suite #21-105
    Phoenix, Arizona 85018
    jen@jenwesq.com

    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of September, 2024, I electronically filed the preceding with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. New Defendants will be sent this day the FAC and this motion by email together with a request to waive service. Counsel for all prior Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing, with courtesy copies emailed as follows:

Honorable Susan Brnovich
District Court Judge
Brnovich_chambers@azd.uscourts.gov

Joseph La Rue
Thomas Liddy
Jack O'Connor III
Rosa Aguilar
MARICOPA COUNTY ATTORNEY'S OFFICE
laruej@mcao.maricopa.gov
liddyt@mcao.maricopa.gov
oconnorj@mcao.maricopa.gov
aguilarr@mcao.maricopa.gov
*Attorneys for the Defendants*

D. Andrew Gaona
Austin C. Yost
COPPERSMITH BROCKELMAN PLC
Lalitha D. Madduri
Christopher D. Dodge
Tyler L. Bishop
Renata O'Donnell
ELIAS LAW GROUP LLP
agaona@cblawyers.com        ayost@cblawyers.com
lmadduri@elias.law          cdodge@elias.law
tbishop@elias.law           rodonnell@elias.law
*Attorneys for the Proposed Intervenors*

/s/ *James K. Rogers*
*Attorney for the Plaintiffs*