1 RACHEL H. MITCHELL
2 MARICOPA COUNTY ATTORNEY

3 By:   Thomas P. Liddy (Bar No. 019384)
        Joseph E. La Rue (Bar No.031348)
4       Jack L. O'Connor III (Bar No. 030660)
        Rosa Aguilar (Bar No. 037774)
5       Deputy County Attorneys
6       liddyt@mcao.maricopa.gov
        laruej@mcao.maricopa.gov
7       oconnorj@mcao.maricopa.gov
8       aguilarr@mcao.maricopa.gov

9 CIVIL SERVICES DIVISION
10 225 West Madison Street
   Phoenix, Arizona 85003
11 Telephone (602) 506-8541
   Facsimile (602) 506-4316
12 ca-civilmailbox@mcao.maricopa.gov
13 MCAO Firm No. 0003200

14 *Attorneys for Maricopa County Defendants*

15 **IN THE UNITED STATES DISTRICT COURT**

16 **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 17 Strong Communities Foundation of Arizona Inc., and Yvonne Cahill, | No. CV-24-02030-PHX-SMB |
| 18 | |
| 19           Plaintiffs, | **MARICOPA COUNTY DEFENDANTS' RESPONSE OPPOSING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| 20 vs. | |
| 21 Stephen Richer in his official capacity as | |
| 22 Maricopa County Recorder, and Maricopa County, | |
| 23           Defendants. | |

24

25

26

27

28

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. i

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 2

  I.  The Court Lacks Subject Matter Jurisdiction ....................................................... 2

    A.  Plaintiffs Lack Standing Because They Fail to Allege An Injury .................... 2

    B.  Plaintiffs Lack Standing Because They Fail to Establish Redressability ........... 6

    C.  Plaintiffs Did Not Send the Required NVRA-Notice Letter ............................ 7

  II.  Plaintiffs' MPI is Time-Barred ................................................................................. 8

    A.  Laches Bars Plaintiffs' Request for Injunctive Relief ...................................... 8

    B.  The *Purcell* Principle Bars Plaintiffs' Request for Injunctive Relief .............. 11

  III.  Plaintiffs Do Not Meet the Preliminary Injunction Standard ................................. 12

    Standard of Review ............................................................................................ 12

    A.  Plaintiffs Cannot Establish Likely Merits Success ......................................... 12

    B.  Plaintiffs Fail to Demonstrate Irreparable Harm ............................................ 17

    C.  The Balance of Hardships and Public Interest Favors Denying the MPI ......... 17

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

*Cases*

*Ariz. v. Inter Tribal Council of Ariz., Inc.,*
    570 U.S. 1 (2013)................................................................................ 16

*Ariz. All. for Retired Americans v. Mayes ("AARA"),*
    --- F.4th ---, 2024 WL 4246721 (9th Cir. Sept. 20, 2024) ................................... 3, 4, 7

*Ariz. Dem. Pty. v. Hobbs,*
    976 F.3d 1081 (9th Cir. 2020) ........................................................... 11

*Ariz. Libertarian Party v. Reagan,*
    189 F. Supp. 3d 920 (D. Ariz. 2016) ...................................................... 9

*Arcia v. Fla. Sec'y of State,*
    772 F.3d 1335 (11th Cir. 2014) .......................................................... 10

*Bowyer v. Ducey,*
    506 F. Supp. 3d 699 (D. Ariz. 2020) ...................................................... 9

*Carney v. Adams,* 592 U.S. 53 (2020) .......................................................... 5

*Chamber of Com. of U.S. v. Whiting,*
    563 U.S. 582 (2011).................................................................... 10

*Church of Scientology of California v. U.S. Dep't of Just.,*
    612 F.2d 417 (9th Cir. 1979) ........................................................... 15

*Diamond v. Charles,*
    476 U.S. 54 (1986)...................................................................... 2

*Election Integrity Project Cali., Inc. v. Weber,*
    --- F.4th ---, 2024 WL 3819948 (9th Cir. Aug. 15, 2024) ............................... 3

*Food & Drug Admin. v. All. for Hippocratic Medicine,*
    602 U.S. 367 (2024)................................................................... 3, 4

*Harris v. Bd. of Supervisors, Los Angeles Cnty.,*
    366 F.3d 754 (9th Cir. 2004) ............................................................ 6

*Janakes v. U.S. Postal Serv.,*
    768 F.2d 1091 (9th Cir. 1985) ....................................................... 6 n.2

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

*Lake v. Fontes,*
    83 F.4th 1199 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1395 (2024) ........................... 6

*Lance v. Coffman,*
    549 U.S. 437 (2007) ................................................................................................. 5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................. 2, 4-5, 6, 7

*Mi Familia Vota v. Fontes,*
    --- F.Supp.3d ---, 2024 WL 862406 (D. Ariz. Feb. 29, 2024) ............................... 2, 16

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ............................................................................. 6 n.2

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) ................................................................................................... 11

*Richer v. Fontes,*
    No. CV-24-0221-SA at 6-7 (Decision Order Sept. 20, 2024) .................................... 12

*RNC v. DNC,*
    589 U.S. 423 (2020) ............................................................................................... 11

*Rucho v. Common Cause,*
    588 U.S. 684 (2019) ................................................................................................. 3

*Scott v. Schedler,*
    771 F.3d 831 (5th Cir. 2014) ................................................................................... 8

*Short v. Brown,*
    893 F.3d 671 (9th Cir. 2018) ................................................................................. 11

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ................................................................................................. 2

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ................................................................................... 6

*Stanley v. Univ. of S. Cali.,*
    13 F.3d 1313 (9th Cir. 1994) ................................................................................. 12

*U. S. v. Denedo,*

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

556 U.S. 904 (2009) ................................................................ 6 n.2

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................... 12

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ...................................... 3

### *Constitutional Provisions*

U.S. Const., Art. III, § 2 ......................................................... 2

Ariz. Const. art. II, § 21 .......................................................... 10

### *Statutes*

8 U.S.C. § 1373 ........................................................ 9, 10, 16

8 U.S.C. § 1644 ........................................................ 9, 10, 16

52 U.S.C. § 20507(a)(3) ....................................................... 10

52 U.S.C. § 20507(c)(2)(A) ............................................... 9, 11

52 U.S.C. § 20510(b)(1) ...................................................... 7, 8

52 U.S.C. § 20510(b)(2) ...................................................... 7, 8

52 U.S.C. § 20510(b)(3) ........................................................ 8

A.R.S. §16-121(D) ................................................................ 2

A.R.S. § 16-121.01(D)(5) .................................................... 15

A.R.S. § 16-142 .................................................................... 8

A.R.S. § 16-143(A) ........................................................ 16, 17

A.R.S. § 16-165(K) ............................................................. 16

A.R.S. § 16-542(A) ............................................................... 9

A.R.S. § 16-542(C) ............................................................... 9

A.R.S. § 16-543 ................................................................................................ 9

A.R.S. § 16-543(A) ........................................................................................... 1

A.R.S. § 16-544(F) ........................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Maricopa County Defendants[1] hereby submit their Response in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("MPI").

## **INTRODUCTION**

Plaintiffs filed their MPI seeking a *mandatory* injunction just six days before county recorders were required to transmit UOCAVA ballots to overseas voters. A.R.S. § 16-543(A). They ask this Court to upend the now-commenced election by ordering Defendants to conduct additional voter list maintenance, which they do not currently conduct, on Federal Only Voters according to Plaintiffs' policy preferences. But Plaintiffs lack Article III standing, and so this Court lacks subject matter jurisdiction. And Plaintiffs' requested MPI relief is also time-barred. The National Voter Registration Act ("NVRA") prohibits systematic voter list maintenance purges, such as the one Plaintiffs request here, within 90 days of the election. And Plaintiffs' delay in seeking this relief is barred by laches, because it prejudices both the Defendants and Federal Only Voters who risk being mistakenly identified as noncitizens and disenfranchised without sufficient time to correct the mistake. And Plaintiffs ask the Court to change practices affecting elections *after the 2024 general election is already underway*, which would clearly violate the *Purcell* principle.

But even if Plaintiffs had standing (they do not) and their request for an injunction was not time-barred (it is), Plaintiffs cannot meet the preliminary injunction standard, let alone the heightened standard for mandatory injunctions. This Court should deny the MPI.

---

[1] The Maricopa County Defendants are Maricopa County Recorder Stephen Richer, in his official capacity, and Maricopa County.

**ARGUMENT**

**I.     The Court Lacks Subject Matter Jurisdiction.**

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." Art. III, § 2. The doctrine of standing implements this limitation by requiring that a plaintiff show (1) an injury in fact, (2) fairly traceable to the challenged action of the defendant, (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In this case, Plaintiffs lack standing because they fail to establish a redressable injury that is concrete and particularized.

**A.     Plaintiffs Lack Standing Because They Fail to Allege An Injury.**

The first standing element requires an "injury in fact" that must be "concrete and particularized," as well as "actual or imminent." *Lujan*, 504 U.S. at 560. So, the injury cannot be "conjectural" or "hypothetical." *Id.* "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Plaintiffs must have "a direct stake in the outcome of a litigation." *Diamond v. Charles*, 476 U.S. 54, 66 (1986).

Plaintiffs allege that Yvonne Cahill and Strong Communities' members are subject to additional scrutiny through SAVE verification. [MPI at 16-18.] Plaintiffs are incorrect. They are not subject to *any* ongoing SAVE verification; they were only subject to an initial check within 10 days of when they submitted their voter registration application. *See* A.R.S. §16-121(D). And Arizona lacks the requisite agreement with DHS to use SAVE for additional list maintenance after that initial check. *See Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *6 (D. Ariz. Feb. 29, 2024).

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

Plaintiffs also attempt, and fail, to state a cognizable vote dilution injury. [MPI at 16.] "'[V]ote dilution' in the one-person, one-vote cases refers to the idea that each vote must carry equal weight." *Rucho v. Common Cause*, 588 U.S. 684, 709 (2019). This principle "requires that 'each representative' in a political body 'be accountable to (approximately) the same number of constituents,' so that no group of voters retains an outsized edge in deciding the course of policymaking or representation relative to others in the same electoral unit." *Election Integrity Project Cali., Inc. v. Weber*, --- F.4th ---, 2024 WL 3819948, at *8 (9th Cir. Aug. 15, 2024). So "[v]ote dilution in the *legal* sense occurs only when disproportionate weight is given to some votes over others within the same electoral unit." *Id.* at *10. But Plaintiffs make no allegation that anyone's vote will weigh differently than anyone else's. Rather, Plaintiffs merely speculate that they, along with every single voter, *may* have their votes diluted by some *unknown* number of votes from *possible* noncitizens. But even if Plaintiffs are correct and some invalid votes are counted, "any diminishment in voting power that result[s] [would be] distributed across all votes equally." *Election Integrity Project Cali.,* 2024 WL 3819948, at *10. "Vote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing.'" *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020). Plaintiffs' new vote dilution theory fails.

Strong Communities also attempts, and fails, to establish organizational standing. "An organization asserting that it has standing based on its own alleged injuries must meet the traditional Article III standing requirements." *Ariz. All. for Retired Americans v. Mayes*, --- F.4th ---, 2024 WL 4246721, at *4 (9th Cir. Sept. 20, 2024) (**"AARA"**) (citing *Food & Drug Admin. v. All. for Hippocratic Medicine*, 602 U.S. 367, 370, 395 (2024)). "[I]t must

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

show (1) that it has been injured or will imminently be injured, (2) that the injury was caused or will be caused by the defendant's conduct, and (3) that the injury is redressable." *Id.* "[P]laintiffs must allege more than that their mission or goal has been frustrated—they must plead facts showing that their core activities are directly affected by the defendant's conduct." *Id.* The injuries must be "*apart* from the plaintiff's response to that government action." *Id.* at *2 (citing *All. for Hippocratic Medicine*, 602 U.S. at 395–36).

Here, Strong Communities fails to show its core activities are directly affected by the Defendants' voter list maintenance practices apart from its response to these practices. Rather, Plaintiff's theory is premised on it allegedly expending resources in response to the list maintenance practices regarding Federal Only Voters. [*See* MPI at 18-19.] But Plaintiff's theory of organizational standing has been expressly rejected. *All. for Hippocratic Medicine*, 602 U.S. at 395 (rejecting standing based on a diversion of resources theory because it "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies."). Instead, "[Plaintiffs] must do more than merely claim that Arizona's law caused them to spend money in response to it—they must show that Arizona's actions directly harmed already-existing activities." *AARA*, 2024 WL 4246721, at *4. Plaintiff fails to do so. And its choice to allocate resources opposing Federal Only Voters does not confer standing. Indeed, "spending money voluntarily in response to a government policy cannot be an injury in fact." *Id.* at *9. Plaintiffs' organizational standing theory fails.

Plaintiffs' FAC does not establish standing, either, because it does not allege *any* injury to *any* plaintiff, much less a "concrete and particularized" injury. *Lujan*, 504 U.S. at

Maricopa County
Attorney's Office
Civil Services Division
222 N. Central Avenue, Suite 1100
Phoenix, Arizona 85004

560–61. Rather, Strong Communities alleges that its mission includes "ensuring that Arizona's elections are free, fair, and lawfully administered," and that it is "beneficially interested in the proper conduct of elections, including voter list maintenance," and that its "members include Arizona citizens and voters registered across the State of Arizona who are affected" by voter list maintenance. [FAC at ¶¶ 15-18.] But it does not explain how its members are "affected," let alone directly injured. Likewise, Cahill alleges she is a Maricopa County voter who plans to vote in future elections, and she "has a clear interest in supporting the enforcement of Arizona's election laws, including list maintenance requirements." [*Id.* at ¶ 19–20.] But she does not allege any injury stemming from any Defendant's actions.

Instead of alleging a particularized injury, Plaintiffs allege only a generalized interest in ensuring that the Defendants follow the law. [*See* FAC at ¶ 169 (Count I); ¶ 176 (Count II); ¶ 186 (Count III); ¶ 190 (Count IV); ¶ 196 (Count V).] While Plaintiffs insist that their preferred method of voter list maintenance is required under the law, they do not actually allege any concrete injury resulting from a violation of such preferred practices beyond their interest in laws being followed. Such generalized grievances fail to confer standing. *Carney v. Adams*, 592 U.S. 53, 58 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing."). Plaintiffs' vague allegations of interest in the application of voter list maintenance are "precisely the kind of undifferentiated, generalized grievance[s] about the conduct of government that [the court has] refused to countenance in the past." *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

Additionally, Plaintiffs' fear that noncitizens may be registering to vote, [FAC at ¶¶

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

82–88], is conjectural and so is insufficient to confer standing. *Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1395 (2024) (explaining that "speculation" in the form of "conjectural allegations of potential injuries" is insufficient to confer Article III standing). *See also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Plaintiffs point to other states where "potential" noncitizens were removed from the voter registration rolls, and in some cases, where they allegedly voted. [*Id.* at ¶¶ 84–88.] But that proves nothing in this case, and Plaintiffs provide no basis to presume that it does.

Plaintiffs' allegation that Defendants violate the NVRA's uniformity requirement by submitting for citizenship verification registrants who provide specific immigration enumerators also fails to allege a direct injury to either Plaintiff. [FAC at ¶ 198-199.] Even if such practices violated the NVRA (they do not), Plaintiffs never allege that this practice harms them. Plaintiffs have failed to meet the "irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560, so this Court lacks subject matter jurisdiction.[2]

**B.    Plaintiffs Lack Standing Because They Fail to Establish Redressability.**

"In addition to establishing that their injury results from the defendants' challenged action, plaintiffs must also demonstrate that the requested relief will remedy their injury." *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 763 (9th Cir. 2004). It must

---

[2] The federal statutes under which Plaintiffs bring the FAC—the NVRA, the All Writs Act, and the Declaratory Judgment Act—likewise require Article III standing. *See e.g., Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039 (9th Cir. 2015) (NVRA); *U. S. v. Denedo*, 556 U.S. 904, 913 (2009) (All Writs Act); *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985) (Declaratory Judgment Act).

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

be "'likely, as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. "[I]f the requested remedy would not cure the plaintiff's injury, then the injury is not redressable." *AARA*, 2024 WL 4246721, at *6.

Here, Plaintiffs' requested relief would not remedy their grievances. Plaintiffs ask the Court to order Defendants to submit what they term "1373/1644 Requests" to DHS containing the names and birthdates of all Federal Only Voters and to send lists of those voters and their voter registration applications to the Arizona Attorney General for investigation. Plaintiffs' goal is for DHS and the Attorney General to identify noncitizens and report back to Defendants, so that ineligible voters can be removed from the rolls. But Plaintiffs do not demonstrate that DHS can perform citizenship verifications based on names and birthdates, and as shown below, they cannot. Plaintiffs point to two states that have submitted such requests to DHS, and even include their request-letters as exhibits to the MPI, but never allege that DHS responded favorably. And Plaintiffs have not shown that the Attorney General has tools beyond those Defendants have to conduct citizenship inquiries, or that she would do so if she received the lists Plaintiffs want Defendants to send. And neither DHS nor the Attorney General is before this Court. It is thus purely speculative whether a favorable decision would redress Plaintiffs' alleged injury.

**C.      Plaintiffs Did Not Send the Required NVRA-Notice Letter.**

Under 52 U.S.C. § 20510(b)(1), "[a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved." While this notice provision is framed as permissive, it is generally a prerequisite to filing suit under the NVRA. 52 U.S.C. § 20510(b)(2) (an aggrieved person may only bring

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

a civil action for declaratory or injunctive relief with respect to a violation of the NVRA "[i]f the violation is not corrected within 90 days *after receipt of a notice* . . . or within 20 days *after receipt of the notice* if the violation occurred within 120 days before the date of an election for Federal office." (emphasis added)). The "aggrieved person need not provide notice to the chief election official of the State" only "[i]f the violation occurred within 30 days before the date of an election for Federal office[.]" 52 U.S.C. § 20510(b)(3).

Plaintiffs allege they provided this required notice, [FAC at ¶ 52], but did not. The notice must be sent to "the chief election official of the State involved" before a lawsuit is filed. § 20510(b)(1). In Arizona, that is the Secretary of State. A.R.S. § 16-142. Strong Communities sent its notice letter to the county recorders, not the Secretary. [FAC, ¶ 52; *see also* Doc. 16-4, MPI Ex. D (Notice Letter sent to Recorder Richer).] Additionally, the notice letter failed to provide any notice of an alleged violation of the NVRA's uniformity requirement, which is the only claim Plaintiffs brought under the NVRA (Count V). Lastly, Plaintiff Cahill did not send the July 16, 2024 letter, [Doc. 16-4], and she cannot rely on Strong Communities' deficient notice to satisfy her requirement to do so. *See e.g., Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014) (holding plaintiff cannot rely on another plaintiff's notice for NVRA purposes). Plaintiffs failed to provide the required 52 U.S.C. § 20510(b)(2) notice, and so lack statutory standing to bring claims under the NVRA.

## II.    Plaintiffs' MPI is Time-Barred.

### A.    Laches Bars Plaintiffs' Request for Injunctive Relief.

Laches will bar a claim when the party asserting it shows the plaintiff unreasonably delayed in filing the action and the delay prejudices the defendant or the administration of

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

justice. *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 922-23 (D. Ariz. 2016). "Laches can bar untimely claims for relief in election cases, even when the claims are framed as constitutional challenges." *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 717 (D. Ariz. 2020). Here, both unreasonable delay and prejudice are met.

Plaintiffs challenge the Defendants' application of voter list maintenance laws that have been effective since January 1, 2023. But Plaintiffs did not file their Complaint until August 5, 2024, and then waited 41 days to file their MPI on September 15. The MPI was filed six days before the 2024 general election started with the transmission of UOCAVA ballots, A.R.S. § 16-543, and twenty-four days before the start of early voting on October 9, *id.* §§ 16-542(A) and (C), -544(F). Plaintiffs' delay in requesting relief is unreasonable when they could have sought relief *many months* before the start of the 2024 general election.

Worse, Plaintiffs requested relief, if granted, would violate the National Voter Registration Act's ("NVRA") prohibition on systematic purges within 90 days of a federal election. The NVRA provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). Here, Plaintiffs request that *all* Federal Only Voters be subjected to citizenship verification for the purpose of removing ineligible voters. Such a purge of voters would be a prohibited *systematic* purge within the 90-day prohibited period.

Plaintiffs appear to argue that 8 U.S.C. §§ 1373 and 1644 preempts the NVRA's pause requirement, citing to both the statutory language and to legislative committee reports. [FAC, at ¶¶ 117-26.] Not so. The laws only preempt any law that would prohibit government

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

entities from requesting or receiving information from DHS. 8 U.S.C. §§ 1373 and 1644. Neither law suggests preemption of the NVRA's prohibition against systematic purges of voter registrations within 90 days of a federal election. And even if the committee reports Plaintiffs cite differed (they do not), courts interpreting statutory preemption language look to the statutory language itself, not to legislative history. *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) ("When a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent") (cleaned up); *id.* at 599 ("Congress's authoritative statement is the statutory text, not the legislative history") (cleaned up).

Plaintiffs' delay in bringing their lawsuit and filing the MPI prejudices Defendants. If the Court grants the requested relief, Defendants would have to implement and administer new procedures for voter list maintenance while voting in the general election is underway and they are busy with their statutory, election-administration duties. This would risk errors to both the list maintenance and the 2024 general election itself. Such potential errors could harm the Defendants who have a duty under the NVRA to ensure that only ineligible voters are removed from the voter rolls, 52 U.S.C. § 20507(a)(3), and a duty under Arizona law to provide free and equal elections. *See, e.g.*, Ariz. Const. art. II, § 21.

Plaintiffs' delay also prejudices Federal Only Voters, because any voter mistakenly removed from the voter rolls *now* would likely have insufficient time to correct the mistake in time to cast her ballot. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) (noting that systematically purging voter rolls 90 days before an election "is when the risk of disfranchising eligible voters is the greatest."). Given Plaintiffs unreasonably delayed

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

seeking injunctive relief (which would now violate federal law if granted, 52 U.S.C.A. § 20507(c)(2)(A)), and their delay prejudices Defendants and Federal Only Voters, laches mandates denial of the MPI.

### B. The *Purcell* Principle Bars Plaintiffs' Request for Injunctive Relief.

The MPI should also be denied under the *Purcell* principle. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (requiring courts to "weigh . . . considerations specific to election cases and its own institutional procedures"). The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *RNC v. DNC*, 589 U.S. 423, 424 (2020); *Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018) ("[T]he Supreme Court has warned us many times to tread carefully where preliminary relief would disrupt a state voting system on the eve of an election.").

Here, Plaintiffs' requested MPI relief would require Defendants to implement new procedures for voter list maintenance *after voting has already begun*, which could cause voters to be erroneously purged with no time to correct the error. Courts applying *Purcell* routinely acknowledge the strain on elections officials prompted by late changes to elections procedures. *See, e.g.*, *Ariz. Dem. Pty. v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) ("[A]s we rapidly approach the election, the public interest is well served by preserving Arizona's existing election laws, rather than by sending the State scrambling to implement and to administer a new procedure for curing unsigned ballots at the eleventh hour."). Notably, the Arizona Supreme Court recently cited to *Purcell* to support maintaining full ballot access for "Affected Voters" where an administrative error registered them as Full Ballot Voters without requiring documentary proof of citizenship and "where there is so little time

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

remaining before the beginning of the 2024 General Election." *Richer v. Fontes*, No. CV-24-0221-SA at 6-7 (Decision Order Sept. 20, 2024), available at https://www.azcourts.gov/Portals/201/ASC-CV240221%20-%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%20-%20FILED%20-%20DECISION%20ORDER.pdf. This case is no different. Given that the election is already underway and there is a significant risk of disenfranchising eligible voters, the *Purcell* principal bars Plaintiffs' request for injunctive relief.

## III.     Plaintiffs Do Not Meet the Preliminary Injunction Standard.

**Standard of Review.** A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard is even higher where, as here, plaintiffs seek a *mandatory* injunction that would alter the status quo by requiring the defendant to do something he is not currently doing. *Stanley v. Univ. of S. Cali.*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory injunctions are "particularly disfavored" and district courts deny them unless the movant demonstrates that "the facts and law clearly favor the moving party." *Id*. Here, Plaintiffs cannot meet the standard for a preliminary injunction, let alone the higher standard for a mandatory injunction. First, they are unlikely to succeed on the merits for each of their claims.

### A.     Plaintiffs Cannot Establish Likely Merits Success.

To prevail on **Count I**, Plaintiffs must show that DHS would perform citizenship verifications if the Defendants would send it the names and birthdates of Federal Only Voters. [FAC, ¶¶ 164-69; MPI at 11-12 (alleging that DHS verifies citizenship based on

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

name and birthdate).] But if DHS requires a specific immigration enumerator or other alien number to verify the citizenship status of a foreign-born person (or, conversely, to notify the Defendants that the foreign-born person's citizenship status could not be verified and so that person might not be a citizen), Count I fails. The Defendants do not generally have access to those enumerators because neither the federal nor the state voter registration form requests that information. [*See* Ex. 1 at 4 (Federal Form); Ex 2 (State Form).]

Plaintiffs claim that the Person Centric Query System ("PCQS") can verify citizenship with only names and birthdates. [MPI at 11-12.] But Plaintiffs are incorrect. They cite to a DHS document, *Privacy Impact Assessment Update for the PCQS (DHS/USCIS/PIA-010(e))*, published on June 8, 2011, [MPI at 12 n. 26], but that DHS document has been retired. [Ex. 3, *Privacy Assessment Update*, Dep't of Homeland Sec. (March 8, 2016) at 1 (expressly stating that "[t]he previously published version of DHS/USCIS/PIA-010 USCIS Person Centric Query (PCQ) Service and its corresponding updates will be retired upon publication of this PIA").][3] The currently-operative DHS/USCIS/PIA-010, provided in Ex. 3., explains that a combination of name, birthdate, *and* applicable number (generally either an "alien number" or social security number) is required for every type of inquiry DHS conducts with PCQS. [Ex. 3, Appx. A, B, and C.][4]

_____

[3] This document is available on DHS's website at https://www.dhs.gov/publication/-dhsuscispia-010-person-centric-query-service. The website notes that the document's appendices were updated in April, 2022.

[4] Specifically, *see* **Ex. 3, Appx. A**, at 20 (Aliens Change of Address Card (AR-11) System); *id*. at 22 (Benefits Biometrics Support System), *id*. at 24 (Central Index System); *id*. at 25 (Computer Linked Application Information Management System 3; *id*. at 27 (Computer Linked Application Information Management System 4; *id*. at 29 (Customer Profile Management System; *id*. at 31 (Enterprise Citizenship and Information Services Centralized Operational Repository – Central Index System); *id*. at 31 (Enterprise

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

Plaintiffs also cite to what they claim is a portion of the Department of State's Foreign Affairs Manual and assert that it supports the proposition that DHS can review citizenship information with only a name and birthdate. [MPI at 12 n.26.] But the portion of the document cited, 9 FAM 202.2-5(C)(c), concerns confirming that an applicant has paid the "Form I-131A" fee when requesting a "boarding foil" (a document allowing someone to travel to the United States if their Lawful Permanent Resident Card has been lost, stolen, or damaged). It has nothing to do with citizenship verification inquiries.

Plaintiffs admit that DHS's Systematic Alien Verification for Entitlements ("SAVE") requires alien numbers for citizenship inquiries. [FAC, ¶ 96.] And Plaintiffs have alleged no additional system, other than PCQS, that would enable DHS to perform citizenship verifications. But as shown, PCQS requires knowledge of some number—generally, either a full social security number or an alien number—to conduct such inquiries. And the Defendants generally do not have access to those numbers. As a result, it would be futile for Defendants to send lists of Federal Only Voters, with their birth dates, to DHS, and

---

Citizenship and Information Services Centralized Operational Repository – Computer-Linked Application Management Information System CLAIMS 3 Local Area Network); *id.* at 35 (Enterprise Citizenship and Information Services Centralized Operational Repository-Reengineered Naturalization Applications Casework Systems); *id.* at 37 (Enterprise Citizenship and Information Services Centralized Operational Repository – Refugees, Asylum, and Parole System); *id.* at 39 (FD 258 Fingerprint Tracking System); *id.* at 41 (Marriage Fraud Amendment System); *id.* at 43 (National File Tracking System); *id.* at 44 (Refugees, Asylum, and Parole System); *id.* at 46 (USCIS Electronic Immigration System); *id.* at 48-49 (USCIS National Appointment Scheduling System). *See also* **Ex. 3, Appx. B**, at 51 (Arrival and Departure Information System); *id.* at 53 (Automated Biometric Identification System); *id.* at 55 (Automated Targeting System – Passenger); *id.* at 57 (Enforcement Integrated Database); *id.* at 59 (Student and Exchange Visitor Information System) (requires the SEVIS number); *id.* at 61 (CBP TECS). *See also* **Ex. 3, Appx. C**, at 63 (American Association of Motor Vehicle Administrators); *id.* at 65 (Consular Consolidated Database); *id.* at 66 (Executive Office for Immigration Review).

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

courts do not construe laws to require futile results. *Church of Scientology of California v. U.S. Dep't of Just.*, 612 F.2d 417, 422 (9th Cir. 1979). And it does no good to argue that DHS must return citizenship information no matter what data is provided. DHS is entitled to specify what data it needs to conduct the inquiry, and an identifying number, coupled with a name and date of birth, is a way to ensure that DHS is providing an accurate verification.

While Plaintiffs point to South Carolina and Florida, which have sent names and birthdates of their voters to DHS, [MPI at 12-13], that does not help them. Two *requests* to DHS do not demonstrate that DHS can fulfill the request; and, as just shown, it cannot. Notably, although Plaintiffs provide the request letters from South Carolina and Florida as exhibits to the MPI, they do not provide any responses from DHS indicating that DHS will do what was requested. This is because DHS is not capable of performing citizenship verifications with only names and birthdates as search terms.

Count I fails as a matter of law, and so Plaintiffs do not enjoy likely merits success as to it. And their hoped-for relief in the MPI is a systematic voter purge within 90 days of a federal election, in violation of the NVRA. This Court should deny the MPI as to Count I.

**Counts II, III, and V**, which allege different theories for why Defendants should send the names and birthdates of Federal Only Voters to DHS, fail for the same reason as Count I: DHS requires an identifying number, in addition to names and birthdates, to conduct citizenship inquiries; and, the MPI relief sought would result in a systematic purge of voters. Each also fail for additional reasons.

**Count II** alleges that A.R.S. § 16-121.01(D)(5) requires Defendants to compare Federal Only Voters' records with "any other federal database," and that a citizenship

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

inquiry made pursuant to 8 U.S.C. §§ 1373 and 1644 "constitutes" a federal database. [FAC, ¶¶171-72.] But PCQS is not a database. [Ex. 3, at 1 ("PCQS does not store data").]

**Count III** alleges that (1) A.R.S. § 16-165(K) requires Defendants to "review relevant . . . federal databases . . . to confirm information obtained that requires cancellation of registrations"; (2) a registrant's choice to register as federal law allows, *i.e.*, without providing documentary proof of citizenship, provides "information about lack of citizenship" which may require cancellation; and, (3) citizenship inquiries to DHS "constitute[]" a "federal database" and so § 16-165(K) requires the Defendants to make those inquiries. [FAC, ¶¶ 178-82.] But as just noted, PCQS is not a database. And because federal law allows registrants to attest to their citizenship under penalty of perjury without providing documentary proof, *Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013), such registrations, without more, cannot provide "information" indicating lack of citizenship.

**Count V** alleges that citizenship inquiries using SAVE violates the NVRA's uniformity requirement if PCQS is not also used. [FAC, ¶¶ 191-99.] But as explained above, Plaintiffs lack statutory standing to bring a NVRA claim. [*See supra*, at 8-9.] And this Court already held that citizenship inquiries utilizing SAVE do *not* violate the NVRA's uniformity requirement. *Mi Familia Vota*, No. CV-24-00509-PHX-SRB, 2024 WL 862406, at *42-43.

**Count IV**, meanwhile, alleges that A.R.S. § 16-143(A) requires that Defendants "provide" and "send" information about Federal Only Voters to the Attorney General. [FAC, ¶ 190; MPI at 13.] But the law requires that Defendants must "make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship . . . ." There is no requirement to "send" anything. And

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

Plaintiffs have not alleged that the Attorney General has ever asked for the list and been denied. Section 16-143(A) does state that Defendants "shall provide, on or before October 31, 2022, the applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship." [FAC, ¶ 189.] But this statute was not in effect until *after* that October 31 deadline, and so Defendants were never subject to that requirement. [Doc. 17, Answer, at ¶ 189 (explaining the effective date of the statute and providing relevant citations).] Plaintiffs do not enjoy likely merits success as to Count IV.

### B.     <u>Plaintiffs Fail to Demonstrate Irreparable Harm.</u>

Plaintiffs fail to establish irreparable harm under either of their theories for how Defendants' actions injure them. ***First***, Plaintiffs fail to allege that their votes will be *weighed* differently than any other votes, and so do not allege a cognizable vote dilution injury. *See supra,* at 2-3. ***Second***, Plaintiffs fail to establish harm to Strong Communities resources and mission. *See supra,* at 3-4. Because Plaintiffs fail to establish that they will be injured at all, they cannot establish irreparable harm.

### C.     <u>The Balance of Hardships and Public Interest Favor Denying the MPI.</u>

Plaintiffs fail to establish *any* injury, and so the balance of equities cannot tip their way. But granting an injunction while voting is underway would present an administrative burden to Defendants and risk disenfranchising voters. Accordingly, the balance of equities tips in the Defendants' favor and the public interest favors denying the MPI.

### <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' MPI.

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

RESPECTFULLY SUBMITTED this 27th day of September, 2024.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: */s/Joseph E. La Rue*
THOMAS P. LIDDY
JOSEPH E. LA RUE
JACK L. O'CONNOR III
ROSA AGUILAR
Deputy County Attorneys
*Attorneys for the Maricopa County*
*Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served a copy by email on all counsel listed below, with a courtesy copy to the Honorable Susan Brnovich, as follows.

Honorable Susan Brnovich
District Court Judge
Brnovich_chambers@azd.uscourts.gov

James K. Rogers
Senior Counsel
AMERICAN FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue, SE #231
Washington, D.C. 20003
James.Rogers@aflegal.org

Jennifer J. Wright
JENNIFER WRIGHT ESQ., PLC
4350 East Indian School Rd., Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com
*Attorneys for Plaintiffs*

Celeste Robertson
Apache County Attorney's Office
245 West 1st South
St. Johns, AZ 85936
crobertson@apachecountyaz.gov
*Attorneys for Apache County Defendants*

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

Paul Correa
Cochise County Attorney's Office
P.O. Drawer CA
Bisbee, AZ 85603
pcorrea@cochise.az.gov
*Attorneys for Cochise County Defendants*

Rose Winkeler
Flagstaff Law Group
702 N. Beaver St.
Flagstaff, AZ 86001
rose@flaglawgroup.com
*Attorney for Coconino County Defendants*

Jessica Scibelli
Joe Alba
Gila County Attorney's Office
1400 East Ash Street
Globe, AZ 85501
jscibelli@gilacountyaz.gov
jalbo@gilacountyaz.gov
*Attorney for Gila County Defendants*

Jean Roof
Graham County Attorney's Office
800 West Main Street
Safford, AZ 85546
jroof@graham.az.gov
*Attorneys for Graham County Defendants*

Gary Griffith
Scott Adams
Jeremy Ford
Greenlee County Attorney's Office
P.O. Box 1717
Clifton, AZ  85533
ggriffith@greenlee.az.gov
sadams@greenlee.az.gov
jford@greenlee.az.gov
*Attorneys for Greenlee County Defendants*

. . .

. . .

19

Rachel Shackelford
La Paz County Attorney's Office
1320 Kofa Avenue
Parker, AZ 85344
rshackelford@lapazcountyaz.org
*Attorneys for La Paz County Defendants*

Ryan Esplin
Jason Mitchell
Mohave County Attorney's Office Civil Division
P.O. Box 7000
Kingman, AZ 86402-7000
EspliR@mohave.gov
MitchJ@mohave.gov
*Attorneys for Mohave County Defendants*

Jason Moore
Navajo County Attorney's Office
P.O. Box 668
Holbrook, AZ 86025-0668
jason.moore@navajocountyaz.gov
*Attorneys for Navajo County Defendants*

Daniel Jurkowitz
Ellen Brown
Javier Gherna
Pima County Attorney's Office
32 N. Stone #2100
Tucson, AZ  85701
Daniel.Jurkowitz@pcao.pima.gov
Ellen.Brown@pcao.pima.gov
Javier.Gherna@pcao.pima.gov
*Attorneys for Pima County Defendants*

. . .

. . .

. . .

. . .

. . .

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA  85004

Craig Cameron
Scott Johnson
Jim Mitchell
Ian Daranyi
Christine Roberts
Pinal County Attorney's Office
30 North Florence Street
Florence, AZ 85132
craig.cameron@pinal.gov
scott.m.johnson@pinal.gov
james.mitchell@pinal.gov
ian.daranyi@pinal.gov
Christine.roberts@pinal.gov
*Attorneys for Pinal County Defendants*

William Moran
Robert May
George Silva
Santa Cruz County Attorney's Office
2150 North Congress Drive, Suite 201
Nogales, AZ 85621-1090
wmoran@santacruzcountyaz.gov
rmay@santacruzcountyaz.gov
gsilva@santacruzcountyaz.gov
*Attorneys for Santa Cruz County Defendants*

Thomas. M. Stoxen
Michael J. Gordon
Yavapai County Attorney's Office
225 E. Gurley Street
Prescott, AZ 86301
thomas.stoxen@yavapaiaz.gov
Michael.gordon@yavapaiaz.gov
ycao@yavapaiaz.gov
*Attorneys for Yavapai County Defendants*

Bill Kerekes
Jessica Holzer
Yuma County Attorney's Office
198 South Main Street
Yuma, AZ 85364
bill.kerekes@yumacountyaz.gov
Jessica.holzer@yumacountyaz.gov
*Attorneys for Yuma County Defendants*

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004

D. Andrew Gaona
Austin C. Yost
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
agaona@cblawyers.com
ayost@cblawyers.com

Lalitha D. Madduri
Christopher D. Dodge
Tyler L. Bishop
Renata O'Donnell
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
lmadduri@elias.law
cdodge@elias.law
tbishop@elias.law
rodonnell@elias.law
*Attorneys for Proposed Intervenor-Defendants*
*Voto Latino and One Arizona*

Roy Herrera
Daniel A. Arellano
HERRERA ARELLANO LLP
1001 North Central Avenue, Suite 404
Phoenix, Arizona 85004
roy@ha-firm.com
daniel@ha-firm.com

Alexis E. Danneman
PERKINS COIE LLP
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
ADanneman@perkinscoie.com
DocketPHX@perkinscoie.com

. . .

. . .

. . .

. . .

Jonathan P. Hawley
Heath L. Hyatt
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
JHawley@perkinscoie.com
HHyatt@perkinscoie.com
*Attorneys for Proposed Intervenor*
*Democratic National Committee*

*/s/ M. Delgado*

MARICOPA COUNTY
ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
222 N. CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004