**AMERICA FIRST LEGAL FOUNDATION**

James K. Rogers (No. 027287)
    *Senior Counsel*
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

**JENNIFER WRIGHT ESQ., PLC**

Jennifer J. Wright (No. 027145)
4350 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

STRONG COMMUNITIES FOUNDA-
TION OF ARIZONA INCORPORATED,
and YVONNE CAHILL;

            Plaintiffs,

    v.

STEPHEN RICHER, in his official capac-
ity as Maricopa County Recorder; et al.

Defendants.

No. CV-24-02030-PHX-SMB

**THE PLAINTIFFS' MOTION FOR
A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY IN-
JUNCTION**

# Table of Contents

**Introduction**.................................................................................................................. 1

**Factual and Legal Background** .................................................................................. 2

I.    Arizona's Federal-Only Voters .............................................................................. 3

II.   Voter List Maintenance Requirements .................................................................. 4

III.   Foreign citizens *do* register to vote. .................................................................... 6

IV.   SAVE, SSA, and EVVE are insufficient to verify citizenship definitively. .................... 7

   A.   SAVE ............................................................................................................... 7

   B.   SSA and EVVE ............................................................................................... 9

V.   Federal Law Entitles County Recorders to Submit Citizenship Inquiries to DHS .......... 10

VI.   Multiple States have already submitted 1373/1644 Requests to DHS ......................... 12

VII.   County Recorders are obligated to provide to the Arizona Attorney General a list of
Federal-Only Voters ................................................................................................... 13

VIII.   Pre-Litigation Efforts to Request Compliance as to Maricopa County ...................... 14

IX.   Pre-Litigation Efforts to Request Compliance as to the Other Counties ..................... 15

**Legal Standard**............................................................................................................**15**

**Argument** .....................................................................................................................**16**

I.   The Plaintiffs have standing.................................................................................. 16

II.   The Plaintiffs are likely to succeed on the merits. ................................................ 19

   A.   The   Defendants'   current   practices   violate   the   NVRA's   uniformity   and
   nondiscrimination requirements.............................................................................. 19

   B.   The Defendants are violating Arizona's list maintenance requirements...................... 21

III.   The remaining requirements for injunctive relief are satisfied ................................ 22

   A.   The Plaintiffs are likely to suffer irreparable harm absent an injunction.................... 22

   B.   The balance of harms and public interest support injunctive relief ........................... 24

IV.   The Plaintiffs request a Temporary Restraining Order............................................ 25

# TABLE OF AUTHORITIES

Page(s)

## US SUPREME COURT CASES

*Almendarez–Torres v. United States*, 523 U.S. 224 (1998) ...................................................... 7

*Arizona v. Inter Tribal Council of Arizona, Inc. ("Inter Tribal Council")*, 570 U.S. 1 (2013) ......... 3, 4

*Arizona v. United States*, 567 U.S. 387 (2012) ................................................................ 11

*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582 (2011) ................................................... 11

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423 (1974) ...................................................................... 25

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................................................. 18, 19

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ........................................ 17

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ....................................................... 16, 17, 25

*Reynolds v. Sims*, 377 U.S. 533 (1964) ........................................................................ 16

*Rumsfeld v. FAIR*, 547 U.S. 47 (2006) ......................................................................... 16

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017) ........................................................... 10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ..... 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................................. 15

## FEDERAL CASES

*Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015) ............................................................... 6

*Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. 2017) ........................................... 24

*Arizona Recovery House Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990 (D. Ariz. 2020) ......................................................................................... 23, 24

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ...................................................... 15, 16, 23

*BST Holdings, LLC. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ........................................................ 25

*California v. Azar, 911 F.3d 558, 581 (9th Cir. 2018)*................................................................... 24

*City & County of San Francisco v. United States Citizenship & Immigration Services*, 981 F.3d 742
    (9th Cir. 2020) ........................................................................................................................ 24

*DNC v. Reagan*, 329 F. Supp. 3d 824 (D. Ariz. 2018)................................................................... 16

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021).............................................. 24

*Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) .................................................... 16

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ....................................................................... 25

*Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012)................................................... 17

*League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995) ....................... 8

*League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014).................23, 24

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016).......................... 25

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ............................................................... 6

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ...............................................................23, 24

*Mi Familia Vota v. Fontes* ("*Mi Familia*"), --- F.Supp.3d ----, 2024 WL 862406 (D. Ariz. Feb.
    29, 2024).........................................................................................................9, 14, 16, 17, 20

*N. Carolina State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, 2018 WL
    3748172, at *11 (M.D.N.C. Aug. 7, 2018) .......................................................................... 23

*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013)............................................. 25

*Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508 (9th Cir. 1994) ............................. 23

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012)............................................................. 22

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) ................................................................... 7

*Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006) ............................................... 20

*Ram v. INS*, 243 F.3d 510 (9th Cir. 2001) ................................................................................... 7

*Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893 (D. Ariz. 2019) .........................................25

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) ..............................................................................25

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012) ....................................................6

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) .........................................................18

*Williams v. Salerno*, 792 F.2d 323 (2d Cir. 1986).........................................................................22

**US CONSTITUTIONAL PROVISIONS**

Article VI ......................................................................................................................................11

**STATE CONSTITUTIONAL PROVISIONS**

Arizona Article VII § 2......................................................................................................................1

**FEDERAL STATUTES**

8 U.S.C. § 1101 ..............................................................................................................................1

8 U.S.C. § 1373 ...............................................................................................................10, 11, 12, 20

8 U.S.C. § 1401 ............................................................................................................................10

8 U.S.C. § 1644 ................................................................................................................11, 12, 20

18 U.S.C. § 1015 ...........................................................................................................................1

42 U.S.C. § 1320b-7.......................................................................................................................8

52 U.S.C. § 20505 ..........................................................................................................................3

52 U.S.C. § 20507...............................................................................................................6, 12, 20

52 U.S.C. § 21083............................................................................................................1, 4, 5, 12

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Omnibus
    Consolidated Appropriations Act,  1997, Pub.  L. 104–208, 110 Stat 3009 (1996).........10

Immigration Reform and Control Act of 1986 (IRCA), Pub. L.  No. 99–603, 100 Stat
    3359 (1986)....................................................................................................................7

National Voter Registration Act of 1993, PL 103–31, May 20, 1993, 107 Stat 77 ................... 3

Personal Responsibility and Work Opportunity Act of 1996 (PRWORA). Pub. L. 104–193, 110 Stat 2105  (1996) ..................................................................................................... 11

**STATE STATUTES**

A.R.S. 16-101 .................................................................................................................... 1

A.R.S. 16-121.01 ...................................................................................................... 4, 5, 12, 21

A.R.S. 16-143 ........................................................................................... 4, 13, 14, 15, 22, 26

A.R.S. 16-161 .................................................................................................................... 3

A.R.S. 16-165 ............................................................................................. 4, 5, 14, 21, 22

A.R.S. 16-166 .................................................................................................................... 3

A.R.S. 121-01 .............................................................................................................. 1, 21

**FEDERAL RULES**

Federal Rules of Civil Procedure Rule 65 ................................................................... 1

Federal Rules of Evidence Rule 201 ........................................................................... 6

**OTHER AUTHORITIES**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) ........................................................................... 23

Arizona Secretary of State's Office, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://perma.cc/N5HW-MAL3 .............................................................. 3

Arizona Secretary of State's Office, *Federal Only Registrants as of July 1st, 2024*, (Apr. 1, 2024), https://perma.cc/L2CD-RWPB ................................................................ 3

*Arizona Voter Registration Instructions and Form* at 3, Arizona Secretary of State's Office, https://perma.cc/B8J4-XE89 ................................................................... 20

*Arizona: Trump 47%, Biden 40%*, Rasmussen Reports, (June 14, 2024), https://perma.cc/Y68S-Q7XS ................................................................................. 1

Deirdre Bardolf, *Oregon reveals hundreds of non-citizens were mistakenly registered to vote since 2021*, New York Post, (Sep. 14, 2024), https://perma.cc/Q7V6-ZQMG ................................. 7

Dep't of State, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c), (Aug. 2, 2024), https://perma.cc/C8QM-H5Z4 ......................................................................... 12

*Election Integrity: Are States Doing Enough?*, Rasmussen Reports, (Aug. 28, 2024), https://perma.cc/EXE5-W7UL ........................................................................ 2

Eric Daugherty. *DeSantis demands info on non-citizens registered to vote from federal government*, Florida News, (Sep. 10. 2024), https://perma.cc/KXC9-FP37, also available at https://tinyurl.com/27rzej62. ........................................................................ 13

*Fair and Secure Elections*, Office of Congressman Ralph Norman, (Aug. 8, 2024), https://perma.cc/YM2R-NAYL .................................................................... 13

*Governor Abbott Announces Over 1 Million Ineligible Voters Removed From Voter Rolls* ("Texas Press Release"), Office of the Texas Governor, (Aug. 26, 2024), https://perma.cc/SPG8-GWPB .................................................................... 6

Maricopa County Elections, *Historical Voter Registration Totals, April 1, 2024* (2024), https://perma.cc/KY7Q-3BNM .................................................................... 4

Maricopa County Elections, *Historical Voter Registration Totals, July 1, 2024* (2024), https://perma.cc/4VLT-M5JF .................................................................... 3

*Most Suspect Non-Citizens Are Illegally Registered to Vote*, Rasmussen Reports, (Aug 12, 2024), https://perma.cc/F9NK-DSRF .................................................................... 2

*NumberUSA August 2024 Arizona*, Rasmussen Reports, (Aug 2024), https://perma.cc/U74W-YCR9 .................................................................... 1

*Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, Dep't of Homeland Sec. (June 8, 2011), https://perma.cc/32CZ-467V. ..................... 12

*Register to Vote in your State by Using this Postcard Form and Guide* at 3-4, U.S. Election Assistance Commission, https://perma.cc/7L5H-RCFR ........................................ 9, 20

*Secretary LaRose Refers Evidence of Non-Citizen Voter Registrations to Ohio Attorney General for Potential Prosecution*, Ohio Secretary of State's Office, (Aug. 21, 2024), https://perma.cc/H3TZ-YMVS ........................................................................ 7

*Secretary of State Wes Allen Implements Process to Remove Noncitizens Registered to Vote in Alabama*, Alabama Secretary of State's Office, (Aug. 13, 2024), https://perma.cc/SD8M-GNVR ........................................................................... 7

*Tutorial: Introduction to SAVE and the Verification Process for SAVE Users*, Dep't of Homeland Sec., (Mar. 2024), https://perma.cc/MS43-GBWM ...................................... 8

Va. Exec. Order No. 35 at 2 (2024), *available at* https://perma.cc/JU3V-J5UE ..................... 7

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Strong Communities Foundation of Arizona, Inc. (EZAZ.org) and Yvonne Cahill (collectively, the "Plaintiffs") respectfully move for a preliminary injunction and temporary restraining order requiring the Defendants to comply with their duties to conduct proper voter list maintenance.

## Introduction

It is against State and federal law for foreign citizens[1] to register to vote.[2] Sixty percent of Arizonans "are concerned that cheating will affect the outcome of the 2024 election."[3] ECF No. 12 "FAC" ¶ 2. In a statistically valid and representative survey from August 2024 of likely voters in Arizona, 1.9 percent of likely voters said they are not U.S. citizens.[4] An additional 1.18 percent responded "Not Sure" to the question about citizenship.[5] Therefore, collectively, just over three percent of likely Arizona voters in the survey disclaimed citizenship. Many recent electoral races in Arizona have been decided by less than one percent. FAC ¶4.

In 2022, the Arizona Legislature adopted stricter voter list maintenance requirements for County Recorders. *See, e.g.*, 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); 16 A.R.S. §§ 121.01, 143, and 165. The Legislature adopted these requirements to ensure that County Recorders remove foreign citizens from voter lists and to allay Arizonans' reasonable concerns about foreign citizen voting. Federal law also requires State and local election officials, including County Recorders, to perform voter list maintenance to ensure that "voters ... who are not eligible to vote [in federal elections] are removed." 52 U.S.C. § 21083(a)(2)(B)(ii); *see also* 52 U.S.C. § 21083(a)(2)(A) and (a)(4)(A). EZAZ.org has expended considerable time and resources educating voters and legislators about these requirements. Exhibit A, Declaration of Merissa Hamilton ("Hamilton Decl.") ¶ 8, 12, 17-18.

---

[1] In this Motion, the term "foreign citizen" means "any person not a citizen or national of the United States," which is the defined meaning for the term "alien" in federal law. 8 U.S.C. § 1101(a)(3).

[2] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine).

[3] *Arizona: Trump 47%, Biden 40%*, RASMUSSEN REPORTS, (June 14, 2024), https://perma.cc/Y68S-Q7XS.

[4] *NumberUSA August 2024 Arizona*, RASMUSSEN REPORTS, (Aug 2024), https://perma.cc/U74W-YCR9.

[5] *Id.*

Puzzlingly, the Defendants have ignored these requirements. They have failed to take the actions required by law to ensure that foreign citizens are removed from voter rolls. These failures cause voters to lose confidence in the integrity of our election system. For example, a recent national survey of likely voters found that 52% believe election officials are either doing nothing to prevent foreign citizens from voting or are not doing enough.[6] FAC ¶ 10. Only 26% believed election officials have effective plans to deal with foreign citizen voting. *Id.* Another recent survey found "that 55% of Likely U.S. Voters believe it is likely that non-citizens are illegally registered to vote in the state where they live, including 32% who say it's Very Likely. Thirty-seven percent (37%) don't think it's likely there are non-citizens registered to vote in their state, including 14% who consider it Not At All Likely."[7] FAC ¶ 11.

This lawsuit seeks to restore public trust in our State's electoral system by holding the Defendants accountable for their failures and to ensure that the list maintenance required by the law—and common sense—is performed.

The Plaintiffs seek a temporary restraining order (TRO) and a preliminary injunction (PI) requiring the Defendants to conduct uniform and nondiscriminatory voter list mainte-nance by submitting a list of their Federal-Only Voters to the U.S. Department of Homeland Security to verify the citizenship and immigration status of these registrants.

A TRO is appropriate to prevent irreversible harm while the Plaintiffs' request for a preliminary injunction is decided. Such a preliminary injunction is also warranted here since the Defendants' unlawful list maintenance practices violate statutory provisions and the con-stitutional rights of the Plaintiffs, will cause irreparable harm, and the balance of harms and public interest favor enjoining these illegal practices.

### Factual and Legal Background

Because it is illegal for any foreign national to register to vote, or to vote, there is no reason for a foreign national to be on voter rolls in this State.

---

[6] *Election Integrity: Are States Doing Enough?*, RASMUSSEN REPORTS, (Aug. 28, 2024), https://perma.cc/EXE5-W7UL.
[7] *Most Suspect Non-Citizens Are Illegally Registered to Vote*, RASMUSSEN REPORTS, (Aug 12, 2024), https://perma.cc/F9NK-DSRF.

I.      **Arizona's Federal-Only Voters**

Arizona law requires that persons registering to vote provide documentary proof of citizenship (DPOC). A.R.S. § 16-166(F). However, the U.S. Supreme Court has held the State may not impose these voter registration requirements on registrants who use the federal voter registration form. *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*Inter Tribal Council*"), 570 U.S. 1 (2013). Because the National Voter Registration Act (NVRA) requires States to "accept and use," 52 U.S.C. § 20505(a)(1), the federal form issued by the Election Assistance Commission (EAC),[8] and because that form does not require DPOC, the Supreme Court held in *Inter Tribal Council* that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form." *Inter Tribal Council*, 570 U.S. at 15. However, because Arizona may establish its own requirements for state and local elections, and because State law requires DPOC, registering to vote in state and local elections still requires registrants to provide DPOC. Therefore, Arizona has a unique bifurcated system of voter registration whereby voters who have registered without providing DPOC (Federal-Only Voters) may only vote in federal races.

According to the Arizona Secretary of State's Office (AZSOS), as of April 1, 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[9] As of July 1, 2024, the number of Federal-Only Voters was 42,301.[10] This means that the number of Federal-Only Voters increased by 7,028—an increase of nearly 20% in just three months.

The number of Federal-Only Voters in each Defendant County increases each month. For example, on July 1, 2024, when Maricopa County disclosed its A.R.S. § 16-161(B) report, there were 26,108[11] Federal-Only Voters. This is an increase of 4,503 from the 21,595

---

[8] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). The Help America Vote Act transferred this authority to the EAC.

[9] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://perma.cc/N5HW-MAL3.

[10] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of July 1st, 2024*, (Apr. 1, 2024), https://perma.cc/L2CD-RWPB.

[11] MARICOPA COUNTY ELECTIONS, *Historical Voter Registration Totals, July 1, 2024* (2024), https://perma.cc/4VLT-M5JF.

Federal-Only Voters reported on April 1, 2024.[12] This means that in just three months, the number of Federal-Only Voters in Maricopa County increased by an astounding 21%.

## II.   Voter List Maintenance Requirements

The U.S. Supreme Court also held in *Inter Tribal Council* that the NVRA "does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility." . *Inter Tribal Council*, 570 U.S. at 15(cleaned up). Further, the Court noted that the NVRA only requires states to register eligible persons. *Id.* Nor does the Court's decision in *Inter Tribal Council* prohibit States from engaging in the voter list maintenance procedures required by the Help America Vote Act (HAVA), 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A), such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of the EAC's federal voter registration form, the U.S. Supreme Court acknowledged that States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status. In 2022, the Arizona Legislature enacted, and Governor Ducey signed, H.B. 2492 and H.B. 2243,[13] which, among other things, amended Arizona's election statutes to impose stricter voter list maintenance requirements for Federal-Only Voters. Those requirements mandate that County Recorders perform monthly list maintenance to confirm the citizenship of all Federal-Only Voters. A.R.S. § 16-165. Those requirements also require County Recorders to perform list maintenance within ten days for all newly registered Federal-Only Voters to verify citizenship. A.R.S. § 16-143(D). The Defendants have failed to perform this required list maintenance.

One obstacle to performing such list maintenance is that Arizona Secretary of State Adrian Fontes has neglected to obtain access for list maintenance to the three databases that the statutes specifically require be consulted to verify citizenship: the U.S. Department of Homeland Security's (DHS) Systematic Alien Verification for Entitlements (SAVE), A.R.S.

---

[12] MARICOPA COUNTY ELECTIONS, *Historical Voter Registration Totals, April 1, 2024* (2024), https://perma.cc/KY7Q-3BNM.
[13] 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492).

§§ 16-121.01(D)(3) and -165(I); the Social Security Administration (SSA) database, A.R.S. §§ 16-121.01(D)(2) and -165(H); and the National Association for Public Health Statistics and Information Systems (NAPHSIS) electronic verification of vital events system (EVVE). A.R.S. §§ 16-121.01(D)(4) and -165(J).

However, State and federal law impose additional list maintenance obligations beyond just consulting these three databases. State law also requires that "[w]ithin ten days after receiving an application for registration on a form produced by the United States election assistance commission that is not accompanied by satisfactory evidence of citizenship, the county recorder or other officer in charge of elections *shall use all available resources* to verify the citizenship status of the applicant...." A.R.S. § 16-121.01(D) (emphasis added). State law also requires that County Recorders "at a minimum shall compare the information available on the application for registration with the following, provided the county has access.... Any other ... federal database ... to which the county recorder or officer in charge of elections has access...." A.R.S. § 16-121.01(D) and (D)(5) (emphasis added). Additionally, for all registrants, State law requires that "[t]o the extent practicable, the county recorder shall review relevant ... federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations pursuant to this section." A.R.S. § 16-165(K).

Furthermore, federal law requires "local election official[s]" to "perform list maintenance" of their voter rolls and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed." 52 U.S.C. § 21083(a)(2)(A) and (a)(2)(B)(ii). It also requires that election officials "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A). Because it is illegal for foreign citizens to register to vote in federal elections, any foreign citizen who is registered to vote is ineligible. Therefore, federal law requires County Recorders to "perform list maintenance" and to engage in "reasonable efforts" to ensure that foreign citizens are not registered to vote.

The NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" must be "uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1). Election officials violate these requirements when their voter-roll maintenance singles out one group of voters for different treatment. *See, e.g., Mi Familia Vota v. Fontes* ("*Mi Familia*"), --- F.Supp.3d ----, 2024 WL 862406, at *41 (D. Ariz. Feb. 29, 2024) (provision of H.B. 2243 under which "[o]nly naturalized citizens would be subject to scrutiny" violated NVRA's uniformity and nondiscrimination requirements); *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (voter list maintenance targeted at removing foreign citizens "probably ran afoul" of the NVRA's uniform and nondiscriminatory provision because it was "likely that the properly registered citizens who would be required to respond and provide documentation would be primarily newly naturalized citizens").

The Defendants currently submit citizenship checks to DHS only for Federal-Only Voters who have provided an alien number or other DHS numeric identifier but not for other Federal-Only Voters. FAC ¶¶ 91-105, 192-199. However, DHS has the ability to look up citizenship information for *any* individual using only that person's name and date of birth through DHS's PCQS database. *Infra* at 11-12 and note 26; FAC ¶¶ 127-29, 192-99.

## III.    Foreign citizens *do* register to vote.

The possibility of foreign citizens registering to vote is not just hypothetical. States and local election officials who proactively search for foreign citizens who are registered to vote find them. For example, since 2021, the State of Texas has removed over 6,500 potential foreign citizens from its voter rolls.[14] Of those 6,500 foreign citizens, 1,930 actually voted.[15] Between January 16, 2024 and August 13, 2024, the office of Alabama Secretary of State Wes Allen has identified and purged from voter rolls 3,251 foreign citizens who were registered

---

[14] FAC ¶¶ 84-85; *Governor Abbott Announces Over 1 Million Ineligible Voters Removed From Voter Rolls* ("Texas Press Release"), OFFICE OF THE TEXAS GOVERNOR, (Aug. 26, 2024), https://perma.cc/SPG8-GWPB. Courts "take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201), including "press release[s]." *Arce v. Douglas*, 793 F.3d 968, 975 n.3 (9th Cir. 2015).

[15] FAC ¶¶ 84-85; Texas Press Release.

to vote in the State.[16] On August 21, 2024, Ohio Secretary of State Frank LaRose announced that his office had identified 597 foreign citizens registered to vote in Ohio and that 138 had actually voted.[17] On August 7, 2024, Virginia Governor Glenn Youngkin issued an executive order requiring more thorough list maintenance procedures because "between January 2022 and July 2024, records indicate we removed 6,303 non-citizens from the voter rolls."[18] Recently, "the Oregon Department of Transportation found that 306 non-citizens statewide were registered to vote and two have cast ballots in elections since 2021."[19]

Arizona is not immune to this same problem. As explained above on page 1, a recent survey showed that over three percent of likely voters in Arizona appear to be foreign citizens.

**IV.   SAVE, SSA, and EVVE are insufficient to verify citizenship definitively.**

Even if the Defendants had access to SAVE, SSA, and EVVE for list maintenance, these three databases would be insufficient to verify the citizenship of all Federal-Only Voters definitively. Only consulting SAVE, SSA, and EVVE to verify citizenship, without more, is insufficient to fulfill a County Recorder's list maintenance duties under State and federal law.

**A.   SAVE**

SAVE was created by the Immigration Reform and Control Act of 1986 (IRCA).[20] The heading for the section that created SAVE explains its purpose: "VERIFICATION OF IMMIGRATION STATUS OF ALIENS APPLYING FOR BENEFITS UNDER CERTAIN PROGRAMS."[21] As the Ninth Circuit explained, Congress created SAVE to "set forth specific procedures to verify alien eligibility for public benefits." *Peters*, 853 F.2d at 700 n.3.

---

[16] FAC ¶ 86; *Secretary of State Wes Allen Implements Process to Remove Noncitizens Registered to Vote in Alabama*, ALABAMA SECRETARY OF STATE'S OFFICE, (Aug. 13, 2024), https://perma.cc/SD8M-GNVR.

[17] FAC ¶ 87; *Secretary LaRose Refers Evidence of Non-Citizen Voter Registrations to Ohio Attorney General for Potential Prosecution*, OHIO SECRETARY OF STATE'S OFFICE, (Aug. 21, 2024), https://perma.cc/H3TZ-YMVS.

[18] FAC ¶ 88; Va. Exec. Order No. 35 at 2 (2024), *available at* https://perma.cc/JU3V-J5UE.

[19] Deirdre Bardolf, *Oregon reveals hundreds of non-citizens were mistakenly registered to vote since 2021*, NEW YORK POST, (Sep. 14, 2024), https://perma.cc/Q7V6-ZQMG.

[20] Pub. L. No. 99–603, § 121, 100 Stat 3359 (1986); *see also Peters v. United States*, 853 F.2d 692, 700 n. 9 (9th Cir. 1988).

[21] IRCA § 121; *Ram v. INS*, 243 F.3d 510, 514 n.3 (9th Cir. 2001) ("a statute's title and a section's heading may be used to interpret its meaning" (citing *Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998)).

The Central District of California also explained that SAVE "is an existing federal eligibility system used to verify status for various federal-state cooperative programs such as the Aid to Families with Dependent Children ("AFDC"), Food Stamps, Medicaid and Unemployment Compensation programs under which eligibility is dependent on lawful immigration status." *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755, 770 (C.D. Cal. 1995).

A critical design flaw hobbles SAVE: The system requires at least one of the following DHS-specific "numeric identifier[s]": "Alien / USCIS Number (A-Number)," "Form 1-94, Arrival/Departure Record Number," "Student and Exchange Visitor Information System (SEVIS) ID number," "Naturalization / Citizenship Certificate Number," "Card / 1-797 Receipt Number," "Visa Number," or "Foreign Passport Number (if entered along with a U.S. immigration enumerator)."[22] This is no surprise, as providing a DHS-specific numeric identifier (hereinafter referred to as an "alien number") for SAVE is a statutory requirement. IRCA requires that foreign citizens applying for government benefits present their "alien registration documentation or other proof of immigration registration from the Immigration and Naturalization Service that *contains the individual's alien admission number or alien file number (or numbers if the individual has more than one number)*." IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(2)(A) (emphasis added). Once a foreign citizen applying for benefits has provided immigration documents containing an alien number, IRCA requires that "the State shall utilize the individual's *alien file or alien admission number* to verify with the Immigration and Naturalization Service the individual's immigration status through an automated or other system (designated by the Service for use with States)." IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(3) (emphasis added). SAVE is the "automated or other system" required by IRCA that is "designated ... for use with States." *Id.* IRCA specifically requires that SAVE "utilize[] the individual's name, *file number, admission number*, or other means permitting efficient verification." IRCA § 121(a), codified at 42 U.S.C. § 1320b-7(d)(3)(A) (emphasis added).

---

[22] *Tutorial: Introduction to SAVE and the Verification Process for SAVE Users*, Dep't of Homeland Sec., (Mar. 2024), https://perma.cc/MS43-GBWM.

Put simply, SAVE doesn't work without submitting an alien number for the person being looked up. SAVE was designed to be used in a context where a foreign citizen's alien number is provided as part of the process of applying for benefits. SAVE was never intended to be a general-purpose citizenship verification tool, and it was never designed to be used in the voting context, where such alien numbers are not required.

As Judge Bolton recently observed, "the [EAC's] Federal Form does not include a space for registrants to provide this information" about "immigration numbers." *Mi Familia*, 2024 WL 862406, at *6. Furthermore, SAVE does not process social security or driver's license numbers, which are the ID numbers that registrants are most likely to provide on their voter registration forms.[23] Thus, in practice, SAVE is practically useless for verifying the citizenship of voter registrants because it can only provide citizenship information if a registrant has provided an alien number, which is the searchable variable required for SAVE. However, alien numbers are not required under the current version of the EAC federal voter registration form, nor are they required on Arizona's state voter registration form.

## B.    SSA and EVVE

Judge Bolton recently found that "county recorders currently do not have access to NAPHSIS [EVVE] or the SSA database." *Mi Familia*, 2024 WL 862406, at *5.

Even if County Recorders had access to SSA, it would be insufficient to verify citizenship. As Judge Bolton noted: "[Arizona] [c]ounty recorders ... lack direct access to SSA records.... Approximately one quarter of SSA records lack citizenship information," and "the federal government does not allow access to this [citizenship] information." *Mi Familia*, 2024 WL 862406, at *7 (cleaned up).

Similarly, even if County Recorders had access to EVVE, it would also be insufficient to verify citizenship. NAPHSIS is a nonprofit organization that represents state and local vital records, health statistics, and information system agencies. NAPHSIS's EVVE database

---

[23] *See, e.g.*, *Register to Vote in your State by Using this Postcard Form and Guide* at 3-4, U.S. ELECTION ASSISTANCE COMMISSION, https://perma.cc/7L5H-RCFR (Arizona-specific instructions from the EAC for filling out the federal voter registration form requiring registrants to provide, if available, a driver license number or the last four digits of their social security number).

contains information on most births in the United States. FAC ¶¶ 110-112. However, EVVE does not have information about births in Texas. FAC ¶ 112. EVVE, therefore, is insufficient for verifying citizenship because it cannot verify the birth of anyone born in Texas. EVVE is also inadequate for verifying citizenship because it cannot verify the citizenship of U.S. citizens who were not born in the United States. EVVE thus does not contain information about the births of persons born overseas who acquire citizenship at birth because one or more of their parents are U.S. citizens.[24] NAPHSIS also cannot be used to verify the citizenship of naturalized citizens.

## V.   Federal Law Entitles County Recorders to Submit Citizenship Inquiries to DHS

Fortunately, there is an easy method for County Recorders to confirm the citizenship of Federal-Only Voters, and this method does not require using SAVE, SSA, or EVVE. The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any individual* within the jurisdiction of the agency for *any purpose authorized by law*, by providing the requested verification or status information." 8 U.S.C. § 1373(c) (emphasis added). Verification of a voter registrant's citizenship is a purpose authorized by law. FAC ¶¶ 1, 58-81, 192-99.

Section 1373 specifically preempts the requirements of "any other provision of Federal, State, or local law." 8 U.S.C. § 1373(a). Section 1373 was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[25] The House Judiciary Committee explained that, with Section 1373:

> [t]he Committee intends to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, and activities of illegal aliens. *This section is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.*

H.R. REP. 104-469, at 277 (1996) (emphasis added).

---

[24] *See* 8 U.S.C. §§ 1401-1409; *Sessions v. Morales-Santana*, 582 U.S. 47 (2017).
[25] Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104–208, § 642, 110 Stat 3009 (1996).

The INA also states, in 8 U.S.C. § 1644, that "*[n]otwithstanding any other provision of Federal, State, or local law*, no State or local government entity may be prohibited, *or in any way restricted*, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644 (emphasis added). Section 1644 was enacted as part of the Personal Responsibility and Work Opportunity Act of 1996 (PRWORA). Pub. L. 104–193, § 434, 110 Stat 2105 (1996). The House Conference Report for PRWORA explained Congress's intent in enacting Section 1644:

> The conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. *This provision is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.*

H.R. Conf. Rep. 104-725, at 383, 1996 U.S.C.C.A.N. 2649, 2771 (1996) (emphasis added).

Because Sections 1373 and 1644 both expressly preempt any other federal or State law provisions, no other federal or State law could prevent a County Recorder from submitting citizenship confirmation requests to DHS. *See* U.S. Const. art. VI, cl. 2.

Section 1373 "*requires* the Federal Government to 'verify or ascertain' an individual's 'citizenship or immigration status' in response to a state request." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 602 (2011) (quoting 8 U.S.C. § 1373(c)) (emphasis added). As the Supreme Court has explained, "Congress has *obligated* ICE to respond to *any* request made by state officials for verification of a person's citizenship or immigration status." *Arizona v. United States*, 567 U.S. 387, 412 (2012) (citing 8 U.S.C. § 1373(c)) (emphasis added). Thus. DHS's "ICE's Law Enforcement Support Center operates 24 hours a day, seven days a week, 365 days a year and provides, among other things, immigration status, identity information and real-time assistance to local, state and federal law enforcement agencies." *Id.* (cleaned up).

DHS has the capability to verify an individual's citizenship status without using the alien number that SAVE requires. For example, DHS maintains the Person Centric Query System (PCQS) database, which allows agency employees to look up individuals and quickly

and easily verify their citizenship and immigration status using only a name and date of birth.[26] This means that, *right now*, DHS can answer all inquiries from a County Recorder about the citizenship status of registered voters and all persons attempting to register to vote.

The citizenship information to which County Recorders are lawfully entitled under 8 U.S.C. §§ 1373 and 1644 qualifies as an "available resource[]" under A.R.S. § 16-121.01(D). Therefore, County Recorders have a mandatory obligation under A.R.S. § 16-121.01(D) to submit citizenship and immigration status requests about Federal-Only Voters to DHS under 8 U.S.C. §§ 1373 and 1644 ("1373/1644 Requests"). The citizenship information to which County Recorders are lawfully entitled under 8 U.S.C. §§ 1373 and 1644 qualifies as a "relevant ... federal database[] to which the county recorder has access" under A.R.S. §§ 16-121.01(D) and -165(K). Therefore, County Recorders have a mandatory obligation under A.R.S. § 16-121.01 and -165(K) to submit 1373/1644 Requests to DHS.

County Recorder submissions of 1373/1644 Requests about Federal-Only Voters are also consistent with, and required by, County Recorders' obligations under federal law to conduct "list maintenance" and make "reasonable effort[s]" to remove potentially ineligible voters. 52 U.S.C. § 21083(a)(2)(A), (a)(4)(A), and (a)(2)(B)(ii). Furthermore, the County Recorders' sole use of SAVE to verify citizenship violates the NVRA's requirement that voter list maintenance be uniform and non-discriminatory. 52 U.S.C. § 20507(b)(1). This is because SAVE can only be used to verify the citizenship of Federal-Only Voters who provide an alien number. County Recorders do not perform a citizenship check of Federal-Only Voters who fail to provide an alien number, which means they are not verifying with DHS the citizenship of natural-born citizens and of unlawfully present aliens.

## VI.    Multiple States have already submitted 1373/1644 Requests to DHS.

The relief that the Plaintiffs seek here is straightforward and unremarkable. It does not

---

[26] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://perma.cc/32CZ-467V. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c), (Aug. 2, 2024), https://perma.cc/C8QM-H5Z4 (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

break any new ground. For example, two States have recently submitted 1373/1644 Requests to DHS for the purpose of voter list maintenance.

On September 9, 2024, the Chief Legal Counsel of the Florida Department of State, sent a letter to U.S. Citizenship and Immigration Services (USCIS), an agency of DHS, requesting confirmation of the citizenship of seven individuals whose citizenship could not be checked using SAVE.[27] Attached as Exhibit B is a copy of that letter.

On August 1, 2024, the Executive Director of the South Carolina State Election Commission (SCSEC) sent a letter to USCIS outlining DHS's obligations to respond to 1373/1644 Requests, stating that SCSEC would like to submit 1373/1644 requests, and asking for guidance from USCIS on how to submit requests.[28] Attached as Exhibit C is a copy of that letter.

## VII. County Recorders are obligated to provide to the Arizona Attorney General a list of Federal-Only Voters

Additionally, H.B. 2492 required that County Recorders "shall make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship" and also that they "shall provide, on or before October 31, 2022, the applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship."[29] The Legislature imposed this requirement on County Recorders so that the Attorney General could fulfill her obligation that she "shall use all available resources to verify the citizenship status of the applicant[s]." A.R.S. § 16-143(B).

This statutory provision requiring Recorders to transmit the information and registration applications about Federal-Only Voters to the Attorney General is currently in force and not enjoined by any court. Yet, surprisingly, the Defendants have failed to comply by sending to the Attorney General a list of all Federal-Only Voters registered in each of their respective counties. The Defendants have also failed to provide to the Attorney General the applications of all Federal-Only Voters registered in each of their respective counties.

---

[27] Eric Daugherty. *DeSantis demands info on non-citizens registered to vote from federal government*, FLORIDA NEWS, (Sep. 10. 2024), https://perma.cc/KXC9-FP37, also available at https://tinyurl.com/27rzej62.
[28] *Fair and Secure Elections*, OFFICE OF CONGRESSMAN RALPH NORMAN, (Aug. 8, 2024), https://perma.cc/YM2R-NAYL.
[29] 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); A.R.S. § 16-143(A).

13

**VIII.   Pre-Litigation Efforts to Request Compliance as to Maricopa County**

On July 16, 2024, Plaintiff EZAZ.org sent to Recorder Richer a letter reminding him of his obligations to perform list maintenance and explaining how 1373/1644 Requests would allow him to fulfill those obligations. The letter pointed out that Arizona law requires that he "shall review relevant ... federal databases to which the county recorder has access," A.R.S. § 16-165(K), and that he is, therefore, obligated to submit 1373/1644 Requests to DHS for all Maricopa County Federal-Only Voters. Attached as Exhibit D is a copy of that letter.

Recorder Richer's counsel responded through a letter sent on July 23. Attached as Exhibit E is a copy of the letter. In the letter, Recorder Richer claimed that he already complies with all applicable State and federal laws related to voter registration. He also claimed to have no legal authority to submit 1373/1644 Requests to DHS about Maricopa County Federal-Only Voters. Recorder Richer also claimed that the Federal District of Arizona had ruled that using 1373/1644 Requests and SAVE for list maintenance violates the Voting Rights Act. These claims are false.

Rather, the Federal District of Arizona ruled precisely the opposite, explicitly holding that "Arizona is entitled to investigate the citizenship status of registered voters to ensure that only qualified individuals are registered to vote.... For example, County recorders must check SAVE and/or NAPHSIS for all voters without DPOC, i.e., Federal-Only Voters." *Mi Familia*, 2024 WL 862406 at *38. That court also specifically ordered that "Arizona may conduct SAVE checks on registered voters who have not provided DPOC." *Id.* at *57.

Recorder Richer also claimed that he has fully complied with the requirements of A.R.S. § 16-143 but failed to describe any steps he has taken to actually comply. However, Recorder Richer has failed to transmit to the Attorney General a list of Maricopa County Federal-Only Voters or their voter applications, as required by A.R.S. § 16-143. Recorder Richer is also not complying with his ongoing obligation under A.R.S. § 16-143 to transmit to the Attorney General updated lists and applications of Federal-Only Voters as new voters register. Accordingly, his claim to be in compliance with A.R.S. § 16-143 is also false.

**IX.     Pre-Litigation Efforts to Request Compliance as to the Other Counties**

On July 16, 2024, Plaintiff EZAZ.org also sent letters to the non-Maricopa County Recorder Defendants reminding them of their obligations to perform list maintenance and explaining how 1373/1644 Requests would allow them to fulfill those obligations. Attached as Exhibit F are copies of those letters. On July 26, 2024, Pima County Recorder Gabriella Cázares-Kelly responded by letter. Attached as Exhibit G is a copy of the letter. In her letter, Cázares-Kelly refused to submit 1373/1644 requests to DHS, claiming that "we believe our current list maintenance procedures are thorough and address many of the concerns you expressed." Cázares-Kelly also claimed, incorrectly, that "[t]he Person Centric Query System (PCQS) does not use any new data not already available to SAVE." This was incorrect because, as explained above at pages 7-9, 11-12, and note 26, SAVE requires an alien number, whereas PCQS only requires a name and date of birth. Cázares-Kelly also implicitly admitted that she had not submitted a list of Federal-Only Voters to the Arizona Attorney General, claiming that "the 15 recorders in the state of Arizona agreed in 2022 that the report would come from the Secretary of State." However, A.R.S. § 16-143(A) imposes independent obligations on the Secretary of State and each County Recorder to each separately transmit their lists of Federal-Only Voters.

Yavapai County Recorder Michelle Burchill and Cochise County Recorder David Stevens responded favorably to the letter. However, the Plaintiffs are not aware that either has yet submitted any 1373/1644 Requests.

The remaining County Recorders did not respond to the letter.

<b>Legal Standard</b>

In general, a party seeking a preliminary injunction must demonstrate that "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When, as here, "the nonmovant is

the government, the last two *Winter* factors "'merge.'" *Id.* (citation omitted). "The first factor 'is a threshold inquiry and is the most important factor.'" *Id.* (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

Argument

### I.   The Plaintiffs have standing.

The Plaintiffs have Article III standing for four reasons:

*First*, the Maricopa Defendants' list maintenance practices inflict current and ongoing injury on Ms. Cahill because, as a naturalized citizen with an alien number, she is subject to citizenship verifications through SAVE. In contrast, registered voters who are natural-born citizens or who are unlawfully present foreign citizens lacking an alien number are not. In *Mi Familia*, the court held that a provision from H.B. 2243 (which is not at issue here) violated the NVRA's uniformity and non-discrimination requirement because, under that provision, "[o]nly naturalized citizens would be subject to scrutiny under the ... [p]rovision, who if 'confirmed' as non-citizens, would be required to provide DPOC." 2024 WL 862406, at *41.

Similarly, the Defendants' practice of using SAVE to verify citizenship, combined with their practice of *not* using 1373/1644 Requests, subjects naturalized citizens, including Ms. Cahill, to greater scrutiny than natural-born citizens and unlawfully present foreigners who lack an alien number. This alone is enough to establish standing. *See Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Mi Familia*, 2024 WL 862406, at *29 ("Only one plaintiff needs to have standing when only injunctive relief is sought." (quoting *DNC v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018)).

*Second*, every vote cast by a foreign citizen dilutes the votes of eligible voters. The Defendants' failure to verify the citizenship of Federal-Only Voters and to remove foreign citizens from the voter rolls thus dilutes the vote of Ms. Cahill. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). "Confidence in the integrity of our electoral

processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id.* Registered voters "are injured by [election officials'] failure to comply with the NVRA list maintenance requirements because that failure undermines their confidence in the legitimacy of ... elections ... and thereby burden[s] their right to vote." *Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (cleaned up). Thus, "[t]here can be no question that a plaintiff who alleges that his right to vote has been burdened by state action has standing to bring suit to redress that injury." *Id.*

*Third*, EZAZ.org has representational standing on behalf of its members on the same essential grounds as Ms. Cahill. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977) ("[T]his Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."); *Mi Familia*, 2024 WL 862406, at *29-*30 ("An organization can have ... representational standing by asserting 'standing solely as the representative of its members.'" (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)).

EZAZ.org is a membership organization. One of its slogans is "We make civic action as easy as pie." Hamilton Decl. ¶ 9. As part of that theme, EZAZ.org maintains a "Monthly Pie Club" through which donors become members of the organization. Members are issued a membership card and receive a number of benefits, including 1) exclusive access to the "Pie Report," which provides political insider intelligence; 2) text message action alerts; 3) reserved seating at EZAZ.org events; 4) discounts to events; 5) special member-only events; and 6) exclusive information about bills at the Arizona legislature. *Id.* ¶ 10.

EZAZ.org has 573 active members of its Pie Club. *Id.* ¶ 10. It also has 59,000 subscribers to its mailing list. Its members—the majority of whom are registered voters—are widely distributed throughout the State and reside in all 15 of Arizona's counties. *Id.* ¶¶ 8, 11. Its members are affected by the Defendants' unlawful failure to comply with required voter list maintenance practices. *Id.* It, therefore, has representational standing based on injury to its affected members. Given EZAZ.org's vast number of members across the State—the risk

17

that one or more of them will be subject to enforcement by Defendants is clear. *Id.* ¶¶ 8-11.

*Fourth*, EZAZ.org has organizational standing because it faces concrete harm from the Defendants' wrongful conduct. An organizational plaintiff "has direct standing to sue when it shows a drain on its resources from both a diversion of its resources and frustration of its mission." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (cleaned up); *see also*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-9 (1982) ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources [establishes organizational standing].")

Here, there are six ways that EZAZ.org suffers a drain on its resources and frustration of its mission because of the Defendants' unlawful list maintenance practices. *First*, EZAZ.org conducts door-knocking campaigns to educate voters, and during the resulting conversations, registered voters sometimes voluntarily disclose that they are not eligible to vote and that their registration is in error. Whenever EZAZ.org volunteers discover such information, EZAZ.org reports this information to the relevant County Recorder's office. When there are more ineligible persons who are incorrectly registered to vote, EZAZ.org volunteers will encounter them more often, and the burden and financial expense of reporting such information also increases for EZAZ.org. *Id.* ¶¶12-13. *Second*, EZAZ.org's volunteers have been encountering an increasing number of voters (of all political persuasions) who state that they do not believe that their votes matter because they believe that their votes will be canceled out by illegal votes because County Recorders are not doing enough to remove ineligible voters—including foreign citizens—from voter rolls. This is a reasonable concern, given the unprecedented crisis at the border in which more than 10 million foreign citizens have entered the United States since January 21, 2021. Such voters are concerned that, with such an unprecedented surge in illegal immigrants entering the country, and with County Recorders not conducting proper voter list maintenance, it is inevitable that ineligible foreign citizens illegals have been registering to vote, and will vote, in the upcoming 2024 general election. EZAZ.org has to expend significant amounts of time and money responding to such voter concerns and on conducting voter education about this issue. *Id.* ¶¶ 14-15. *Third*, the Defendants' voter list maintenance failures are also extremely discouraging to potential EZAZ.org volunteers. Because of this, EZAZ.org is

encountering ever-greater difficulty in recruiting volunteers. Fewer people want to get involved in civic engagement since they perceive that their efforts have no effect and because elected officials do not take their concerns seriously. *Id.* ¶ 16. *Fourth*, since the organization's start, EZAZ.org has been deeply involved in activism on the issue of Federal-Only Voters. EZAZ.org has worked with State Legislators to educate them about the issue of Federal-Only Voters and suggest ways that Arizona can more securely protect and enhance the integrity of voter rolls and ensure increased transparency. The County Recorders' failure to conduct sufficient list maintenance of Federal-Only Voters requires EZAZ.org to expend more resources on educating State Legislators. *Id.* ¶¶ 17-19. *Fifth*, County Recorders' recent failures to do proper list maintenance of Federal-Only Voters have been particularly egregious, with the number of Federal-Only Voters increasing in recent months by unprecedented amounts. These failures have caused EZAZ.org to expend significant resources and money to monitor data about the registration of Federal-Only Voters. The unprecedented rapid increase in Federal-Only Voters strongly suggests that County Recorders are failing to do proper list maintenance. If they were, they would be either confirming citizenship (and thus moving them to full-ballot voter status) or confirming them as foreign citizens (and removing them from voter rolls). If the registration rates of Federal-Only Voters had not started increasing this year at such unprecedented rates, then there would be less cause for concern and EZAZ.org would not have been forced to expend as much time and money on monitoring the situation. *Id.* ¶¶ 20-21. *Sixth*, the failure of Arizona County Recorders to use all available resources to verify the citizenship of Federal-Only Voters significantly contributes to the problem of increasing numbers of Federal-Only Voters. It causes EZAZ.org to expend more resources addressing the issue and encouraging legal voters to still cast a ballot despite their concerns on whether their vote will matter. *Id.* ¶ 22.

## II.   The Plaintiffs are likely to succeed on the merits.

### A.   The Defendants' current practices violate the NVRA's uniformity and nondiscrimination requirements.

The NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration

roll for elections for Federal office" must be "uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1). Election officials violate these requirements when their voter-roll maintenance singles out one group of voters for different treatment. *See Mi Familia*, 2024 WL 862406, at *41 (voter list maintenance provisions of H.B. 2243 that subject naturalized citizens to greater scrutiny than others violates the NVRA because "[t]his would have a non-uniform and discriminatory impact on naturalized citizens").

The Defendants currently submit citizenship checks to DHS only for Federal-Only Voters who have provided an alien number, but not for other Federal-Only Voters. (FAC ¶¶ 91-105, 192-199.) However, DHS has the ability to look up citizenship and immigration status information for any individual using only that person's name and date of birth through DHS's PCQS database. (FAC ¶¶ 127-29, 192-99.) The voter registration forms used by the Defendants require submission of a name and a date of birth.[30]

Thus, the Defendants have the authority and the ability under federal law to submit citizenship confirmation requests for *all* Federal-Only Voters. *See* 8 U.S.C. §§ 1373 and 1644. The Defendants' voter list maintenance practices are, therefore, discriminatory and non-uniform because the Defendants have the legal authority and the capacity to submit citizenship verification requests to DHS for *all* Federal-Only Voters, yet they are not doing so. The Defendants are violating the NVRA's uniformity requirement by subjecting only a small subset of Federal-Only Voters to citizenship checks. The Defendants are violating the NVRA's non-discrimination requirement by subjecting to DHS verification of citizenship only Federal-Only Voters with an alien number, but not any other voters. This subjects naturalized citizens who are Federal-Only Voters to greater scrutiny than other Federal-Only Voters (who would be natural-born citizens or foreign citizens). *See Mi Familia*, 2024 WL 862406, at *41 (when "[o]nly naturalized citizens would be subject to scrutiny," it violates NVRA's uniformity and nondiscrimination requirements); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006) (greater requirements for "voter registration workers who are compensated" violated NVRA's

---

[30] *See, e.g., Register to Vote in your State by Using this Postcard Form and Guide* at 2, U.S. ELECTION ASSISTANCE COMMISSION, https://perma.cc/7L5H-RCFR (federal voter registration form requiring name and date of birth); *Arizona Voter Registration Instructions and Form* at 3, ARIZONA SECRETARY OF STATE'S OFFICE, https://perma.cc/B8J4-XE89 (Arizona State voter registration form requiring submission of first and last name and date of birth).

uniformity and non-discrimination requirements).

**B.    The Defendants are violating Arizona's list maintenance requirements.**

The Defendants' refusal to submit 1373/1644 Requests to DHS violates Arizona law in three ways:

*First*, Arizona law requires that "[w]ithin ten days after receiving an application for registration ... that is not accompanied by satisfactory evidence of citizenship, the county recorder ... shall use *all available resources* to verify the citizenship status of the applicant." A.R.S. § 16-121.01(D) (emphasis added). A 1373/1644 Request is an "available resource[] to verify ... citizenship status." A.R.S. § 16-121.01(D). The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters. The Defendants have, therefore, failed to comply with their mandatory duty under A.R.S. § 121.01(D) to "use all available" resources to verify the citizenship status of Federal-Only Voters.

*Second*, Arizona law requires that, "at a minimum," County Recorders' list maintenance efforts for recently registered Federal-Only Voters must include a comparison of "the information available on the application for registration with" "[a]ny other ... federal database ... to which the county recorder or officer in charge of elections has access." A.R.S. § 16-121.01(D)(5). The information available through a 1373/1644 Request constitutes a "federal database" to which the Defendants have access. The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters. The Defendants have, therefore, failed to consult a "federal database" "to which" they "ha[ve] access." Accordingly, the Defendants are violating their mandatory duties under A.R.S. § 16-121.01(D)(5).

*Third*, Arizona law requires that, as to all voter registrants, "[t]o the extent practicable, the county recorder shall review relevant ... federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations pursuant to this section." A.R.S. § 16-165(K). A registrant's lack of U.S. citizenship "requires cancellation of registration[]." Failure to provide DPOC is information about lack of citizenship. *See, e.g.*, §§ 16-121.01(C)-(F), -165(A)(10), and -166(F). Information suggesting a lack of citizenship requires confirmation using "relevant ... federal databases" to which the Defendants have access. The information available under a 1373/1644 Request to DHS constitutes a "federal

database" to which the Defendants have access. The Defendants refuse to submit 1373/1644 Requests to DHS to verify the citizenship status of Federal-Only Voters. The Defendants have, therefore, failed to consult a "federal database" "to which" they "ha[ve] access." Accordingly, the Defendants are violating their mandatory duties under A.R.S. § 16-165(K).

Additionally, the Defendants are violating Arizona's requirements for providing lists of Federal-Only voters to the Arizona Attorney General. Arizona law requires that "*each* county recorder shall make available to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship pursuant to § 16-166 and *shall provide*, on or before October 31, 2022, the applications of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship pursuant to § 16-166." A.R.S. § 16-143(A) (emphasis added).

Section 16-143 thus imposes two obligations on the Defendants: first, they must "make available" a list of Federal-Only Voters, and second, they must "provide" the applications of all these individuals. *Id.* The obligation to "provide" is clearly mandatory, and the "make available" requirement must be in conjunction with it because these two provisions appear in the same sentence. And when they are read together, the obligation to "make available" means that the Arizona Legislature intended this also to be an affirmative obligation. The obligation to "provide" voter applications is more specific and time-intensive. Why would the Arizona Legislature have intended to make the less onerous requirement discretionary and the other mandatory? The only reasonable interpretation is that *both* are mandatory.

The Defendants' continued failure to "make available" and "provide" to the Attorney General the required information about Federal-Only Voters violates Section 16-143.

## III.   The remaining requirements for injunctive relief are satisfied

### A.   The Plaintiffs are likely to suffer irreparable harm absent an injunction

As set forth above, the Defendants' list maintenance practices are inflicting current and ongoing injury by unconstitutionally diluting the votes of Ms. Cahill and the members of EZAZ.org. *Supra* at 16-17. That alone establishes irreparable harm. *See, e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986)

(parties would "suffer irreparable harm if their right to vote were impinged upon"). More generally, it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Indeed, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). An injunction here would thus prevent irreparable harm to Plaintiffs' constitutional rights.

A party need only show a "threat of future harm." *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1512 & n.8 (9th Cir. 1994). Thus, it is not necessary that "future harm be shown with certainty before an injunction may issue." *Id.* Irreparable harm exists where there is no adequate legal remedy to cure the harm. *See Arizona Recovery House Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990, 997 (D. Ariz. 2020).

Here, the Plaintiffs have plausibly demonstrated the likelihood that their constitutional rights will be violated because of disenfranchisement through vote dilution. As the Ninth Circuit has repeatedly recognized, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Baird*, 81 F.4th at 1042 (collecting cases) (cleaned up). Thus, once Plaintiffs establish a likely violation of their constitutional rights, such a "showing will almost always demonstrate [they are] suffering irreparable harm as well." *Id.*; *accord* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved,... most courts hold that no further showing of irreparable injury is necessary.").

Additionally, "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 247 (4th Cir. 2014). The harm caused by the Defendants' list maintenance practices will, therefore, be irreparable.

Furthermore, EZAZ.org will suffer irreparable harm to its mission of civic engagement. *See, e.g.*, *N.C. State Conf. of NAACP*, 2018 WL 3748172, at *11 (irreparable injury caused by practices that "would necessarily cause [organizational Plaintiffs] ... to divert more of their resources to, once again, challenging this unlawful conduct"). Hamilton Decl. at ¶¶12-22.

Additionally, the Defendants' unlawful list maintenance practices will cause EZAZ.org financial harm because it will be forced to expend its limited resources doing the Defendants' job for them—monitoring the increase in Federal-Only Voters, reporting ineligible voters to County Recorders, and educating frustrated voters. *See supra* at 17-19; *see also* Hamilton Dec. ¶¶ 12-22. Additionally, EZAZ.org will waste resources on voter outreach and education to ineligible voters. These harms are also irreparable. "[W]here parties cannot typically recover monetary damages flowing from their injury … economic harm can be considered irreparable" and "[i]ntangible injuries may also qualify as irreparable harm, because such injuries generally lack an adequate legal remedy." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (cleaned up). "The mere fact that the damages are susceptible to quantification, however, does not necessarily mean that a preliminary injunction will not lie." *Arizona Recovery Hous. Ass'n*, 462 F. Supp. 3d at 997; *City & County of San Francisco v. United States Citizenship & Immigration Services*, 981 F.3d 742, 762 (9th Cir. 2020) ("There is no dispute that such economic harm is sufficient to constitute irreparable harm because of the unavailability of monetary damages.") (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)).

Here, of course, EZAZ.org will not be able to recoup from the Defendants its expenses in seeking to educate and mobilize its constituents and in independently analyzing the Defendants' voter lists. Thus, the Plaintiffs' financial injury is also irreparable.

**B.     The balance of harms and public interest support injunctive relief**

When the party against whom "injunctive relief" is sought "is a government entity," then "the third and fourth factors [the balance of the equities and public interest] merge." *X Corp. v. Bonta*, --- F.4th ----, 2024 WL 4033063, at *4 (9th Cir. 2024) (cleaned up).

As a general matter, "[t]he public interest and the balance of the equities favor prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (quoting *Melendres*, 695 F.3d at 1002). This is particularly so where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" *League of Women Voters of N.C.*, 769 F.3d at 248 (quoting

24

*Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). The disenfranchisement, discrimination, and lack of uniformity that the Defendants' list maintenance practices effectuate is thus not in the public interest, but an injunction against that outcome is.

Furthermore, the Defendants have no legitimate interest in implementing an unlawful policy. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (government officials "do[] not have an interest in the enforcement of an unconstitutional law"). Indeed, the "public interest [is served] in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021); *accord League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Indeed, enforcing an unconstitutional law is "always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). And an injunction "will do [Defendants] no harm whatsoever. Any interest [they] may claim in enforcing an unlawful (and likely unconstitutional) [practice] is illegitimate." *BST Holdings, LLC. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), aff'd 142 S.Ct. 661 (2022).

## IV. The Plaintiffs request a Temporary Restraining Order.

The Plaintiffs request that this Court immediately issue a TRO while this Motion for Preliminary Injunction is pending for the purpose of "preventing [the] irreparable harm" that is occurring and will continue to occur if the Defendants' unlawful list maintenance practices are allowed to remain in effect. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

"The standard for issuing a TRO is the same as that for issuing a preliminary injunction." *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 926 (D. Ariz. 2019). As demonstrated above, the Plaintiffs are likely to succeed on the merits, are likely to suffer irreparable harm in the absence of a TRO, and the balance of equities and public interest favor a TRO.

What makes a TRO especially necessary here is the proximity of the general election in November. As a consequence of this timeline, the Plaintiffs are suffering irreparable harm in the absence of a TRO as they attempt to counteract the effects of the Defendants' unlawful

practices. The Plaintiffs will suffer even greater harm if the Defendants have not submitted 1373/1644 Requests to DHS and thus performed the necessary list maintenance before the election because of the disenfranchisement and vote dilution that will occur. These factors emphasize that the public interest favors a TRO because it will ensure that proper list mainte-nance procedures will be followed until this Court can fully adjudicate the Plaintiffs' Motion for Preliminary Injunction.

## Conclusion

Therefore, for the preceding reasons, the Plaintiffs respectfully request that the Court issue a temporary restraining order and preliminary injunction requiring the Defendants to submit 1373/1644 Requests to DHS and to "make available" and "provide" to the Arizona Attorney General the information about Federal-Only Voters required by A.R.S. § 16-143. RESPECTFULLY SUBMITTED this 15th of September, 2024.

**America First Legal Foundation**

By: _/s/ James Rogers_____
   James K. Rogers (No. 027287)
      *Senior Counsel*
   America First Legal Foundation
   611 Pennsylvania Ave., SE #231
   Washington, D.C. 20003
   Phone: (202) 964-3721
   James.Rogers@aflegal.org

   Jennifer J. Wright (027145)
   Jennifer Wright Esq., Plc
   4350 E. Indian School Rd
   Suite #21-105
   Phoenix, Arizona 85018
   jen@jenwesq.com

   *Attorneys for Plaintiffs*

26

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of September, 2024, I electronically filed the preceding with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. New Defendants will be sent this day the FAC and this motion by email together with a request to waive service. Counsel for all prior Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing, with courtesy copies emailed as follows:

Honorable Susan Brnovich
District Court Judge
Brnovich_chambers@azd.uscourts.gov

Joseph La Rue
Thomas Liddy
Jack O'Connor III
Rosa Aguilar
MARICOPA COUNTY ATTORNEY'S OFFICE
laruej@mcao.maricopa.gov
liddyt@mcao.maricopa.gov
oconnorj@mcao.maricopa.gov
aguilarr@mcao.maricopa.gov
*Attorneys for the Defendants*

D. Andrew Gaona
Austin C. Yost
COPPERSMITH BROCKELMAN PLC
Lalitha D. Madduri
Christopher D. Dodge
Tyler L. Bishop
Renata O'Donnell
ELIAS LAW GROUP LLP
agaona@cblawyers.com          ayost@cblawyers.com
lmadduri@elias.law            cdodge@elias.law
tbishop@elias.law             rodonnell@elias.law
*Attorneys for the Proposed Intervenors*

 /s/ *James K. Rogers*
*Attorney for the Plaintiffs*

Exhibit A

**AMERICA FIRST LEGAL FOUNDATION**

James K. Rogers (No. 027287)
   *Senior Counsel*
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

**JENNIFER WRIGHT ESQ., PLC**

Jennifer J. Wright (No. 027145)
4350 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| STRONG COMMUNITIES FOUNDA-TION OF ARIZONA INCORPORATED, and YVONNE CAHILL; | No. CV-24-02030-PHX-SMB |
|        Plaintiffs, | **DECLARATION OF MERISSA HAMILTON** |
| v. | |
| STEPHEN RICHER, in his official ca-pacity as Maricopa County Recorder; *et al.*; | |
| Defendants. | |

I, Merissa Hamilton, declare as follows:

    1.    I am over 18 years of age and competent to testify, and the following facts are based on my personal knowledge.

    2.    I am the President and CEO of Strong Communities Foundation of Arizona, Incorporated, which is a 501(c)(3) non-profit organization that was incorporated under the laws of Arizona on July 16, 2018. The organization is more commonly known as EZAZ.org, which is now the URL of the organization's principal website, along with EZ-CIVICS.org.

    3.    EZAZ.org is a leading grassroots organization in Arizona.

1

4.      It rose to prominence during the latter half of the COVID-19 pandemic when many community members and small business owners asked for help navigating through the pandemic with little direction from locally elected officials. Violent crime was increasing in neighborhoods, and thousands of small business owners were forced to shut down permanently without any relief. Citizens didn't know how to address their government to get relief.

5.      After volunteers, who eventually became Board Members of the 501(c)(4) arm of EZAZ.org, knocked on tens of thousands of doors during the 2020 election season, it became evident that voters found it a challenge to stay informed about what their local government was doing. Even worse, many local government organizations, such as school boards, had completely shut down their public comment functions. EZAZ.org has thus adopted as a core mission to teach people how to become active in the political process in their local communities and to help voters get engaged in a positive way.

6.      EZAZ,org's mission is to make civic participation easy and accessible for all Arizonans. It trains Arizonans about becoming more civically involved and offers community neighborhood events to engage neighbors who want to stay informed but would otherwise not be civically engaged.

7.      An essential part of the mission of EZAZ.org to increase civic engagement is ensuring that Arizona's elections are free, fair, and lawfully administered, which includes proper voter list maintenance.

8.      Together with its associated 501(c)4 organization, EZAZ.org has 59,000 subscribers to its mailing list. It has received donations from 4,756 people and conducts 90 or more public events per year with 3,001 people signed up as volunteers. It conducts significant voter outreach and education, across the State of Arizona. It reached over 150,000 voters in 2023. So far in 2024, it has made nearly one million voter contacts. Its donors, subscribers, and followers view it as the public voice for their concerns.

9.      One of EZAZ.org's slogans is "We make civic action as easy as pie."

10.      As part of that theme, EZAZ.org maintains a "Monthly Pie Club" through

2

which donors become members of the organization. Members are issued a membership card and receive a number of benefits, including 1) exclusive access to the "Pie Report," which provides political insider intelligence; 2) text message action alerts; 3) reserved seating at EZAZ.org events; 4) discounts to events;  5) special member-only events; and 6) exclusive information about bills at the Arizona legislature. Since the inception of the membership program, EZAZ.org has had 573 members.

11.    EZAZ.org's members include Arizona citizens and voters registered in each of Arizona's 15 counties. They are affected by the Defendants' unlawful failure to comply with required voter list maintenance practices.

12.    Through its volunteers, EZAZ.org conducts door-knocking campaigns to educate voters. Sometimes during the resulting conversations, registered voters will voluntarily disclose to EZAZ.org volunteers that they or members of their household are not eligible to vote and that their registration is in error. Whenever EZAZ.org volunteers discover such information, EZAZ.org has taught its volunteers to report this information to the relevant county recorder's office.

13.    When there are more ineligible persons who are incorrectly registered to vote, EZAZ.org volunteers will encounter them more often, and the burden and financial expense of reporting such information also increases for EZAZ.org and its volunteers.

14.    EZAZ.org's volunteers have been encountering an increasing number of voters (of all political persuasions) who state that they do not believe that their votes matter because they believe that their votes will be canceled out by illegal votes. They explain that they believe this because county recorders are not doing enough to remove ineligible voters from voter rolls. During such conversations, such voters will often specifically mention their concerns that foreign citizens are unlawfully registered to vote. This is a reasonable concern, given the unprecedented crisis at the border in which more than 10 million foreign citizens have entered the United States since January 21, 2021. Such voters are concerned that, with such an unprecedented surge in illegal immigrants entering the country, and with county recorders not conducting proper voter list maintenance, it is inevitable that

ineligible foreign citizens illegals have been registering to vote, and will vote, in the up-coming 2024 general election.

15.     EZAZ.org has to expend significant amounts of time and money responding to such voter concerns and on conducting voter education about this issue.

16.     These problems with voter list maintenance are also extremely discouraging to potential EZAZ.org volunteers. Because of this, EZAZ.org is encountering ever-greater difficulty in recruiting volunteers or activating current volunteers to engage in voter edu-cation efforts. Fewer people want to get involved in civic engagement since they perceive that their efforts have no effect and because elected officials do not take their concerns seriously. Some volunteers are even discouraged to vote due to their concerns.

17.     Since the start of the organization, EZAZ.org has been deeply involved in activism on the issue of Federal-Only Voters.

18.     EZAZ.org has worked with State Legislators to educate them about the issue of Federal-Only Voters and suggest ways that Arizona can more securely protect and en-hance the integrity of voter rolls and ensure increased transparency.

19.     The county recorders' failure to conduct sufficient list maintenance of Fed-eral-Only Voters requires EZAZ.org to expend more resources on educating State Legis-lators.

20.     County recorders' recent failures to do proper list maintenance of Federal-Only Voters have been particularly egregious, with the number of Federal-Only Voters increasing in recent months by unprecedented amounts. These failures have caused EZAZ.org to expend significant resources and money to monitor data about the registration of Federal-Only Voters.

21.     The unprecedently rapid rate of increase in the number of Federal-Only Vot-ers this year strongly suggests that county recorders are failing to do proper list mainte-nance. If the registration rates of Federal-Only Voters had not started increasing this year

at such unprecedented rates, then there would be less cause for concern and EZAZ.org would not be forced to expend as much time and money on monitoring the situation.

22.     The failure of Arizona county recorders to use all available resources to verify the citizenship of Federal-Only Voters significantly contributes to the problem of increasing numbers of Federal-Only Voters and causes EZAZ.org to expend more resources addressing the issue and encouraging legal voters to still cast a ballot despite their concerns on whether their vote will matter.

23.     The failure of Arizona county recorders to consult all federal databases to which they have access to verify the citizenship of Federal-Only Voters significantly contributes to the problem of increasing numbers of Federal-Only Voters and causes EZAZ.org to expend more resources addressing the issue.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed by me on September 11, 2024 Arizona.


Merissa Hamilton
President, Strong Communities Foundation of Arizona, Inc.

5

# Exhibit B



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

September 9, 2024

Tammy Meckley
Associate Director
Immigration Records and Identity Services Directorate
U.S. Citizenship and Immigration Services
5900 Capital Gateway Drive
Camp Springs, MD 20746

*Via E-MAIL & U.S. MAIL*

## Re: *Demand for Information under 8 U.S.C. § 1373 and 8 U.S.C. § 1644*

Dear Associate Director Meckley:

Noncitizens cannot vote in Florida elections. *See* Fla. Const., art. VI, § II; § 97.041(1)(a)2., Fla. Stat. Those who do expose themselves to criminal liability.[1] Accurate and up-to-date voter registration rolls help ensure that noncitizens cannot vote and do not violate Florida law. *See* Fla. Stat. § 98.0575(6). And, under both Florida and federal law, the Florida Department of State ("FDOS") is responsible for maintaining these accurate and up-to-date rolls.[2] *See, e.g.*, 42 U.S.C. § 15483(a) (requiring Department to "ensure that voter registration records" "are accurate and are updated regularly"); 42 U.S.C. § 1973gg(b)(4) (establishing procedures to "protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records."); Fla. Stat. § 98.075(1) ("The department shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records.").

FDOS must also take affirmative steps to "remove registrants who are ineligible to vote." 42 U.S.C. § 15483(a); *see also* Fla. Stat. § 98.075(4)-(6). Any credible and reliable information of ineligibility obtained by FDOS triggers a notice of removal and opportunity for a hearing and can

---

[1] https://www.fdle.state.fl.us/News/2024/April/FDLE-arrests-non-citizen,-felon-for-voter-fraud
https://www.fdle.state.fl.us/News/2022/October/FDLE-arrests-Jamaican-citizen-for-voting-in-U-S-el
*See, e.g.*, 18 U.S.C. § 611; 18 U.S.C. § 911; 18 U.S.C. § 1015(f); 52 U.S.C. § 21144(b); § 104.15, Fla. Stat.; § 104.011(1), (2), Fla. Stat.

[2] In Florida we take this responsibility seriously. Due to recent updates to our voter list maintenance laws, in the last month alone, nearly 26,000 individuals have been removed from Florida voter rolls for ineligibility (e.g., adjudication of mental incapacity without voting rights restored, felony conviction without voting rights restored, death, not a U.S. citizen, did not list a valid Florida residence, determined to be fictitious person), voter request, duplicate record, moved out of state, etc.

result in a "final determination that a voter is ineligible to vote."[3] Fla. Stat. § 98.075(7). To perform its responsibilities and ensure accurate voter rolls, FDOS must have access to up-to-date citizenship information that can only be obtained from the federal government.

To that end, 8 U.S.C. § 1373 and 8 U.S.C. § 1644 provide a mechanism for FDOS to obtain pertinent information from your office. Section 1373 states:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the [Department of Homeland Security] ("DHS") information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a). It goes on to say that "[DHS] *shall* respond to an inquiry by a federal, state, or local government agency seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law." *Id.* § 1373(c) (emphasis added). Section 1644 reaffirms FDOS's right to obtain citizenship-related information from your office, as does the United States Supreme Court. *See Arizona v. United States*, 567 U.S. 387 (2012) ("Congress has obligated [DHS] to respond to any request made by state officials for verification of a person's citizenship or immigration status."); *Chamber of Commerce of United States v. Whiting*, 563 U.S. 582 (2011) ("[Section 1373(c)] requires the Federal Government to 'verify or ascertain' an individual's 'citizenship or immigration status' in response to a state request.").

Indeed, FDOS's successful federal lawsuit in 2012 against your office reaffirmed FDOS's right to pertinent, citizenship-related information.[4] More specifically, that case resulted in FDOS obtaining access to the Systematic Alien Verification for Entitlements Program or SAVE database. *See* **Exhibit 1** (Memorandum of Agreement for SAVE).

Although the SAVE database can be helpful,[5] it is nevertheless insufficient. The database requires FDOS to have at least one of the following, specific numeric identifiers: "Alien/USCIS Number (A-Number)," "Form I-94, Arrival/Departure Record Number," "Student and Exchange Visitor Information System (SEVIS) ID number," "Naturalization/Citizenship Certificate Number," "Card/I-797 Receipt Number," "VISA Number," or "Foreign Passport Number (if entered along with a U.S. immigration enumerator)."[6] Florida does not always have access to this information.

---

[3] The individual also has a right to appeal a determination of ineligibility pursuant to § 98.0755, Fla. Stat.

[4] https://dos.fl.gov/communications/press-releases/2012/florida-department-of-state-receives-commitment-from-us-department-of-homeland-security-to-provide-access-to-citizenship-database/

[5] Last month FDOS sent 144 individualized non-citizen files to local Supervisors of Elections for removal from the state voter roll. The SAVE database confirmed that all 144 individuals were non-citizens, validating the state's information. Upon receipt of the state's non-citizen removal file, the Supervisor of Election must begin, within 7 days, the list maintenance process outlined in § 98.075(7), Fla. Stat.

[6] *Tutorial: Introduction to SAVE and the Verification Process for SAVE Users,* DEPARTMENT OF HOMELAND SECURITY. ET AL (Mar. 2024) (available at https://tinyurl.com/msek795k).

Under Florida law, the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") notifies FDOS of persons who self-identified as non-U.S. citizens upon being issued a new or renewed Florida driver's license,[7] Florida identification card, or updated DHSMV record. *See* § 98.093(8)(b), Fla. Stat. This information is highly credible but in some instances lacks the kind of identifiers needed to obtain confirmation through the SAVE database.

I thus include as **Exhibit 2-9**, the names of specific individuals for whom FDOS has information of non-citizenship but for whom FDOS cannot run a search on the SAVE database. All 7 of these individuals are currently on Florida's voter rolls. For these seven individuals, pursuant to 8 U.S.C. § 1373 and 8 U.S.C. § 1644, I ask for verification of citizenship status **within fourteen days of your receipt of this letter**.

FDOS understands that your office has the ability to determine an individual's immigration or citizenship status very quickly and without the numeric-identifiers required by the SAVE database. We further understand that the Person Centric Query System allows for verification of immigration or citizenship status with a very limited amount of basic information such as name, date of birth, and address. For each of the seven individuals included in Exhibits 2-9, I have provided you the name, date of birth, address, and any other identifiers or pertinent information FDOS has in its possession.

The immediate need for accurate citizenship information is critical as we are less than ninety days from the next general election. Given that the law is clear and USCIS's obligations are mandatory, any delay in fulfilling FDOS's (very reasonable) request for 7 individual determinations will undoubtedly undermine FDOS's ability to fulfill its statutory obligations to protect the integrity of Florida's election and maintain current and accurate voter registration rolls. We appreciate your expeditious assistance on this matter. If verification is not provided within the time requested, Florida will pursue other remedies, including potential litigation.

Sincerely,

Brad McVay
Deputy Secretary of State
for Legal Affairs & Election Integrity/
Chief Legal Counsel
Florida Department of State
brad.mcvay@dos.fl.gov

cc:
Ur M. Jaddou, Director, U.S. Citizenship and Immigration Services
Jennifer B. Higgins, Deputy Director, U.S. Citizenship and Immigration Services
Felicia Escobar Carrillo, Chief of Staff, Office of the Director
A. Ashley Tabaddor, Chief Counsel, Office of Chief Counsel

---

[7] Florida does not allow illegal aliens to obtain driver's licenses and does not recognize driver's licenses issued in other states to illegal aliens. *See* § 322.033, Fla. Stat.

Exhibit C



**COMMISSIONERS**

HON. DENNIS W. SHEDD
Chairman

JOANNE DAY

CLIFFORD J. EDLER

LINDA MCCALL

SCOTT MOSELEY

HOWARD M. KNAPP
Executive Director

1122 Lady Street
Suite 500
Columbia, SC 29201

P.O. Box 5987
Columbia, SC 29250

803.734.9060
Fax: 803.734.9366
www.scvotes.gov

August 1, 2024

Tammy Meckley
Associate Director
Immigration Records and Identity Services Directorate
U.S. Citizenship and Immigration Services
5900 Capital Gateway Drive
Camp Springs, MD 20746

Dear Associate Director Meckley:

The South Carolina State Election Commission (SEC) writes United States Citizenship and Immigration Services (USCIS) to request assistance in ensuring that individuals who have registered to vote in South Carolina are citizens of the United States entitled to vote in elections.

We write this request pursuant to 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These federal statutes provide state agencies a mechanism for obtaining information about individuals' citizenship or immigration status. Section 1373 states in part:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information *regarding the citizenship or immigration status, lawful or unlawful, of any individual*.[1]

> 8 U.S.C. § 1373(a)

Further, at Subsection 1373(c), this statute states "[t]he Immigration and Naturalization Service shall respond to an inquiry by a federal, state, or local government agency seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency *for any purpose authorized by law*."

The Executive Director of the SEC is required to establish and maintain a statewide voter registration database and maintain a complete file of all qualified electors by county and by precincts. He is required to delete the name of any registered person who is not qualified to vote. To ensure that only qualified electors are registered, he is authorized by law to obtain information from any source that may assist him to do so.[2] See S.C. Code § 7-3-20(D).

---

[1] Similarly, 8 U.S.C. 1644 states "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service *information regarding the immigration status, lawful or unlawful, of an alien in the United States*."
[2] Federal law also requires states to conduct programs to remove ineligible voters from the rolls. See 52 U.S.C. 20507(c); see generally 52 U.S.C. § 20501 et seq.





**SOUTH CAROLINA**
ELECTION COMMISSION

The SEC is a member of the Systematic Alien Verification for Entitlements (SAVE) Program. However, this Program is only useful when the agency already has a reason to question a particular person's citizenship status and when an identifier such as an Alien Registration Number exists. We understand that there are other avenues for determining a person's immigration or citizenship status such as the Person Centric Query Service that allows searches on individuals to be run that can access multiple information systems and databases maintained by or accessible to USCIS. These searches appear to allow for a more expansive set of search terms than are available using SAVE. Thus it appears that USCIS is capable of running searches based on queries that provide name, date of birth, address, and other information the SEC will possess as a matter of course as part of a person's voter registration information.

We would like to be able to verify the citizenship or immigration status of newly registered voters in South Carolina. We are prepared to provide lists of those who have registered to vote here for the first time. As authorized by South Carolina law and United States Code of Law Sections 8 U.S.C. § 1373 and 8 U.S.C. § 1644 we are requesting that you allow us to provide you with these lists so that you can check them against the information systems and databases maintained and accessible by USCIS for the purpose of verifying registrant's citizenship status so that only eligible voters are present on South Carolina's voter rolls.

Please provide us with guidance on the best format in which to provide you with the lists of new registrants we would like verified. Please respond by August 30, 2024. We will appreciate your assistance in carrying out our duty to maintain a current and accurate voter registration database.

Sincerely,

Howard M. Knapp
Executive Director, South Carolina State Election Commission

cc:
Ur M. Jaddou, Director, U.S. Citizenship and Immigration Services
Jennifer B. Higgins, Deputy Director, U.S. Citizenship and Immigration Services
Felicia Escobar Carrillo, Chief of Staff, Office of the Director
A. Ashley Tabaddor, Chief Counsel, Office of Chief Counsel

**COMMISSIONERS**

HON. DENNIS W. SHEDD
Chairman

JOANNE DAY

CLIFFORD J. EDLER

LINDA MCCALL

SCOTT MOSELEY

HOWARD M. KNAPP
Executive Director

1122 Lady Street
Suite 500
Columbia, SC 29201

803.734.9060
Fax: 803.734.9366
www.scvotes.gov



Exhibit D



July 16, 2024

**VIA EMAIL**
Stephen Richer
Maricopa County Recorder
111 South 3rd Avenue, #103
Phoenix, Arizona 85003
voterinfo@risc.maricopa.gov

Dear Recorder Richer:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[260] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I. State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[261] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[262] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[263]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[264] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[265]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[260] A.R.S. § 16-165(K).

[261] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[262] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[263] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[264] A.R.S. § 16-166(F).

[265] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[266]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[267]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[268] the EAC's form,[269] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[270] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[271] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[272] Further, the Court noted that the NVRA only requires states to register eligible persons.[273] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[274] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[266] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[267] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[268] 52 U.S.C. § 20505(a)(1).

[269] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[270] 570 U.S. 1 (2013).

[271] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[272] *Id.* (cleaned up) (emphasis added).

[273] *Id.* "... §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[274] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[275]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[276]

## II.  State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[277] Additionally, HAVA[278] requires you to "perform list maintenance" of your voter rolls,[279] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[280] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[281]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[282] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[283] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters: SAVE[284], the Social Security Administration (SSA) database[285], and the National Association for Public Health Statistics and Information Systems.[286] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list

---

[275] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[276] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[277] A.R.S. § 16-165.
[278] P.L. 107-252, 116 Stat. 1666 (2002).
[279] 52 U.S.C. § 21083(a)(2)(A).
[280] 52 U.S.C. § 21083(a)(2)(B)(ii).
[281] 52 U.S.C. § 21083(a)(4)(A).
[282] A.R.S. § 16-143(A).
[283] A.R.S. § 16-143(B).
[284] A.R.S. § 16-165(I).
[285] A.R.S. § 16-165(H).
[286] A.R.S. § 16-165(J).

maintenance.[287] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[288]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[289]

### III.   County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[290] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[291]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[292] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United

---

[287] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).

[288] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.

[289] A.R.S. § 16-165(K).

[290] 8 U.S.C. § 1373(c) (emphasis added).

[291] 8 U.S.C. § 1644.

[292] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[293] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

---

[293] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[294]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[295] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county; and

(2) Submitted the list of your county's federal-only voters to the Attorney General.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.


Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[294] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[295] A.R.S. § 16-165(K).

# Exhibit E

225 WEST MADISON
PHOENIX, AZ 85003
WWW.MARICOPACOUNTYATTORNEY.ORG

PH.    (602) 506-8541
FAX    (602) 506-4317



# Maricopa County Attorney
## RACHEL MITCHELL

July 23, 2024

<u>**VIA EMAIL ONLY**</u>

James Rogers
America First Legal Foundation
611 Pennsylvania Ave SE #231
Washington, DC 20003

     RE:     Your July 16, 2024, letter to Recorder Stephen Richer

Dear Mr. Rogers:

On behalf Maricopa County Recorder Stephen Richer (the "Recorder"), I am responding to your July 16, 2024, letter that you sent to the Recorder.  You sent it to "remind" the Recorder that he has a job to do under the law.  No such reminder is necessary.  The Recorder is well aware of his duties; he takes them very seriously; and, he fulfills them.  This includes his duties related to voter registration list maintenance, which is the subject of your letter.

You claim that the Recorder is violating the law and not doing his job.  You are incorrect.  You are obviously unaware of the Recorder's statutory duties and the federal case law defining those legal obligations.

You want the Recorder to perform certain citizenship investigations using a database maintained by the Department of Homeland Security as part of his list maintenance responsibilities.  That database <u>only</u> contains data concerning naturalized citizens and does not contain any data concerning native-born citizens.  A federal district court ruled that using such databases for list maintenance purposes violates the Voting Rights Act.  *Mi Familia Vota v. Fontes*, __ F. Supp. 3d __, No. CV-22-00509-PHX-SRB, 2024 WL 862406 (D. Ariz. Feb. 29, 2024).

You also claim that A.R.S. § 16-165(K) requires the Recorder to use the DHS Database for citizenship confirmation.  But that statute does not authorize, much less require, the Recorder to initiate citizenship investigations of voters.  Section 16-165 provides that the Recorder must use three specified databases—the social security, the SAVE, and the NAPHSIS—to check citizenship status when he performs voter registration list maintenance.  Pursuant to the *Mi Familia Vota* decision mentioned above, those statutes cannot currently be enforced.  But section 16-165(K)

Letter to James Rogers
July 23, 2024
Page 2

requires that, if the Recorder obtains information from one of those three databases that a voter is not a United States citizen, the Recorder must consult other databases to confirm the information he received is correct before beginning the voter registration cancelation process, if it is practicable for him to do so.  This statute does <u>not</u> require the Recorder to *initiate* additional investigations of citizenship status beyond those established by our law.  Nor does it provide him authority to initiate such investigations.  And besides, as already discussed, under the *Mi Familia Vota* ruling it would be *illegal* for the Recorder to use the DHS Database for that purpose.

In sum, the Recorder complies with all applicable state and federal law related to voter registration and voter list maintenance.  Your suggestion to the contrary is wrong.

You state that your "clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law."  Because the Recorder fulfills all of his duties under Arizona law, your threatened lawsuit would be the definition of a frivolous one.  Accordingly, the Recorder notifies you that, if your clients file the lawsuit that you threaten, the Recorder reserves his right to seek his attorneys fees from both you and your clients to the full extent allowed by law.

Sincerely,

RACHEL MITCHELL
MARICOPA COUNTY ATTORNEY

Joseph E. La Rue
Deputy County Attorney

Cc:   Jennifer Wright, Esq.
      Tim La Sota, Esq.
      **<u>VIA EMAIL ONLY</u>**

Exhibit F



July 16, 2024

**VIA EMAIL**

Larry Noble
Apache County Recorder
75 West Cleveland
St. Johns, Arizona 85936
voterreg@apachecountyaz.gov

Dear Recorder Noble:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[1] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I. State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[2] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[3] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[4]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[5] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[6]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[1] A.R.S. § 16-165(K).

[2] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[3] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony to for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[4] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[5] A.R.S. § 16-166(F).

[6] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[7]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[8]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[9] the EAC's form,[10] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[11] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[12] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[13] Further, the Court noted that the NVRA only requires states to register eligible persons.[14] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[15] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[7] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[8] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[9] 52 U.S.C. § 20505(a)(1).

[10] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[11] 570 U.S. 1 (2013).

[12] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[13] *Id.* (cleaned up) (emphasis added).

[14] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[15] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[16]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[17]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[18] Additionally, HAVA[19] requires you to "perform list maintenance" of your voter rolls,[20] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[21] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[22]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[23] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[24] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote... who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[25] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters: SAVE[26],

---

[16] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[17] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[18] A.R.S. § 16-165.
[19] P.L. 107-252, 116 Stat. 1666 (2002).
[20] 52 U.S.C. § 21083(a)(2)(A).
[21] 52 U.S.C. § 21083(a)(2)(B)(ii).
[22] 52 U.S.C. § 21083(a)(4)(A).
[23] A.R.S. § 16-143(A).
[24] A.R.S. § 16-143(B).
[25] A.R.S. §§ 16-161(B), -168(G)(1).
[26] A.R.S. § 16-165(I).

the Social Security Administration (SSA) database[27], and the National Association for Public Health Statistics and Information Systems.[28] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[29] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[30]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[31]

### III.   County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[32] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[33]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible

---

[27] A.R.S. § 16-165(H).
[28] A.R.S. § 16-165(J).
[29] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[30] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[31] A.R.S. § 16-165(K).
[32] 8 U.S.C. § 1373(c) (emphasis added).
[33] 8 U.S.C. § 1644.

voters are removed from voter rolls.[34] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[35] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

---

[34] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).
[35] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[36]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[37] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;

(2) Submitted the list of your county's federal-only voters to the Attorney General; and

(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[36] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[37] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**
David W. Stevens
Cochise County Recorder
1415 Melody Lane, Bldg. B
Bisbee, Arizona 85603
voterreg@cochise.az.gov

Dear Recorder Stevens:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[38] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[39] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[40] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[41]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[42] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[43]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[38] A.R.S. § 16-165(K).

[39] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[40] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony to for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[41] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[42] A.R.S. § 16-166(F).

[43] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[44]

> 9 I have reviewed my state's instructions and I swear/affirm that:
> - I am a United States citizen
> - I meet the eligibility requirements of my state and subscribe to any oath required.
> - The information I have provided is true to the best of my knowledge under penalty of perjury. If I have provided false information, I may be fined , imprisoned, or (if not a U.S. citizen) deported from or refused entry to the United States.
>
> Please sign full name (or put mark) ▲
>
> Date:    Month   Day   Year

The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[45]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[46] the EAC's form,[47] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[48] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[49] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[50] Further, the Court noted that the NVRA only requires states to register eligible persons.[51] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[52] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[44] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[45] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic] imprisoned, or," for aliens, "deported from or refused entry to the United States."

[46] 52 U.S.C. § 20505(a)(1).

[47] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[48] 570 U.S. 1 (2013).

[49] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[50] *Id.* (cleaned up) (emphasis added).

[51] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[52] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[53]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[54]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[55] Additionally, HAVA[56] requires you to "perform list maintenance" of your voter rolls,[57] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[58] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[59]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[60] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[61] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote... who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[62] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters: SAVE[63],

---

[53] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[54] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[55] A.R.S. § 16-165.
[56] P.L. 107-252, 116 Stat. 1666 (2002).
[57] 52 U.S.C. § 21083(a)(2)(A).
[58] 52 U.S.C. § 21083(a)(2)(B)(ii).
[59] 52 U.S.C. § 21083(a)(4)(A).
[60] A.R.S. § 16-143(A).
[61] A.R.S. § 16-143(B).
[62] A.R.S. §§ 16-161(B), -168(G)(1).
[63] A.R.S. § 16-165(I).

4

the Social Security Administration (SSA) database[64], and the National Association for Public Health Statistics and Information Systems.[65] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[66] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[67]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[68]

### III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[69] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from … [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[70]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible

---

[64] A.R.S. § 16-165(H).
[65] A.R.S. § 16-165(J).
[66] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[67] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[68] A.R.S. § 16-165(K).
[69] 8 U.S.C. § 1373(c) (emphasis added).
[70] 8 U.S.C. § 1644.

voters are removed from voter rolls.[71] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[72] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

---

[71] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[72] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[73]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[74] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;

(2) Submitted the list of your county's federal-only voters to the Attorney General; and

(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[73] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).

[74] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**
Patty Hansen
Coconino County Recorder
110 East Cherry Avenue
Flagstaff, Arizona 86001
voterservices@coconino.az.gov

Dear Recorder Hansen:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[75] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.    State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[76] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[77] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[78]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[79] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[80]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[75] A.R.S. § 16-165(K).

[76] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[77] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony to for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[78] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[79] A.R.S. § 16-166(F).

[80] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[81]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[82]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[83] the EAC's form,[84] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[85] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[86] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[87] Further, the Court noted that the NVRA only requires states to register eligible persons.[88] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[89] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[81] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[82] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic]–imprisoned, or," for aliens, "deported from or refused entry to the United States."

[83] 52 U.S.C. § 20505(a)(1).

[84] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[85] 570 U.S. 1 (2013).

[86] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[87] *Id.* (cleaned up) (emphasis added).

[88] *Id.* "... §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[89] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[90]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[91]

## II.    State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[92] Additionally, HAVA[93] requires you to "perform list maintenance" of your voter rolls,[94] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[95] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[96]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[97] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[98] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[99] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[90] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[91] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[92] A.R.S. § 16-165.
[93] P.L. 107-252, 116 Stat. 1666 (2002).
[94] 52 U.S.C. § 21083(a)(2)(A).
[95] 52 U.S.C. § 21083(a)(2)(B)(ii).
[96] 52 U.S.C. § 21083(a)(4)(A).
[97] A.R.S. § 16-143(A).
[98] A.R.S. § 16-143(B).
[99] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[100], the Social Security Administration (SSA) database[101], and the National Association for Public Health Statistics and Information Systems.[102] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[103] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[104]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[105]

## III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[106] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[107]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[100] A.R.S. § 16-165(I).
[101] A.R.S. § 16-165(H).
[102] A.R.S. § 16-165(J).
[103] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[104] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[105] A.R.S. § 16-165(K).
[106] 8 U.S.C. § 1373(c) (emphasis added).
[107] 8 U.S.C. § 1644.

5

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[108] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[109] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[108] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).
[109] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[110]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[111] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.


Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[110] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[111] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Sadie Jo Bingham
Gila County Recorder
1400 East Ash Street
Globe, Arizona 85501
sbingham@gilacountyaz.gov

Dear Recorder Bingham:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[112] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[113] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[114] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[115]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[116] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[117]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[112] A.R.S. § 16-165(K).

[113] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[114] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[115] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[116] A.R.S. § 16-166(F).

[117] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[118]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[119]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[120] the EAC's form,[121] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[122] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[123] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[124] Further, the Court noted that the NVRA only requires states to register eligible persons.[125] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[126] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[118] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").
[119] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."
[120] 52 U.S.C. § 20505(a)(1).
[121] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.
[122] 570 U.S. 1 (2013).
[123] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.
[124] *Id.* (cleaned up) (emphasis added).
[125] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"
[126] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[127]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[128]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[129] Additionally, HAVA[130] requires you to "perform list maintenance" of your voter rolls,[131] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[132] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[133]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[134] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[135] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote... who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[136] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[127] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[128] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[129] A.R.S. § 16-165.
[130] P.L. 107-252, 116 Stat. 1666 (2002).
[131] 52 U.S.C. § 21083(a)(2)(A).
[132] 52 U.S.C. § 21083(a)(2)(B)(ii).
[133] 52 U.S.C. § 21083(a)(4)(A).
[134] A.R.S. § 16-143(A).
[135] A.R.S. § 16-143(B).
[136] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[137], the Social Security Administration (SSA) database[138], and the National Association for Public Health Statistics and Information Systems.[139] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[140] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[141]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[142]

### III.  County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[143] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[144]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[137] A.R.S. § 16-165(I).

[138] A.R.S. § 16-165(H).

[139] A.R.S. § 16-165(J).

[140] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).

[141] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.

[142] A.R.S. § 16-165(K).

[143] 8 U.S.C. § 1373(c) (emphasis added).

[144] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[145] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[146] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[145] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[146] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[147]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[148] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[147] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[148] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Polly Merriman
Graham County Recorder
921 Thatcher Boulevard
Safford, Arizona  85546
recordersoffice@graham.az.gov

Dear Recorder Merriman:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[149] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.    State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[150] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[151] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[152]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[153] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[154]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[149] A.R.S. § 16-165(K).

[150] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[151] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony to for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[152] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[153] A.R.S. § 16-166(F).

[154] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[155]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[156]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[157] the EAC's form,[158] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[159] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[160] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility*."[161] Further, the Court noted that the NVRA only requires states to register eligible persons.[162] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[163] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[155] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[156] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported or refused entry to the United States."

[157] 52 U.S.C. § 20505(a)(1).

[158] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[159] 570 U.S. 1 (2013).

[160] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[161] *Id.* (cleaned up) (emphasis added).

[162] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[163] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

3

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[164]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[165]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[166] Additionally, HAVA[167] requires you to "perform list maintenance" of your voter rolls,[168] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[169] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[170]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[171] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[172] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[173] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[164] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[165] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[166] A.R.S. § 16-165.
[167] P.L. 107-252, 116 Stat. 1666 (2002).
[168] 52 U.S.C. § 21083(a)(2)(A).
[169] 52 U.S.C. § 21083(a)(2)(B)(ii).
[170] 52 U.S.C. § 21083(a)(4)(A).
[171] A.R.S. § 16-143(A).
[172] A.R.S. § 16-143(B).
[173] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[174], the Social Security Administration (SSA) database[175], and the National Association for Public Health Statistics and Information Systems.[176] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[177] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[178]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[179]

## III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[180] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[181]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[174] A.R.S. § 16-165(I).
[175] A.R.S. § 16-165(H).
[176] A.R.S. § 16-165(J).
[177] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[178] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[179] A.R.S. § 16-165(K).
[180] 8 U.S.C. § 1373(c) (emphasis added).
[181] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[182] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[183] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[182] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[183] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by … entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[184]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[185] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[184] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[185] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Sharie Milheiro
Greenlee County Recorder
253 5th Street
Clifton, Arizona 85533
smilheiro@greenlee.az.gov

Dear Recorder Milheiro:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[186] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[187] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[188] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[189]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[190] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[191]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[186] A.R.S. § 16-165(K).

[187] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[188] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[189] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[190] A.R.S. § 16-166(F).

[191] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[192]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[193]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[194] the EAC's form,[195] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[196] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[197] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[198] Further, the Court noted that the NVRA only requires states to register eligible persons.[199] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[200] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[192] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[193] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported or refused entry into the United States."

[194] 52 U.S.C. § 20505(a)(1).

[195] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[196] 570 U.S. 1 (2013).

[197] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[198] *Id.* (cleaned up) (emphasis added).

[199] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[200] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[201]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[202]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[203] Additionally, HAVA[204] requires you to "perform list maintenance" of your voter rolls,[205] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[206] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[207]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[208] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[209] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[210] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[201] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[202] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[203] A.R.S. § 16-165.
[204] P.L. 107-252, 116 Stat. 1666 (2002).
[205] 52 U.S.C. § 21083(a)(2)(A).
[206] 52 U.S.C. § 21083(a)(2)(B)(ii).
[207] 52 U.S.C. § 21083(a)(4)(A).
[208] A.R.S. § 16-143(A).
[209] A.R.S. § 16-143(B).
[210] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[211], the Social Security Administration (SSA) database[212], and the National Association for Public Health Statistics and Information Systems.[213] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[214] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[215]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[216]

### III.  County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[217] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[218]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[211] A.R.S. § 16-165(I).
[212] A.R.S. § 16-165(H).
[213] A.R.S. § 16-165(J).
[214] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[215] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[216] A.R.S. § 16-165(K).
[217] 8 U.S.C. § 1373(c) (emphasis added).
[218] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[219] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[220] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[219] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[220] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[221]

## IV.    Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant … federal databases" to accomplish this.[222] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[221] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[222] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Richard Garcia
La Paz County Recorder
1112 Joshua Avenue, Suite 201
Parker, Arizona 85344
recorder@lapazcountyaz.org

Dear Recorder Garcia:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant … federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[223] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.  State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[224] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[225] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[226]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[227] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[228]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[223] A.R.S. § 16-165(K).
[224] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").
[225] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).
[226] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").
[227] A.R.S. § 16-166(F).
[228] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[229]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[230]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[231] the EAC's form,[232] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[233] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[234] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[235] Further, the Court noted that the NVRA only requires states to register eligible persons.[236] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[237] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[229] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[230] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[231] 52 U.S.C. § 20505(a)(1).

[232] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[233] 570 U.S. 1 (2013).

[234] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[235] *Id.* (cleaned up) (emphasis added).

[236] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[237] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[238]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[239]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[240] Additionally, HAVA[241] requires you to "perform list maintenance" of your voter rolls,[242] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[243] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[244]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[245] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[246] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[247] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[238] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[239] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[240] A.R.S. § 16-165.
[241] P.L. 107-252, 116 Stat. 1666 (2002).
[242] 52 U.S.C. § 21083(a)(2)(A).
[243] 52 U.S.C. § 21083(a)(2)(B)(ii).
[244] 52 U.S.C. § 21083(a)(4)(A).
[245] A.R.S. § 16-143(A).
[246] A.R.S. § 16-143(B).
[247] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[248], the Social Security Administration (SSA) database[249], and the National Association for Public Health Statistics and Information Systems.[250] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[251] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[252]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[253]

### III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[254] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[255]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[248] A.R.S. § 16-165(I).
[249] A.R.S. § 16-165(H).
[250] A.R.S. § 16-165(J).
[251] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[252] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[253] A.R.S. § 16-165(K).
[254] 8 U.S.C. § 1373(c) (emphasis added).
[255] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[256] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[257] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[256] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[257] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[258]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[259] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[258] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[259] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Lydia Durst
Mohave County Recorder
700 West Beale Street
Kingman, Arizona 86402
voterregistration@mohave.gov

Dear Recorder Durst:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[296] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[297] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[298] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[299]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[300] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[301]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[296] A.R.S. § 16-165(K).

[297] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[298] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony to for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[299] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[300] A.R.S. § 16-166(F).

[301] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[302]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[303]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[304] the EAC's form,[305] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[306] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[307] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[308] Further, the Court noted that the NVRA only requires states to register eligible persons.[309] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[310] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[302] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[303] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[304] 52 U.S.C. § 20505(a)(1).

[305] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[306] 570 U.S. 1 (2013).

[307] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[308] *Id.* (cleaned up) (emphasis added).

[309] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[310] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[311]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[312]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[313] Additionally, HAVA[314] requires you to "perform list maintenance" of your voter rolls,[315] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[316] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[317]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[318] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[319] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[320] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[311] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[312] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[313] A.R.S. § 16-165.
[314] P.L. 107-252, 116 Stat. 1666 (2002).
[315] 52 U.S.C. § 21083(a)(2)(A).
[316] 52 U.S.C. § 21083(a)(2)(B)(ii).
[317] 52 U.S.C. § 21083(a)(4)(A).
[318] A.R.S. § 16-143(A).
[319] A.R.S. § 16-143(B).
[320] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[321], the Social Security Administration (SSA) database[322], and the National Association for Public Health Statistics and Information Systems.[323] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[324] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[325]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[326]

## III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[327] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[328]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[321] A.R.S. § 16-165(I).
[322] A.R.S. § 16-165(H).
[323] A.R.S. § 16-165(J).
[324] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[325] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[326] A.R.S. § 16-165(K).
[327] 8 U.S.C. § 1373(c) (emphasis added).
[328] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[329] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[330] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[329] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[330] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[331]

## IV.  Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[332] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[331] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[332] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Michael Sample
Navajo County Recorder
100 East Code Talkers Drive/South Hwy 77
Holbrook, Arizona 86025
Michael.Sample@navajocountyaz.gov

Dear Recorder Sample:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[333] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I. State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[334] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[335] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[336]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[337] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[338]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[333] A.R.S. § 16-165(K).

[334] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[335] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[336] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[337] A.R.S. § 16-166(F).

[338] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[339]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[340]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[341] the EAC's form,[342] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[343] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[344] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[345] Further, the Court noted that the NVRA only requires states to register eligible persons.[346] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[347] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[339] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[340] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[341] 52 U.S.C. § 20505(a)(1).

[342] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[343] 570 U.S. 1 (2013).

[344] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[345] *Id.* (cleaned up) (emphasis added).

[346] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[347] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

3

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[348]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[349]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[350] Additionally, HAVA[351] requires you to "perform list maintenance" of your voter rolls,[352] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[353] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[354]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[355] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[356] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[357] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[348] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[349] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[350] A.R.S. § 16-165.
[351] P.L. 107-252, 116 Stat. 1666 (2002).
[352] 52 U.S.C. § 21083(a)(2)(A).
[353] 52 U.S.C. § 21083(a)(2)(B)(ii).
[354] 52 U.S.C. § 21083(a)(4)(A).
[355] A.R.S. § 16-143(A).
[356] A.R.S. § 16-143(B).
[357] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[358], the Social Security Administration (SSA) database[359], and the National Association for Public Health Statistics and Information Systems.[360] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[361] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[362]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[363]

## III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[364] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[365]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[358] A.R.S. § 16-165(I).
[359] A.R.S. § 16-165(H).
[360] A.R.S. § 16-165(J).
[361] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[362] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[363] A.R.S. § 16-165(K).
[364] 8 U.S.C. § 1373(c) (emphasis added).
[365] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[366] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[367] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[366] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[367] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[368]

## IV. Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[369] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[368] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[369] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Gabriella Cázares-Kelly
Pima County Recorder
240 N Stone Ave, Tucson, Arizona 85701
Tucson, Arizona 85702
recorder@recorder.pima.gov

Dear Recorder Cázares-Kelly:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

611 Pennsylvania Ave SE #231 | Washington, DC 20003 | www.aflegal.org

obtained that requires cancellation of registrations."[370] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I. State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[371] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[372] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[373]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[374] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[375]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[370] A.R.S. § 16-165(K).

[371] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[372] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[373] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[374] A.R.S. § 16-166(F).

[375] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[376]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[377]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[378] the EAC's form,[379] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[380] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[381] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[382] Further, the Court noted that the NVRA only requires states to register eligible persons.[383] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[384] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[376] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[377] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[378] 52 U.S.C. § 20505(a)(1).

[379] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[380] 570 U.S. 1 (2013).

[381] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[382] *Id.* (cleaned up) (emphasis added).

[383] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[384] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

3

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[385]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[386]

## II.    State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[387] Additionally, HAVA[388] requires you to "perform list maintenance" of your voter rolls,[389] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[390] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[391]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[392] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[393] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[394] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[385] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[386] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[387] A.R.S. § 16-165.
[388] P.L. 107-252, 116 Stat. 1666 (2002).
[389] 52 U.S.C. § 21083(a)(2)(A).
[390] 52 U.S.C. § 21083(a)(2)(B)(ii).
[391] 52 U.S.C. § 21083(a)(4)(A).
[392] A.R.S. § 16-143(A).
[393] A.R.S. § 16-143(B).
[394] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[395], the Social Security Administration (SSA) database[396], and the National Association for Public Health Statistics and Information Systems.[397] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[398] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[399]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[400]

### III.   County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[401] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[402]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[395] A.R.S. § 16-165(I).

[396] A.R.S. § 16-165(H).

[397] A.R.S. § 16-165(J).

[398] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).

[399] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.

[400] A.R.S. § 16-165(K).

[401] 8 U.S.C. § 1373(c) (emphasis added).

[402] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[403] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[404] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[403] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).
[404] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[405]

## IV.  Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[406] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[405] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[406] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Dana Lewis
Pinal County Recorder
320 W Adamsville Rd
Florence, AZ 85132
Recorder@pinal.gov

Dear Recorder Lewis:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[407] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[408] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[409] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[410]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[411] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[412]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[407] A.R.S. § 16-165(K).

[408] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[409] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony to for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[410] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[411] A.R.S. § 16-166(F).

[412] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[413]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[414]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[415] the EAC's form,[416] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[417] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[418] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[419] Further, the Court noted that the NVRA only requires states to register eligible persons.[420] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[421] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[413] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[414] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[415] 52 U.S.C. § 20505(a)(1).

[416] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[417] 570 U.S. 1 (2013).

[418] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[419] *Id.* (cleaned up) (emphasis added).

[420] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[421] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[422]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[423]

## II.  State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[424] Additionally, HAVA[425] requires you to "perform list maintenance" of your voter rolls,[426] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[427] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[428]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[429] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[430] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[431] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[422] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[423] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[424] A.R.S. § 16-165.
[425] P.L. 107-252, 116 Stat. 1666 (2002).
[426] 52 U.S.C. § 21083(a)(2)(A).
[427] 52 U.S.C. § 21083(a)(2)(B)(ii).
[428] 52 U.S.C. § 21083(a)(4)(A).
[429] A.R.S. § 16-143(A).
[430] A.R.S. § 16-143(B).
[431] A.R.S. §§ 16-161(B), -168(G)(1).

4

SAVE[432], the Social Security Administration (SSA) database[433], and the National Association for Public Health Statistics and Information Systems.[434] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[435] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[436]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[437]

## III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[438] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[439]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[432] A.R.S. § 16-165(I).
[433] A.R.S. § 16-165(H).
[434] A.R.S. § 16-165(J).
[435] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[436] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[437] A.R.S. § 16-165(K).
[438] 8 U.S.C. § 1373(c) (emphasis added).
[439] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[440] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[441] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[440] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[441] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[442]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant … federal databases" to accomplish this.[443] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.


Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[442] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[443] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Anita Moreno
Santa Cruz County Recorder
2150 North Congress Drive, Suite 101
Nogales, Arizona 85621
recorder@santacruzcountyaz.gov

Dear Recorder Moreno:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[444] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[445] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[446] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[447]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[448] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[449]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[444] A.R.S. § 16-165(K).

[445] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[446] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[447] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[448] A.R.S. § 16-166(F).

[449] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[450]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[451]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[452] the EAC's form,[453] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[454] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[455] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility*."[456] Further, the Court noted that the NVRA only requires states to register eligible persons.[457] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[458] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[450] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[451] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported or refused entry to the United States."

[452] 52 U.S.C. § 20505(a)(1).

[453] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[454] 570 U.S. 1 (2013).

[455] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[456] *Id.* (cleaned up) (emphasis added).

[457] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal form. (Emphasis added.)"

[458] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[459]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[460]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[461] Additionally, HAVA[462] requires you to "perform list maintenance" of your voter rolls,[463] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[464] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[465]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[466] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[467] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[468] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[459] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[460] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[461] A.R.S. § 16-165.
[462] P.L. 107-252, 116 Stat. 1666 (2002).
[463] 52 U.S.C. § 21083(a)(2)(A).
[464] 52 U.S.C. § 21083(a)(2)(B)(ii).
[465] 52 U.S.C. § 21083(a)(4)(A).
[466] A.R.S. § 16-143(A).
[467] A.R.S. § 16-143(B).
[468] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[469], the Social Security Administration (SSA) database[470], and the National Association for Public Health Statistics and Information Systems.[471] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[472] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[473]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[474]

### III.   County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[475] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[476]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[469] A.R.S. § 16-165(I).

[470] A.R.S. § 16-165(H).

[471] A.R.S. § 16-165(J).

[472] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).

[473] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.

[474] A.R.S. § 16-165(K).

[475] 8 U.S.C. § 1373(c) (emphasis added).

[476] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[477] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[478] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[477] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).
[478] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[479]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[480] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[479] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[480] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**

Michelle Burchill
Yavapai County Recorder
1015 Fair Street, Room # 228
Prescott, Arizona 86305
voter.registration@yavapaiaz.gov

Dear Recorder Burchill:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

611 Pennsylvania Ave SE #231 | Washington, DC 20003 | www.aflegal.org

obtained that requires cancellation of registrations."[481] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.   State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[482] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[483] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[484]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[485] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[486]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[481] A.R.S. § 16-165(K).

[482] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[483] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[484] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[485] A.R.S. § 16-166(F).

[486] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[487]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[488]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[489] the EAC's form,[490] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[491] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[492] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility.*"[493] Further, the Court noted that the NVRA only requires states to register eligible persons.[494] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[495] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[487] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[488] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported or refused entry to the United States."

[489] 52 U.S.C. § 20505(a)(1).

[490] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[491] 570 U.S. 1 (2013).

[492] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[493] *Id.* (cleaned up) (emphasis added).

[494] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[495] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[496]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[497]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[498] Additionally, HAVA[499] requires you to "perform list maintenance" of your voter rolls,[500] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[501] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[502]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[503] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[504] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote... who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[505] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[496] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[497] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[498] A.R.S. § 16-165.
[499] P.L. 107-252, 116 Stat. 1666 (2002).
[500] 52 U.S.C. § 21083(a)(2)(A).
[501] 52 U.S.C. § 21083(a)(2)(B)(ii).
[502] 52 U.S.C. § 21083(a)(4)(A).
[503] A.R.S. § 16-143(A).
[504] A.R.S. § 16-143(B).
[505] A.R.S. §§ 16-161(B), -168(G)(1).

SAVE[506], the Social Security Administration (SSA) database[507], and the National Association for Public Health Statistics and Information Systems.[508] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[509] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[510]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[511]

### III. County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[512] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[513]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[506] A.R.S. § 16-165(I).
[507] A.R.S. § 16-165(H).
[508] A.R.S. § 16-165(J).
[509] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).
[510] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.
[511] A.R.S. § 16-165(K).
[512] 8 U.S.C. § 1373(c) (emphasis added).
[513] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[514] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[515] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[514] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[515] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[516]

## IV.   Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[517] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[516] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[517] A.R.S. § 16-165(K).



July 16, 2024

**VIA EMAIL**
Richard Colwell
Yuma County Recorder
102 S. Main Street
Yuma, Arizona 85364
Richard.Colwell@yumacountyaz.gov

Dear Recorder Colwell:

I write to you on behalf of our clients, Arizona Free Enterprise Club and Strong Communities Foundation of Arizona, to remind you of your obligation to remove foreign citizens from your voter rolls. If you continue to fail to fulfill this important duty, our clients may take legal action against you to compel you to do so.

Fortunately, there is an easy way for you to confirm the citizenship of registered voters and thus fulfill your responsibility. Congress has given you two critical tools to verify the citizenship status of individuals registered to vote in your county: 8 U.S.C. § 1373 and 8 U.S.C. § 1644. These tools, codified in federal law for decades, allow you to submit requests for information to the Department of Homeland Security (DHS) about an individual's citizenship or immigration status for *any lawful purpose*. This includes an inquiry where you have reason to believe that a given individual who is registered to vote might not be a United States citizen.

Unlike the Systematic Alien Verification for Entitlements (SAVE) Program, which requires the use of some DHS identifier to perform a search—like an Alien Registration Number or other DHS receipt number—requests under sections 1373 and 1644 *require* DHS to search for specific individuals using any available information such as a name and date of birth. Based on the information you receive in response, you can take further steps consistent with applicable law to ensure that only U.S. citizens remain on your voter rolls.

Congress has imposed upon DHS a mandatory obligation to respond to lawful inquiries about an individual's citizenship or immigration status. Should DHS refuse or fail to provide this information, you can initiate legal action to obtain it. Given the unprecedented levels of illegal immigration since January 20, 2021, the need for action could not be greater, and the stakes could not be higher.

Furthermore, Arizona law imposes on you a mandatory duty to consult "relevant ... federal databases to which the county recorder has access to confirm information

obtained that requires cancellation of registrations."[518] Because federal law secures to you the right of access to DHS's information, you have a mandatory duty under Arizona law to take advantage of that access to verify the citizenship of voters. If you act now, there is still time to conduct legally sound voter list maintenance and remove ineligible foreign nationals from your county's voter rolls before the fall elections.

## I.    State and federal law prohibit foreign nationals from voting or registering to vote.

As you know, only U.S. citizens can legally vote in State and federal elections.[519] Further, it is a State and federal crime for any foreign national to register to vote or to vote in State or federal elections.[520] No foreign national is authorized to register to vote in or to vote in State or federal elections, regardless of immigration status. And there are severe immigration-related consequences for any foreign national who attempts to vote in federal elections—namely, the foreign national becomes forever barred from any future immigration benefit in the United States.[521]

Because it is illegal for any foreign national to register to vote or to vote, there is no reason for a foreign national to be on your voter rolls. As you know, Arizona law requires that persons registering to vote provide documentary proof of citizenship.[522] However, the U.S. Supreme Court has held that the State may not impose these voter registration requirements for federal races because such information is not required on the federal voter registration form.[523]

The Help America Vote Act (HAVA) established the U.S. Election Assistance Commission (EAC), which is responsible for setting the requirements for registering to vote using the federal form. Unfortunately, the form promulgated by the EAC does

---

[518] A.R.S. § 16-165(K).

[519] *See, e.g.*, Ariz. Const. art. VII, § 2(A) (requiring that all voters be U.S. citizens); A.R.S. § 16-101(A)(1) (same); National Voter Registration Act, P.L. 103-31, 107 Stat. 77 (1993) (requiring the federal voter registration form to contain the question "Are you a citizen of the United States of America?").

[520] *E.g.* A.R.S. § 16-182(A) (making false registration to vote a class 6 felony); A.R.S. § 16-184(A) (making it a class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (making it a class 5 felony for a person "[n]ot being entitled to vote, [who] knowingly votes"); 18 U.S.C. § 611 (criminal statute subjecting aliens who vote in federal elections to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects an alien to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

[521] *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (making ineligible for a visa and inadmissible into the United States "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit ... any ... Federal or State law").

[522] A.R.S. § 16-166(F).

[523] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

not expressly require applicants to submit documentary proof of citizenship. Instead, it merely requires voter registrants to sign a form "under penalty of perjury," swearing or affirming that "I am a United States citizen."[524]



The form also warns that providing false information may lead to legal consequences, including fines, imprisonment, and, in circumstances involving foreign nationals who register to vote, removal from the United States and other potential immigration enforcement consequences.[525]

Because the National Voter Registration Act (NVRA) requires States to "accept and use"[526] the EAC's form,[527] and because that form does not require documentary proof of citizenship, the Supreme Court held in *Arizona v. Inter Tribal Council of Arizona, Inc.*[528] that "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form."[529] However, the Court also held that the NVRA "*does not preclude States from denying registration based on information in their possession establishing the applicant's ineligibility*."[530] Further, the Court noted that the NVRA only requires states to register eligible persons.[531] Nor does the Court's decision prohibit States from engaging in the voter list maintenance procedures required by HAVA,[532] such as inquiring about the citizenship or immigration status of potentially ineligible voters on voter rolls.

Further, despite its prohibition on requiring evidence of citizenship status beyond the four corners of EAC's federal voter registration form, the Court acknowledged that

---

[524] *Register to Vote in your State by Using this Postcard Form and Guide*, U.S. ELECTION ASSISTANCE COMMISSION, https://tinyurl.com/4wj6vm6r (located in Box 9 on the fourth page of the document; the page is titled "Voter Registration Application").

[525] *Id.* The form's actual language states that an individual who provides false information on the form can be "fned [sic], imprisoned, or," for aliens, "deported from or refused entry to the United States."

[526] 52 U.S.C. § 20505(a)(1).

[527] The NVRA originally delegated this authority to the Federal Election Commission. NATIONAL VOTER REGISTRATION ACT OF 1993, PL 103–31, May 20, 1993, 107 Stat 77 § 6(a)(1). HAVA transferred this authority to the EAC.

[528] 570 U.S. 1 (2013).

[529] *Id.* at 15. While this was the Court's core holding, this remains a highly questionable position in light of the fact that the form is silent on the issue of requiring documentation in support of citizenship.

[530] *Id.* (cleaned up) (emphasis added).

[531] *Id.* "… §1973gg–6(a)(1)(B) only requires a State to register an "*eligible* applicant" who submits a timely Federal Form. (Emphasis added.)"

[532] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

States nevertheless could access information via other means to help them resolve questions about a voter registration applicant's citizenship status.[533]

According to the Arizona Secretary of State's Office, as of April 2024, 35,273 registered voters in Arizona had failed to provide proof of citizenship and were, therefore, registered only to vote in federal races.[534]

## II.   State and federal law require counties to conduct voter list maintenance and remove foreign nationals from voter rolls.

Both State and federal law require you to remove ineligible voters from your voter rolls. Arizona law requires you to perform monthly list maintenance to confirm the citizenship of federal-only registered voters.[535] Additionally, HAVA[536] requires you to "perform list maintenance" of your voter rolls,[537] and to ensure that "voters ... who are not eligible to vote [in federal elections] are removed."[538] You must "ensure that voter registration records in the State are accurate and are updated regularly, including .... [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[539]

You are also required to send "to the attorney general a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship"[540] so that the Attorney General may fulfill her obligation "to use all available resources to verify the citizenship status of the applicant[s]."[541] Surprisingly, even though this statutory provision is currently in force and not enjoined by any court, we understand that none of the county recorders have fulfilled their obligations under this statute.

Additionally, county recorders must "prominently post on the recorder's website the number of persons who are registered to vote… who have not provided proof of citizenship" as of January 2, February 20, April 1, and July 1 of this year.[542] After a diligent review, we could not locate those totals on your website.

Additionally, Arizona's list maintenance statute requires counties to consult monthly several specific databases to determine the citizenship of federal-only voters:

---

[533] *Arizona* does not speak to the verification requirements established in either HAVA or the REAL ID Act. Indeed, *Arizona* neither cites nor mentions either of these two Acts of Congress in its decision.
[534] ARIZONA SECRETARY OF STATE'S OFFICE, *Federal Only Registrants as of April 1st, 2024*, (Apr. 1, 2024), https://tinyurl.com/3apvrxub.
[535] A.R.S. § 16-165.
[536] P.L. 107-252, 116 Stat. 1666 (2002).
[537] 52 U.S.C. § 21083(a)(2)(A).
[538] 52 U.S.C. § 21083(a)(2)(B)(ii).
[539] 52 U.S.C. § 21083(a)(4)(A).
[540] A.R.S. § 16-143(A).
[541] A.R.S. § 16-143(B).
[542] A.R.S. §§ 16-161(B), -168(G)(1).

4

SAVE[543], the Social Security Administration (SSA) database[544], and the National Association for Public Health Statistics and Information Systems.[545] Unfortunately, the Secretary of State has failed to negotiate access to these databases for list maintenance, so county recorders are currently unable to use them for list maintenance.[546] Furthermore, SAVE and SSA have design flaws that hinder their effectiveness for performing voter list maintenance.[547]

Notwithstanding the unavailability of the SAVE, SSA, and NAPHSIS databases because of the Secretary of State's negligence in obtaining access, Arizona law still imposes broad duties on counties to perform list maintenance using other databases, requiring that "[t]o the extent practicable, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations."[548]

## III.   County recorders have access to DHS to verify the citizenship or immigration status of registered voters on voter rolls—and DHS has a legal obligation to provide such information.

Fortunately, counties have an alternative solution for obtaining information about individuals on their voter rolls. And they can do so without the need to access the SAVE, SSA, or NAPHSIS databases.

The Immigration and Nationality Act (INA), at 8 U.S.C. § 1373, requires DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of *any* individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[549] The INA also states, in 8 U.S.C. § 1644, that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."[550]

As explained above, State and federal law unambiguously require that voters in federal elections be United States citizens and prohibits all foreign nationals, even

---

[543] A.R.S. § 16-165(I).

[544] A.R.S. § 16-165(H).

[545] A.R.S. § 16-165(J).

[546] *Mi Familia Vota v. Fontes*, --- F.Supp.3d ---, 2024 WL 862406, at *5, *6, *7 (D. Ariz. Feb. 29, 2024).

[547] AMERICA FIRST LEGAL FOUNDATION, *America First Legal Sends All 50 States a Plan for How to Use Existing Federal Law to Prevent Foreign Nationals from Illegally Voting in American Elections*, (June 24, 2024), https://tinyurl.com/ys48bs5n.

[548] A.R.S. § 16-165(K).

[549] 8 U.S.C. § 1373(c) (emphasis added).

[550] 8 U.S.C. § 1644.

those who are lawfully present in the United States, from registering to vote or voting. State and federal law also impose on counties the duty of ensuring that ineligible voters are removed from voter rolls.[551] Also, Arizona's Constitution and statutes impose citizenship requirements, and 8 U.S.C. § 1644 confers on counties unrestricted authority to obtain information about the immigration status of aliens in the United States. Therefore, it is a "purpose authorized by law" under 8 U.S.C. § 1373(c) for a county to ask DHS about the citizenship status of presently registered voters.

Notably, DHS already can verify an individual's citizenship. For example, DHS maintains the Person Centric Query System (PCQS) database. It allows agency employees to look up individuals and quickly and easily verify their citizenship status using only a name and date of birth.[552] This means that, *right now*, DHS can answer all of your inquiries about the citizenship status of all presently registered voters and all persons attempting to register to vote and do so at no cost. You already have the authority to submit citizenship inquiries about registered voters to DHS, and you can demand immediate responses from DHS.

Of course, DHS does not maintain a list of *all* foreign nationals, just those individuals it has encountered through one of its immigration agencies. Accordingly, the absence of information in DHS's databases is insufficient evidence in and of itself to remove an individual from a State's voter rolls. However, an affirmative match with an individual who has not become a naturalized citizen would likely provide sufficient grounds for further inquiry and, in most cases, eventual removal from voter rolls. It may be that some individuals subject to such a query could have subsequently naturalized and would, therefore, not be subject to removal from a State's voter rolls, but PCQS should also contain that naturalization information.

Thus, whenever a foreign national is listed in PCQS without any accompanying naturalization information, there would be reasonable grounds to follow the procedures outlined in A.R.S. § 16-165((A)(10) for notifying and giving a person the opportunity to submit necessary documentation to avoid removal from the registration rolls.

Because this system of verification relies on information in DHS's databases, it necessarily would not be able to provide information about aliens in the United States who have evaded detection. However, using these tools provides you with the ability

---

[551] 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(ii), (a)(4)(A).

[552] *Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division*, DEP'T OF HOMELAND SEC. (June 8, 2011), https://tinyurl.com/8c34jpad. ("Status verifiers may conduct queries based on an individual's name and date of birth."); DEP'T OF STATE, Foreign Affairs Manual, 9 FAM 202.2-5(C)(c) (instruction to consular officers about using PCQS stating that "[y]ou can review the applicant's information by ... entering the name and date of birth of the individual").

to remove countless ineligible voters from your voter rolls if they were, in fact, encountered by DHS and have not naturalized.

If DHS fails to respond to an inquiry, you can sue in federal court to obtain the necessary information that Congress has required DHS to provide.[553]

## IV.  Conclusion

You have a mandatory obligation under Arizona law to remove foreign nationals from your voter rolls and to "review relevant ... federal databases" to accomplish this.[554] Congress has provided you with access to a critical database to do so. Given widespread public concern over the presence of foreign nationals on voter rolls in jurisdictions across the United States and unprecedented levels of illegal immigration across our southern border since January 20, 2021, the time to act is now.

Because this database is one that you are entitled to access under federal law, you have a mandatory obligation to submit a request to DHS. Doing so is easy—all you need to do is send a letter to DHS invoking your authority under 8 U.S.C. §§ 1373 and 1644 and listing all your county's federal-only voters.

We ask that you respond to this letter by the close of business on Tuesday, July 23, confirming that you have:

(1) Submitted a request to DHS for citizenship confirmation of all federal-only voters registered in your county;
(2) Submitted the list of your county's federal-only voters to the Attorney General; and
(3) Posted the number of federal-only voters registered as of January 2, February 20, April 1, and July 1, 2024, on the county recorder website.

If you fail to confirm the above information in writing, then our clients may take legal action against you to compel you to fulfill your mandatory duties under Arizona law.

Best regards,

*/s/ James Rogers*
James Rogers
Arizona State Bar No. 027287
Senior Counsel
America First Legal Foundation

---

[553] 5 U.S.C. §§ 706(1), (2)(A) & (C) (concerning DHS's failure to provide information as required under statute); 28 U.S.C. § 1361 (the Mandamus Act can compel Secretary Alejandro Mayorkas and USCS Director Ur Jaddou to perform their statutory duties).
[554] A.R.S. § 16-165(K).

Exhibit G



**Public Service Center Building**
240 N. Stone Ave., First floor
Tucson, AZ 85701

**Document Recording:** (520) 724-4350
**Voter Registration:** (520) 724-4330

**Mailing Address:**
PO Box 3145
Tucson, AZ 85702-3145

**Social:** @PimaRecorder
**Web:** recorder.pima.gov

**Gabriella Cázares-Kelly, Recorder**

James Rogers
Senior Counsel
America First Legal Foundation

July 26, 2024

Mr. Rogers:

Thank you for your letter dated July 16, 2024, - "AFL Letter to Pima County Recorder Gabriella Cázares-Kelly"

We appreciate you pointing out the statutory requirements to post statistics regarding voters who are registered as Federal Only status on our website. Upon review, we believe that the prior administration made the decision that the webpage titled "General Election Federal Only Voters" met the requirements for reporting the number of Federal Only Voters who cast a ballot, and that our webpage titled "Voter Totals by District" satisfied the requirement of A.R.S. § 16-161(B) to post registration totals on quarterly and registration cutoff dates outlined in A.R.S. 16-168(G).

Using the Voter Totals by District would allow anyone to search at any given time, filtering for Federal Only Voters, and get the total. However, unless a visitor to our website ran the report on the specific dates and saved that data, the numbers consistent with the numbers reported to the Secretary of State on mandated dates would go away the next week (our numbers are refreshed weekly and our database is dynamic). After consulting with our legal counsel, we have revised the old page to be called "Federal Only Voters" and manually posted the statistics for the dates required. In the future, we will create an automatic procedure that will run these totals for reporting purposes. However, making changes to our Voter Registration application during an active election is not feasible. You can find the new page here: <u>Federal Only Voters</u>

Regarding your concern about referring the list of Federal Only voters to the Arizona Attorney General, the 15 recorders in the state of Arizona agreed in 2022 that the report would come from the Secretary of State. In October 2022, the Secretary of State sent the Attorney General a list of all Federal Only voters, under A.R.S. § 16-165(A)(10). The Attorney General found no non-citizen voters registered.

In reference to your concern regarding submitting a list of all Federal Only voters to DHS, we believe our current list maintenance procedures are thorough and address many of the concerns you expressed. The Pima County Recorder's Office performs daily list maintenance to ensure compliance with applicable federal and state laws regarding citizenship. We believe these options are more than useful when determining if a person is not a US Citizen and canceling their voter registration under A.R.S. § 16-165.

1



**Public Service Center Building**
240 N. Stone Ave., First floor
Tucson, AZ 85701

**Document Recording:** (520) 724-4350
**Voter Registration:** (520) 724-4330

**Mailing Address:**
PO Box 3145
Tucson, AZ 85702-3145

**Social:** @PimaRecorder
**Web:** recorder.pima.gov

Gabriella Cázares-Kelly, Recorder

I have attached a document that explains our procedures. We agree that list maintenance is critical to ensuring that only those who are eligible are able to vote. Where we differ is in the opinion of the scope of our office. Currently, our office uses the following tools to confirm citizenship:

- The Systematic Alien Verification for Entitlements (SAVE) System
- Non-citizen/non-resident reports, MVD Full File Comparison and Real Time Check to determine the citizenship of those registering to vote. It is important to note that most voter registrations come through MVD.

Recent legislation has also made changes to our procedures. These laws/rulings were implemented in a Presidential Election year, and the development of the statewide voter registration system (AVID) and the Pima County Voter Registration application, and the interface between them, takes time. But please be assured that we meet several times a week with all the counties, the Secretary of State (SOS) and the development teams to work through logic, consistency, testing and implementation of the following changes:

- Pursuant to A.R.S. § 16-165(G), each month a comparison of the MVD and voter registration databases will be performed once the state implements the procedure in AVID. One of the checks is whether a voter's authorized presence value changed at MVD.

- Last week (July 18,) the 9th Circuit Court of Appeals issued an order that allows for the enforcement of A.R.S. § 16-121.01(C). This requires Pima County to deny voter registration submitted by people who failed to provide Documentary Proof of Citizenship (DPOC) on a STATE voter registration form.

- HB 2243 in 2022 amended A.R.S. § 16-165 (A)(10) and requires county recorders to cancel voter registrations based on answers on Jury Questionnaires regarding citizenship. This procedure is being implemented manually by our office. The list of people that answer that they are not a US Citizen on their questionnaire are typically not registered to vote or have provided proof of citizenship and mistakenly marked the questionnaire. As a matter of fact, we reported that only one (1) person referred on the list needed to be cancelled as a result of answering that they were not a citizen out of the last several hundred. We believe this is due to the strength of our systems for ensuring all registered voters in Pima County are US Citizens. This voter was blocked from voting because the form was missing any identifying information.

Regarding a couple of tools you mentioned in your letter, we believe our procedures more than satisfy our obligation to confirm citizenship. The Person Centric Query System (PCQS) does not use

2



**Public Service Center Building**
240 N. Stone Ave., First floor
Tucson, AZ 85701

**Document Recording:** (520) 724-4350
**Voter Registration:** (520) 724-4330

**Mailing Address:**
PO Box 3145
Tucson, AZ 85702-3145

**Social:** @PimaRecorder
**Web:** recorder.pima.gov

**Gabriella Cázares-Kelly, Recorder**

any new data not already available to SAVE. The SAVE system is checked when a person initially registers to vote and it returns an answer regarding the citizenship of an applicant within seconds.

SOS is investigating a subscription to Electronic Verification of Vital Events (EVVE) (NAPHSIS check) that offers on-demand access to vital records.  EVVE will return answers about an applicant in real time which confirms the validity of a person's birth in the United States.

In conclusion, we are confident that we have shown that although federal law allows for registrants using a federal form to be registered as a Federal Only voter without showing proof of citizenship, reality has proven that as a general rule, those who are not citizens do not register to vote. In rare cases where someone who is not eligible actually attempts to register to vote, there are safeguards and laws to ensure that only eligible persons can vote.  We hope this explanation can build your trust in our democratic processes and that you will spread the word.

Thank you,

Gabriella Cázares-Kelly
Pima County Recorder

3



# PIMA COUNTY RECORDER'S OFFICE
## Voter Registration List Maintenance

**VOTER REGISTRATION – List Maintenance Overview**

The Pima County Recorder is responsible for maintaining the voter registration roll of all eligible voters. That responsibility includes active list maintenance to ensure the voter registration roll reflects the most current eligible voters. ARS 16-165 – Causes for Cancellation is the controlling statute governing the voter registration list maintenance activities, while the 2023 Arizona Election Procedures Manual (EPM) Chapter 1, Sec. 9 define the list maintenance procedures used by voter registration staff for daily work.

In addition to the procedures outlined in the EPM, the Pima County Recorder's Office also created internal standard operating procedures to further assist staff to keep the voter rolls clean. Each area noted below also shows whether the task is mandated by statute, EPM or office procedure. Our office has numerous instructions for staff to do all the tasks.

### List Maintenance Tasks

A. **Returned Election Mail** (anything we mail to voters) – per Federal NVRA (National Voter Registration Act, 52 USCA § 20507; Arizona Revised Statutes A.R.S. § 16-166; EPM p. 46.

   1. NVRA process begins after a piece of returned mail is received back by our office.

   2. A NVRA letter is sent

   3. Voters can update. A.R.S. § 16-544(E).

   4. After 35 days with no response to the 2nd piece of returned mail, voter is moved to Inactive status and no further mail is sent to voter.

   5. After 2 Federal Election cycles with no response, voter is canceled. A.R.S. § 165(A)(7).

B. **Deaths** (A.R.S. § 16-165(A)(2))

   1. AZ provides monthly AZDHS (AZ Dept of Health Services) list of people who died in Arizona – staff checks for a good match. A.R.S. § 16-165(D); EPM p. 36.

   2. ERIC provides a monthly SSA (Social Security Administration) death list – staff checks for a good match. EPM p. 37.

    3.  Staff reviews all Pima recorded documents for death certificates and checks against voter file monthly. EPM p. 38.

    4.  Staff reviews obituaries daily from several local publications online and printed. EPM p. 38.

    5.  If we receive a call or email notifying us that a voter has passed away, we inform the caller that we need either a copy of a death certificate or a paid obituary to cancel the voter registration of a deceased voter. Similarly, if we receive a handwritten note on a piece of returned official election mail, a letter is sent to the home of the voter and/or someone who is administering their estate notifying them of the requirements to cancel the voter registration.

C.  Our Voter Database interfaces with the statewide, **Active Voter Information Database (AVID)** system to automatically check for the following:

    1.  Duplicate matches with other counties in AZ

    2.  Felony convictions where the courts have notified the AZSOS. EPM p. 38.

    3.  MVD (Motor Vehicle Department). EPM p. 26
        i.    for F type license (indicating not a citizen)
        ii.   Match number provided or identify a match already in MVD system when driver's license is not provided.

    4.  SSA (Social Security Administration) verification. EPM p. 26.

D.  **SAVE** database (Federal) (Systematic Alien Verification for Entitlements)

    1.  Checks where necessary for citizenship status. *See* EPM p. 9 stating that "SAVE shall only be used be used for verification of citizenship for a new registration if the registrant provides a Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number as DPOC. Further, under the terms of the current USCIS MOA, SAVE shall not be used for list maintenance purposes, i.e. to cancel an existing registration.) *See* A.R.S. § 16-165.

    2.  Please see Chapter 1, Section 6 of the Elections Procedure Manual for more about the extensive SAVE verification procedures.

E.  **Periodically staff runs reports to check for anomalies in records** – these checks were instituted to verify integrity of our data

    1.  Duplicate check by AZ Driver's License

    2.  Duplicate check by same first name, SSN (Social Security Number) & DOB (Date of Birth)

    3.  Reg date prior to 1/1/20 – checks for entry errors

    4.  Reg date later than the effective date of change – checks for entry errors

5. Effective date of change is less than or equal to 1/1/1972 – checks for entry errors

6. Records with odd telephone numbers

7. Voters over the age of 100

F. **NCOA** (National Change of Address)
   1. Our vendor runs the report with the USPS (US Postal Service)
      - Not federally mandated but permitted under 52 U.S.C. § 20507(c)(1)(A); EPM. p. 45-46; A.R.S. § 16-166(E).
      - Can be used as the "first notice" under NVRA. EPM p. 39. 52 U.S.C. § 20507(d); A.R.S. § 16-166(E).
   2. Letters generated based on report. EPM. p. 46; A.R.S. § 16-544(D).
   3. Always run before any large mailing
   4. Have recently started to run this report monthly

G. **Notifications** that voters have registered in another state
   A. AZSOS forwards these as they are received directly from other states. EPM p. 39.
      - Not all states send this information.
      - Pima does send these notices to other states when voters provide an indication on a new registration that they were previously registered in another state.
   B. ERIC Cross State Mover report. *See also* EPM 45-46
      - *See* ERIC, *Electronic Registration Information Center (Eric) FAQ* (Feb. 2, 2022) (describing ERIC as a state-controlled organization "comprised of 31 states and the District of Columbia.").
      - Cannot use the report as a first notice under NVRA.
      - We send letters to these voters with two options:
        1) Confirm their Pima County address.
        2) Cancel their registration.
   A. We can use that letter as a first notice, so NVRA notices are then generated from any returned mail from the mailing. EPM pg. 46
   B. We are also able to confirm many addresses and other voters used the option to go ahead and cancel their registrations.

H. **Juror Questionnaire** when County Recorder receives court records regarding prospective Jurors, if they self-report a felony, the County Recorder must cancel that registration. to A.R.S. § 21-314 and EPM p. 39-40.

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

7
8
9

STRONG COMMUNITIES
FOUNDATION OF ARIZONA
INCORPORATED, and YVONNE
CAHILL;

No. CV-24-02030-PHX-SMB

**[PROPOSED] ORDER**

10
11

         Plaintiffs,

   v.

12
13

STEPHEN RICHER, in his official
capacity as Maricopa County Recorder, *et
al.*

14

15

Defendants.

16    Having considered the Plaintiffs' Motion for a Temporary Restraining Order and

17    Preliminary Injunction, **IT IS HEREBY ORDERED** granting the motion.

18    **IT IS FURTHER ORDERED** that:

19    1.    Each County Recorder Defendants shall submit to the U.S. Department of

20    Homeland Security requests pursuant to 8 U.S.C. §§ 1373 and 1644 asking for confirmation

21    of the citizenship or immigration status of every registered voter in the County who has railed

22    to provide documentary proof of U.S. citizenship.

23    2.    Each County Recorder Defendant shall transmit to the Arizona Attorney

24    General a list of the every registered voter in the County who has railed to provide

25    documentary proof of U.S. citizenship, as well as the voter application for each such registered

26    voter.

1