**AMERICA FIRST LEGAL FOUNDATION**

James K. Rogers (No. 027287)
　*Senior Counsel*
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

**JENNIFER WRIGHT ESQ., PLC**

Jennifer J. Wright (No. 027145)
4340 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| STRONG COMMUNITIES FOUNDATION OF ARIZONA INCORPORATED, and YVONNE CAHILL;<br><br>　　　　Plaintiffs,<br>　v.<br><br>STEPHEN RICHER, in his official capacity as Maricopa County Recorder; *et al.*<br><br>　　　　Defendants. | No. 2:24-cv-02030-KML<br><br>**PLAINTIFFS' OPPOSITION TO THE MOTION TO INTERVENE OF THE DEMOCRATIC NATIONAL COMMITTEE** |

# Table of Contents

INTRODUCTION. ........................................................................................................................... 1

ARGUMENT. ................................................................................................................................. 3

I.    The DNC does not qualify to intervene as of right. ............................................................. 3

A.    The DNC Lacks a Protectable Interest. .............................................................................. 3

B.    The Defendants Adequately Represent the DNC's Interests. ............................................ 7

II.    The Court Should Deny Permissive Intervention. .............................................................. 9

III.    The DNC Could Participate as *Amicus Curiae*. ..................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**US SUPREME COURT CASES**

*Brown v. Felsen*, 442 U.S. 127 (1979) ..................................................................................9

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ............................................................4

**CASES**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ..........................................................7, 8

*Arizona Democratic Party v. Hobbs*, 2020 WL 6559160 (D. Ariz. 2020) ...........................11

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ..........................................................5, 9

*Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069 (8th Cir. 2023) .......................................8

*Gonzalez v. Arizona*, 485 F.3d 1041 (9th Cir. 2007) .............................................................8

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ..............................................................................................................................5

*Ligas ex rel. Foster v. Maram*, 478 F.3d 771 (7th Cir. 2007) ................................................8

*Mi Familia Vota v. Fontes*, --- F.Supp.3d ----, 2024 WL 862406
    (D. Ariz. Feb. 29, 2024) ........................................................................... 4, 5, 6, 9, 10, 11

*Mi Familia Vota v. Hobbs*, 2021 WL 5217875 (D. Ariz. Oct. 14, 2021) ..............................11

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ......................................8

*One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394 (W.D. Wis. 2015) ................................8

*Oyeni-ran v. Holder*, 672 F.3d 800 (9th Cir. 2012) ...............................................................4

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) .................................3

**FEDERAL STATUTES**

8 U.S.C. § 1101 ........................................................................................................................2

18 U.S.C. § 611 .................................................................................................................. 5

18 U.S.C. § 911 .................................................................................................................. 5

18 U.S.C. § 1015 ................................................................................................................ 5

52 U.S.C. § 21144 .............................................................................................................. 5

**STATE STATUTES**

A.R.S. § 16-121.01 ............................................................................................................ 2

A.R.S. § 16-143 .............................................................................................................. 2, 6

A.R.S. § 16-165 ................................................................................................................. 2

A.R.S. § 16-182 ................................................................................................................. 5

A.R.S. § 16-184 ................................................................................................................. 5

A.R.S. § 16-1016 ............................................................................................................... 5

**FEDERAL RULES**

Federal Rule of Civil Procedure 24 ........................................................................... 1, 3, 9

**OTHER AUTHORITIES**

*Arizona Voter Data Coding Oversight Updated*, AZSOS, (Sep. 30, 2024),
    https://perma.cc/N6NF-SED6 ..................................................................................... 1

Joint Stipulation of Facts, *Richer v. Fontes*, CV-24-0221 (Ariz. Sup. Ct.) (Sept. 18, 2024). ¶¶
    14-15. https://perma.cc/27GQ-NWGZ ........................................................................ 2

*The Mission*, AFL, https://perma.cc/SR7P-RWY2 ........................................................... 7

## INTRODUCTION

In its Motion to Intervene (ECF No. 46 ("Motion")), the Democratic National Committee (DNC) has failed to satisfy its burden of showing it is entitled to intervene as of right or permissively. It cannot pinpoint any possible interest in this litigation that is not speculative and contingent.

To intervene as of right, under Rule 24, a party must satisfy a four-part test. As with the prior proposed intervenors (One Arizona and Voto Latino, *see* ECF No. 5), the DNC fails three of the four. Its request for permissive intervention fares no better.

The DNC claims a need to intervene "to ensure that there are no late-hour changes to the state's voting rules" Motion at 2, yet because the Plaintiffs seek no such thing (but instead seek that the Defendants merely comply with currently operative statutes governing list maintenance), even by the DNC's own standards, there is no reason to grant its motion. The DNC goes on to spout a list of inaccurate adjectives: "disruption," "distraction," "harassment," and "impediment." *Id.* None of those describe the relief that the Plaintiffs seek, which is merely that the Defendants conduct uniform and non-discriminatory list maintenance, submitting *all* Federal-Only Voters to the U.S. Department of Homeland Security (DHS) for verification, rather than only submitting for verification to DHS the small subset of registrants who have provided an alien number.

What this lawsuit is about is restoring confidence in Arizona's elections. The DNC never disputes the survey data that the Plaintiffs cite, which shows that a majority of Arizonans do not trust their State's electoral system. *See* ECF Nos. 12 ¶¶ 2-3, 10-11 and 57 at 1-2. Is it any wonder? *Every* general election since 2016 has been marred by major blunders and mistakes. This year is no different, with election officials recently admitting that their failures in list maintenance allowed hundreds of thousands of voters to register as full-ballot voters without ever having provided documentary proof of citizenship (DPOC). *Arizona Voter Data Coding Oversight Updated*, AZSOS, (Sep. 30, 2024), https://perma.cc/N6NF-SED6. And that

1

major screwup was only discovered when the office of Maricopa County Recorder Stephen Richer ("Recorder Richer") found a foreign citizen[1] who had been registered to vote for years without ever having been noticed. Joint Stipulation of Facts, *Richer v. Fontes*, CV-24-0221 (Ariz. Sup. Ct.) (Sept. 18, 2024). ¶¶ 14-15. https://perma.cc/27GQ-NWGZ

Even worse, the DNC's Motion is full of inaccuracies and distortions. It claims that the Plaintiffs waited more than a month after initiating their lawsuit to seek relief. Not so. They filed their initial complaint in the Arizona Superior Court of Maricopa County on August 5. ECF No. 1-1 at 14. They sought preliminary relief *that same day*, filing their Application for Order to Show Cause on August 5, ECF No. 1-4 at 4, which, perhaps unbeknownst to the DNC, is the procedurally proper means of seeking relief in a special action in Arizona State court. *See* Ariz. R. P. Spec. Act. 4(c) and 7(c). Any purported delays were caused by Defendants Maricopa County and Recorder Richer *removing* this case to federal court.

As with One Arizona and Voto Latino's prior intervention motion (ECF No. 5), the DNC spills much ink mischaracterizing this lawsuit as an attempt to create unnecessary barriers to vote. However, this lawsuit demands only two things of the Defendants—that they (1) submit their ever-growing list of Federal-Only Voters to DHS to verify citizenship status, as required under A.R.S. §§ 16-121.01(D), -165(K), and the NVRA and (2) submit to the Attorney General the list of Maricopa County Federal-Only Voters as required under A.R.S. § 16-143(A). Only *if* DHS confirms that a Federal-Only Voter is a foreign citizen would a registrant's cancelation be triggered under A.R.S. § 16-165(A)(10), which, notwithstanding such a finding, nonetheless provides requisite due process by allowing the Federal-Only Voter to submit proof of citizenship, which prevents cancelation and retains the voter's right to vote.

The Plaintiffs are merely trying to compel the Defendants to fulfill their statutory duty to ensure that the eligibility of every voter is properly verified. Indeed, the relief that the

---

[1] In this brief, "foreign citizen" means "any person not a citizen or national of the United States," the defined meaning for the term "alien" in federal law. 8 U.S.C. § 1101(a)(3).

2

Plaintiffs requested will likely *enfranchise* many eligible voters, since DHS's responses will likely show that many of the Federal-Only Voters are citizens who are entitled to vote full ballots. And there is no risk that the relief will disenfranchise anyone, as the only persons who could lose their status as registered voters will be foreign citizens identified by DHS.

The DNC has failed to show that intervention is warranted, and its motion should be denied. However, all is not lost. As this case proceeds, the Plaintiffs would not oppose reasonable requests from the DNC to file relevant amicus briefs, which, in this context, would be the appropriate way for it to add its views to this case.

**ARGUMENT**

**I.     The DNC does not qualify to intervene as of right.**

A party may intervene as of right if (1) "[o]n timely motion" it (2) "claims an interest relating to the property or transaction that is the subject of the action," (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) "existing parties [do not] adequately represent that interest." Fed. R. Civ. P. 24(a). The DNC fails all but the timeliness requirement. It lacks any legally protected interest. And what it incorrectly claims to be "interests" could never be impaired by the outcome of these proceedings. Further, the apparent "interests" it posits are, even if viable, adequately represented by the Defendants.

"Failure to satisfy any one of [the Rule 24(a)] requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

The DNC has failed to satisfy its burden of proving its entitlement to intervene, and its Motion should, therefore, be denied.

**A.  The DNC Lacks a Protectable Interest.**

The DNC struggles to articulate any cognizable "interest" in these proceedings, let alone a *significant* protectable interest.

*First*, the DNC claims an interest "in safeguarding its supporters' and members' access to the ballot box." (Motion at 8.) However, the DNC never articulates exactly *how* its

3

members' access to the ballot box might be impeded, other than vaguely asserting, without any evidence or elaboration, that "[e]ven legitimate efforts to remove ineligible voters from the rolls are not free from error or abuse." (Motion at 9.)

The DNC seems to imply, without directly stating, that it believes DHS's data about the immigration status of individuals is unreliable. However, the DNC *already* made this argument directly in *Mi Familia Vota v. Fontes* and lost. The plaintiffs in that case, including the DNC, argued that DHS's Systematic Alien Verification for Entitlements (SAVE) database was unreliable. The *Mi Familia* court soundly rejected this contention, finding that the "Plaintiffs have failed to adduce evidence that SAVE is unreliable or contains severely inaccurate or outdated citizenship information." *Mi Familia Vota v. Fontes*, --- F.Supp.3d ----, 2024 WL 862406, at *7 (D. Ariz. Feb. 29, 2024). The DNC offers no reason that this prior adverse decision against it should be revisited or why it should not apply equally to any other database DHS might use to answer a 1373/1644 Request. Indeed, under the doctrine of issue preclusion, the DNC should be barred from repeating the same arguments here. *See Oyeni-ran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (listing conditions under which issue preclusion applies); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–331(1979) (holding that issue preclusion applies when there is not mutuality between the parties if its application would not be unfair).

*Second*, the DNC claims it would need to "redirect[ resources] toward helping Democratic voters navigate new bureaucratic hurdles and potentially disenfranchising list maintenance." (Motion at 10.) The DNC bases this contention on the apparent presumption that DHS will identify a not insignificant number of the DNC's supporters as foreign citizens, and as such, a significant number of them will receive a letter from the Defendants providing them an opportunity to provide DPOC before having their registration canceled. However, foreign citizens do not have a right to vote in State and federal elections. As explained above, *Mi Familia* already determined that DHS makes reliable determinations about an individual's immigration status (indeed, it is absurd for the DNC to imply that our nation's

immigration agency is unable to make such determinations—if DHS cannot do so, then who can?). Any efforts that the DNC expends in assisting its supporters to overcome authoritative adverse determinations from the federal government about their citizenship would be efforts to help foreign citizens vote in Arizona's elections, which is illegal.[2] A protectable interest must be "an interest that is protected under some law." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). No applicable law protects foreign citizens' ability to vote or register to vote.

Furthermore, the DNC already tried and failed to enjoin the Arizona statutory provisions that require county recorders to submit citizenship inquiries to DHS. *Mi Familia Vota*, 2024 WL 862406 at *50. Trying to intervene here is merely a transparent attempt to relitigate the DNC's already failed arguments. Furthermore, an organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (citation omitted).

*Third*, the DNC claims that the relief requested in this suit would "negatively impact the parties' electoral prospects." (Motion at 11.) But, as explained above, the requested relief in this case will not require the removal of *any* individuals, but merely that a letter be

---

[2] *E.g.* A.R.S. § 16-182(A) (class 6 felony for false registration to vote); A.R.S. § 16-184(A) (class 5 felony to "knowingly swear[] falsely to an affidavit" required by Arizona's election statutes); A.R.S. § 16-1016(1) (class 5 felony to "knowingly vote[]" when "[n]ot being entitled to"); 18 U.S.C. § 611 (foreign citizens who vote in federal elections subject to up to one year in prison or a criminal fine); 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."); 18 U.S.C. § 1015(f) (knowingly making "any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election" subjects a foreign citizen to five years' imprisonment or fine); 52 U.S.C. § 21144(b) (making it a crime to "knowingly commit[] fraud or knowingly make[] a false statement with respect to the naturalization, citizenry, or alien registry" in connection with voter registration and voting).

sent to DHS requesting citizenship verification. The *only* individuals who might eventually be removed from the voter rolls because of this lawsuit would be individuals confirmed by DHS through 1373/1644 Requests to be foreign citizens, for whom it is illegal to vote or even to register to vote.

The DNC does not have a protectable interest in enhancing its electoral prospects through illegal voting.

The DNC also claims that, because the requested relief in this case would "subject all federal-only voters to additional investigation by DHS and require that their names and applications be sent to the Attorney General, some Democratic voters would likely be chilled from participating in the political process as well." (Motion at 11.) But both of those results would already be true *now*. Arizona law requires that the Arizona Secretary of State *and* all Arizona county recorders conduct investigations of all Federal-Only Voters to confirm their citizenship (county recorders must do so monthly), including by submitting their information to DHS through SAVE, to the Social Security Administration database, and to the National Association for Public Health Statistics and Information Systems (NAPHSIS) electronic verification of vital events system (EVVE), and also through all other "available resources" and "[a]ny other state, city, town, county or federal database and any other database relating to voter registration to which the county recorder or officer in charge of elections has access." A.R.S. §§ 16-143(B) and -165(H)-(K). The DNC fails to offer *any* explanation, let alone a plausible one, for how the relief requested here will have a chilling effect beyond what is already specifically required by Arizona's election statutes.

*Fourth*, the DNC claims an interest in defending the result of the *Mi Familia* case. (Motion at 12-13.) However, there is nothing for it to protect. As explained above, *Mi Familia Vota* specifically affirmed Arizona election officials' right "to consult information available to Arizona" and "cancel a registration only if the county recorder 'confirms' from that information that the voter is not a citizen." 2024 WL 862406, at *40.

### B. The Defendants Adequately Represent the DNC's Interests.

Even if the DNC had some sort of cognizable interest, the Defendants adequately represent it. The three factors relevant to adequate representation are: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

The DNC fails all three parts of the test.

Critically, the DNC's primary thrust for arguing that the Defendants will not adequately represent its interests is that the "Defendants are not capable of making the DNC's arguments relating to its unique partisan concerns."[3] (Motion at 14.) However, the DNC failed to identify *any* specific argument it will make that the Defendants will not also make. Although it alleges that the Defendants *may* be unwilling to make non-specified arguments, the 59-page answer by the Maricopa County Defendants, ECF No. 17 (35 pages longer than the DNC's Proposed Answer, ECF No. 46-1), suggests otherwise. Nor has the DNC identified any necessary elements it would add that the Defendants would neglect. Again, the Defendants' fulsome Answer seemingly leaves no defense unasserted. Furthermore, on the substance, the DNC's Proposed Answer is in almost total agreement with the Defendants', denying and admitting the same allegations in near lockstep. The same points apply to the

---

[3] The DNC also claims in a footnote that its partisan nature justifies intervention because America First Legal Foundation (AFL), which is acting as co-counsel for the Plaintiffs, is somehow part "of the Republican establishment." (Motion at 13 n.5.) In support of that claim, it quotes selectively from AFL's website, neglecting to note that the same webpage from which they quote also affirms that AFL is "**committed to fighting for all Americans–regardless of race, color, religion, or creed**. We will defend the rights of all Americans from attacks by anyone, *in any party*, who would seek to attack their freedom, their dignity, and their equal rights under the law." *The Mission*, AFL, https://perma.cc/SR7P-RWY2 (first emphasis in original, second emphasis added). That same webpage also notes that "America First Legal Foundation is an IRS-approved section 501(c)(3) public charity." *Id.* Consistent with its 501(c)(3) status, AFL is entirely non-partisan. This argument by the DNC thus also fails.

DNC's proposed response in opposition to the Plaintiffs' TRO/PI Motion, ECF No. 46-3, compared to Maricopa County's opposition. ECF No. 48.

Additionally, "[w]here the government is acting on behalf of a constituency it represents, as it is here, ... court[s] assume[] that the government will adequately represent that constituency." *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) (cleaned up); *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023) (same). And where the proposed intervenor has failed to show how its interests in the litigation are different from the public at large, "the proposed intervenor can rebut" the presumption of the government's adequacy of representation "only with a strong showing of inadequacy, such as by demonstrating that the governmental entity has committed misfeasance or nonfeasance in protecting the public." *Entergy Arkansas, LLC*, 76 F.4th at 1071 (cleaned up). The DNC has failed to rebut this strong presumption.

The DNC "ha[s] failed to demonstrate that the existing parties will not adequately represent their interests ... The proposed intervenors do not suggest that the [government's] representation is negligent or undertaken in bad faith. Nor is their objective in this case any different from that of the [government]." *One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015); *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007) ("The intervenors have made no effort to show gross negligence or bad faith on the part of the state defendants, and have therefore not overcome the presumption that the defendants, as governmental bodies charged with protecting the interests of the proposed intervenors, will provide adequate representation.").

Also of importance is how the DNC's "interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086. Moreover, when "an applicant for intervention and an existing party have the same *ultimate objective*, a presumption of adequacy of representation arises" that can only be rebutted if the applicant makes "a compelling showing" of inadequacy of representation. *Id.* (emphasis added). *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (same). Here, virtually all the Defendants share the same ultimate objec-

8

tive of opposing sending a letter to DHS to confirm the citizenship status of Federal-Only Voters and sending the Federal-Only list to the Arizona Attorney General. *See, e.g.*, ECF Nos. 48 (Maricopa County Defendants' Opposition to Plaintiffs' TRO/PI Motion), 52 (Pinal County Defendants' Joinder), 53 (Yavapai County Defendants' Joinder), 54 (Navajo County Defendants' Joinder), 66 (Coconino County Defendants' Joinder), 67 (Pima County Defendants' Joinder), 69 (Apache County Defendants' Joinder), 71 (Yuma County Defendants' Joinder), 73 (Graham County Defendants' Joinder), 74 (Cochise County Defendants' Joinder), 80 (La Paz County Defendants' Joinder), 81 (Santa Cruz County Defendants' Joinder), and 84 (Gila County Defendants' Joinder)).

Ultimately, this is the same objective as the DNC, which also objects to sending a letter to DHS and a list to the Arizona Attorney General. Accordingly, there is not only one existing party with the same ultimate objective, but twenty-six parties represented by thirteen different sets of attorneys who are all vigorously opposed to the Plaintiffs' TRO/PI Motion. The DNC cannot reasonably suggest that its interests are not being adequately represented.

**II.     The Court Should Deny Permissive Intervention.**

This Court has broad discretion to deny permissive intervention that may "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). To be granted permissive intervention, the DNC must prove "that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). However, this Court has broad discretion to deny permissive intervention that may "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the DNC has made clear its intent to relitigate its claims from *Mi Familia Vota*, hoping for a different result. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Crit-

9

ically, the DNC, the other Proposed Intervenors, and the Defendants were all parties to *Mi Familia Vota*, where the DNC sought to enjoin the Defendants from performing the very statutory duties that the Plaintiffs seek to compel the Defendants to perform here. The legal doctrine of res judicata not only encourages reliance on judicial decisions already rendered, but also "frees the courts to resolve other disputes." *Id.*

There can be no clearer reason to deny permissive intervention than to prevent the DNC from using these proceedings to relitigate their failed arguments. As noted in *Mi Familia Vota*, "[w]hile Plaintiffs may disagree with the efficacy of [the Voting Laws' Citizenship Verification Procedures, Attorney General Referral Provision, and List Maintenance Procedures], 'the propriety of doing so is perfectly clear': it helps ensure that any non-citizens that register to vote, intentionally or mistakenly, do not make it onto or remain on the voter rolls." 2024 WL 862406 at *51 (citation omitted).

It is undeniable that allowing the DNC to relitigate its attempt to enjoin Arizona's duly enacted laws to verify citizenship will unduly delay these proceedings and prejudice the adjudication of the Plaintiffs' claims. The Defendants have already mounted a formidable defense, and there is no need to further elongate and delay these proceedings by allowing the DNC to reassert previously rejected arguments. One can't blame the DNC for wanting a second bite at the apple, but this Court should reject the attempt.

### III. The DNC Could Participate as *Amicus Curiae*.

The purported contributions the DNC promises to make to this case—"arguments relating to its unique partisan concerns" (Motion at 14), "the perspective of candidates and voters who would be significantly harmed by Plaintiffs' proposed" relief (Mot. at 15), and "a pragmatic, campaign-oriented viewpoint" (*Id.*)—could more easily be made through appropriate amicus briefs. The Plaintiffs would not oppose reasonable requests from the DNC to file such briefs. The Court should, therefore, deny the Motion to Intervene and, when a scheduling order is issued in this case, allow for the DNC to file amicus briefs (with strict

page limits) at relevant milestones in the case, such as in connection with motions to dismiss or dispositive motions.

Alternatively, if this Court is inclined to grant the DNC's Motion, it should do so with strict limits that prohibit redundant or duplicative submissions, to avoid prejudice to the Plaintiffs and also to streamline this case. Proposed Intervenor Voto Latino recently similarly urged an Arizona federal court to "impose strict limits" on proposed intervenors "to prevent unnecessary delay, duplication, and prejudice to existing parties and to judicial economy." Pls.' Opp. to Mot.to Intervene at 13 n.4 (May 26, 2022), Doc. 46, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz.).[4] The District of Arizona has wisely heeded such requests, constraining intervenors in election-related disputes to coordinate with the government parties, join the governmental parties' briefing whenever feasible, and "to move for leave to file separate briefing" if a named party would not or could not advance a particular argument or defense. *See Mi Familia Vota v. Hobbs*, No. 2:21-cv-01423-DWL, 2021 WL 5217875, at *2 (D. Ariz. Oct. 14, 2021) (citing *Arizona Democratic Party v. Hobbs*, 2020 WL 6559160, at *1 (D. Ariz. 2020)).

---

[4] The following is the entirety of Voto Latino's request to the court in that case:

> If the Court is inclined to grant intervention, Plaintiffs respectfully request that, at a minimum, it impose strict limits to prevent unnecessary delay, duplication, and prejudice to existing parties and to judicial economy. For example—similar to the approach Judge Rayes took in *Arizona Democratic Party*, Plaintiffs respectfully request that the Court designate existing Plaintiffs and Defendants as 'the representatives responsible for coordinating' the legal strategy and scheduling in the matter and order that (1) Movants' 'cannot file a response without leave of Court;' (2) 'any proposed response must not repeat any argument already raised,' and (3) 'any motion seeking leave to file a response will need to explain how the briefing submitted by [existing parties] does not adequately address the issue or issues affecting Movants.' *Ariz. Democratic Party*, 2020 WL 6559160, at *1. Plaintiffs note that Movants 'commit to complying with all deadlines that govern the parties, working to prevent duplicative briefing, and coordinating with the parties on discovery,' Mot. at 14, and ask that if Movants are admitted as parties, they be strictly held to that commitment.

Pls.' Opp. to Mot.to Intervene at 13 n.4 (May 26, 2022), Doc. 46, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509-SRB (D. Ariz.).

11

If this Court is inclined to grant intervention, then similar safeguards would be sensible and appropriate here. As a comparison between Maricopa County's Answer and the DNC's Proposed Answer already shows, there certainly will be substantial overlap, if not full congruity, between the positions of the Defendants and of the DNC. If the Court is inclined to expand the proceedings, it should preclude the DNC from burdening both the Court and the Plaintiffs with duplicative papers or other submissions.

The Court, therefore, should impose limits to minimize the unnecessary and duplicative filings, such as by requiring the Defendants and the DNC to file joint briefs at each major phase of the case, including a single joint motion to dismiss, a single dispositive motion, and combined trial briefs.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion and instead allow the DNC to file *amicus* briefs at appropriate times. If this Court concludes that intervention is appropriate, the Court should strictly limit that intervention to minimize prejudice and delay.

RESPECTFULLY SUBMITTED this 10th of October, 2024.

**America First Legal Foundation**

By: __/s/James Rogers__
    James K. Rogers (No. 027287)
    *Senior Counsel*
    America First Legal Foundation
    611 Pennsylvania Ave., SE #231
    Washington, D.C. 20003
    Phone: (202) 964-3721
    James.Rogers@aflegal.org

    Jennifer J. Wright (027145)
    Jennifer Wright Esq., PLC
    4340 E. Indian School Rd
    Suite #21-105
    Phoenix, Arizona 85018
    jen@jenwesq.com

    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system and transmittal of a Notice of Electronic filing to the CM/ECF registrants on record.

*/s/ James K. Rogers*
*Attorney for the Plaintiffs*

13