**AMERICA FIRST LEGAL FOUNDATION**

James K. Rogers (No. 027287)
  *Senior Counsel*
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

*Attorneys for Plaintiffs*

**JENNIFER WRIGHT ESQ., PLC**

Jennifer J. Wright (No. 027145)
4340 E. Indian School Rd
Suite #21-105
Phoenix, Arizona 85018
jen@jenwesq.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Strong Communities Foundation of Arizona Incorporated; and Yvonne Cahill;<br><br>Plaintiffs,<br>v.<br><br>Stephen Richer, in his official capacity as Maricopa County Recorder; *et al.*<br><br>Defendants. | No. CV-24-02030-PHX-KML<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR A STAY PENDING APPEAL AND REQUEST FOR ADMINISTRATIVE STAY** |

Pursuant to Federal Rule of Civil Procedure Rule 62(d) and Federal Rule of Appellate Procedure Rule 8(a)(1)(A), Plaintiffs Strong Communities Foundation of Arizona, Inc. (EZAZ.org) and Yvonne Cahill (collectively, the "Plaintiffs") respectfully move for a stay in the trial court proceedings pending appeal of this Court's order (ECF No. 90) denying the Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 57) (the "TRO/PI Motion"). The Plaintiffs asked the Defendants their position on this Motion for a Stay Pending Appeal and Request for Administrative Stay ("Motion"), and all Defendants have confirmed that they do not oppose a stay pending appeal.

If the Motion is denied, the Plaintiffs request an administrative stay to allow time for the Ninth Circuit to consider a motion for stay and request an administrative stay.

**Introduction**

In 2022, the Arizona Legislature adopted stricter voter list maintenance requirements for County Recorders to ensure foreign citizens[1] were removed from voter lists and to allay Arizonans' reasonable concerns about foreign citizen voting. *See, e.g.*, 2022 Ariz. Legis. Serv. Ch. 370 (H.B. 2243); 2022 Ariz. Legis. Serv. Ch. 99 (H.B. 2492); 16 A.R.S. §§ 121.01, 143, and 165. Federal law also requires State and local election officials, including County Recorders, to perform voter list maintenance to ensure that "voters ... who are not eligible to vote [in federal elections] are removed." 52 U.S.C. § 21083(a)(2)(B)(ii); *see also* 52 U.S.C. § 21083(a)(2)(A) and (a)(4)(A).

Plaintiff Yvonne Cahill is a naturalized citizen with an alien number, subject to citizenship verification through SAVE. ECF No. 57 at 24. EZAZ.org is a membership organization, and its primary core activities include conducting voter outreach and voter education to make civic action "as easy as pie." *Id.* at 25. Together, the Plaintiffs brought this case to restore public trust in the State's electoral system by holding the Defendants accountable for their failures and to ensure that the list maintenance required by the law—and common sense—is performed.

---

[1] In this brief, "foreign citizen" means "any person not a citizen or national of the United States," the defined meaning for the term "alien" in federal law. 8 U.S.C. § 1101(a)(3).

1

The requested relief has always been the same – an order requiring the Defendants to conduct uniform and nondiscriminatory voter list maintenance by submitting a list of their Federal-Only Voters to the U.S. Department of Homeland Security ("DHS") to verify the citizenship and immigration status of these registrants. ECF No. 57 at 10. Once DHS provides the results of the comparison, Arizona law requires Defendants to begin the statutory process of canceling the voter registration records of any foreign citizens found to be registered to vote. *See* A.R.S. 16-165(A)(10).

The Plaintiffs first filed a special action in Maricopa County Superior Court on August 5, 2024 against Maricopa County and Maricopa County Recorder Stephen Richer (collectively, "Maricopa County Defendants"), seeking an order requiring them to perform their statutory duties pertaining to list maintenance, particular as it relates to determining the citizenship status of the more than 26,000 voters in Maricopa County that have failed to provide documentary proof of citizenship ("DPOC"). ECF No. 1-1 at 19, ¶ 31. The Maricopa County Defendants sought removal to federal court. ECF 1. Once in federal court, the Plaintiffs amended the complaint to add the fourteen other Arizona counties and recorders as plaintiffs. ECF No. 12. The Plaintiffs filed the TRO/PI shortly thereafter. ECF No. 57.

On October 11, 2024, two months and a few days after the Plaintiffs had originally filed their special action in Maricopa County Superior Court, and without reaching the merits, this Court denied the Plaintiffs' Motion, finding that neither Plaintiff EZAZ.org nor Plaintiff Yvonne Cahill had established injury in fact (ECF No. 90 at 12-18), that the requested relief would not redress the claimed imminent harm (*Id.* at 18-20), and that the *Purcell* principle barred the requested relief because the Plaintiffs had not made "a clearcut showing of harm, nor that the action they request is feasible in the midst of a general election" (*Id.* at 21-22).

Immediately following this Court's ruling, the Plaintiffs filed a Notice of Interlocutory Appeal. ECF No. 92. The Plaintiffs now file this Motion seeking to stay the trial court proceedings pending resolution of the Plaintiffs' interlocutory appeal. Critically, because this Court found the Plaintiffs did not have standing and that the Plaintiffs' claims are not

redressable, a stay is particularly appropriate here because the Maricopa County Defendants have already filed a Motion for Judgment on the Pleadings incorporating this Court's reasoning to justify dismissal. ECF No. 95. If the trial court and appellate proceedings run parallel, the litigants will be drafting duplicative briefs in both the trial court and appellate court that deal with the same issues in a fast-moving area of unsettled law. Indeed, just today, the U.S. Supreme Court issued a 6-3 stay decision allowing Virginia to remove aliens from its voter rolls within 90 days of the upcoming election, suggesting that six Justices reject the Defendants' argument in this case that the requested relief here would violate the NVRA's 90-day blackout provision. *See* Order in Pending Case, *Beals v. Va. Coalition for Immigrant Rights,* 24A407, (U.S. Oct. 30, 2024), available at https://perma.cc/C3SL-LTSL.

Additionally, at least three states have filed three different actions in federal court seeking to compel DHS's compliance with 8 U.S.C. §§ 1373 and 1644 for the purpose of voter list maintenance. The litigation of those cases while this case is stayed will shed considerable light on the Defendants' arguments questioning whether DHS could, or would, respond to 1373/1644 Requests.[2]

**Reasons for Granting a Stay**

When evaluating a request for a stay pending appeal, courts consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Although the factors resemble issuance of injunctive relief, "[i]f anything, a flexible approach is even more appropriate in the stay context" because "a stay operates only 'upon the judicial proceeding itself . . . either by halting or postponing some portion of the proceeding, or by temporarily

---

[2] Complaint, *Florida v. DHS*, Case No. 3:24-cv-00509, ECF No. 1 (N.D. Fla. Oct 16, 2024), available at https://perma.cc/5N23-QQH9; Complaint, *Texas v. DHS*, Case No. 4:24-cv-00049, ECF No. 1 (W.D. Tex. Oct 22, 2024), available at https://perma.cc/238E-F3MR; Complaint, *Ohio v. DHS*, Case No. Case: 3:24-cv-00283, ECF No. 1 (S.D. Ohio Oct 24, 2024), available at https://perma.cc/S8QE-KJE2.

3

divesting an order of enforceability.'" *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (quoting *Nken*, 556 U.S. at 428)). While the decision to grant a stay is discretionary, "[s]tay motions and other requests for interlocutory relief are nothing new or particularly remarkable. In truth, they are perhaps 'as old as the judicial system of the [N]ation.'" *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 922 (2024) (Gorsuch, J., concurring) (citation omitted). Because the factors favor the Plaintiffs, a stay of these proceedings pending appeal is warranted.

**I.   Plaintiffs Are Likely to Succeed on the Merits.**

Naturally, courts do not expect their decisions to be reversed on appeal. *See Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 561 n.4 (D.D.C. 2018). Nonetheless, the Federal Rules contemplate that district courts will stay proceedings or decisions pending appeal. *See* Fed. R. App. P. 8(a). Under the Ninth Circuit's "sliding scale" approach, a stay may be appropriate when the balance of equities decidedly favors the appellant and "offset[s] a weaker showing of" the appellant's likelihood of success on the merits. *Leiva-Perez*, 640 F.3d at 964 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). In other words, the district court can grant the stay (without questioning its own decision) on the ground that the movant has raised "serious legal questions" that are fair grounds for appeal. *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023). Although the Plaintiffs believe they are likely to prevail on appeal, at a minimum, this Motion presents "serious legal questions" for appeal. *Id.* The Ninth Circuit has used the following terms to explain that this Court need not decide it *will* be reversed on appeal, only that there is a "reasonable probability," "fair prospect," "a substantial case on the merits," or "that serious legal questions are raised." *Leiva-Perez*, 640 F.3d at 967–68 (cleaned up).

**A.   Plaintiffs Suffered Injury In Fact**

In determining that the Plaintiffs lack injury in fact, this Court discounted any injury to Ms. Cahill of having already been subjected to increased scrutiny when she first registered to vote in Arizona because, by the Court's estimation, she is not subject to ongoing or future injury. ECF No. 90 at 13. However, this presumes that Ms. Cahill will never need to reregister in Arizona for any reason, including an assumption that Ms. Cahill will never move out of and

back into Arizona. Further, it diminishes the injury she has already suffered. This kind of injury (naturalized citizens being subjected to greater scrutiny) was enough for the court in *Mi Familia Vota v. Fontes* ("*Mi Familia*") to determine that "because SAVE requires an immigration number, county recorders can only ever conduct SAVE checks on naturalized citizens who county recorders have 'reason to believe' are non-citizens[,]" that "[n]aturalized citizens will always be at risk of county recorders' subjective decision to further investigate these voters' citizenship status, whereas the Reason to Believe Provision will never apply to native-born citizens [who don't have immigration numbers,]" violating the Different Practices Provision of 52 USCA § 10101(a)(2)(A). 719 F.Supp.3d 929, 995 (D. Ariz. Feb. 29, 2024). Not only was Ms. Cahill already injured, but if she were to need to re-register in Arizona for any reason, she would be injured again. Furthermore, because she possesses an alien number, she "will always be at risk of county recorders' subjective decision to further investigate ... [her] citizenship status," *Mi Familia*, 719 F.Supp.3d at 995, whereas Federal-Only Voters who are foreign citizens or natural-born U.S. citizens face no such risk. Additionally, EZAZ.org's similarly situated members, some of whom may be in the naturalization process and not yet registered to vote, are subject to this injury as well. Nonetheless, EZAZ.org's representational standing theory was denied. ECF No. 90 at 15.

These arguments at least raise "serious legal issues" that should be heard by the Ninth Circuit before this case proceeds.

This Court also discounted the six different ways that EZAZ.org alleged it suffers concrete and particularized harms and how the Defendants' failure to act in accordance with the law directly impacts EZAZ.org's ability to carry out its existing core activities. ECF No. 57 at 18-19. All of these are harms to EZAZ.org's pre-existing activities. Yet, after acknowledging that EZAZ.org's core mission of "public education" and "public advocacy" functions are impacted by the Defendants' "alleged inaction[,]" this Court nonetheless found that EZAZ.org's mission was "broadly stated" and therefore "organizational standing may no longer be premised" where missions were, in the Court's view, broad. ECF 90 at 17.

However, EZAZ.org submitted unrebutted evidence that one of its core pre-existing activities is to report ineligible voters that it encounters during door-knocking campaigns and

5

that the Defendants' failure to conduct proper list maintenance directly harms this core mission by increasing the number of ineligible voters who will be encountered. ECF 57 at 39. This Court similarly discounted the costs that EZAZ.org incurs to report these ineligible voters and to knock on doors of ineligible voters, doors they would otherwise not have knocked on if they were not registered voters.

Therefore, there are serious legal questions as to whether these two activities, as well as the other four pre-existing activities that EZAZ.org identified, fall within the requirements of *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) and *Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165, 1179 (9th Cir. 2024).

There are thus serious legal questions about whether, in this preliminary stage, the Plaintiffs have established sufficient standing to bring their claims. *See, e.g.*, *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) (cleaned up) ("[a]t this very preliminary stage[,]" Plaintiffs "may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their preliminary-injunction motion to meet their burden," "[a]nd they need only establish a *risk or threat of injury* to satisfy the actual injury requirement." (emphasis added)).

**B.     Plaintiffs Imminent Harm Claims Are Redressable**

In denying the TRO/PI Motion, this Court found that "[r]edressing [Plaintiffs'] claimed harm of 'disenfranchisement and vote dilution' before the general election requires more than *starting* an investigation: it requires *removing* ineligible voters from the rolls at the *end* of the investigation." (ECF No. 90 at 19 (citation omitted) (emphasis in original).)  This was because, in the Court's view, "[t]hat result in turn relies on choices by independent actors and factual showings of the likely timing of those choices and results of the investigation that plaintiffs simply have not made." *Id.* at 19-20. However, as the Plaintiffs pointed out in their Reply (ECF No. 91 at 5-6 and 13) regarding the question of whether DHS will respond to 1373/1644 Requests, courts in this Circuit "presume that agencies will follow the law." *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082 (9th Cir. 2010) (citing *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157 (9th Cir.1988)); *see also, F.C.C. v. Schreiber*, 381 U.S. 279, 296 (1965) (acknowledging "the presumption ...that [administrative agencies] will act properly and

6

according to law"); *In re Hergenroeder*, 555 F.2d 686, 686 (9th Cir. 1977) (acknowledging "the presumption that the government obeys the law"). In evaluating redressability, therefore, the Plaintiffs are entitled to a presumption that DHS will respond to 1373/1644 Requests, as required by 8 U.S.C. §§ 1373 and 1644, and that the Defendants will remove any foreign citizens discovered through those requests, as required by Arizona law. A.R.S. § 16-165(A)(10)

Furthermore, the harms alleged by the Plaintiffs were not solely dependent on the actual detection and removal of aliens from the voter rolls. Multiple harms alleged by the Plaintiffs directly flow from the loss of voter confidence caused by the Defendants' failure to conduct proper list maintenance, ECF No. 57 at 18-19, and these harms would be redressable by the Defendants' attempt to investigate, regardless of the outcome of those investigations.

The Plaintiffs have, therefore, raised "serious legal questions" regarding redressability.

### C. The *Purcell* Doctrine Is Inapplicable

The *Purcell* Doctrine's purpose to prevent last-minute "administrative burdens for election officials" is inapplicable in this case. *Lake v. Hobbs*, 623 F.Supp.3d 1015, 1031 (D. Ariz. 2022). However, even if it were applicable, administrative burdens should be tempered where "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill v. Milligan*, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring). The Plaintiffs merely ask that the Defendants comply with their *already-existing* statutory obligations to remove ineligible voters, which, in Arizona, includes utilizing all available federal databases to determine the citizenship status of voters who failed to provide DPOC. In so doing, the requested relief is limited to an order requiring the Defendants to (1) "submit 1373/1644 Requests to DHS" and (2) "'make available' and 'provide' to the Arizona Attorney General the information about Federal-Only Voters required by A.R.S. § 16-143." ECF No. 57 at 26.

There is thus a "serious legal question" about whether the *Purcell* Doctrine applies where a Plaintiff is seeking compliance with a pre-existing legal duty.

### II. Plaintiff Will Suffer Irreparable Harm Without a Stay.

The Plaintiffs face imminent harm from the dismissal of their case. The Maricopa County Defendants have already filed a Motion for Judgment on the Pleadings ("MJP"),

7

incorporating this Court's reasoning on both standing and redressability, seeking dismissal of this entire action. Defendants Pima County, Pinal County, Yavapai County, Navajo County, Gila County, Yuma County, and Coconino County have already joined. ECF No. 95, 96, 98, 99, 100, 101, 102, 103, 104.

The Plaintiffs face the additional harm of being forced to litigate the same issues in both this Court and the Ninth Circuit at the same time. Allowing proceedings here to run parallel to the Plaintiffs' appeal will result in duplicative efforts by litigants forced to pen near-identical briefs in both courts. The additional briefing in this Court would be largely purposeless, as the issues before the Ninth Circuit are nearly identical to those raised in the MJP. If the Ninth Circuit affirms this Court's order, dismissal follows, and if it reverses, dismissal is vitiated. This Court and the Defendants face the same harm of wasted judicial and litigant resources.

"Federal courts have inherent power to control the timing of proceedings 'so as to maintain the orderly processes of justice.'" *Beacon Hill CBO, II, Ltd. v. Beacon Hill Asset Management LLC*, 314 F.Supp.2d 205, 210 (S.D.N.Y. 2003) (citations omitted). In this case, the burden of simultaneously litigating substantially similar issues on appeal and in this Court for the MJP satisfies the irreparable harm requirement. *See, e.g.*, *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1062 (E.D. Cal. 2023) (granting stay pending appeal and finding irreparable harm because "[t]he overlap between the merits of Plaintiffs' claims and Defendants' challenges presented on appeal indicates that the Ninth Circuit's decision will likely streamline the issues the parties must litigated moving forward in this action").

**III. Issuing a Stay in the Proceedings Will Not Substantially Injure the Defendants or Proposed Intervenors.**

Because this Court has denied the Plaintiffs' TRO/PI Motion, there would be no harm to the Defendants or Proposed Intervenors if this Court were to stay this case while the Plaintiffs pursue their appeal. In fact, more harm will befall all litigants if simultaneous briefing on near-identical issues is pursued in both the district and appellate court. Thus, all parties

will benefit from staying these proceedings until the Ninth Circuit renders its decision on the appeal of the denial of Plaintiffs' Motion.

The fact no Defendant opposes a stay here strongly suggests that none of the Defendants believe they will be harmed.

**IV. The Public Interest Strongly Favors a Stay in the Proceedings.**

As articulated by *Purcell*, "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 127 S.Ct. 5, 7 (2006). Absent a stay in these proceedings, the adjudication of the MJP concurrently while the Plaintiffs pursue an appeal of this Court's order denying the TRO/PI Motion could easily result in conflicting orders between the district and appellate courts. The public interest strongly favors avoiding inviting conflicting orders related to election administration.

**Conclusion**

For the preceding reasons, the Plaintiffs respectfully request that the Court grant this Motion for Stay Pending Appeal. In the alternative, should the Court deny this Motion, the Plaintiffs respectfully request an administrative stay of the court proceedings to allow time for the Ninth Circuit to consider a motion to stay and request an administrative stay.

RESPECTFULLY SUBMITTED this 30th of October, 2024.

**America First Legal Foundation**

By: <u>/s/ *James Rogers*</u>
    James K. Rogers (No. 027287)
      *Senior Counsel*
    America First Legal Foundation
    611 Pennsylvania Ave., SE #231
    Washington, D.C. 20003
    Phone: (202) 964-3721
    James.Rogers@aflegal.org

    Jennifer J. Wright (027145)
    Jennifer Wright Esq., Plc
    4340 E. Indian School Rd
    Suite #21-105
    Phoenix, Arizona 85018
    jen@jenwesq.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 30th day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing and transmittal of a Notice of Electronic filing to the CM/ECF registrants on record.

                                                 <u>/s/ *James K. Rogers*</u>
                                                   *Attorney for the Plaintiffs*